UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION**,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>**FISERV SOLUTIONS, LLC**, *formerly known as* FISERV SOLUTIONS, INC., and **FISERV, INC.**,<br><br>　　　　　Defendants. | No. 19 Civ. 624 (MJH)<br><br>**EMERGENCY APPLICATION** |

BESSEMER SYSTEM FEDERAL CREDIT UNION'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION

| | |
|---|---|
| Charles J. Nerko<br>Joel S. Forman<br>VEDDER PRICE P.C.<br>1633 Broadway, 31st Floor<br>New York, NY 10019<br>(212) 407-7700<br>cnerko@vedderprice.com<br>jforman@vedderprice.com | Richard J. Parks<br>PIETRAGALLO GORDON<br>ALFANO BOSICK & RASPANTI, LLP<br>7 West State Street, Suite 100<br>Sharon, PA 16146<br>(724) 981-1397<br>rjp@pietragallo.com |

*Attorneys for Plaintiff*
*Bessemer System Federal Credit Union*

## **Table of Contents**

Page

Background ........................................................................................................................... 1

Argument .............................................................................................................................. 3

I.   Bessemer has shown a likelihood of success on its claims .................................... 4

II.  Bessemer will be irreparably injured without injunctive relief ........................... 8

III. Fiserv cannot show any appreciable harm from the injunction ........................ 11

IV.  An injunction serves the public interest ............................................................... 11

    A.   An injunction is necessary to protect Bessemer and its several thousand members ....................................................................................... 12

    B.   An injunction serves important federal regulatory objectives in protecting consumers of financial institutions, as well as in protecting the safety and soundness of a federally insured credit union. ..................................................... 12

V.   The Court should issue a temporary restraining order ....................................... 13

VI.  A nominal bond is appropriate ............................................................................... 14

Conclusion .......................................................................................................................... 15

## Table of Authorities

Page(s)

**Cases**

*Am. Enka Co. v. Wicaco Mach. Corp.*,
686 F.2d 1050 (3d Cir. 1982) ................................................................................................. 6

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd.*,
2011 WL 129428 (W.D. Pa. Jan. 13, 2011) ............................................................................ 7

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd.*,
456 F. App'x 184 (3d Cir. 2012) .................................................................................... passim

*Citizens Bank, N.A. v. Baker*,
2018 WL 4853318 (W.D. Pa. Oct. 5, 2018) ..................................................................... 9, 10

*Corp. Synergies Grp., LLC v. Andrews*,
2019 WL 2359398 (3d Cir. June 4, 2019) ............................................................................ 13

*Daimler v. Moehle*,
2019 WL 2422843 (W.D. Pa. June 10, 2019) (Horan, J.) ...................................................... 5

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) ....................................................................................................... 6

*English Whipple Sailyard, Ltd. v. Yawl Ardent*,
459 F. Supp. 866 (W.D. Pa. 1978) ......................................................................................... 6

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
375 F.3d 168 (2d Cir. 2004) ................................................................................................... 6

*Glenshaw Glass Co. v. Ontario Grape Growers' Mktg. Bd.*,
67 F.3d 470 (3d Cir. 1995) ..................................................................................................... 6

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001) ................................................................................................... 5

*Hudson Glob. Res. Holdings, Inc. v. Hill*,
2007 WL 1545678 (W.D. Pa. May 25, 2007) ................................................................... 9, 14

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*,
69 F. App'x 550 (3d Cir. 2003) ............................................................................................ 14

*Osorio-Martinez v. Attorney Gen.*,
893 F.3d 153 (3d Cir. 2018) ................................................................................................... 5

NEWYORK/#534075

-iii-

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)................................................................................... *passim*

*Sixth Angel Shepherd Rescue, Inc. v. Bengal*,
    448 F. App'x 252 (3d Cir. 2011) ...............................................................................8, 11, 12

*Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*,
    69 F.3d 695 (3d Cir. 1995).........................................................................................6

*Williams v. Buffalo Pub. Sch.*,
    758 F. App'x 59 (2d Cir. 2018) ................................................................................3

**Other Authorities**

12 C.F.R. Part 748................................................................................................... *passim*

FRCP 65......................................................................................................................1, 14

National Credit Union Administration Letter to Credit Unions No. 19-CU-01 ............................12

Plaintiff Bessemer System Federal Credit Union ("**Bessemer**" or the "**Credit Union**") requests that the Court issue a temporary restraining order and preliminary injunction under FRCP 65 against Fiserv Solutions, LLC ("**Fiserv Solutions**") and Fiserv, Inc. (collectively, "**Fiserv**").

Bessemer seeks emergency relief because Bessemer has a critical, immediate need for certain records belonging to Bessemer that are in Fiserv's custody. These records are necessary for a financial institution such as Bessemer to comply with applicable law. Moreover, Bessemer has uncovered many security lapses at Fiserv. Thus, Fiserv's continued unlawful retention of Bessemer's records exposes them to an unnecessarily high and unjustifiable risk of a data breach.

Bessemer seeks a temporary restraining order (1) restraining Fiserv from storing Bessemer's records on internet-accessible computer systems (which will decrease the risk of a data breach) or otherwise failing to safeguard them; (2) requiring Fiserv to provide the password to a password-protected drive that Fiserv delivered to Bessemer yesterday with certain of Bessemer's archived documents; and (3) requiring Fiserv to provide records concerning which consumers agreed to pay debit card overdraft fees, which Bessemer needs to comply with Regulation E. Bessemer also seeks a preliminary injunction requiring Fiserv to return Bessemer's other records.

## **Background**

A detailed statement of the facts relevant to Bessemer's motion is set forth in the accompanying declaration of Joy E. Peterson, Bessemer's Chief Executive Officer (the "**Peterson Decl.**").[1] For the Court's convenience, we summarize below the most salient facts.

---

[1] Bessemer does not have the burden of establishing all of these facts; some facts are included for background and context.

Bessemer is a not-for-profit, consumer-owned credit union providing financial services to over 4,000 members (Peterson Decl. ¶¶ 2–3).  Fiserv is a technology vendor that previously provided online banking and other services to Bessemer (Peterson Decl. ¶¶ 10–12).  Fiserv Solutions provided these services to Bessemer under a master agreement (the "**Master Agreement**").  The agreement made clear that Bessemer's records "shall remain the property of [Bessemer]," even while in Fiserv Solutions's custody (Peterson Decl. Ex. 2 § 3(b)).

Fiserv has engaged in a series of highly problematic behavior, including several security lapses that have made Bessemer's members' private financial information accessible to unauthorized individuals.  For example, Fiserv:

- provided Bessemer's members' names, tax identification numbers, and portions of account numbers to an unauthorized third party (Peterson Decl. ¶ 20);

- put invalid return addresses on member account statements made on Bessemer's behalf, so that undeliverable statements were left unprotected in the postal system (Peterson Decl. ¶ 21);

- failed to properly safeguard Bessemer's online banking website, such as by not imposing a lockout period after invalid attempts to access the website, which allowed hackers to use a simplistic trial-and-error process to take over online banking accounts belonging to Bessemer's members (Peterson Decl. ¶¶ 42–54);

- refused to allow Bessemer to audit its information security practices, as required both by the parties Master Agreement as well as by federal law (Peterson Decl. ¶¶ 4–7, 22–27);

- has over forty security deficiencies that were identified by a security research firm as making Fiserv 5.4 times more likely to suffer a consequential breach than companies with proper security practices (Peterson Decl. ¶¶ 76–80); and

- has conceded in its SEC filing that Fiserv "may not be able to prevent a material event in the future" with respect to unauthorized access to its clients' data (Peterson Decl. ¶ 121).

After Bessemer terminated Fiserv, Bessemer demanded copies of its records (Peterson Decl. ¶¶ 32–33).  After Fiserv refused to provide them, Bessemer sought a writ of seizure in state court (Peterson Decl. ¶¶ 55–61).  The parties resolved this action by letter agreement (the "**Replevin Action Settlement Agreement**") requiring Fiserv to deconvert Bessemer's records so

that they can be used by Bessemer's successor vendor (Peterson Decl. ¶¶ 58–59). After Fiserv represented that it would, as part of settling the replevin action, deconvert Bessemer's records, Fiserv, regrettably, has reneged on that settlement agreement.

Fiserv withheld various categories of Bessemer's records during the deconversion of Bessemer's records for its successor vendor (Peterson Decl. ¶¶ 81–103). While Fiserv belatedly produced some categories of records, Fiserv is currently withholding Bessemer's records concerning which of its members have provided affirmative consent to be charged debit card overdraft fees (Peterson Decl. ¶¶ 97–101, 109–113). These records are required for Bessemer to comply with Regulation E, a federal law (Peterson Decl. ¶¶ 94–96).[2]

Fiserv is also withholding Bessemer's archived documents. Yesterday, Bessemer received a password-protected hard drive ostensibly containing Bessemer's archived documents. Fiserv, however, provided the incorrect password and instructions to unlock the hard drive, so Bessemer's documents remain on a locked hard drive that is inaccessible to Bessemer (Peterson Decl. ¶¶ 114–116).

Meanwhile, Fiserv recently took the position that it has acquired an ownership interest in Bessemer's records and member information (Peterson Decl. ¶ 108). Thus, Fiserv refuses to dispossess itself of them or to take instructions from Bessemer concerning security procedures needed to safeguard those records (Peterson Decl. ¶¶ 108–110).

Fiserv now continues to possess Bessemer's most sensitive information, when there is no legitimate need for Fiserv to continue doing so (Peterson Decl. ¶¶ 117–125)—and there is an

---

[2]   *See* 12 C.F.R. § 1005.17(B) ("[A] financial institution holding a consumer's account shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution… [o]btains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions.").

ongoing heightened risk of a data breach that Bessemer's Replevin Action Settlement Agreement with Fiserv Solutions sought to avoid. Meanwhile, Fiserv's ongoing and improper retention of Bessemer's records prevents Bessemer from complying with its obligations under federal law.

This motion is brought pursuant to Bessemer's duties under federal law to protect its member information and to oversee its service providers (Peterson Decl. ¶¶ 2–8). Indeed, the National Credit Union Administration ("**NCUA**"), which insures and regulates federal credit unions such as Bessemer, has publicly announced that a credit union's oversight of service providers and compliance with Regulation E are key areas of supervisory focus for this year (Peterson Decl. ¶¶ 7, 96).

Unlike bank regulatory agencies, the NCUA lacks authority over a credit union's third-party vendor relationships (Peterson Decl. ¶¶ 4–5). Thus, while a bank regulator can address vendors mishandling bank customer information, the NCUA lacks authority over a credit union's vendor who mishandles a credit union's member information. As a consequence, the responsibility of overseeing credit union vendors falls on credit unions themselves, and credit unions' vendor oversight is subject to the NCUA's supervision (Peterson Decl. ¶¶ 6–7). Thus, the NCUA counts on the credit unions themselves to police their third-party vendors.

Fiserv's actions directly imperil Bessemer from complying with its regulatory obligations. Bessemer has been forced to file this emergency application to ensure that it can comply with federal law, as well as to spare itself, and the over 4,000 consumers it serves, from irreparable harm caused by Fiserv, a terminated vendor, who is retaining Bessemer's records (Peterson Decl. ¶¶ 117–125).

## **Argument**

Provisional relief is required to prevent irreparable harm to Bessemer and its members. To obtain a preliminary injunction, a movant must make a threshold showing of (1) a likelihood

of success on the merits and (2) irreparable harm without injunctive relief. *See Osorio-Martinez v. Attorney Gen.*, 893 F.3d 153, 178 (3d Cir. 2018); *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).  Once a movant makes this threshold showing, the Court balances those factors against harm to other interested persons and the public interest.  *See Osorio-Martinez*, 893 F.3d at 178; *Reilly*, 858 F.3d at 179.

I.   **Bessemer has shown a likelihood of success on its claims**.

Bessemer is likely to prevail on its claims against Fiserv.  To make this showing, Bessemer "need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001).  Thus, injunctive relief can be granted based on a showing that is "significantly better than negligible but not necessarily more likely than not."  *See Reilly*, 858 F.3d at 179.

"How strong a claim on the merits is enough depends on the balance of the harms:  the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *See id*. at 178.  Bessemer's evidence readily satisfies this burden, particularly given the profound harms Fiserv is inflicting upon Bessemer and its members (*infra*, Point II).  The elements of Bessemer's claims are well known:

**Breach of Contract**.  To succeed on its breach of contract claim, Bessemer must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *See Daimler v. Moehle*, 2019 WL 2422843, at *7 (W.D. Pa. June 10, 2019) (Horan, J.).[3]

---

[3]   The Replevin Action Settlement Agreement was executed in connection with the settlement of a Pennsylvania replevin action, and the agreement lacks a choice-of-law provision.  Prior to that, Bessemer terminated its Master Agreement with Fiserv Solutions due to its material breaches.  The Master Agreement was governed by New York law.  Under New York law, to succeed on a breach of contract claim, a plaintiff must show "(1) the existence of a contract; (2) [its] performance under the contract; (3) the defendants' breach of the contract; and

-5-

**Conversion**.  To establish a prima facie case of conversion, Bessemer must show that Fiserv deprived Bessemer of its "property, or use or possession of a chattel, or other interference therewith, without [Bessemer's] consent and without legal justification."  *See Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995).

**Bailment**.  For bailment liability, Bessemer must show that its "property [was] entrusted to a party temporarily for some purpose; upon the fulfillment of that purpose the property [was not] redelivered to [Bessemer], otherwise [not] dealt with according to [Bessemer's] directions or kept until [Bessemer] reclaims" the property.  *See Glenshaw Glass Co. v. Ontario Grape Growers' Mktg. Bd*., 67 F.3d 470, 475 (3d Cir. 1995).

As the law recognizes "the superior position of the bailee to account for the goods," a bailee such as Fiserv has the "burden of coming forward with evidence of due care once the bailor has demonstrated delivery to the bailee and failure to return."  *Am. Enka Co. v. Wicaco Mach. Corp.*, 686 F.2d 1050, 1053 (3d Cir. 1982).  Thus, under bailment principles and the facts here, Bessemer is entitled to a "presumption" that Fiserv violated Bessemer's property rights.  *See English Whipple Sailyard, Ltd. v. Yawl Ardent*, 459 F. Supp. 866, 873 (W.D. Pa. 1978).

**Negligence**.  The Supreme Court of Pennsylvania recently held that there is a duty to exercise reasonable care when storing and collecting personal and financial information on computer systems.  *See Dittman v. UPMC*, 196 A.3d 1036, 1044–49 (Pa. 2018).  This duty requires that adequate security measures be employed to protect information from the foreseeable risk of a data breach.  *See id.*

---

(4) damages."  *See Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 62 (2d Cir. 2018) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)).

-6-

Bessemer has shown a likelihood of success on its claims against Fiserv.  Bessemer has a property interest in its records in Fiserv's possession.  Bessemer has repeatedly demanded that Fiserv return such property, and the parties' contracts make clear that Bessemer's records are its property.  Fiserv, however, has returned only some of Bessemer's records, while taking the position that they are now Fiserv's and continuing to possess them against Bessemer's wishes.

Fiserv's refusal to return Bessemer's property amounts to a conversion and a breach of Fiserv's bailee duties.  In addition, Fiserv Solutions has violated its contractual obligations to Bessemer, as well as Fiserv's negligence-based duties to secure Bessemer's information against the risk of data breaches.  This has harmed Bessemer by denying it access to property which it is entitled to possess, as well as preventing it from using the information contained in the unlawfully detained records to provide services to members.  All along, Bessemer is harmed by having its records in the custody of Fiserv, who was discharged as Bessemer's vendor for failing to implement appropriate safeguards against data breaches.  Accordingly, Bessemer has shown a likelihood of success on its claims.

When evaluating likely success on the merits, this Court's decision in *Bancroft Life & Casualty v. Intercontinental Management, Limited* is instructive.  There, the plaintiff terminated a contract with a vendor who created and maintained the plaintiff's business records, including records of financial transactions.  *See* 2011 WL 129428, at *2 (W.D. Pa. Jan. 13, 2011), *aff'd*, 456 F. App'x 184 (3d Cir. 2012).  After the agreement was terminated, the vendor issued invoices for post-termination services and purported to assert a possessory lien over the plaintiff's records.  *See id.* at *7–8.  The vendor eventually returned some records, but not all of them.  This Court found that the plaintiff had a successful conversion claim against the vendor for the records, and this Court entered a preliminary injunction directing the vendor to return all

of the records.  *See id.* at *1, *14.  The Third Circuit affirmed.  *See* 456 F. App'x 184 (3d Cir. 2012).

Here too, the Master Agreement and the Replevin Action Settlement Agreement confirm Bessemer's property rights in its records, which Fiserv has custody of solely because it was Bessemer's former vendor.  As this Court held in *Bancroft Life & Casualty*, Fiserv's refusal to return all of Bessemer's records amounts to a serious violation of Bessemer's rights, necessitating a preliminary injunction.  Bessemer has—at a minimum—shown a "significantly better than negligible" chance of success on its claims that warrants an injunction.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

**II.     Bessemer will be irreparably injured without injunctive relief**.

Without injunctive relief, Bessemer and its members will be profoundly and irreparably harmed.

***First***, because Fiserv is improperly retaining possession of Bessemer's "unique property," the harm to Bessemer is "significant."  *Sixth Angel Shepherd Rescue, Inc. v. Bengal*, 448 F. App'x 252, 254 (3d Cir. 2011).  The records that are the subject of this motion are unique because there is no practical equivalent that can replace them.  In the Master Agreement, Fiserv acknowledged that a breach of its obligations affecting Bessemer's ownership of its records "may cause irreparable harm" to Bessemer (Master Agreement § 3(b)).  Indeed, the very fact that Fiserv, even as a former vendor, is waging an expensive and protracted battle to control Bessemer's records—as opposed to simply giving them back to Bessemer—demonstrates that the records are unique and that an alternative is not readily available.

***Second***, in addition to being unique, the records here contain confidential personal and financial information pertaining to over 4,000 consumers.  Bessemer and its thousands of

-8-

members will be subject to profound harm if their confidential information remains with Fiserv, who unlawfully possesses, and has failed to safeguard, Bessemer's records.

The harm to Bessemer is particularly acute because Fiserv stores Bessemer's records electronically with inadequate safeguards. These electronic records can easily be concealed, transferred outside the jurisdiction of this Court, acquired by hackers—or deleted, altered, or destroyed (even by inadvertence). These harms are unquantifiable and pose a severe risk to Bessemer and thousands of consumers entrusting Bessemer to safeguard their private information. In cases such as this and as a consequence of the harm that could come given the misuse of confidential information, courts routinely award injunctive relief requiring unlawfully possessed records to be returned. *See Citizens Bank, N.A. v. Baker*, 2018 WL 4853318, at *4 (W.D. Pa. Oct. 5, 2018) (issuing injunction requiring former bank employees to return and cease using the bank's records); *Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *10 (W.D. Pa. May 25, 2007) (issuing injunction prohibiting the use of, and mandating the return of, misappropriated information).

Fiserv's continued possession of Bessemer's records poses an unacceptably grave and irreparable risk, particularly given that Fiserv is now a former vendor that has ceased providing services for Bessemer. A terminated vendor such as Fiserv is unlikely to make the necessary investments in safeguarding Bessemer's information against evolving data breach and security threats. Indeed, in Fiserv's own SEC filings, Fiserv concedes that it may be unable to prevent materially adverse cybersecurity incidents with respect to customers' data in its custody.

Once Bessemer's member information is accessed by hackers, its confidentiality will be lost forever. The records Fiserv possesses are extraordinarily sensitive, and includes members' passwords and security questions for their financial accounts. Stolen consumer data can then be

used to gain access to different areas of the victims' lives, including financial accounts. What's more, Bessemer's members typically link their Bessemer accounts to accounts at other financial institutions (for example, to transfer funds between financial institutions). As a result, the records in Fiserv's ongoing possession can be used as a springboard to launch wide-ranging attacks on Bessemer's members and the multitude of financial institutions they do business with. All along, Bessemer faces "irreparable harm and loss of goodwill and relationships with customers" who are affected by Fiserv's misconduct. *See Citizens Bank, N.A.*, 2018 WL 4853318, at *3. Without an injunction protecting these records, the harm to Bessemer and its members is profound.

***Third***, Fiserv is irreparably harming Bessemer by exposing it to penalties for failing to comply with its regulatory obligations. Bessemer requires its records in Fiserv's possession to be returned so that Bessemer can determine which members provided affirmative consent to be charged debit card overdraft fees, as required by Regulation E. Fiserv's failure as a former vendor to return Bessemer's records needed for Bessemer to comply with federal law constitutes irreparable harm. *See Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd.*, 456 F. App'x 184, 190 (3d Cir. 2012) (finding that defendants' improper retention of records required for legal compliance constituted irreparable harm).

In addition, federal law also requires credit unions to perform due diligence and to oversee their third-party vendors with custody of credit union member information to ensure that the credit union's member information is being safeguarded appropriately. *See* 12 C.F.R. Part 748, App'x A. This is because, unlike bank regulators who have enforcement powers over bank vendors that mishandle customer information, the NCUA lacks authority over vendors who mishandle a credit union's member information. As a result, federal law places the burden on a

credit union to police vendors who have custody of credit union member information. Bessemer risks falling out of compliance with federal guidelines because Fiserv has failed to safeguard member information in its custody. In addition, by recently taking the position that Fiserv, now a former vendor, has acquired ownership of Bessemer's records, Fiserv is preventing Bessemer from exercising federally mandated oversight over the Credit Union's member information.

**III.     Fiserv cannot show any appreciable harm from the injunction**.

Fiserv has no legitimate current or ongoing interest in possessing Bessemer's records. The terminated Master Agreement, the Replevin Action Settlement Agreement, and common sense make clear that these records are Bessemer's, not Fiserv's. As Fiserv cannot "present evidence establishing its right to continued possession" of Bessemer's records, there is no harm to Fiserv. *See Sixth Angel Shepherd Rescue, Inc. v. Bengal*, 448 F. App'x 252, 254 (3d Cir. 2011). Indeed, because the parties' business relationship "has been terminated," Fiserv lacks "any use for the records" belonging to Bessemer. *Bancroft Life & Cas.*, 456 F. App'x at 189.

Moreover, when evaluating potential harm to Fiserv, it should be considered that Fiserv would be required to provide Bessemer with its records in the ordinary course of discovery in this matter. Accordingly, the incremental effort needed by Fiserv to return these records now and under appropriate safeguards is nonexistent, or at the most, negligible.

In sum, denial of an injunction would profoundly harm Bessemer and its several thousand members. In contrast, Fiserv cannot show any countervailing harm or basis to retain records that do not belong to it.

**IV.     An injunction serves the public interest**.

The interests of Bessemer and its members, as well as the government agency regulating federal credit unions, show that an injunction serves the public interest.

**A.     An injunction is necessary to protect Bessemer and its several thousand members**.

An injunction "would protect [Bessemer's] property right to access its own books and records," and the public's interest in protecting these property rights is "strong." *See Bancroft Life & Cas.*, 456 F. App'x at 189. Accordingly, the public interest requires Fiserv "returning the [property] to [its] owner, thereby settling property rights and allowing [Bessemer] to fulfill its mission" of providing financial services to consumers of modest means. *See Sixth Angel*, 448 F. App'x at 254.

While courts routinely find that the public interest supports awarding injunctions to protect property rights, the public interest is more compelling here. The property rights Bessemer is seeking to protect implicate the sensitive financial and personal information of over 4,000 consumers participating in a not-for-profit credit union. An injunction serves the public by protecting consumers' sensitive financial information from unnecessary harm and a heightened risk of identity theft and fraud while in Fiserv's possession.

**B.     An injunction serves important federal regulatory objectives in protecting consumers of financial institutions, as well as in protecting the safety and soundness of a federally insured credit union**.

This motion is further prompted by Bessemer's duties under federal law to protect its member information and to oversee its service providers. The NCUA has publicly announced that federal credit unions' "oversight of service provider arrangements to ensure credit unions implement effective risk-based supply chain management" is one of the NCUA's "primary areas of supervisory focus for 2019."[4] As part of this federal agency's regulatory focus, the "security, confidentiality, and integrity of credit union member information remains a key supervisory

---

[4]     *See* National Credit Union Administration Letter to Credit Unions No. 19-CU-01 at 1, 3 (Petersen Decl. Ex. 1).

-12-

priority for the NCUA," and credit unions are expected to exercise appropriate "oversight of service provider arrangements" in this regard.  Similarly, the NCUA has indicated that Regulation E compliance is a top supervisory priority for the agency this year.

Fiserv's actions expose Bessemer and all of its members to a severe and potentially immeasurable harm of identity theft and fraud.  A financial institution such as Bessemer typically bears the costs related to identity theft and fraud affecting its customers.  In addition, a financial institution such as Bessemer may face legal liability for charging consumers fees that are not permitted to be charged under federal law.  Those costs can be crushing, particularly where, as here, Fiserv's actions threaten an entire institution's customer base as well as those consumers' financial security.

The harm Fiserv is causing after being discharged as Bessemer's vendor cannot be overstated:  Fiserv is acutely jeopardizing the entire Credit Union's safety and soundness.  As demonstrated by the NCUA's regulatory priorities, the public interest in protecting the security and confidentiality of credit union member information, as well as protecting consumers from being charged overdraft fees for which they did not provide affirmative consent, is strong.  Bessemer's failure to heed these prioritized regulatory requirements may expose it to devastating legal liability that threatens the entire institution's safety and soundness.  Accordingly, the public interest supports Bessemer.

## V.     The Court should issue a temporary restraining order.

Bessemer will suffer irreparable harm if Fiserv's conduct is not promptly restrained.  In evaluating whether to issue a temporary restraining order, the relevant factors "are the same for both temporary restraining orders and preliminary injunctions."  *See Corp. Synergies Grp., LLC v. Andrews*, 2019 WL 2359398, at *2 n.5 (3d Cir. June 4, 2019) (unreported).

As set forth above, Fiserv's misconduct presents immediate and irreparable harm to Bessemer and the over 4,000 consumers it serves. While the Court evaluates Bessemer's motion for a preliminary injunction requiring all of its records to be returned, Bessemer seeks a temporary restraining providing certain limited relief needed on an urgent basis. Bessemer thus requests a temporary restraining order that will (1) restrain Fiserv from storing Bessemer's records on internet-accessible computer systems (as internet-accessible systems have a heightened risk of a data breach) or otherwise failing to safeguard them; (2) require Fiserv to provide the password to a password-protected drive that contains the data Fiserv delivered to Bessemer on June 24, 2019 with certain of Bessemer's archived documents; and (3) require Fiserv to provide records concerning which consumers agreed to pay debit card overdraft fees, which Bessemer needs to comply with Regulation E. This limited temporary relief is necessary to prevent irreparable harm from immediately befalling on Bessemer and its members. A temporary restraining order is warranted on the facts here and serves the interests of justice.

## VI.     A nominal bond is appropriate.

FRCP 65(c) empowers the Court with broad discretion to set the amount of the bond. A nominal bond is appropriate here. As a terminated vendor, Fiserv is no longer providing services to Bessemer. Thus, Fiserv lacks a legitimate economic interest in continuing to possess Bessemer's records. A nominal bond is also appropriate given that Bessemer is a consumer-owned, not-for-profit cooperative providing financial services to consumers of modest means.

Under these circumstances, a $5,000 bond is more than sufficient. *See Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 556 (3d Cir. 2003) (holding district court properly set a "nominal bond" when enjoined party "produced no evidence of any irreparable harm to it from the injunction"); *Hudson Glob. Res. Holdings*, 2007 WL 1545678, at

\*11 (setting $5,000 bond for injunction mandating the return and nonuse of misappropriated information).

## Conclusion

Injunctive relief will protect Bessemer and the thousands of consumers it serves from being unnecessarily and irreparably harmed.  Bessemer respectfully requests that its motion for a temporary restraining order and preliminary injunction be granted.

Dated:  June 25, 2019

        Respectfully submitted,

        VEDDER PRICE P.C.


        By: /s/ Charles J. Nerko
            Charles J. Nerko (NY 4764338)
            Joel S. Forman (NY 1086081)
        1633 Broadway, 31st Floor
        New York, NY  10019
        Tel.:  (212) 407-7700
        Fax:  (212) 407-7799
        Email: cnerko@vedderprice.com
                 jforman@vedderprice.com

        Richard J. Parks (PA 40477)
        PIETRAGALLO GORDON
        ALFANO BOSICK & RASPANTI, LLP
        7 West State Street, Suite 100
        Sharon, PA  16146
        Tel.:  (724) 981-1397
        Fax:  (724) 981-1398
        Email: rjp@pietragallo.com

        *Attorneys for Plaintiff*
        *Bessemer System Federal Credit Union*