# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:19-cv-00624-MJH |
| **FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,** | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................... 3

ARGUMENT .................................................................................................................. 5

I.      BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW. ......................... 5

        A.      The Master Agreement Unambiguously Bars Bessemer's Tort Claims. ............... 5

II.     THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR
        BESSEMER'S TORT CLAIMS. ................................................................................. 8

        A.      Gist of the Action Doctrine ................................................................................ 8

        B.      Economic Loss Doctrine .................................................................................. 11

III.    MANY OF BESSEMER'S CLAIMS INDEPENDENTLY FAIL TO STATE
        CLAIMS UPON WHICH RELIEF MAY BE GRANTED. ........................................... 12

        A.      Bessemer's Scattershot "Unfair Trade Practices" Claim (Under the Laws
                of Four Different States) Fails. ........................................................................ 12

        B.      Bessemer Does Not Allege Facts Sufficient to Plead Fraud. .............................. 13

        C.      Bessemer's Conversion and Bailment Claims Fail as a Matter of Law
                under the Unambiguous Terms of the Master Agreement. .................................. 16

        D.      Bessemer Does Not Allege Facts That Establish a "Special Relationship." ........ 18

        E.      Bessemer's Trade Secrets Claims Fail Because Member Information Is
                Not a Trade Secret and Fiserv Solutions Lawfully Possessed that
                Information. ..................................................................................................... 19

        F.      Bessemer's Unjust Enrichment Claim Fails. ...................................................... 21

        G.      Pennsylvania Does Not Permit Claims for Punitive Damages or
                Injunction. ....................................................................................................... 21

IV.     BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW. ...................... 22

        A.      Bessemer's Contract Claim Fails Because It Does Not Identify the
                Contractual Provisions Fiserv Solutions Allegedly Breached. ............................. 22

B.      Bessemer's Requested Declaratory Relief Is Contrary to the Unambiguous
        Terms of the Master Agreement. ........................................................................ 22

C.      Bessemer Does Not State a Claim Related to the October 2018 Letter................ 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander Mill Servs., LLC v. Bearing Distributors, Inc.*,
    2007 WL 2907174 (W.D. Pa. Sept. 28, 2007) ...................................................................10, 12

*Andrichyn v. TD Bank, N.A.*,
    93 F. Supp. 3d 375 (E.D. Pa. 2015) ....................................17

*Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*,
    651 F. Supp. 718 (W.D. Mo. 1986) ....................................12

*Art & Antique Dealers League of Am, Inc. v. Seggos*,
    2019 WL 416330 (S.D.N.Y. Feb. 1, 2019) ........................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................5

*Baii Banking Corp. v. Atl. Richfield Co.*,
    1987 WL 14124 (S.D.N.Y. Sept. 17, 1987) ........................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................5, 12, 18

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
    353 F. Supp. 3d 1070 (D. Colo. 2018) ....................................20

*Bishop v. GNC Franchising LLC*,
    403 F. Supp. 2d 411 (W.D. Pa. 2005) *aff'd*, 248 F. App'x 298 (3d Cir. 2007) ......................21

*Bucci v. Wachovia Bank, N.A.*,
    591 F. Supp. 2d 773 (E.D. Pa. 2008) ....................................15, 18

*Carlson v. Arnot-Ogden Mem'l Hosp.*,
    918 F.2d 411 (3d Cir. 1990) ....................................25

*EQT Prod. Co. v. Terra Servs., LLC*,
    179 F. Supp. 3d 486 (W.D. Pa. 2016) ....................................8

*Exeter Twp. v. Gardecki*,
    2018 WL 6616930 (E.D. Pa. Dec. 17, 2018) ....................................16

*Factory Mkt. v. Schuller Int'l.*,
    987 F. Supp. 387 (E.D. Pa.1997) ....................................9

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) .........................................................................21

*Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*,
   2005 WL 2665326 (M.D. Pa. Oct. 19, 2005) .........................................................11

*Gen. Elec. Co. v. Varig-S.A.*,
   2004 WL 253320 (S.D.N.Y. Feb. 10, 2004) ...........................................................6

*Goldstein v. Murland*,
   2002 WL 1371747 (E.D. Pa. June 24, 2002) .........................................................14

*Golphin v. Wells Fargo Bank, N.A.*,
   2010 WL 4536766 (M.D. Pa. Nov. 2, 2010) .........................................................12

*Grimm v. Citibank (S.D.), N.A.*,
   2008 WL4925631 (W.D. Pa. Nov. 14, 2008) .......................................................6, 8

*Hollander v. Etymotic Research, Inc.*,
   726 F. Supp. 2d 543 (E.D. Pa. 2010) .....................................................................14

*Huber v. Taylor*,
   469 F.3d 67 (3d Cir. 2006).......................................................................................11

*Indus. Risk Insurers v. Port Auth. of New York & New Jersey*,
   387 F. Supp. 2d 299 (S.D.N.Y. 2005), *aff'd in part*, 493 F.3d 283 (2d Cir.
   2007) .........................................................................................................................6

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009).....................................................................................15

*Jersey Cent. Power & Light Co. v. New Jersey*,
   772 F.2d 35 (3d Cir. 1985).......................................................................................23

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013)......................................................................11

*Lewis v. Ford Motor Co.*,
   263 F.R.D. 252 (W.D. Pa. 2009) .............................................................................12

*Ogrizovich v. CUNA Mut. Grp.*,
   2015 WL 12778403 (W.D. Pa. Feb. 13, 2015) ......................................................11

*Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*,
   693 F.3d 417 (3d Cir. 2012).....................................................................................6

*PharmMerica Corp. v. Sturgeon*,
   2018 WL 1367339 (W.D. Pa. Mar. 16, 2018) ......................................................19

iv

*Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*,
    2000 WL 876728 (E.D. Pa. June 29, 2000) ................................................................17

*Pollock v. Nat'l Football League*,
    2013 WL 1102823 (W.D. Pa. Mar. 15, 2013) ..........................................................11

*Rooney v. City of Phila.*,
    623 F. Supp. 2d 644 (E.D. Pa. 2009) ......................................................................21

*Samson Lift Techs., LLC v. Jerr-Dan, Corp.*,
    2010 WL 1052932 (M.D. Pa. Mar. 22, 2010) ..........................................................11

*Sarpolis v. Tereshko*,
    625 F. App'x 594 (3d Cir. 2016) ............................................................................15

*Schulze v. Legg Mason Wood Walker, Inc.*,
    865 F. Supp. 277 (W.D. Pa. 1994) ..........................................................................17

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997) ......................................................................................5

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984) ....................................................................................15

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018) ....................................................................................15

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    427 F. Supp. 2d 526 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) ............19

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D. N.J. 2013) ........................................................................14

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
    40 F. Supp. 2d 644 (W.D. Pa. 1999) ........................................................................9

*Tanenbaum v. Chase Home Fin. LLC*,
    2014 WL 4063358 (E.D. Pa. Aug. 18, 2014) ..........................................................25

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ..............................................................................15

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
    246 F. Supp. 3d 1097 (E.D. Pa. 2017) ....................................................................21

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ....................................................................................11

*Whitaker v. Herr Foods, Inc.*,
  198 F. Supp. 3d 476 (E.D. Pa. 2016) ....................................................................11

*In re Zambrano Corp.*,
  2010 WL 8354694 (Bankr. W.D. Pa. Aug. 24, 2010) ............................................16

*Zamias v. Fifth Third Bank*,
  2018 WL 355462 (W.D. Pa. Jan. 9, 2018) .............................................................15

**State Cases**

*Adamski v. Allstate Ins. Co.*,
  738 A.2d 1033 (Pa. Super. Ct. 1999) ....................................................................15

*Aikens v. Baltimore & Ohio R. Co.*,
  501 A.2d 277 (Pa. Super Ct. 1985) .......................................................................11

*Barker v. Time Warner Cable, Inc.*,
  923 N.Y.S.2d 118 (N.Y. App. Div. 2011) ..............................................................22

*Bortz v. Noon*,
  729 A.2d 555 (Pa. 1999) ......................................................................................14

*Citibank, N.A. v. Plapinger*,
  485 N.E.2d 974 (N.Y. 1985) ..................................................................................7

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
  611 N.E.2d 282 (N.Y. 1993) ..................................................................................6

*Coons v. First Nat'l Bank of Philmont*,
  218 A.D. 283, 218 N.Y.S. 189 (3d Dep't 1926) ....................................................18

*Danann Realty Corp. v. Harris*,
  157 N.E.2d 597 (N.Y. 1959) ..................................................................................7

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
  811 A.2d 10 (PA. Super. Ct. 2002) ..............................................................8, 10, 19

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314 (N.Y. 2002) ..................................................................................13

*Greenfield v. Philles Records, Inc.*,
  780 N.E.2d 166 (N.Y. 2002) ..................................................................................6

*Hutton v. Pub. Storage Mgmt.*,
  676 N.Y.S.2d 886 (N.Y. App. Div. 1998) ..............................................................18

*Kailin v. Armstrong*,
  643 N.W.2d 132 (Wis. Ct. App. 2002) ..................................................................13

*Lion Yarn Co. v. Flock*,
 36 A.2d 246 (Pa. Super Ct. 1944) ..........................................................................18

*Moore v. Microsoft Corp.*,
 741 N.Y.S.2d 91 (N.Y. App. Div. 2002) ...................................................................6

*Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*,
 855 A.2d 818 (Pa. 2004) ..........................................................................................16

*Pittsburgh Constr. Co. v. Griffith*,
 834 A.2d 572 (Pa. Super. Ct. 2003) .........................................................................10

*Prof'l Ben. Consultants, Inc. v. Claims & Ben. Mgmt., Inc.*,
 2011 WL 6012932, at *3 (D.N.J. Dec. 1, 2011) ......................................................16

*State v. Automatic Merchandisers of Am., Inc.*,
 221 N.W.2d 683 (Wis. 1974) ...................................................................................13

*Thierry v. Matson*,
 2014 WL 11152807 (Pa. Com. Pl. Feb. 11, 2014) ...................................................22

*Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*,
 381 N.E.2d 1337 (Ohio Ct. App. 1978) ..................................................................13

*Wilson Area Sch. Dist. v. Skepton*,
 895 A.2d 1250 (Pa. 2006) ........................................................................................21

*Woodhill Elec. v. Jeffrey Beamish, Inc.*,
 904 N.Y.S.2d 232 (N.Y. App. Div. 2010) ...............................................................22

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
 854 A.2d 425 (Pa. 2004) ............................................................................................7

**Federal Statutes**

18 U.S.C. § 1839(5) .............................................................................................................20

Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* ...........................................................2, 19

**State Statutes**

12 Pa. Cons. Stat. Ann. § 5302 ...........................................................................................20

42 Pa. Cons. Stat. Ann. § 5524(7) .......................................................................................15

Ohio Rev. Code § 1345.01 ..................................................................................................13

Fed. R. Civ. P. 9(b) .....................................................................................................2, 15, 16

Wis. Stat. § 100.18(11)(b)(3) ........................................................................................................13

**Other Authorities**

*Black's Law Dictionary* (10th Ed. 2014) .....................................................................................21

Restatement (Second) of Conflict of Laws § 187 ..........................................................................6

Defendants Fiserv Solutions, LLC ("Fiserv Solutions") and Fiserv, Inc. (together "Defendants") submit this memorandum in support of their Motion to Dismiss the First Amended Complaint and Demand for Jury Trial (the "Amended Complaint").

## INTRODUCTION

This case is not as complicated as Bessemer's needlessly-lengthy Amended Complaint tries to make it. This is (or should be) a straightforward contract dispute. Yet, Bessemer alleges *fifteen* separate claims spanning nearly three-hundred and fifty paragraphs over ninety pages. No amount of spilled ink can transform this case into more than it is. Although Bessemer ignores the fact, its deconversion and transition to a new processing vendor was complete on June 1, 2019. Bessemer has been running its credit union and serving its members without Fiserv Solutions' involvement or interference for more than three months. The Court should reject Bessemer's attempt to complicate matters and obfuscate the lack of any meritorious contract claim through a litany of salacious allegations, tort claims, statutory claims and pleas for injunctive relief.

Under the parties' Master Agreement, Fiserv Solutions provided account processing services and related software products to Bessemer. This action relates to certain alleged deficiencies in the provision of those services and products. Bessemer first began claiming "breaches" in a series of letters, beginning in January 2018. Bessemer had decided not to renew the Master Agreement, but did not want to pay the costs of transitioning to a new provider (a process known as "deconversion") that the Master Agreement requires. So, Bessemer began a campaign of baseless claims and escalating threats to avoid them.

On April 20, 2018, Bessemer filed this action in state court by serving a summons, but not a complaint. (Notice of Removal, Exhibit A, ECF 1-2.) On October 9, 2018, Bessemer still had not filed a complaint, but started a separate replevin action demanding the immediate "return" of

1

its processing data.  But that would have left Bessemer without a processing vendor and was irreconcilable with the Master Agreement, so Bessemer voluntarily dismissed that case some ten days later.  Bessemer finally filed its complaint here on April 26, 2019.  (Notice of Removal, Exhibit A, ECF 1-2 at 29.)  After Fiserv removed, Bessemer sought an "emergency" injunction, which the Court denied.  (Mot. for T.R.O., ECF 16; Minute Entry, Jun. 26, 2019 Hearing, ECF 25.)  Bessemer filed the Amended Complaint on July 26, 2019, 15 months after it first sued.

Bessemer's tort claims are a thinly-veiled attempt to re-package its contract claim and avoid the Master Agreement.  The Master Agreement, the gist of the action doctrine, and the economic loss doctrine each expressly bar these claims.  Bessemer also fails to plead its fraud, fraudulent inducement (which is likewise time barred), and unjust enrichment claims with the particularity that Rule 9(b) requires.  Bessemer's misappropriation of trade secrets and Defend Trade Secrets Act claims similarly fail for a lack of protectable trade secrets and because Fiserv Solutions had the contractual right and obligation to access and use Bessemer's data.  Bessemer's claims for unfair and deceptive trade practices, conversion, negligent misrepresentation, constructive fraud, bailment, unjust enrichment, promissory estoppel, declaratory relief, injunction, and punitive damages all additionally fail for lack of an essential element.  Finally, Bessemer's claim for breach of contract premised both on the Master Agreement and on a letter between the parties' counsel fails to identify the contractual provisions that were breached, and fails to plausibly allege an enforceable contract or detrimental reliance with regard to the letter.

The Amended Complaint should be dismissed in its entirety.  Bessemer has had 15 months and three (including the replevin action) chances to get its claims straight.  The Court should deny leave to amend.  To the extent the Court is inclined to give Bessemer yet another opportunity to replead, it should strictly limit Bessemer to contract claims under the Master Agreement.

## FACTUAL ALLEGATIONS

### I.   The Master Agreement and Fiserv Solutions' Services.

Bessemer was a Fiserv Solutions client for nearly 40 years.  Most recently, the parties renewed their relationship through a Master Agreement, dated July 1, 2014, under which Fiserv Solutions agreed to provide account processing and related services (the "Master Agreement"). (Am. Compl., ¶¶ 26–27, Ex. 1.)  In exchange, Bessemer agreed to pay license, maintenance, and professional development fees and also to pay early termination fees if it terminated the Master Agreement for any reason other than Fiserv Solutions' material breach.  (*Id.*, Ex. 1, ASP Services Exhibit to Master Agreement, §8(b); Software Products Exhibit, § 11(a).)  Bessemer also promised to pay deconversion fees when it transitioned to a new provider and authorized Fiserv Solutions to retain Bessemer's files until Bessemer fully performed its payment and confidentiality obligations. (*Id.*, Ex. 1, ASP Services Exhibit to Master Agreement, § 8(e).)

The Master Agreement is fully integrated and controlled by New York law. (*Id.*, Ex. 1, §§ 11(b), (d).)  Along with its integrated exhibits, it reflects a comprehensive agreement that spells out the parties' obligations, the allocation of risk, and the limitations on liability to one another. Given Bessemer's tort claims, certain provisions merit particular attention.  The Master Agreement makes specific warranties with regard to Fiserv Solutions' products and services.  Bessemer "expressly" waived all other representations or warranties.  (*Id.*, Ex. 1, § 6(c).)  The Master Agreement expressly acknowledges that neither party was induced to enter the agreement by, nor relied on, any representations not in the Master Agreement.  (*Id.*, Ex. 1, § 11(b).)  Bessemer also unequivocally agreed that it would not seek and could not recover "punitive, exemplary or tort damages arising out of or relating to this Agreement, regardless of whether such claim arises in tort, contract or otherwise."  (*Id.*, Ex. 1, § 7.)

### II.   The Allegations that Form the Basis of Bessemer's Fifteen Claims for Relief.

3

Despite the Amended Complaint's length and hyperbole, the conduct that purportedly forms the basis for Bessemer's claims falls into five categories: Fiserv Solutions' (1) allegedly deficient security practices, (*id.*, ¶¶ 44–86, 116–27); (2) allegedly deficient performance under the Master Agreement, (*id.*, ¶¶ 87–116, 128, 135–58); (3) alleged misrepresentations, both before and during the parties' relationship, regarding its security practices and products and services, (*id.*, ¶¶ 23–43, 129–34); (4) alleged wrongful inducement of Bessemer's voluntary dismissal of the replevin action, (*id.*, ¶¶ 159–79); and (5) alleged misconduct during the "deconversion" process, (*id.*, ¶¶ 180–99). All of this arises under or relates to performance under the Master Agreement.

With regard to the allegedly "deficient" security practices, Bessemer alleges that Fiserv Solutions failed to implement necessary information security practices and protocols, relying on unsubstantiated third-party opinions to claim that Fiserv Solutions' practices put Bessemer's members at risk of, *inter alia*, identity theft. (*Id.*, ¶¶ 44–67, 80–86). The Master Agreement, not popular media, defines Fiserv Solutions' security obligations, and any inquiry into the propriety of these practices requires reference to its text. So, too, does an inquiry into whether Fiserv Solutions provided inadequate products and services (*e.g.*, alleged inaccurate reporting of member transactional records, (*id.*, ¶¶ 87–98), system latencies and "bugs," (*id.*, ¶¶ 99–115), and improper or delayed corrective actions, (*id.*, ¶¶ 135–37)), under the Master Agreement.

Bessemer also contends that Fiserv Solutions made several misrepresentations before and during the parties' contractual relationship, including the adequacy of its security practices, (*id.*, ¶¶ 23–43), the functionality and availability of its products and services, (*id.*, ¶¶ 129–34), and the speed and manner with which Bessemer could be transitioned to another service provider, (*id.*, ¶¶ 161–63, 168–69, 176–79). Each of these alleged misrepresentations is either precluded by the Master Agreement or, at least, requires an analysis of Fiserv Solutions' obligations thereunder.

In addition, any analysis of the legitimacy of Bessemer's assertions that Fiserv Solutions induced Bessemer to dismiss the Replevin Action via representations concerning Bessemer's conversion to another service provider, (*id.*), the purported delay in Bessemer receiving the deconversion files after its dismissal of the Replevin Action, (*id.*, ¶¶ 180–88, 191, 199), and Bessemer's complaints concerning the accuracy of the format and scope of the deconversion files, (*id.*, ¶¶ 189–90, 192, 196–97), all also necessitate analysis of Fiserv Solutions' obligations under the Master Agreement.   Indeed, the Master Agreement comprehensively and unambiguously defines Fiserv Solutions' obligations in connection with Bessemer's deconversion.

## ARGUMENT

These five categories form the basis of each of Bessemer's fifteen claims for relief. Whether viewed independently or collectively, these factual allegations fail to support the claims Bessemer attempts to plead.  A well-pleaded complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Courts must take the claimant's well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009), but the Court is not "required to accept as true unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).   Rather, a complaint "must contain sufficient factual matter" to state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.  Each of Bessemer's claims fails these requirements.

## I.  BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW.

### A.      The Master Agreement Unambiguously Bars Bessemer's Tort Claims.

The Master Agreement defines the parties' agreed-upon duties, rights, and remedies.  In it, Bessemer waived and disclaimed any right to recover tort damages and expressly agreed that

Fiserv Solutions did not make, and Bessemer did not rely on, any representations, warranties, or promises outside the Master Agreement.  These provisions bar Bessemer's tort claims.

Bessemer unambiguously waived and disclaimed all tort damages and remedies:  "In no event shall Fiserv be liable for . . . tort damages arising out of or relating to this Agreement, regardless of whether such claim arises in tort, contract, or otherwise."  (Am. Compl., Ex. 1, § 7.) Under New York law,[1] it is well-settled that parties can "agree to limit their liability to one another in tort actions related to the contract if their intention to limit tort liability is clearly expressed." *Gen. Elec. Co. v. Varig-S.A.*, 2004 WL 253320, at *3 (S.D.N.Y. Feb. 10, 2004).  Courts presume that parties to a contract understand the import of each contractual provision and intend to be bound by their terms.  *See Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).  Such provisions apply with equal force to claims alleging deceptive trade practices.  *Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 92 (N.Y. App. Div. 2002).  Section 7's clear and unambiguous disclaimer of all tort remedies requires dismissal of Bessemer's negligence, negligent misrepresentation, and unfair and deceptive trade practices claims.[2]

Further, the Master Agreement expressly "constitutes the complete and exclusive statement of the agreement between the parties as to the subject matter hereof and supersedes all previous agreements with respect hereto and the terms of all existing or future purchase orders or

---

[1] The parties agreed to New York law in the Master Agreement.  A federal court sitting in diversity must apply the choice of law rules of the forum state.  *Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012).  A Pennsylvania court would apply the laws of New York in construing the Master Agreement.  *See Grimm v. Citibank, N.A.*,  2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) ("Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them.").

[2] Avoiding a contractual limitation on liability requires conduct that evinces "a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.  *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993).  Conclusory allegations of gross negligence or intentional wrongdoing, however, will not suffice to avoid contractual limitations.  Otherwise, "contracting parties would be stripped of the substantial benefit of their bargain–that is, avoiding the expense of lengthy litigation."  *Indus. Risk Insurers v. Port Auth. of New York & New Jersey*, 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005), *aff'd in part*, 493 F.3d 283 (2d Cir. 2007).

acknowledgments," and Bessemer agreed that it "**ha[d] not been induced to enter into this Agreement by virtue of, and is not relying on, any representation made by [Fiserv] not embodied herein**." (*Id.*, Ex. 1, § 11(b) (emphasis added).)  Where parties expressly disclaim reliance on particular misrepresentations, contrary allegations are barred.  *See Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (dismissing fraud claims where plaintiff contractually agreed that it was not relying on specific representations not embodied in the contract); *see also Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 976-77 (N.Y. 1985) (contractual disclaimer barred claims of negligent misrepresentation and fraud).[3]  Section 11(b) precludes Bessemer's allegation that it relied on any representation or warranty outside the Master Agreement and bars its various misrepresentation claims (fraud, fraudulent inducement, constructive fraud, unfair trade practices, and negligent misrepresentation) as a matter of law.

Similarly, the Master Agreement embodies a contractual allocation of risk and liability with respect to warranties.  Fiserv Solutions made limited ***contractual*** warranties.  If Fiserv Solutions breached those warranties (which it denies), Bessemer's claims sound in contract.  To the extent Bessemer tries to assert extra-contractual standards of performance (such as "industry" security practices), "warranties" or "promises" as the basis for its negligence and other tort claims, those claims must fail.  Fiserv Solutions disclaimed, and Bessemer expressly waived, any warranties or performance standards not expressly included in the Master Agreement:

> THE WARRANTIES STATED ABOVE AND IN THE EXHIBITS, IF ANY, ARE LIMITED WARRANTIES AND ARE THE ONLY WARRANTIES MADE BY THE PARTIES. . . . FISERV DISCLAIMS, AND CLIENT HEREBY EXPRESSLY WAIVES, ALL OTHER REPRESENTATIONS, CONDITIONS OR WARRANTIES, EXPRESS OR IMPLIED. . . .

---

[3] Pennsylvania law is the same.  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) (holding that plaintiff could not have justifiably relied on representation where contract's integration clause "explicitly disclaimed reliance on any such representations").

(Am. Compl., Ex. 1, § 6.)  Similarly, Bessemer affirmatively assumed the risk and responsibility

of determining whether Fiserv Solutions' products and services would be suitable for its needs:

> FISERV DOES NOT REPRESENT THAT THE DELIVERABLES MEET CLIENT'S REQUIREMENTS OR THAT THE OPERATION OF THE DELIVERABLES WILL BE UNINTERRUPTED OR ERROR-FREE.   CLIENT ACKNOWLEDGES THAT IT HAS INDEPENDENTLY EVALUATED THE DELIVERABLES AND THEIR APPLICATION TO CLIENT'S NEEDS.

(*Id.*, Ex. 1, § 6(c))  Bessemer cannot now assert tort claims based on its allegedly disappointed

contractual expectations.  Each of those claims fails as a matter of law.

## II.   THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR BESSEMER'S TORT CLAIMS.

Bessemer's tort claims are also precluded by the gist of the action and economic loss

doctrines.  Both forbid precisely what Bessemer attempts here–transforming a contract claim into

a "tort claim" to avoid contract defenses and invoke the *in terrorem* effect of punitive damages.

### A.   Gist of the Action Doctrine

In Pennsylvania,[4] the gist of the action doctrine prohibits tort claims if the gravamen of the

action sounds in contract.  *See EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 494

(W.D. Pa. 2016) (the doctrine bars "plaintiffs from repackaging breach of contract claims as tort

claims").  Specifically, the doctrine bars tort claims: (1) arising solely from a contract between the

parties; (2) where the duties allegedly breached were created and grounded in the contract itself;

(3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a

breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*eToll, Inc. v. Elias/Savion Advert., Inc.,* 811 A.2d 10, 19 (PA. Super. Ct. 2002).  Bessemer's chosen

---

[4]  Defendants anticipate the Court will interpret the choice of law provision in the Master Agreement to be inapplicable to the tort claims and apply Pennsylvania law.  *See Grimm*, 2008 WL 4925631, at *6.

labels do not control because "the gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently, recklessly, wantonly or intentionally, if the gravamen of the claim is that the [defendant] failed to fulfill a promise." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999).

Bessemer's claims all arise solely from the parties' relationship under the Master Agreement; the parties would have no relationship but for that agreement.  The Master Agreement gives rise to each duty and obligation (if any) that Fiserv Solutions supposedly breached.  It comprehensively delineates Fiserv Solutions' obligations with respect to data security (Am. Compl., Ex. 1, § 4), billing records and invoices (*id.* § 10(b)), performance standards (*id.*, ASP Services Exhibit to the Master Agreement § 4(e)), errors relating to its services (*id.*, ASP Services Exhibit to the Master Agreement § 4 (f)), the accuracy of reports and account errors or discrepancies (*id.*, ASP Services Exhibit to the Master Agreement § 5(e)), ownership, possession, and return of Bessemer's data (*id.* § 3(b), ASP Services Exhibit to the Master Agreement Section § 8(e)), and fees and pricing (*id*., Ex. 1, ASP Services Exhibit to the Master Agreement § 10).

Bessemer's tort claims are necessarily and inextricably intertwined with these obligations. Each alleges acts or omissions whose propriety must be defined by reference to the Master Agreement.  Bessemer's negligence claim, for example, alleges that Fiserv Solutions breached a duty of care with respect to the safety, security, and accuracy of account data and by failing to notify Bessemer of these alleged deficiencies.  (Am. Compl. ¶¶ 212–21.)  But the Master Agreement meticulously enumerates Fiserv Solutions' obligations and required standard of care, *see, e.g.*, (Am. Compl., Ex. 1, § 4 (detailing obligations, duties and required standard of care relating to data security)), and Bessemer's sole remedy for any breach lies exclusively in contract. *Factory Mkt. v. Schuller Int'l.*, 987 F. Supp. 387 (E.D. Pa.1997) (barring fraud and negligence

claims under the gist of the action doctrine because the obligation allegedly breached was imposed by contract and, without the contract, plaintiff would have no claim).

Likewise, Bessemer's various "misrepresentation" claims all rest on alleged errors in reports and account information that Fiserv Solutions generated, invoices that Fiserv Solutions issued, and services (including data security) that Fiserv Solutions provided under the Master Agreement. (Am. Compl. ¶¶ 244, 254, 264.) As this Court has recognized, "[m]aking boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning its ability and approach were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud." *Alexander Mill Servs., LLC v. Bearing Distributors, Inc.*, 2007 WL 2907174, at *9 (W.D. Pa. Sept. 28, 2007). The gist of the action doctrine bars Bessemer from recasting contract claims as "misrepresentations." *See e.g.*, *eToll, Inc.*, 811 A.2d at 20 (affirming dismissal of fraud claims where defendant allegedly inflated costs, submitted fictitious bills, and misrepresented performance of services because the "alleged acts of fraud arose in the course of the parties' contractual relationship" and defendant's "duties regarding billing and performance were created and grounded in the parties' contract").

The gist of the action doctrine bars conversion claims if a contract defines ownership rights and entitlement to property, as the Master Agreement does here. *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003). Bessemer's conversion claim rests on allegations that Fiserv Solutions failed to return, misused, and interfered with Bessemer's member information.[5]

---

[5] These are only representative examples of the manner in which the doctrine bars Bessemer's tort claims. Each of Bessemer's tort claims–for negligence (Count II), unfair and deceptive trade practices (Count III), fraud/fraudulent inducement (Count IV), constructive fraud (Count V), negligent misrepresentation (Count VI), conversion/misappropriation (Count VII), and misappropriation of trade secrets (Count IX)–derives entirely from the Master Agreement and, therefore, is precluded as a matter of law.

(Am. Compl. ¶¶ 277–80.)  Even Bessemer acknowledges that the Master Agreement defines the parties' rights as to use, ownership, and possession of Bessemer's account data. (*Id*. ¶ 280.)  The Master Agreement defines when Fiserv Solutions must release that data, and the obligations Bessemer must fulfill to trigger that duty.  (*Id.*, Ex. 1, ASP Services Exhibit to Master Agreement, ¶ 8(e).)  Indeed, the identical allegation–that Fiserv Solutions failed to release its account data–is the core of both Bessemer's conversion, (*id*. ¶ 277), and contract, (*id*. ¶¶ 206–07), claims.

Bessemer's tort claims attempt to repackage claims that Fiserv Solutions failed to perform its obligations under the Master Agreement.  The gist of the action doctrine requires dismissal.

## B.      Economic Loss Doctrine

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).[6]  Pursuant to this doctrine, "[c]laims for only economic losses are appropriately brought as breach of contract or warranty claims rather than as tort claims."  *Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*, 2005 WL 2665326, at *2 (M.D. Pa. Oct. 19, 2005).  Here, Bessemer has not alleged any non-economic losses (and, indeed, has not alleged any facts suggesting any losses at all from its tort claims).  As a result, the economic loss doctrine bars each of Bessemer's tort claims as a matter of law.[7]

---

[6] Pennsylvania and New York have both adopted the economic loss doctrine with "no material difference[s]".  *Samson Lift Techs., LLC v. Jerr-Dan, Corp.,*  2010 WL 1052932, at *6 (M.D. Pa. Mar. 22, 2010).  Absent a conflict of laws, a "district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply."  *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

[7]  *See e.g.*, *Aikens v. Baltimore & Ohio R. Co.*, 501 A.2d 277, 279 (Pa. Super. Ct. 1985) (holding that "no cause of action exists for negligence that causes only economic loss"); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (UTPCPL, fraud, and negligent misrepresentation claims barred); *Ogrizovich v. CUNA Mut. Grp.*, 2015 WL 12778403, at *4 (W.D. Pa. Feb. 13, 2015) (negligence, fraud, and UTPCPL claims barred); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (common law fraud claims and UTCPL claims barred); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416-18 (S.D.N.Y. 2013) (conversion, fraud, and misrepresentation claims barred); *Pollock v. Nat'l Football League*, 2013 WL 1102823, at *7 (W.D. Pa. Mar. 15, 2013) (fraudulent-inducement claim barred).

## III.   MANY OF BESSEMER'S CLAIMS INDEPENDENTLY FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

### A.   Bessemer's Scattershot "Unfair Trade Practices" Claim (Under the Laws of Four Different States) Fails.

In Count III, Bessemer purports to plead a claim for "unfair trade practices."  Hedging its bets, Bessemer tries to allege violations of Pennsylvania, Ohio, New York, and Wisconsin law, but does not plead a claim under any of them.  Bessemer's allegations are a poster-child for the type of pleading that *Twombly* prohibits, consisting entirely of conclusory labels and formulaic recitations of legal elements.  *Golphin v. Wells Fargo Bank, N.A.*, 2010 WL 4536766, at *8 (M.D. Pa. Nov. 2, 2010) (dismissing unfair trade practices claim because "allegations [were] conclusory in nature without any factual support").  Bessemer never details when the allegedly "unfair and deceptive" practices occurred, who (other than "Fiserv") committed them, and who was supposedly deceived.

The statutes that Bessemer invokes protect consumers from disparities in bargaining power, not sophisticated commercial parties to an arm's length contract.  Pennsylvania's statute "protects only individuals, not business entities."  *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 259 n.8 (W.D. Pa. 2009).  But Fiserv Solutions provides technology solutions to financial institutions.[8] (Am. Compl. ¶¶ 1, 20.)  These commercial products and services fall outside the statute.  *See Alexander Mill Servs., LLC v. Bearing Distributors, Inc.*, 2007 WL 2907174, (W.D. Pa. Sept. 28, 2007) ("A private cause of action under the act extends only to 'any person who purchases or

---

[8]  Bessemer asks to be treated as a "consumer" because it is a "not-for-profit cooperative owned and controlled by individual consumers."  (Am. Compl. ¶ 227.)  Bessemer is a federally-chartered credit union, a corporate entity that is distinct and independent from it "owners" (its members).  *Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*, 651 F. Supp. 718, 726 (W.D. Mo. 1986) (explaining credit union ownership structure "do[es] not reflect (or create) any general legal relationship between a credit union and its members which is different from that of a general business corporation and its common shareholders").  Bessemer does not stand in the shoes of a consumer for purposes of its "unfair trade practices" claims.  Bessemer fails to allege any instance of deceptive trade practice directed at any particular member, whose shoes it could step into in any event.

leases goods or services primarily for personal, family or household purposes.'").  Likewise, the

Ohio statute applies only to consumer transactions with an individual consumer.  Ohio Rev. Code

§ 1345.01 (defining "consumer transaction" as a transaction with an individual for purposes that

are primarily personal, family or household).  Indeed, Ohio courts have expressly held that a credit

union may not seek relief under the statute.  *Toledo Metro Fed. Credit Union v. Ted Papenhagen*

*Oldsmobile, Inc.*, 381 N.E.2d 1337, 1339 (Ohio Ct. App. 1978).

Bessemer does not allege facts showing the nexus that the New York and Wisconsin

statutes require.  Wisconsin's statute is "intended to protect the ***residents of Wisconsin*** from any

untrue, deceptive or misleading representations made to promote the sale of a product."  *State v.*

*Automatic Merchandisers of Am., Inc.*, 221 N.W.2d 683, 686 (Wis. 1974) (emphasis added).  The

New York statute also requires that the alleged practices were directed at or had a harmful effect

in New York.  *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (N.Y. 2002) ("[T]o

qualify as a prohibited act under the [Section 349], the deception of a consumer must occur in New

York.").  Bessemer alleges no facts demonstrating the requisite nexus.[9]  Count III should be

dismissed in its entirety.

### B.     Bessemer Does Not Allege Facts Sufficient to Plead Fraud.

Counts IV and V of the Amended Complaint attempt to plead fraud, fraudulent inducement,

and constructive fraud.  To support those claims, Bessemer alleges that Fiserv Solutions made

misrepresentations about the account information of Bessemer's members in the form of erroneous

reports or account data.  (*E.g.*, Am. Compl. ¶¶ 244, 254.)  Bessemer further alleges that "Fiserv"

---

[9] Further, Wisconsin's statute does not apply to statements made after parties entered a contractual relationship. *Kailin v. Armstrong*, 643 N.W.2d 132, 149 (Wis. Ct. App. 2002) ("Once the contract was made, the [plaintiffs] were no longer 'the public' under the statute because they had a particular relationship with [defendant].") Although Bessemer does not allege when the supposedly "false statements" that form the basis of Count III were made, any statement made before Fiserv Solutions and Bessemer entered the Master Agreement would be barred by Wisconsin's three-year statute of limitations. Wis. Stat. § 100.18(11)(b)(3).

misrepresented its prices and service and security capabilities.  (*Id.*)  Pleading fraud requires: (1) a representation material to the transaction at hand; (2) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (3) with the intent of misleading another into relying on it; (4) justifiable reliance on the misrepresentation; and, (5) a resulting injury proximately caused by the reliance.  *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).  For fraudulent inducement, a plaintiff must also prove "that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract."  *Goldstein v. Murland*, 2002 WL 1371747, at *1 (E.D. Pa. June 24, 2002).

Bessemer's allegations of erroneous reports and misstated account information do not state a claim.  Bessemer alleges no facts suggesting that Fiserv Solutions intended to mislead Bessemer (or anyone else).  At best, Bessemer has alleged that Fiserv Solutions' software systems make errors from time to time.  This is not fraud.  *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D. N.J. 2013) (dismissing fraud claim because credit card processing systems' errors and faulty authorization codes could not constitute an intentional misrepresentation of fact).  What incentive would anyone at Fiserv Solutions have to "defraud" Bessemer about a member's account balance?  Fiserv Solutions processed countless transactions every day for five years–the Master Agreement does not require perfection and ordinary mistakes are simply not fraud.

Bessemer also does not allege any facts plausibly suggesting that anyone at Fiserv Solutions knowingly made a false representation of fact with the specific intent to defraud Bessemer, let alone a representation intended to induce Bessemer to enter into the Master Agreement.  Although intent may be alleged generally, Bessemer must plead "specific facts showing Defendant's knowledge of falsity or intent to deceive."  *Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 551 (E.D. Pa. 2010).  To the extent that Bessemer's "fraud" or

"fraudulent inducement" claim is based on generic statements relating to Fiserv Solutions' security capabilities or service offerings, those claims are barred by the Master Agreement's integration clause and Bessemer's express representation of non-reliance.[10]

Further, Bessemer's "fraud" allegations run afoul of Rule 9(b), which requires pleading with particularity.[11]  *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018).  Rule 9(b) operates "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  The rule requires that a plaintiff identify the statements that are fraudulent and why that is so, their speaker, and where and when they were made; in other words, "the who, what, when, where and how."  *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Here, Bessemer has not, with one limited exception, alleged any specific speaker, making only generic and collective references to "Fiserv."  That is particularly troubling given that Fiserv, Inc., which has no contractual relationship with Bessemer, has also been named a defendant. Bessemer's only allegation identifying a specific speaker and statement does not include corresponding allegations that connect the statement with Bessemer's entry into or renewal of the Master Agreement, (Am. Compl., ¶¶ 29-30) – indeed, the statement occurred more than two years

---

[10] Bessemer's fraudulent inducement claim is also time barred.  Pennsylvania imposes a 2-year statute of limitations that accrues when the plaintiff is harmed.  42 Pa. Cons. Stat. Ann. § 5524(7); *Sarpolis v. Tereshko*, 625 F. App'x 594, 600 (3d Cir. 2016); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999) ("[O]ur court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed. . . .").  The Master Agreement is dated July 1, 2014, which constitutes the date that any alleged fraud harmed Bessemer.  Bessemer initiated this action well after July 1, 2016.

[11] Rule 9(b) applies to all claims that rely on averments of fraud, including Bessemer's fraud, fraudulent inducement, negligent misrepresentation, constructive fraud, and unjust enrichment claims.  *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("Thus, all of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b).");  *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008) (applying FRCP 9(b) to fraud and constructive fraud claims); *Zamias v. Fifth Third Bank*, 2018 WL 355462, at *10 (W.D. Pa. Jan. 9, 2018) (applying FRCP 9(b) to fraudulent inducement claim).

before the Master Agreement was executed, and any fraud claim related to the statement is time

barred, (*see supra*, footnote 10).  Bessemer likewise does not allege that the speaker knew of the

statement's alleged falsity or intended to induce Bessemer to rely on the alleged statement.  Such

general allegations do not plead fraud under Rule 9(b) and must be dismissed.

### C.      Bessemer's Conversion and Bailment Claims Fail as a Matter of Law under the Unambiguous Terms of the Master Agreement.

Bessemer asserts claims for conversion (Count VII) and "bailment" (Count VIII).  Both

claims assert that Fiserv Solutions refused to return Bessemer's customer and account data.  The

elephant in the room is that, on June 1, 2019, Bessemer completed the "deconversion" process and

moved to a new processing platform.   Fiserv Solutions released Bessemer's data (despite

Bessemer's failure to perform under the Master Agreement).   The deconversion process was

underway for several months, and Fiserv Solutions provided Bessemer's new vendor a copy of the

data during the deconversion process and released the data on the date that Bessemer requested

(when its new vendor was ready).  Bessemer, of course, makes no mention of any of this, but the

Court should be aware that its allegations are misleading in addition to inflammatory.

Moreover, through the Master Agreement, Bessemer gave Fiserv Solutions access to its

data.  That agreement defines Fiserv Solutions' duties with respect to this data and specifies the

circumstances in which Fiserv Solutions must release that data.  As the Master Agreement makes

clear, Fiserv Solutions accessed Bessemer's data with consent.[12]  (*Id.*, Ex. 1, § 3(b).)

---

[12]  Bessemer fails to identify the specific property Fiserv Solutions allegedly converted.  Bessemer vaguely describes a property interest in account records and information, funds deposits in members' share draft accounts, and funds due and owing to Bessemer and its members.  (Am. Compl. ¶¶ 272–74.)  This is not sufficient to survive a motion to dismiss; only "[i]dentifiable funds are deemed a chattel for purposes of conversion."  *Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 n.21 (Pa. 2004); *cf. In re Zambrano Corp.*, 2010 WL 8354694, at *6 (Bankr. W.D. Pa. Aug. 24, 2010) (permitting conversion claim because plaintiff sufficiently identified funds allegedly converted by describing amounts and loan dates).  Further, several courts have held that "data" does not constitute tangible personal property susceptible to conversion.  *See, e.g.*, *Exeter Twp. v. Gardecki*, 2018 WL 6616930, at *4 (E.D. Pa. Dec. 17, 2018) (holding that electronic files stored on a hard drive were "not 'chattels' under Pennsylvania law," and dismissing conversion claim); *Prof'l Ben. Consultants, Inc. v. Claims & Ben. Mgmt., Inc.*,

16

This is not conversion – the "deprivation of another's right of property in, or use or possession of, a chattel, ***without the owner's consent and without lawful justification***." *Schulze v. Legg Mason Wood Walker, Inc.*, 865 F. Supp. 277, 284 (W.D. Pa. 1994) (emphasis added). Fiserv Solutions could not provide services to Bessemer without the account data (and Fiserv Solutions generated much of that data through its own systems); that was the whole point of the relationship.   Given these facts and Bessemer's clear contractual consent, Fiserv Solutions' "possession" of this "property" cannot be conversion as a matter of law.  *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 389 (E.D. Pa. 2015) (dismissing conversion claim against bank where agreement provided bank with the right to access accounts and assess fees).

In the Master Agreement, Bessemer expressly authorized Fiserv Solutions to retain its data unless and until Bessemer paid Fiserv Solutions in full for all amounts owed under the Master Agreement, including deconversion and early termination fees.  (Am. Compl., Ex. 1, ASP Services Exhibit to Master Agreement, § 8(e).)  Bessemer's purported right to the return of its data was conditioned on fulfilling its obligations under the Master Agreement, which Bessemer had not done when it provided its "notice of termination" on April 11, 2018 (and still has not done). *See Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) ("Under Pennsylvania law, if a plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may not sue that defendant in tort for conversion of that property.").  Moreover, Bessemer's April 2018 demand for an "immediate" release of its data and "termination" of the Master Agreement was mere posturing.  Bessemer did not have another vendor ready to and could not operate without Fiserv Solutions' services, which, of course, require

---

2011 WL 6012932, at *3 (D.N.J. Dec. 1, 2011) ("To the extent Plaintiffs' conversion claim relates to intangible property—the transfer of electronic data and the National Alliance "membership"—it must be dismissed.") (collecting cases).

the continued use of Bessemer's data.  Bessemer knew that Fiserv Solutions could not "pull the plug" but continued to demand "immediate" release in an attempt to create claims.  The Master Agreement (and basic fairness) precludes all of this.

Bessemer's "bailment" claim fails for the same reasons.  A bailment is created by contract and the "rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties." *Lion Yarn Co. v. Flock*, 36 A.2d 246, 248 (Pa. Super Ct. 1944); *Coons v. First Nat'l Bank of Philmont*, 218 A.D. 283, 218 N.Y.S. 189, 189 (3d Dep't 1926).  The condition precedent of bailment is "a relinquishment of exclusive possession" of property.  *Hutton v. Pub. Storage Mgmt.*, 676 N.Y.S.2d 886, 886 (N.Y. App. Div. 1998).  Fiserv Solutions never had "exclusive" possession of Bessemer's data; Bessemer and its members accessed and used that data every day.  Fiserv Solutions simply accessed the information, with Bessemer's consent, in order to fulfill its obligations under the Master Agreement.  And Fiserv Solutions acted in conformance with the Master Agreement.  If Bessemer disagrees, its remedy, if any, is a contractual one.  The Master Agreement did not create a bailment.

### D.    Bessemer Does Not Allege Facts That Establish a "Special Relationship."

Claims for constructive fraud (Count V) and negligent misrepresentation (Count VI) require allegations demonstrating a special relationship between the parties.  *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008).  Bessemer does not plead such facts. Instead, Bessemer merely asserts that the parties had a "relationship of trust and confidence in which Fiserv wielded superior knowledge, skill, expertise, and influence over Bessemer and that Fiserv exercised superior industry knowledge over Bessemer."  (Am. Compl. ¶ 253.)  The Court should disregard this conclusory allegation.  *See Twombly*, 550 U.S. at 557.

As pleaded, the commercial relationship between Fiserv Solutions and Bessemer is only an arm's-length one for the provision of services.  That is not enough to plead a "special

18

relationship." *See eToll*, 811 A.2d at 23 ("If parties to routine arm's length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim.").  The conclusory allegation that Fiserv Solutions "controls Bessemer's records and information" also fails to plead a special relationship. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) (fiduciary relationship did not exist between debit card issuer and merchant simply by virtue of the surrender of the cardholder information to merchant, which was merely part of parties' business transaction).

### E.    Bessemer's Trade Secrets Claims Fail Because Member Information Is Not a Trade Secret and Fiserv Solutions Lawfully Possessed that Information.

Bessemer asserts Fiserv Solutions' "deficient" security practices and its "failure" to release Bessemer's members' information immediately after Bessemer purported to "terminate" the Master Agreement (while continuing to use Fiserv Solutions' services every day for more than a year), and before the deconversion process even began, support claims for misappropriation of trade secrets under Pennsylvania law (Count IX) and a violation of the Defend Trade Secrets Act (Count X).  (Am. Compl., ¶¶ 292–311.)  These claims require that Bessemer's member data constitute "trade secrets."  (Am. Compl., ¶¶ 293, 307.)  They do not, and, in any event, the Master Agreement gave Fiserv Solutions express authorization to possess the data through deconversion.

To succeed on these claims, Bessemer must establish the existence of a trade secret and Fiserv Solutions' misappropriation.  *See PharmMerica Corp. v. Sturgeon*, 2018 WL 1367339, at *5 (W.D. Pa. Mar. 16, 2018).  Both Acts "define a trade secret as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use."  *Id.* at *4.

19

A trade secret is "misappropriated," when the defendant "knows or has reason to know that [it] was acquired ***by improper means***," or discloses or uses it "***without express or implied consent***." 18 U.S.C. § 1839(5); 12 Pa. Cons. Stat. Ann. § 5302 (emphasis added).

Federal courts recognize that credit union members' account information and data are not protectable trade secrets because they have "no independent economic value." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1087 (D. Colo. 2018). This is so because "[p]ayment card data (including cardholder names, credit or debit card numbers, and corresponding CVVs) are akin to passwords and usernames that provide ***access to something of value***" and, thus, lack any independent economic value as they are merely the "key" that guards the presumably valuable information, but not the valuable information itself. *Id.* Member account data are also not trade secrets because members have no obligation to keep the information secret– indeed, disclosure of account numbers and balances to third parties "make[s] the [information] valuable because it provides access to . . . money in the account." *See id.* at 1088. Put simply, the information is valuable because it is disclosed, not because it is kept secret. Here, too, the member information and data Bessemer claim as "trade secrets" (*e.g.*, account numbers, account balances, addresses, etc.) have no independent economic value; rather, that information is either already publicly available (member addresses), derives value from being shared with others (member account numbers that permit crediting and debiting from accounts once shared with third parties), or is simply a key to the accounts without actual access to the thing of value. There are no trade secrets here.

Even if Bessemer's member information was protectable, Bessemer's claims fail because Bessemer does not plausibly allege that Fiserv Solutions "misappropriated" the information–either

through acquisition by "improper means," or through disclosure[13] or use "without express or implied consent."  The Master Agreement unequivocally authorizes Fiserv Solutions to access and use Bessemer's member data until deconversion is completed.  Fiserv Solutions did not access Bessemer's member information through improper means or without Bessemer's express or implied consent.  Bessemer's trade secrets claims fail as a matter of law.

### F.     Bessemer's Unjust Enrichment Claim Fails.

The existence of a contract prevents a party from bringing a claim for unjust enrichment. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006).  When a contract exists, unjust enrichment is permitted only where either: (i) the contract governs only a part of the relation between the parties; or (ii) the validity or existence of such a contract is disputed.  *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017).  Here, the Master Agreement "constitutes the complete and exclusive statement of the agreement between the parties."  (Am. Compl., Ex. 1, § 11(b).)  Count XI should be dismissed.

### G.     Pennsylvania Does Not Permit Claims for Punitive Damages or Injunction.

Bessemer purports to assert "claims" for punitive damages (Count XIII) and injunction (Count XV).  Neither constitutes an independent cause of action.  *See Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 425 (W.D. Pa. 2005) *aff'd*, 248 F. App'x 298 (3d Cir. 2007); *Rooney v. City of Phila.*, 623 F. Supp. 2d 644, 647 n.2 (E.D. Pa. 2009).  Additionally, punitive damages are not available in contract, no matter how wanton, reckless, willful, or oppressive the alleged

---

[13] Although the PUTSA and DTSA do not define the term, the common meaning of "disclosure" is "[t]he act or process of making known something that was previously unknown; a revelation of facts."  *Black's Law Dictionary* (10th Ed. 2014).  This definition describes affirmative actions to reveal information.  In contrast, Bessemer's claims of improper disclosure rest entirely on the allegation that Fiserv Solutions employed inadequate or "deficient" security measures to prevent unauthorized access.  (Am. Compl. ¶ 298.)  Bessemer does not allege any actual disclosure and has not alleged a cause of action.  *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 784 (W.D.N.Y. 2017) (holding that "a negligent, and even knowing, release of [information] to unauthorized individuals" is not a disclosure).

breach.  *Thierry v. Matson*, 2014 WL 11152807, at *6 (Pa. Com. Pl. Feb. 11, 2014).  Bessemer's "claims" for punitive damages and injunctive relief should be dismissed, and any lingering request for punitive damages should fall with Bessemer's tort claims.

## IV.    BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW.

### A.    Bessemer's Contract Claim Fails Because It Does Not Identify the Contractual Provisions Fiserv Solutions Allegedly Breached.

It is axiomatic that "[i]n order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached." *Barker v. Time Warner Cable, Inc.*, 923 N.Y.S.2d 118, 120 (N.Y. App. Div. 2011).  It is not enough for a plaintiff to simply allege that the factual conduct the plaintiff pleaded "breached the contract," rather, the plaintiff must "set forth the particular terms of the contract upon which plaintiff's claim is based."  *Woodhill Elec. v. Jeffrey Beamish, Inc.*, 904 N.Y.S.2d 232, 232 (N.Y. App. Div. 2010).

Here, Bessemer uses more than fifty paragraphs to detail the "deficiencies" that allegedly plagued Fiserv Solutions' security systems and services.  (*See* Am. Compl., ¶¶ 44–86, 116–27.)  Yet, Bessemer never identifies a single provision of the Master Agreement that was allegedly breached.  Instead, Bessemer supports its breach-of-contract claim with articles from industry commentators, unverified third-party opinions, and extraneous statements beyond the four corners of the Master Agreement.  (*Id.*, ¶¶ 24, 29–31, 39–42, 44–46, 51–52, 61.)  Because Bessemer does not identify any specific provision of the Master Agreement that Fiserv Solutions breached by way of the allegedly "deficient" practices and services, Bessemer's contract claim fails.

### B.    Bessemer's Requested Declaratory Relief Is Contrary to the Unambiguous Terms of the Master Agreement.

In Count XIV, Bessemer seeks "on behalf of itself and its members . . . a declaration concerning the parties' rights with respect to Bessemer's member information."  (*Id.*, ¶ 335.)  In particular, Bessemer seeks a declaration that it, rather than Fiserv Solutions, owns the data, reports,

documents, and information that Fiserv Solutions generated with respect to Bessemer. (*Id.*, ¶¶ 333–36.) That requested relief cannot be squared with the Master Agreement's unambiguous terms, which make clear that "all information, reports, studies, object and source code . . . flow charts, diagrams, specifications, and other tangible or intangible material of any nature whatsoever produced by Fiserv or jointly with the client . . . through or as a result of or related to [performance of the agreement] . . . shall be the sole and exclusive property of Fiserv or its Affiliates." (*Id.*, Ex. 1, § 3(c).) The sole exception to this rule is "Client Information," which, in practice, means the information ***provided to Fiserv Solutions*** by Bessemer, not the information and reports ***generated by Fiserv Solutions'*** proprietary services performed under the Master Agreement. (*Id.*, Ex. 1, § 3(a)(i).) Nowhere does Bessemer allege that Fiserv Solutions did not return Bessemer's Client Information as part of the deconversion. Fiserv Solutions does not claim, and has never claimed, that it owns that Client Information. There is no legitimate controversy whether Fiserv Solutions retains ownership of the information and reports it generated during its performance under the agreement. Accordingly, Count XIV fails.[14] *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 40–41 (3d Cir. 1985) ("A declaratory judgment is available only so long as there is an actual controversy among the parties.").

### C. Bessemer Does Not State a Claim Related to the October 2018 Letter.

Bessemer asserts claims for a breach of contract (Count I) and promissory estoppel (Count XII) related to the purported "Letter Agreement." On its face, the letter shows that Fiserv Solutions did not promise to do anything beyond what was already required under the Master Agreement.

---

[14] Bessemer purports to bring Counts XIV (declaratory relief) and XV (injunction) on behalf of itself and its members via the doctrine of associational standing. (*Id.*, ¶¶ 11, 331, 338.) Bessemer asserts that its members "otherwise have standing to sue Fiserv in their own right." That assertion is entirely conclusory and Bessemer makes no attempt to "make specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Art & Antique Dealers League of Am, Inc. v. Seggos*, 2019 WL 416330, at *2 (S.D.N.Y. Feb. 1, 2019). Such "generalized, non-concrete allegation[s] [are] insufficient to confer associational standing." *Id.*

Moreover, since Bessemer dismissed the Replevin Action without prejudice and has asserted nearly identical (and equally meritless) conversion and bailment claims here, Bessemer has not alleged, and could not show, any damages or detrimental reliance.  Nothing about the "letter agreement" states a claim for breach of contract or promissory estoppel.

Bessemer filed the Replevin Action seeking to compel Fiserv Solutions to release its account data.  (Am. Compl., ¶ 159.)  As the first hearing date approached, Bessemer proposed to adjourn the hearing.  As the letter reflects, counsel for the parties then discussed a path to "deescalate things from the current litigation posture in order to facilitate a global resolution." (*Id.*, Ex. 17.)  Nothing was "settled."  The letter expressly refers to the "remaining disagreements between the parties" and makes equally clear that the letter did not resolve them.  (*Id.*)  The letter confirms "Bessemer and Fiserv [would] work in good faith to negotiate a global resolution" of this case.  (*Id.*)  Obviously, the parties did not resolve these issues, but that is not a breach.

Fiserv Solutions undertook no new obligations under the letter.  The letter recites specifically "that Fiserv [Solutions'] intent is ***to perform its contractual obligations under the Master Agreement fully, including with respect to Bessemer's plan to deconvert and transition to a new service provider***." (*Id.* (emphasis added).)  In short, Fiserv Solutions did not make any promises in the letter, so it could not have broken any.  Whatever claims Bessemer may believe it has under the Master Agreement itself, it has not alleged any facts sufficient to plead that Fiserv Solutions undertook any additional obligations in the October 2018 letter.  As a result, it is simply not possible for Fiserv Solutions to have "breached" the letter.  To the extent that Count I attempts to plead a claim for breach of this letter, that claim must be dismissed.

Bessemer's promissory estoppel claim fails for the same reason.  Although Bessemer attempts to repackage Fiserv Solutions' obligations with respect to deconversion as an independent

claim, Fiserv Solutions' and Bessemer's obligations arise under the Master Agreement. Promissory estoppel cannot lie where the parties' promises are already governed by an enforceable agreement. *See Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."). This is particularly true where the promise is to do something one is already legally obliged to do.[15] *Tanenbaum v. Chase Home Fin. LLC*, 2014 WL 4063358, at *6 (E.D. Pa. Aug. 18, 2014) (holding promise "related to the performance of a written contract that already bound" the parties could not form the basis of promissory estoppel claim).

Finally, Bessemer does not allege any facts even suggesting that it was somehow damaged or detrimentally relied on the letter. Bessemer dismissed the Replevin Action without prejudice and was free to refile it at any time and has effectively done so here through its conversion and bailment claims. Bessemer withdrew its motion and dismissed the Replevin Action because it was going to lose and was not prepared to transition to a new vendor. There was no breach.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, and without leave to re-plead.

---

[15] The doctrine is also "not required to avoid injustice because plaintiff also has the right to assert against the defendant the claims" for breach of contract under the Master Agreement, assuming *arguendo*, such claim can be proven. *See Baii Banking Corp. v. Atl. Richfield Co.*, 1987 WL 14124, at *3 (S.D.N.Y. Sept. 17, 1987).

Dated:  September 9, 2019.

Respectfully submitted,


/s/ **_Timothy J. Patterson_**
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Timothy J. Patterson (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
tjpatterson@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

**CERTIFICATE OF GOOD FAITH CONFERENCE:**
**DEFENDANTS' MOTION TO DISMISS**

I hereby certify that counsel for the Defendants conferred in good faith with Plaintiff's counsel about the relief sought in Defendants' Motion to Dismiss and whether the deficiencies Defendants identified in Plaintiff's Amended Complaint could properly be cured by amendment. The parties were unable to reach agreement that the relief sought in Defendants' Motion to Dismiss is warranted or that the deficiencies could properly be cured by amendment.

/s/ ***Timothy J. Patterson***

Timothy J. Patterson

*Counsel for Defendants, Fiserv Solutions, LLC and Fiserv, Inc.*

## CERTIFICATE OF SERVICE

I, Timothy J. Patterson, hereby certify that a copy of the foregoing memorandum was served on the following counsel of record for Plaintiff via the CM/ECF system this 9th day of September, 2019.

> Richard J. Parks
> Pietragallo Gordon & Alfano
> Bosick & Raspanti, LLP
> 7 West State Street, Suite 100
> Sharon, PA 16146
>
> Charles J. Nerko
> Joel S. Forman
> VedderPrice P.C.
> 1633 Broadway, 47th Floor
> New York, New York 10019
> *Attorneys for Bessemer System Federal Credit Union*

> /s/  **Timothy J. Patterson**
> Timothy J. Patterson