**Nerko, Charles J.**

| | |
|---|---|
| **From:** | AWronski@foley.com |
| **Sent:** | Wednesday, December 19, 2018 5:20 PM |
| **To:** | Richard J. Parks |
| **Cc:** | rwe@ekmelaw.com; Nerko, Charles J. |
| **Subject:** | RE: Bessemer |

Richard:

If you're intent on litigation, I certainly can't stop you, but Bessemer should consider the following.

First, as my email of yesterday made clear, Fiserv has done everything that it said it would do in the October 19, 2018 letter. I have no idea what "settlement" you think there is to enforce. Let's not engage in revisionist history here. You proposed that the parties not go forward with the replevin hearing, that Bessemer pay its outstanding invoices and that the parties try to work out their remaining issues. Fiserv declined to simply adjourn the hearing and insisted that the replevin action be dismissed. The replevin action was dismissed without prejudice and Bessemer's other lawsuit remains pending. This was not a "settlement" in any sense of the word. The October 19, 2018 letter makes clear that any agreement was still to come: "Dismissal of the replevin action would not affect Bessemer's other pending action, Case No. 2018-01130. That said, Bessemer and Fiserv will work in good faith to negotiate a global resolution of the issues raised in the action, including the issue of whether Fiserv is entitled to early termination fees." The parties simply stood down from a posture of imminent litigation.

Second, Fiserv has been working toward deconversion. Several weeks ago, Shaun Gehman, the Fiserv project manager reached out to Joy Peterson (at the direction of CompuSource) with certain questions regarding the deconversion. Ms. Peterson initially responded via email but has since ceased communicating with Shaun. I also understand that Bessemer has requested that certain test files be prepared from data as of November 30, 2018. Fiserv is proceeding with the preparation of those test files but, as provided in the Master Agreement, will not release them until Bessemer has satisfied its payment obligations. Your assertion that nothing has occurred with respect to deconversion is incorrect. If things are not progressing currently, it is because Bessemer is trying to avoid the deconversion fees it agreed in the Master Agreement to pay.

Third, to address your suggestion that the deconversion fee is somehow inappropriate given Bessemer's size, Fiserv sets the fee schedule based on institution size. At the time we finalized and sent the deconversion amendment, $40,000 was the standard deconversion fee for credit unions with between $25-50 million in assets. (Since that time, the fee has increased to $45,000, but Fiserv will (if this is resolved now) abide by the fee schedule it provided.) Fiserv is a Fortune 500 Company with around $6 billion in annual revenue. Your suggestion that it is "making up" a $40,000 fee here makes no sense.

Fourth, as the October 19, 2018 letter contemplates, Fiserv made a good faith proposal to resolve all issues between the parties on the terms reflected in the Settlement Agreement and initiated the deconversion process pursuant to the terms and conditions of the Master Agreement. I can only interpret your response as a refusal to negotiate, which is unfortunate, unproductive and contrary to the letter agreement that you keep invoking. If you choose to go forward with litigation, Fiserv will enforce its contractual rights fully, including its right to receive payment in full in advance of

deconversion and to recover attorneys' fees and litigation expenses as a prevailing party.  As I have now reiterated several times, that is not Fiserv's preferred course of action, but the ball is in Bessemer's court.

Finally, to be clear, execution of the Settlement Agreement is <u>not</u> a prerequisite to deconversion.  Fiserv will perform all of its contractual deconversion obligations in accordance with the Master Agreement as soon as Bessemer performs its obligations, including payment in full of its outstanding invoices, the deconversion fees and expenses and other amounts detailed in the fee schedule summary we provided, and (if there is no settlement) early termination fees.  Fiserv stands ready and able to continue the deconversion process as soon as Bessemer does what it promised to do in the Master Agreement.

If you think it would be productive, I am available for a call at your convenience.  It would be helpful to have comments on the drafts I sent you.  I remain hopeful that we can get back on track.  Let me know how Bessemer wants to proceed.  Thank you.

This is a confidential settlement communication within the meaning of Federal Rule of Evidence 403 and its state law equivalents.

Andy

Andrew J. Wronski
Vice Chair, Litigation
Foley & Lardner LLP
(414) 297-5518

---

**From:** Richard J. Parks [mailto:RJP@Pietragallo.com]
**Sent:** Tuesday, December 18, 2018 1:43 PM
**To:** Wronski, Andy <AWronski@foley.com>
**Cc:** rwe@ekmelaw.com; cnerko@vedderprice.com
**Subject:** RE: Bessemer

**\*\*\* Externally sourced email message \*\*\***
Based on your email, I think it best that I enforce the settlement, because in your email you are putting in terms in breach of your own writing ?  Apparently your statements were just made to obtain a dismissal of the action without any intention to ever proceed to decommission?

**Richard J. Parks, Esquire**
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146
Office: (724) 981-1397 Ext: 1601 | Fax: (724) 981-1398
RJP@Pietragallo.com| BIO



This electronic mail message, and any attachments transmitted with it, contain confidential information, intended only for the named addressee(s).  If you are not the intended recipient or the person responsible for delivering this e-mail to the intended recipient, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited.  If you have received this e-mail in error,

please immediately notify Pietragallo Gordon Alfano Bosick & Raspanti, LLP by reply e-mail, and delete all copies of this communication from your computer and network. Thank you.

**From:** AWronski@foley.com [mailto:AWronski@foley.com]
**Sent:** Tuesday, December 18, 2018 2:04 PM
**To:** Richard J. Parks
**Cc:** rwe@ekmelaw.com; cnerko@vedderprice.com
**Subject:** RE: Bessemer

Richard:

We agreed to try and resolve all issues on a global basis.  That requires a release and that is what I proposed.  If you want to propose something else, go right ahead.  If you want to deconvert without a settlement or agreement or a release, let me know and I will provide a revised fee schedule and put the early termination fees back in.  The Master Agreement will still require payment in advance of all amounts owed to Fiserv through the deconversion date.

I was attempting to set forth how we look at things and how we interpreted the letter (which you revised and signed) then and now.  If you want to engage in name-calling, I won't bite.  Let me know how you want to proceed.

Andy

Andrew J. Wronski
Vice Chair, Litigation
Foley & Lardner LLP
(414) 297-5518

**From:** Richard J. Parks [mailto:RJP@Pietragallo.com]
**Sent:** Tuesday, December 18, 2018 12:58 PM
**To:** Wronski, Andy <AWronski@foley.com>
**Cc:** rwe@ekmelaw.com; cnerko@vedderprice.com
**Subject:** RE: Bessemer

**\*\*\* Externally sourced email message \*\*\***
While I love the condescending attempt to tell me I am not able to read, how about you first address paragraph 2 of the letter as opposed to  the release in paragraph 3 since you drafted both? I do not recall negotiating any release?   Maybe you can also address why no movement occurred for over a month an one half? There has been no communication toward the actual transition despite the repeated assurance it would happen.  Now your writing asserts no transition until payment of figures that have no basis or relation to what we agreed to back in October. . 
         By the way, I have read the master agreement and there was never an agreement to amend it. Please verify the propriety of the charges asserted by actual historical transitions for similar small institutions so we can verify.

**Richard J. Parks, Esquire**
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146
Office: (724) 981-1397 Ext: 1601 | Fax: (724) 981-1398
RJP@Pietragallo.com| BIO



This electronic mail message, and any attachments transmitted with it, contain confidential information, intended only for the named addressee(s).  If you are not the intended recipient or the person responsible for delivering this e-mail to the intended recipient, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited.  If you have received this e-mail in error, please immediately notify Pietragallo Gordon Alfano Bosick & Raspanti, LLP by reply e-mail, and delete all copies of this communication from your computer and network. Thank you.

**From:** AWronski@foley.com [mailto:AWronski@foley.com]
**Sent:** Tuesday, December 18, 2018 1:37 PM
**To:** Richard J. Parks
**Subject:** Bessemer

Richard:

I know you are traveling today, but thought it would be helpful to set out Fiserv's position in writing before we speak tomorrow.  I do not take lightly your suggestion that Fiserv (or I) have somehow acted other than in good faith.  You can talk to your partner, Mark Raspanti, and he'll tell you that I am a straight shooter.  It would appear to me that the present issues are the product of a lack of familiarity with the Master Agreement and specifically the provisions relating to deconversion.  To alleviate any misunderstanding, I have summarized those provisions and explained how the agreements that I sent to you are in compete accordance with our letter agreement of October 19, 2019, and required by the Master Agreement.  Once you have reviewed these materials, let's talk and keep things moving forward.

### What Fiserv Said It Would Do in the October 19, 2018 Letter

Fiserv said that it would do three things in the October 19, 2018 Letter:

- **Deconversion:**  Perform its contractual obligations with respect to deconversion.

  - "While I believe it has been conveyed to Bessemer on many occasions, I reiterate that Fiserv's intent is to perform its contractual obligations under the Master Agreement fully, including with respect to Bessemer's plan to deconvert and transition to a new service provider."  (First Paragraph)

  - "Fiserv will, as the Master Agreement requires, fulfill its contractual obligations to work with Bessemer to effect deconversion.  As we discussed, this will require Bessemer's active participation, communication and cooperation.  ***Moreover, Bessemer understands that the Master Agreement requires that it pay Fiserv for the fees and expenses of deconversion, and that such amounts be paid before the agreed-upon deconversion date.***"  (Paragraph No. 4 (emphasis added).)

- **Good Faith Negotiation of Open Issues:**  "Bessemer and Fiserv will work in good faith to negotiate a global resolution of the issues raised in that action, including the issue of whether Fiserv is entitled to early termination fees."  (Paragraph No. 2.)

- **Resolve Early Termination Fee Issue:**  In addition to the foregoing language, the letter further states:  "As we discussed, given the lead time required, deconversion is not likely to

happen until near the June 30, 2019 expiration of the Master Agreement in any event, making the early termination fee issue one that the parties should be able to resolve." (Paragraph No. 2.)

**Nothing** in the letter says (or suggests) that Fiserv would waive the deconversion fees required by the Master Agreement or any other provision of the Master Agreement with respect to deconversion.  To the contrary, Paragraph 4 affirmed Bessemer's understanding that it would have to pay the deconversion fees and expenses provided in the Master Agreement before deconversion.  You never mentioned or requested any concession with respect to deconversion fees; the subject was never discussed.

**What the Master Agreement Requires**

- **Payment of Early Termination Fees**:  "If Client terminates the Agreement or reduces (other than as a result of account attrition or volume fluctuation in the ordinary course of business) or terminates Services for any reason other than pursuant to Section 8(b)(i) of the Agreement, Client shall pay a termination fee based on the remaining unused term of Services."  (ASP Services Exhibit to Master Agreement, Para. 8(b).)

- **Payment of Deconversion Charges:**  "Client agrees to pay Fiserv's then current deconversion charges in connection with Client's deconversion from the Fiserv System."  (ASP Services Exhibit to Master Agreement, Para. 10(c).)

- **Payment of All Outstanding Fees and Charges Before Return of Client Files**:  "Upon expiration or termination of the Agreement or any Schedule to this Exhibit, Fiserv shall furnish to Client such copies of Client Files as Client may request in a Fiserv standard format, and shall provide such information and assistance as is reasonable and customary to enable Client to deconvert from the Fiserv System; provided, however, ***that Client authorizes Fiserv to retain Client Files until (i) Fiserv is paid in full for all amounts due for all Services provided through the date such Client Files are returned to Client; (ii) Fiserv is paid its then standard rates for the services necessary to return such Client Files; (iii) if the Agreement or applicable Schedule is being terminated , Fiserv is paid any applicable termination fee pursuant to Section 8(b) or (c) above;*** and (iv) Client has returned or destroyed all Fiserv Information in accordance with Section 3(b) of the Agreement."  (ASP Services Exhibit to Master Agreement, Para. 8(e).)

**What Fiserv Did After Executing the October 19, 2018 Letter**

After counsel for both parties executed the October 19, 2018 letter, Fiserv acted consistently with the letter in all respects, as follows:

- **Contact With Deconversion Consultant:**  While there was some (short) initial delay in connecting Fiserv's project manager and Bessemer's vendor, that occurred shortly after the letter was executed.  (I think you'll agree that the delay was the result of difficult schedules on both sides.)  I do not know the current status of those discussions, but expect that they have been continuing with respect to schedule, timing and other technical aspects of the process.

- **Preparation of Deconversion Agreement and Settlement Agreement**:  Fiserv also prepared a deconversion amendment and the related pricing schedule.  Bessemer was obviously expecting that based on its requests for a "deconversion packet."  I acknowledge that this took longer than I anticipated (and I apologize for that), but the timing was simply a confluence of busy schedules, necessary authorizations within Fiserv, and (in the end) the

early Thanksgiving holiday.  I paid close attention to the October 19, 2018 letter as the deconversion amendment and settlement agreement were prepared, and they do everything that Fiserv said it would do in the October 19, 2018 letter.  Specifically:

- **Resolution of Early Termination Fee Issue:**  Based on an anticipated deconversion date of May 31, 2019, the Master Agreement requires payment (before deconversion) of early termination fees in the amount of $10,347.01.  Fiserv agreed to waive those fees and proposed to release any claim to them in the Settlement Agreement.  This would resolve the early termination fee issue completely, as provided in the October 19, 2018 letter.

- **Deconversion:**  Fiserv moved forward with the deconversion process and provided a deconversion amendment and a fee schedule.  Everything in both documents is expressly provided for in the Master Agreement.  none of those obligations was modified in the October 19, 2018 letter.  To the contrary, Bessemer affirmed its understanding that deconversion fees and expenses must be paid before deconversion.

    - **Deconversion Fee:**  As I responded last evening, the $40,000 deconversion fee is Fiserv's standard deconversion fee for the Charlotte platform.  Bessemer agreed to pay this amount in Paragraph 10(c) of the ASP Services Exhibit to the Master Agreement (as explained above).  Your request that I "prove" this is the fee or that Fiserv "needs" the fee is not well taken.  The contractual agreement here is clear.

    - **Deconversion Charges:**  Fiserv also itemized the other deconversion charges required to effectuate the transition.  As I am sure you appreciate, the process requires the provision of services by Fiserv, for which it is entitled to be paid.  The Master Agreement makes this clear.

    - **Estimated Final Processing Charges:**  The Master Agreement requires payment in advance of estimated processing charges for April and May.  These are simply the typical charges that Bessemer incurs for using Fiserv's platform and services until it actually deconverts.  I assume this is not an issue.  Bessemer acknowledged its obligation to pay the agreed-upon fees for services it receives on an ongoing basis.

- **Good Faith Negotiation of Remaining Issues:**  Fiserv proposed a Settlement Agreement that would resolve all remaining issues between Bessemer and Fiserv.  Among other things, the Settlement Agreement would:

    - Require the payment of past due fees for services.  I understand that Bessemer tendered a check.  That check was returned in error and Fiserv had no control over that.  Despite my earlier requests that the payment then be made by wire transfer in order to clean that up, we have had no payment and no response.  As a result, the Settlement Agreement would resolve this issue by requiring immediate payment of those amounts (most of which are significantly past due) by wire transfer.

    - Provide for a broad release by Fiserv that includes early termination fees and claims relating to the so-called "security review" in exchange for dismissal of the remaining action filed by Bessemer and a co-extensive mutual release from Bessemer.

    - Provide for other customary (and presumably non-controversial) terms and conditions of settlement, such as confidentiality, etc.

**Summary**

I provide this account not to be adversarial, but to ensure that your client understands what the Master Agreement requires and make clear that Fiserv has done precisely what it said it would do in the October 19, 2018 letter – move forward with deconversion, waiver early termination fees, and attempt to negotiate a resolution of all other outstanding issues.  I understand that it took a few weeks to get you the agreements, but there remains ample time to complete a deconversion in the contemplated timeframe.  I do not understand any claim that your client has been "damaged."

It seems to me that your real issue is the deconversion fee.  As I explained (albeit briefly) last evening, payment of a deconversion fee is a standard provision in Fiserv's Master Agreements and a fee that Bessemer agreed to  pay in the Master Agreement.  Fiserv has made clear its intent to perform its contractual obligations (and would agree to waive its right to early termination fees) and expects Bessemer to do the same.  Other than not wanting to make the payment, I am not aware of any basis for Bessemer not performing its contractual obligation.  Not to belabor the point, but expressly Bessemer affirmed its obligation to pay deconversion fees and expenses in the October 19, 2018 letter; Fiserv did not agree to waive that fee.

My suggestion is that we turn the temperature down and move forward.  Your client wants off the Fiserv platform.  We endeavored to prepare a straight-forward and even-handed deconversion amendment and settlement agreement.  If you have comments on these documents, send them over and we can talk about it.  It makes no sense (economically or otherwise) to resume a litigation posture and I hope that is not what Bessemer intends.  (I have attached a case from the Eastern District of Pennsylvania that makes clear that Fiserv's contractual right to payment in full in advance of deconversion will defeat any replevin claim, and the Master Agreement provides for the award of attorneys' fees and expenses to the prevailing party.  Further, there will be no release of early termination fees absent the global resolution contemplated in the October 19, 2018 letter.)  The parties' time and resources are better spent on finalizing these agreements and completing the deconversion.

I apologize for the long email.  I thought it would be helpful to set this all down in writing for your consideration.  I will call you tomorrow and hope that we can keep things on track.  Thanks.

Andy

Andrew J. Wronski
Vice Chair, Litigation
Foley & Lardner LLP
(414) 297-5518


The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.