## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,** )<br>)<br>Defendants. ) | Case No. 2:19-cv-00624-MJH |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................... 1

FACTUAL ALLEGATIONS ................................................................................................... 3

    I.    The Master Agreement and Fiserv Solutions' Services.......................................... 3

    II.    The Allegations that Form the Basis of Bessemer's Thirteen Claims for Relief........................................................................................................................ 3

ARGUMENT ........................................................................................................................... 5

I.    BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW. ........................ 5

    A.    The Master Agreement's Contractual Allocation of Risk Unambiguously Bars Bessemer's Tort Claims.................................................................................. 5

II.    THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR BESSEMER'S TORT CLAIMS............................................................................... 9

    A.    Gist of the Action Doctrine................................................................................... 9

    B.    Economic Loss Doctrine ...................................................................................... 11

III.    SEVERAL COUNTS INDEPENDENTLY FAIL TO STATE A CLAIM. .................... 12

    A.    Bessemer's Scattershot "Unfair Trade Practices" Claim (Under the Laws of Four Different States) Fails. ............................................................................. 12

    B.    Bessemer Does Not Allege Facts Sufficient to Plead Fraud................................ 14

    C.    Bessemer's Conversion and Bailment Claims Fail as a Matter of Law under the Unambiguous Terms of the Master Agreement.................................... 16

    D.    Bessemer Does Not Allege Facts That Establish a "Special Relationship." ........ 19

    E.    Bessemer's Trade Secrets Claims Fail Because Member Information Is Not a Trade Secret and Fiserv Solutions Lawfully Possessed that Information. ........................................................................................................... 19

    F.    Bessemer's Unjust Enrichment Claim Fails. ....................................................... 21

IV.    BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW. .................... 22

    A.    Bessemer's Contract Claim Fails Because It Does Not Identify the Contractual Provisions Fiserv Solutions Allegedly Breached. ........................... 22

B.     Bessemer's Requested Declaratory Relief Is Contrary to the Unambiguous
       Terms of the Master Agreement. ........................................................................ 23

C.     Bessemer Does Not State a Claim Related to the October 2018 Letter................ 24

CONCLUSION................................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...................................................................................8

*Alexander Mill Servs., LLC v. Bearing Distributors, Inc.*,
    No. 2:06CV1116, 2007 WL 2907174 (W.D. Pa. Sept. 28, 2007) ....................................11, 13

*Andrichyn v. TD Bank, N.A.*,
    93 F. Supp. 3d 375 (E.D. Pa. 2015) ......................................................................17

*Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*,
    651 F. Supp. 718 (W.D. Mo. 1986) ......................................................................13

*Art & Antique Dealers League of Am, Inc. v. Seggos*,
    2019 WL 416330 (S.D.N.Y. Feb. 1, 2019)..............................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................5

*Baii Banking Corp. v. Atl. Richfield Co.*,
    No. 86 CIV. 6651 (JFK), 1987 WL 14124 (S.D.N.Y. Sept. 17, 1987)...................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................5, 13, 19

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
    353 F. Supp. 3d 1070 (D. Colo. 2018).................................................................20, 21

*Bucci v. Wachovia Bank, N.A.*,
    591 F. Supp. 2d 773 (E.D. Pa. 2008) ................................................................14, 19

*Carlson v. Arnot-Ogden Mem'l Hosp.*,
    918 F.2d 411 (3d Cir. 1990)...............................................................................25

*Corsale v. Sperian Energy Corp.*,
    374 F. Supp. 3d 445 (W.D. Pa. 2019)....................................................................21

*Enslin v. The Coca-Cola* Co.,
    136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd.* 739 F. App'x 91 (3d Cir. 2018) .......................18

*EQT Prod. Co. v. Terra Servs., LLC*,
    179 F. Supp. 3d 486 (W.D. Pa. 2016)......................................................................9

*Exeter Twp. v. Gardecki,*
    2018 WL 6616930 (E.D. Pa. Dec. 17, 2018) ........................................................17

*Factory Mkt. v. Schuller Int'l.,*
    987 F. Supp. 387 (E.D. Pa.1997) ........................................................................10

*Fero v. Excellus Health Plan, Inc.,*
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) ...............................................................21

*Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.,*
    CIV. 1:05–CV–0461, 2005 WL 2665326 (M.D. Pa. Oct. 19, 2005) .....................12

*Gen. Elec. Co. v. Varig-S.A.,*
    2004 WL 253320 (S.D.N.Y. Feb. 10, 2004) .........................................................6

*Goldstein v. Murland,*
    2002 U.S. Dist. LEXIS 11331 (E.D. Pa. June 24, 2002) ......................................14

*Golphin v. Wells Fargo Bank, N.A.,*
    2010 WL 4536766 (M.D. Pa. Nov. 2, 2010) ........................................................13

*Grimm v. Citibank, N.A.,*
    2008 WL 4925631 (W.D. Pa. Nov. 14, 2008) ....................................................6, 9

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,*
    748 F.2d 729 (2d Cir. 1984).................................................................................8

*Hollander v. Etymotic Research, Inc.,*
    726 F. Supp. 2d 543 (E.D. Pa. 2010) .................................................................16

*Indus. Risk Insurers v. Port Auth. of New York & New Jersey,*
    387 F. Supp. 2d 299 (S.D.N.Y. 2005), *aff'd in part*, 493 F.3d 283 (2d Cir.
    2007) .....................................................................................................................6

*Institutional Inv'rs Grp. v. Avaya, Inc.,*
    564 F.3d 242 (3d Cir. 2009)...............................................................................15

*Jersey Cent. Power & Light Co. v. New Jersey,*
    772 F.2d 35 (3d Cir. 1985)..................................................................................24

*Kalimantano GmbH v. Motion in Time, Inc.,*
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)..................................................................12

*Lewis v. Ford Motor Co.,*
    263 F.R.D. 252 (W.D. Pa. 2009) ........................................................................13

*N. Star Media, LLC v. Winogradsky-Sobel,*
    2011 WL 13220157 (C.D. Cal. May 23, 2011) ...................................................21

*New Berry, Inc. v. Manitoba Corp.*,
  2019 WL 452493 (W.D. Pa. Feb. 5, 2019) ...........................................................................12

*O.D. Anderson, Inc. v. Empaco Equip. Corp.*,
  2019 WL 1395606 (W.D. Pa. Mar. 20, 2019) .......................................................................11

*Ogrizovich v. CUNA Mut. Grp.*,
  2015 WL 12778403 (W.D. Pa. Feb. 13, 2015) .....................................................................12

*Oldenburg Grp. Inc. v. Sherwin Williams Co.*,
  2009 WL 10711834 (E.D. Wis. Aug. 31, 2009) ...................................................................14

*Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*,
  693 F.3d 417 (3d Cir. 2012) ...................................................................................................6

*PharmMerica Corp. v. Sturgeon*,
  2018 WL 1367339 (W.D. Pa. Mar. 16, 2018) ......................................................................20

*Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*,
  No. CIV. A. 00-597, 2000 WL 876728 (E.D. Pa. June 29, 2000) ........................................18

*Pollock v. Nat'l Football League*,
  2013 WL 1102823 (W.D. Pa. Mar. 15, 2013) ......................................................................12

*Prof'l Ben. Consultants, Inc. v. Claims & Ben. Mgmt., Inc.*,
  2011 WL 6012932 (D.N.J. Dec. 1, 2011) ............................................................................17

*Samson Lift Techs., LLC v. Jerr-Dan, Corp.*,
  No. CIV. 09-1590, 2010 WL 1052932 (M.D. Pa. Mar. 22, 2010) ........................................12

*Sarpolis v. Tereshko*,
  625 F. App'x 594 (3d Cir. 2016) ..........................................................................................16

*Schulze v. Legg Mason Wood Walker, Inc.*,
  865 F. Supp. 277 (W.D. Pa. 1994) .......................................................................................17

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997) ...................................................................................................5

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) .................................................................................................15

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018) .................................................................................................14

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  427 F. Supp. 2d 526 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) ...........................19

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
   941 F. Supp. 2d 537 (D. N.J. 2013) ...................................................16

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
   40 F. Supp. 2d 644 (W.D. Pa. 1999) ..................................................10

*Tanenbaum v. Chase Home Fin. LLC*,
   2014 WL 4063358 (E.D. Pa. Aug. 18, 2014) ......................................25

*Travelers Indem. Co. v. Cephalon, Inc.*,
   620 F. App'x 82 (3d Cir. 2015) ..........................................................14

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
   246 F. Supp. 3d 1097 (E.D. Pa. 2017) ................................................22

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ..........................................................11, 12

*Whitaker v. Herr Foods, Inc.*,
   198 F. Supp. 3d 476 (E.D. Pa. 2016) ..................................................12

*Wildfire Credit Union v. Fiserv, Inc.*,
   2015 WL 13840889 (E.D. Mich. Aug. 10, 2015) ..................................9

*In re Zambrano Corp.*,
   2010 WL 8354694 (Bankr. W.D. Pa. Aug. 24, 2010) ..........................17

*Zamias v. Fifth Third Bank*,
   2018 U.S. Dist. LEXIS 3547 (W.D. Pa. Jan. 9, 2018) ..........................14

**State Cases**

*Adamski v. Allstate Ins. Co.*,
   738 A.2d 1033 (Pa. Super. Ct. 1999) ..................................................16

*Aikens v. Baltimore & Ohio R. Co.*,
   501 A.2d 277 (Pa. Super. Ct. 1985) ....................................................12

*Barker v. Time Warner Cable, Inc.*,
   923 N.Y.S.2d 118 (N.Y. App. Div. 2011) ............................................22

*Bortz v. Noon*,
   729 A.2d 555 (Pa. 1999) .....................................................................14

*Citibank, N.A. v. Plapinger*,
   485 N.E.2d 974 (N.Y. 1985) .................................................................8

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
   611 N.E.2d 282 (N.Y. 1993) .................................................................6

*Coons v. First Nat'l Bank of Philmont*,
   218 A.D. 283, 218 N.Y.S. 189 (3d Dep't 1926) .................................................................18

*Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*,
   2013 WL 3421916 (Tenn. Ct. App. July 3, 2013) ...............................................................12

*Credit Payment Servs., Inc. v. Moneygram Payment Sys., Inc.*,
   2015 WL 12531989 (E.D. Tenn. Feb. 13, 2015) ..................................................................12

*Danann Realty Corp. v. Harris*,
   157 N.E.2d 597 (N.Y. 1959) ..................................................................................................8

*Dittman v. UPMC*,
   196 A.3d 1036 (Pa. 2018) .....................................................................................................12

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
   811 A.2d 10 (PA. Super. Ct. 2002) ...............................................................................10, 19

*Goshen v. Mut. Life Ins. Co. of New York*,
   98 N.Y.2d 314, 774 N.E.2d 1190 (2002) .............................................................................14

*Greenfield v. Philles Records, Inc.*,
   780 N.E.2d 166 (N.Y. 2002) ..................................................................................................6

*Hutton v. Pub. Storage Mgmt.*,
   676 N.Y.S.2d 886 (N.Y. App. Div. 1998) ...........................................................................18

*Kailin v. Armstrong*,
   643 N.W.2d 132 (Wis. Ct. App. 2002) .................................................................................14

*Lion Yarn Co. v. Flock*,
   36 A.2d 246 (Pa. Super Ct. 1944) ........................................................................................18

*Moore v. Microsoft Corp.*,
   741 N.Y.S.2d 91 (N.Y. App. Div. 2002) ...............................................................................6

*Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*,
   855 A.2d 818 (Pa. 2004) .......................................................................................................17

*Pittsburgh Constr. Co. v. Griffith*,
   834 A.2d 572 (Pa. Super. Ct. 2003) .....................................................................................11

*State v. Automatic Merchandisers of Am., Inc.*,
   221 N.W.2d 683 (1974) .........................................................................................................14

*Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*,
   381 N.E.2d 1337 (Ohio Ct. App. 1978) ...............................................................................13

*Woodhill Elec. v. Jeffrey Beamish, Inc.*,
    904 N.Y.S.2d 232 (N.Y. App. Div. 2010) ..............................................................22

**Federal Statutes and Rules**

18 U.S.C. § 1839(5) ..................................................................................................20

Fed. R. Civ. P. 9(b) ..............................................................................................2, 14

**State Statutes**

12 Pa. Cons. Stat. Ann. § 5302 ................................................................................20

42 Pa. Cons. Stat. Ann. § 5524(7)............................................................................16

Ohio Rev. Code § 1345.01........................................................................................13

Wis. Stat. § 100.18(11)(b)3......................................................................................14

**Other Authorities**

*Black's Law Dictionary* (10th Ed. 2014) ..................................................................21

Restatement (Second) of Conflicts of Laws § 187 ...................................................6

Fiserv Solutions, LLC ("Fiserv Solutions") and Fiserv, Inc. submit this memorandum in support of their Motion to Dismiss Bessemer's Second Amended Complaint (the "SAC").

## INTRODUCTION

This is (or should be) a straightforward contract dispute.  Yet, Bessemer alleges **thirteen** separate claims spanning over ninety pages in an effort to transform this case into more than it is. Bessemer's deconversion and transition to a new processing vendor was complete on June 1, 2019. Bessemer has been running its credit union and serving its members without Fiserv Solutions' involvement or interference for more than five months.  The Court should reject Bessemer's attempt to obfuscate the lack of any meritorious contract claim through a litany of salacious allegations, tort claims, statutory claims and pleas for injunctive relief.

Under the parties' Master Agreement, Fiserv Solutions provided account processing services and related software products to Bessemer.  Bessemer alleges deficiencies in those services and products.  Bessemer first claimed "breach" in a series of letters, beginning in January 2018.  Bessemer had decided not to renew the Master Agreement, but did not want to pay the costs of transitioning to a new provider (a process known as "deconversion") that the Master Agreement requires.  So, Bessemer began a campaign of meritless claims and escalating threats to avoid them.

On April 20, 2018, Bessemer filed this action in state court by serving a summons, but not a complaint.  On October 9, 2018, Bessemer still had not filed a complaint, but started a separate replevin action demanding the immediate "return" of its processing data.  But that would have left Bessemer unable to process transactions for its members and was irreconcilable with the Master Agreement, so Bessemer voluntarily dismissed that case some ten days later.  Bessemer finally filed its first complaint here on April 26, 2019.  After Defendants removed, Bessemer sought an "emergency" injunction, which the Court denied.

Bessemer filed an Amended Complaint on July 26, 2019.  Defendants moved to dismiss and, one day before its opposition was due, Bessemer moved to amend yet again.  Bessemer said that amendment would avoid wasting judicial resources and give Bessemer a fair opportunity to have its claims adjudicated on the merits.  (ECF No. 41, ¶ 9.)  Yet, the SAC contains only minor changes and suffers the same deficiencies as the First Amended Complaint.[1]

The Master Agreement, the gist of the action doctrine, and the economic loss doctrine each bars Bessemer's tort claims.  Bessemer also fails to plead its fraud, fraudulent inducement (which is likewise time barred), and unjust enrichment claims with the particularity that Rule 9(b) requires.  Bessemer's trade secrets claims fail for a lack of protectable secrets and because Fiserv Solutions had the contractual right (and obligation) to access and use Bessemer's data.  Bessemer's claims for unfair trade practices, conversion, negligent misrepresentation, constructive fraud, bailment, unjust enrichment, promissory estoppel, and declaratory relief also each fail for lack of an essential element.  Finally, the breach of contract claim, premised on the Master Agreement and a letter between the parties' counsel, fails to identify the contractual provisions that were breached or to plausibly allege an enforceable contract or detrimental reliance with regard to the letter.  The Court should dismiss the SAC in its entirety, with prejudice and without leave to replead.

---

[1] Besides removing the claims for punitive damages and injunctive relief, Bessemer made only minor changes: (a) in many Counts, Bessemer now asserts that it "and its members" have suffered damages and harm, (SAC ¶¶ 219, 234, 260, 269, 279, 290, 300, 314, 320, 328); (b) in Counts III–VI, Bessemer now alleges that certain violations occurred "prior to the execution of the Master Agreement," (*id*. ¶¶ 246, 247, 253, 258, 263, 267, 272, 274); (c) in Count III, in support of its allegation that Defendants conducted activities in other states, Bessemer added: "e.g., through the operation of an internet-accessible website accessible throughout the country containing false acts, omissions, concealments, and misrepresentations," (*id*. ¶ 249); (d) in Count IX, Bessemer added the following underlined text to describe its purported trade secret protection for the "methods, programs, and codes used by authorized members to access online banking accounts and to conduct and transact business through accounts maintained with Bessemer (including, without limitation, withdrawing and transferring funds), and confidential information regarding linked accounts accessible through Bessemer's online banking system that permit Bessemer and its members to transfer or withdraw funds from accounts maintained at Bessemer as well as other financial institutions, (*id*. ¶ 302); and (e) in Count IX, Bessemer tries to demonstrate "reasonable measures [taken] to maintain the secrecy of its trade secrets" by adding that it required "its members to maintain the confidentiality of online banking access codes." (*id*. ¶ 304).

## FACTUAL ALLEGATIONS

### I.     The Master Agreement and Fiserv Solutions' Services.

Bessemer was a Fiserv Solutions client for nearly 40 years.  Most recently, the parties renewed their relationship through a Master Agreement, dated July 1, 2014, under which Fiserv Solutions agreed to provide account processing and related services (the "Master Agreement"). (SAC, ¶¶ 26–27, Ex. 2.)   In exchange, Bessemer agreed to pay license, maintenance, and professional development fees and also to pay early termination fees if it terminated the Master Agreement for any reason other than Fiserv Solutions' material breach.  (*Id*., Ex. 2, ASP Services Ex. to Master Agreement, § 8(b); Software Products Ex., § 11(a).)  Bessemer also promised to pay deconversion fees when it transitioned to a new provider and authorized Fiserv Solutions to retain Bessemer's data files until Bessemer fully performed its payment and confidentiality obligations. (*Id.*, Ex. 2, ASP Services Ex., § 8(e).)

The Master Agreement is fully integrated and controlled by New York law.  (*Id*., Ex. 2, §§ 11(b), (d).)  Along with its integrated exhibits, it reflects a comprehensive agreement that spells out the parties' obligations, the allocation of risk, and the limitations on liability to one another. Given Bessemer's tort claims, certain provisions merit particular attention.  The Master Agreement makes specific warranties with regard to Fiserv Solutions' products and services.   Bessemer "expressly" waived all other representations or warranties.  (*Id*., Ex. 2, § 6(c).)  The Master Agreement also expressly acknowledges that neither party was induced to enter the agreement by, nor relied on, any representations not in the Master Agreement.  (*Id.*, Ex. 2, § 11(b).)

### II.    The Allegations that Form the Basis of Bessemer's Thirteen Claims for Relief.

Despite the SAC's length and hyperbole, the conduct that purportedly forms the basis for Bessemer's claims falls into five categories: Fiserv Solutions' (1) allegedly deficient security practices, (*id.*, ¶¶ 44–86, 116–27); (2) allegedly deficient performance under the Master

Agreement, (*id.*, ¶¶ 87–115, 128, 135–58); (3) alleged misrepresentations, both before and during the parties' relationship, regarding its security practices and products and services, (*id.*, ¶¶ 23–43, 129–34); (4) alleged wrongful inducement of Bessemer's voluntary dismissal of the replevin action, (*id.*, ¶¶ 159–79); and (5) alleged misconduct during the "deconversion" process, (*id.*, ¶¶ 180–99).  This conduct all arises under or relates to performance under the Master Agreement.

With regard to the allegedly "deficient" security practices, Bessemer alleges that Fiserv Solutions failed to implement necessary information security practices and protocols, relying on unsubstantiated third-party opinions to claim that Fiserv Solutions' practices put Bessemer's members at risk of, *inter alia*, identity theft.  (*Id.*, ¶¶ 44–67, 80–86.)  The Master Agreement, not popular media, defines Fiserv Solutions' security obligations, and any inquiry into the propriety of these practices requires reference to its text and, specifically, Section 4, entitled "Information Security."  So, too, does an inquiry into whether Fiserv Solutions provided inadequate products and services (*e.g.*, alleged inaccurate reporting of member transactional records, (*id.*, ¶¶ 87–98), system latencies and "bugs," (*id.*, ¶¶ 99–115), and improper or delayed corrective actions, (*id.*, ¶¶ 135–37), under the Master Agreement.

Bessemer also contends that Fiserv Solutions made misrepresentations before and during the parties' contractual relationship, including the adequacy of its security practices, (*id.*, ¶¶ 23–43), the functionality and availability of its products and services, (*id.*, ¶¶ 129–34), and the speed and manner with which Bessemer could be transitioned to another service provider, (*id.*, ¶¶ 161–63, 168–69, 176–79).  Each of these alleged misrepresentations is either precluded by the Master Agreement or, at least, requires an analysis of Fiserv Solutions' obligations thereunder.

Any analysis of Bessemer's claims that Fiserv Solutions induced Bessemer to dismiss the Replevin Action through representations concerning Bessemer's conversion to another service

provider, (*id.*), the purported delay in Bessemer receiving the deconversion files after it dismissed the Replevin Action, (*id.*, ¶¶ 180–88, 191, 199), and Bessemer's complaints about the accuracy of the format and scope of the deconversion files, (*id.*, ¶¶ 189–90, 192, 196–97), likewise necessitates reference to the Master Agreement, which comprehensively and unambiguously defines Fiserv Solutions' obligations in connection with Bessemer's deconversion.

## ARGUMENT

Whether viewed independently or collectively, these five categories of factual allegations fail to support the claims Bessemer attempts to plead. A well-pleaded complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts must take the claimant's well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009), but the Court is not "required to accept as true unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Rather, a complaint "must contain sufficient factual matter" to state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678. Each of Bessemer's claims fails these requirements.

## I.   BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW.

### A.   The Master Agreement's Contractual Allocation of Risk Unambiguously Bars Bessemer's Tort Claims.

The Master Agreement expressly allocates risk and defines the parties' agreed-upon duties, rights, and remedies. Bessemer waived and disclaimed any right to recover tort damages and expressly agreed that Fiserv Solutions did not make, and Bessemer did not rely on, any statement outside the Master Agreement with respect to Fiserv Solutions' products and services. These provisions bar Bessemer's tort claims.

The Master Agreement embodies a ***contractual*** allocation of risk negotiated between the parties.  First, Bessemer unambiguously waived and disclaimed all tort damages and remedies – *i.e.*, those outside the Master Agreement: "In no event shall Fiserv be liable for . . . tort damages arising out of or relating to this Agreement, regardless of whether such claim arises in tort, contract, or otherwise."  (SAC, Ex. 2, § 7.)  Under New York law,[2] it is well-settled that parties can "agree to limit their liability to one another in tort actions related to the contract if their intention to limit tort liability is clearly expressed."  *Gen. Elec. Co. v. Varig-S.A.*, 2004 WL 253320, at \*3 (S.D.N.Y. Feb. 10, 2004).  Courts presume that parties to a contract understand the import of each contractual provision and intend to be bound by their terms.  *See Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).  Such provisions apply with equal force to deceptive trade practices claims.  *Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 92 (N.Y. App. Div. 2002).  Section 7's unambiguous disclaimer of tort remedies requires dismissal of the negligence, misrepresentation, and unfair and trade practices claims.[3]

Second, Fiserv Solutions made, and Bessemer accepted, limited ***contractual*** warranties:

> THE WARRANTIES STATED ABOVE AND IN THE EXHIBITS, IF ANY, ARE LIMITED WARRANTIES AND ARE THE ONLY WARRANTIES MADE BY THE PARTIES. . . . FISERV DISCLAIMS, AND CLIENT HEREBY EXPRESSLY WAIVES, ALL OTHER REPRESENTATIONS, CONDITIONS OR WARRANTIES, EXPRESS OR IMPLIED. . . .

---

[2] A federal court sitting in diversity must apply the forum's choice of law rules.  *Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012).  Here, a Pennsylvania court would apply New York law to contractual issues.  *See Grimm v. Citibank, N.A.*, 2008 WL 4925631, at \*4 (W.D. Pa. Nov. 14, 2008) ("Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them.").

[3] Avoiding a contractual limitation on liability requires conduct that evinces "a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing."  *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993).  Conclusory allegations of gross negligence or intentional wrongdoing, however, will not suffice to avoid contractual limitations.  Otherwise, "contracting parties would be stripped of the substantial benefit of their bargain–that is, avoiding the expense of lengthy litigation."  *Indus. Risk Insurers v. Port Auth. of New York & New Jersey*, 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005), *aff'd in part*, 493 F.3d 283 (2d Cir. 2007).

(SAC, Ex. 2, § 6(c).)  Bessemer expressly agreed that extra-contractual performance standards –

whether derived from its view of "industry" practices or the common law – would not control.

Third, Bessemer affirmatively assumed the risk and responsibility of determining whether

Fiserv Solutions' products and services would be suitable for its needs:

> FISERV DOES NOT REPRESENT THAT THE DELIVERABLES
> MEET CLIENT'S REQUIREMENTS OR THAT THE
> OPERATION OF THE DELIVERABLES WILL BE
> UNINTERRUPTED OR ERROR-FREE. CLIENT
> ACKNOWLEDGES THAT IT HAS INDEPENDENTLY
> EVALUATED THE DELIVERABLES AND THEIR
> APPLICATION TO CLIENT'S NEEDS.

(*Id.*, Ex. 2, § 6(c).)  Bessemer cannot point the finger if Fiserv Solutions' products didn't do

everything that Bessemer (now) claims to have wanted.

Finally, the parties agreed that their contractual promises would define their relationship

completely.  Thus, the Master Agreement contains an integration clause confirming that it

expressly "constitutes the complete and exclusive statement of the agreement between the parties

as to the subject matter hereof and supersedes all previous agreements with respect hereto and the

terms of all existing or future purchase orders or acknowledgments." (SAC, Ex. 2, § 11(b).)  To

leave no doubt, Bessemer (and Fiserv Solutions) specifically agreed that it

> **has not been induced to enter into this Agreement by virtue of, and
> is not relying on, any representation made by the other party not
> embodied herein**, any term sheets or other correspondence
> preceding the execution of this Agreement, or any prior course of
> dealing between the parties, **including without limitation any
> statements concerning product or service usage**.

(SAC, Ex. 2, § 11(b) (emphasis added).)

Apparently dissatisfied with its contractual remedies, Bessemer now claims to have relied

on extra-contractual statements, despite the Master Agreement's integration clause and limited

warranties, and Bessemer's specific representation of non-reliance.  (SAC ¶¶ 29–30.)  Such a claim

necessarily fails.   Where parties expressly disclaim reliance on particular types of misrepresentations, contrary allegations are barred.  *See Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959).  "*Danann* . . . stands for the principle that where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984). Courts recognize that the specificity and breadth of any such disclaimer should be determined in context of the parties' entire agreement.  "The *Danann* rule operates where the substance of the disclaimer provision tracks the substance of the alleged misrepresentation, notwithstanding semantical discrepancies." *Id.*  (refusing to require "precise identity between the misrepresentation and the particular disclaimer").

Thus, in *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 977 (N.Y. 1985), the court held that a seemingly general acknowledgment that a guarantor's obligations were "absolute and unconditional" was sufficiently particular to foreclose reliance on alleged oral promises of additional credit that never came.  Even "[t]hough not the explicit disclaimer present in *Danann*," in context, this language was not mere "generalized boilerplate," but the product of negotiations among sophisticated parties, and it was "unrealistic" to believe that an obligation both "absolute" and "unconditional" could somehow depend on an external condition.  *Id.*  Likewise, the court in *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005), held that "a general disclaimer that a party has relied on any representations of the other signatory, coupled with the disclaiming party's assertion of familiarity with a particular subject area, is specific enough to preclude a claim of reliance on statements falling within that topic."

Here, Bessemer specifically represented that it did not rely on anything "not embodied" in the Master Agreement, any "correspondence preceding the execution of this Agreement," or "any

statement concerning products or service usage."   The Master Agreement evidences a clear allocation of risk: Bessemer, a federally-chartered financial institution, agreed that it would bear the responsibility of determining whether Fiserv Solutions' products and services were suitable for its needs.   The Master Agreement precludes Bessemer's assertions of "reliance" on extra-contractual statements about those products or services, much less on an email that pre-dates the Master Agreement by two years.  (SAC ¶¶ 29–30.)  The court in *Wildfire Credit Union v. Fiserv, Inc.*, 2015 WL 13840889, at *7–9 (E.D. Mich. Aug. 10, 2015), reached that very conclusion, holding that the same integration and anti-reliance language barred all claims "premised on extra-contractual representations."  As there, the Court should dismiss all tort claims with prejudice.

## II.   THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR BESSEMER'S TORT CLAIMS.

Bessemer's tort claims are also precluded by the gist of the action and economic loss doctrines.  Both forbid precisely what Bessemer attempts here – transforming a contract claim into a "tort claim" to avoid contract defenses and invoke the *in terrorem* effect of punitive damages.

### A.   Gist of the Action Doctrine

In Pennsylvania,[4] the gist of the action doctrine prohibits tort claims if the gravamen of the action sounds in contract.  *See EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 494 (W.D. Pa. 2016) (the doctrine bars "plaintiffs from repackaging breach of contract claims as tort claims").  Specifically, the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

---

[4]  Pennsylvania law will apply to Bessemer's tort claims.  *See Grimm*, 2008 WL 4925631, at *6.

*eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (PA. Super. Ct. 2002).  Bessemer's chosen labels do not control because "the gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently, recklessly, wantonly or intentionally, if the gravamen of the claim is that the [defendant] failed to fulfill a promise." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999).

Bessemer's claims arise solely from the parties' relationship under the Master Agreement; indeed, the parties would have no relationship but for that agreement.  The Master Agreement gives rise to each duty and obligation (if any) that Fiserv Solutions supposedly breached, comprehensively delineating Fiserv Solutions' obligations with respect to data security (SAC, Ex. 2, § 4), billing records and invoices (*id.* § 10(b)), performance standards (*id.*, ASP Services Ex. § 4(e)), errors relating to its services (*id.*, ASP Services Ex. § 4(f)), the accuracy of reports and account errors (*id.*, ASP Services Ex. § 5(e)), ownership, possession, and return of Bessemer's data (*id.* § 3(b), ASP Services Ex. § 8(e)), and fees and pricing (*id.*, ASP Services Ex. § 10).

Bessemer's tort claims are inextricably intertwined with these obligations.  Each alleges acts or omissions whose propriety must be defined by reference to the Master Agreement.  Bessemer's negligence claim, for example, alleges that Fiserv Solutions breached a duty of care with respect to the safety, security, and accuracy of account data and by failing to notify Bessemer of these alleged deficiencies.  (SAC ¶¶ 221–30.)  But the Master Agreement meticulously enumerates Fiserv Solutions' obligations and required standard of care, *see, e.g.*, (SAC, Ex. 2, § 4), and Bessemer's sole remedy for any breach lies exclusively in contract.  *See Factory Mkt. v. Schuller Int'l.*, 987 F. Supp. 387 (E.D. Pa.1997) (barring fraud and negligence claims where obligations were imposed by contract and, without the contract, plaintiff would have no claim);

*O.D. Anderson, Inc. v. Empaco Equip. Corp.*, 2019 WL 1395606, at *5 (W.D. Pa. Mar. 20, 2019) (dismissing fraud claims where the respective duties "were rooted in contract").

Likewise, Bessemer's various "misrepresentation" claims all rest on alleged errors in reports and account information that Fiserv Solutions generated, invoices that Fiserv Solutions issued, and services (including data security) that Fiserv Solutions provided under the Master Agreement.  (SAC ¶¶ 253, 263, 273.)  As this Court has recognized, "[m]aking boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning its ability and approach were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud." *Alexander Mill Servs., LLC v. Bearing Distributors, Inc.*, 2007 WL 2907174, at *9 (W.D. Pa. Sept. 28, 2007); *see also eToll, Inc.*, 811 A.2d at 20 (affirming dismissal of fraud claim where "duties regarding billing and performance were created and grounded in the parties' contract").

The gist of the action doctrine bars conversion claims if a contract defines ownership rights and entitlement to property, as the Master Agreement does here.  *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003).  Bessemer's conversion claim rests on allegations that Fiserv Solutions failed to return and interfered with Bessemer's member information.  (SAC ¶¶ 286–89.)  The Master Agreement defines when Fiserv Solutions must release that data, and the obligations Bessemer must fulfill to trigger that duty.  (*Id.*, Ex. 2, ASP Services Ex. § 8(e).)  Indeed, the allegation – that Fiserv Solutions failed to release its account data – is the core of both Bessemer's conversion (*id.* ¶ 286) and contract (*id.* ¶¶ 215-16) claims.

## B. Economic Loss Doctrine

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Werwinski v. Ford Motor Co.*, 286 F.3d 661,

671 (3d Cir. 2002).[5]  Pursuant to this doctrine, "[c]laims for only economic losses are appropriately

brought as breach of contract or warranty claims rather than as tort claims."  *Fid. & Deposit Co.*

*of Maryland v. Int'l Bus. Machines Corp.*, 2005 WL 2665326, at *2 (M.D. Pa. Oct. 19, 2005).

Here, Bessemer has not alleged any non-economic losses (and, indeed, has not alleged any facts

suggesting any losses at all from its tort claims).  Although *Dittman v. UPMC*, 196 A.3d 1036,

1054 (Pa. 2018), created an exception to the economic loss doctrine, that exception is narrow and

applies only where the duty arises outside of the terms of the contractual relationship.  It is

inapplicable where the duties are contractual and all damages claimed "relate to contractual

duties."  *New Berry, Inc. v. Manitoba Corp.*, 2019 WL 452493, at *5 (W.D. Pa. Feb. 5, 2019).[6]

That is the case here, and the economic loss doctrine bars each of Bessemer's tort claims.[7]

## III.   SEVERAL COUNTS INDEPENDENTLY FAIL TO STATE A CLAIM.

### A.   Bessemer's Scattershot "Unfair Trade Practices" Claim (Under the Laws of Four Different States) Fails.

In Count III, Bessemer purports to plead a claim for "unfair trade practices."  Bessemer

tries to allege violations of Pennsylvania, Ohio, New York, and Wisconsin law, but does not plead

---

[5] Pennsylvania and New York have both adopted the economic loss doctrine with "no material difference[s]."  *Samson Lift Techs., LLC v. Jerr-Dan, Corp.*, 2010 WL 1052932, at *6 (M.D. Pa. Mar. 22, 2010).

[6] Bessemer has previously invoked *Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*, 2013 WL 3421916 (Tenn. Ct. App. July 3, 2013), in attempt to avoid the economic loss doctrine.  But, in that opinion, the Tennessee court of appeals expressly stated it could not "fully analyze the issue" of whether the economic loss doctrine applied because "the trial court never considered or ruled on it."  *Id.* at *5.  The court of appeals merely speculated that the economic loss doctrine might not apply based on the possibility that the parties' contract did not cover the security services at issue.  In any event, a federal court later found all this to be both *dicta* and unpersuasive.  *Credit Payment Servs., Inc. v. Moneygram Payment Sys., Inc.*, 2015 WL 12531989, at *5 n.4 (E.D. Tenn. Feb. 13, 2015) ("In the instant case, however, there is only one agreement – to provide money transfer services.  All of the alleged misrepresentations are part of that agreement.  *Copper Basin* is thus inapplicable.").

[7] *See e.g.*, *Aikens v. Baltimore & Ohio R. Co.*, 501 A.2d 277, 279 (Pa. Super. Ct. 1985) (negligence claim barred); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (UTPCPL, fraud, and negligent misrepresentation claims barred); *Ogrizovich v. CUNA Mut. Grp.*, 2015 WL 12778403, at *4 (W.D. Pa. Feb. 13, 2015) (negligence, fraud, and UTPCPL claims barred); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (common law fraud claims and UTCPL claims barred); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416-18 (S.D.N.Y. 2013) (conversion, fraud, and misrepresentation claims barred); *Pollock v. Nat'l Football League*, 2013 WL 1102823, at *7 (W.D. Pa. Mar. 15, 2013) (fraudulent-inducement claim barred).

a claim under any of them.  Bessemer's allegations are exactly the type of pleading that *Twombly* prohibits, consisting entirely of conclusory labels and formulaic recitations of legal elements. *Golphin v. Wells Fargo Bank, N.A.*, 2010 WL 4536766, at *8 (M.D. Pa. Nov. 2, 2010) (dismissing unfair trade practices claim because "allegations [were] conclusory in nature without any factual support").  Bessemer never details when the allegedly "unfair and deceptive" practices occurred, who (other than "Fiserv") committed them, or who was supposedly deceived.

The statutes that Bessemer invokes protect consumers from disparities in bargaining power, not sophisticated commercial parties to an arm's length contract.  Pennsylvania's statute "protects only individuals, not business entities" and only applies to "goods or services primarily for personal, family or household purposes." *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 259 n.8 (W.D. Pa. 2009).  Fiserv Solutions provides technology solutions to financial institutions.[8]  (SAC ¶¶ 1, 20.)  These commercial products and services fall outside the statute.  *See Alexander Mill Servs.*, 2007 WL 2907174, at *10.  Likewise, the Ohio statute applies only to transactions with an individual consumer.  Ohio Rev. Code § 1345.01 (defining "consumer transaction" as a transaction with an individual for purposes that are primarily personal, family, or household).  Ohio courts have expressly held that a credit union may not seek relief under the statute.  *Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*, 381 N.E.2d 1337, 1339 (Ohio Ct. App. 1978).

Bessemer also does not allege facts showing the nexus that the New York and Wisconsin statutes require.  Wisconsin's statute is "intended to protect the ***residents of Wisconsin*** from any

---

[8]  Bessemer asks to be treated as a "consumer" because it is a "not-for-profit cooperative owned and controlled by individual consumers." (SAC ¶ 236.)  Bessemer is a federally-chartered credit union, a corporate entity that is distinct and independent from it "owners" (its members). *Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*, 651 F. Supp. 718, 726 (W.D. Mo. 1986) (explaining credit union ownership structure "do[es] not reflect (or create) any general legal relationship between a credit union and its members which is different from that of a general business corporation and its common shareholders").  Bessemer does not stand in the shoes of a consumer for purposes of its "unfair trade practices" claims.  Bessemer fails to allege any instance of deceptive trade practice directed at any particular member, whose shoes it could step into in any event.

untrue, deceptive or misleading representations made to promote the sale of a product." *State v. Automatic Merchandisers of Am., Inc.*, 221 N.W.2d 683, 686 (Wis. 1974) (emphasis added). The New York statute also requires that the alleged practices were directed at or had a harmful effect in New York. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (N.Y. 2002) ("[T]o qualify as a prohibited act under the [Section 349], the deception of a consumer must occur in New York."). Bessemer alleges no facts demonstrating the requisite nexus.[9]

### B.    Bessemer Does Not Allege Facts Sufficient to Plead Fraud.

Counts IV and V attempt to plead fraud, fraudulent inducement, and constructive fraud. Pleading fraud requires: (1) a representation material to the transaction at hand; (2) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (3) with the intent of misleading another into relying on it; (4) justifiable reliance on the misrepresentation; and, (5) a resulting injury proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). Fraudulent inducement further requires "that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract." *Goldstein v. Murland*, 2002 WL 1371747, at *1 (E.D. Pa. June 24, 2002).

Further, under Rule 9(b), Bessemer must plead "fraud" with particularity.[10]   *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018). Rule 9(b) operates "to place the

---

[9] Further, Wisconsin's statute does not apply to statements made after the parties entered into a contractual relationship. *Kailin v. Armstrong*, 643 N.W.2d 132, 149 (Wis. Ct. App. 2002). Although Bessemer does not allege when the supposedly "false statements" that form the basis of Count III were made, any statement made before it entered into the Master Agreement in 2014 would be barred by Wisconsin's three-year statute of repose, Wis. Stat. § 100.18(11)(b)(3), which is not subject to equitable tolling. *Oldenburg Grp. Inc. v. Sherwin Williams Co.*, 2009 WL 10711834, at *2 (E.D. Wis. Aug. 31, 2009).

[10] Rule 9(b) applies to all claims that rely on averments of fraud, including Bessemer's fraud, fraudulent inducement, negligent misrepresentation, constructive fraud, and unjust enrichment claims. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("Thus, all of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)."); *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008) (applying FRCP 9(b) to fraud and constructive fraud claims); *Zamias v. Fifth Third Bank*, 2018 WL 355462, at *10 (W.D. Pa. Jan. 9, 2018) (applying FRCP 9(b) to fraudulent inducement claim).

defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The rule requires that a plaintiff identify the statements that are fraudulent and why that is so, their speaker, and where and when they were made; in other words, "the who, what, when, where and how." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Bessemer's allegations do not particularly or plausibly plead fraud. Bessemer has had two opportunities to amend its complaint to plausibly plead fraud. Despite this, Bessemer still has not, with one limited exception, alleged any specific speaker – instead, making only generic references to "Fiserv" and alleging that "Fiserv" made misrepresentations about the account information of Bessemer's members in the form of erroneous reports or account data and misrepresented its prices and service and security capabilities. (*E.g.*, SAC ¶¶ 253, 263.) That is particularly troubling given that Fiserv, Inc., which has no contractual relationship with Bessemer, is also a named defendant.

On the single occasion that Bessemer identifies a specific speaker, it fails to plead any facts that connect the statement to the Master Agreement. (SAC, ¶¶ 29-30.) That statement was cherry-picked from an old email and occurred more than **two years before** the Master Agreement was executed. Bessemer alleges no facts that could tie this email to the Master Agreement or that could make a "fraudulent inducement" claim plausible. Bessemer does not allege that the speaker knew of the statement's alleged falsity or intended to induce Bessemer's reliance at all, much less intended to induce Bessemer to renew the Master Agreement two years later. Such vague allegations do not plead fraud.

Likewise, Bessemer's allegations of erroneous reports and account information do not state a fraud claim. Bessemer alleges no facts suggesting that Fiserv Solutions intended to mislead

Bessemer (or anyone else).  At best, Bessemer has alleged that Fiserv Solutions' software systems make errors from time to time.  This is not fraud.  *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D. N.J. 2013) (dismissing fraud claim because credit card processing systems' errors and faulty authorization codes could not constitute an intentional misrepresentation of fact).  What incentive would anyone at Fiserv Solutions have to "defraud" Bessemer about a member's account balance?  Fiserv Solutions processed countless transactions every day for five years – the Master Agreement does not require perfection; ordinary mistakes are simply not fraud.

Bessemer also does not allege any facts plausibly suggesting that anyone at Fiserv Solutions knowingly made a false representation of fact with the specific intent to defraud Bessemer, let alone a representation intended to induce Bessemer to enter into the Master Agreement.  Although intent may be alleged generally, Bessemer must plead "specific facts showing Defendant's knowledge of falsity or intent to deceive."  *Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 551 (E.D. Pa. 2010).  To the extent that Bessemer's "fraud" or "fraudulent inducement" claim is based on generic statements relating to Fiserv Solutions' security capabilities or service offerings, those claims are barred by the Master Agreement's integration clause and Bessemer's express representation of non-reliance.[11]

### C.     Bessemer's Conversion and Bailment Claims Fail as a Matter of Law under the Unambiguous Terms of the Master Agreement.

Bessemer asserts claims for conversion (Count VII) and "bailment" (Count VIII).  Both assert that Fiserv Solutions refused to return Bessemer's customer and account data.  The elephant

---

[11] Bessemer's fraudulent inducement claim is also time barred.  Pennsylvania imposes a 2-year statute of limitations that accrues when the plaintiff is harmed.  42 Pa. Cons. Stat. § 5524(7); *Sarpolis v. Tereshko*, 625 F. App'x 594, 600 (3d Cir. 2016) (affirming order granting motion to dismiss because fraud claim was time barred and plaintiff failed to plead allegations to support equitable tolling); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999) ("[O]ur court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed. . . .").  This action was filed four years after Bessemer entered into the Master Agreement.

in the room is that, on June 1, 2019, Bessemer completed the "deconversion" process and moved to a new processing platform.  This deconversion process was underway for several months, and Fiserv Solutions provided Bessemer's new vendor a copy with that data on the date that Bessemer requested (when its new vendor was ready).  Bessemer makes no mention of any of this.

Moreover, Fiserv Solutions accessed Bessemer's data with consent.  Through the Master Agreement, Bessemer gave Fiserv Solutions access to its data.  That agreement defines Fiserv Solutions' duties with respect to this data and specifies the circumstances in which Fiserv Solutions must release that data.[12]  (SAC, Ex. 2, § 3(b).)  Such use is not conversion – the "deprivation of another's right of property in, or use or possession of, a chattel, ***without the owner's consent and without lawful justification***."  *Schulze v. Legg Mason Wood Walker, Inc.*, 865 F. Supp. 277, 284 (W.D. Pa. 1994) (emphasis added).  Fiserv Solutions could not provide services to Bessemer without the account data (and Fiserv Solutions generated much of that data through its own systems); that was the whole point of the relationship.  Given these facts and Bessemer's clear contractual consent, Fiserv Solutions' "possession" of this "property" cannot be conversion.  *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 389 (E.D. Pa. 2015) (dismissing conversion claim against bank where agreement provided bank with the right to access accounts and assess fees).

---

[12] Bessemer fails to identify the specific property Fiserv Solutions allegedly converted, vaguely describing a property interest in account records and information, funds deposits in members' share draft accounts, and funds due and owing to Bessemer and its members.  (SAC ¶¶ 281–83.)  This is not sufficient to survive a motion to dismiss; only "[i]dentifiable funds are deemed a chattel for purposes of conversion."  *Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 n.21 (Pa. 2004); *cf. In re Zambrano Corp.*, 2010 WL 8354694, at *6 (Bankr. W.D. Pa. Aug. 24, 2010) (permitting conversion claim because plaintiff sufficiently identified funds allegedly converted by describing amounts and loan dates).  Further, several courts have held that "data" does not constitute tangible personal property susceptible to conversion.  *See, e.g., Exeter Twp. v. Gardecki*, 2018 WL 6616930, at *4 (E.D. Pa. Dec. 17, 2018) (holding that electronic files stored on a hard drive were "not 'chattels' under Pennsylvania law," and dismissing conversion claim); *Prof'l Ben. Consultants, Inc. v. Claims & Ben. Mgmt., Inc.*, 2011 WL 6012932, at *3 (D.N.J. Dec. 1, 2011) ("To the extent Plaintiffs' conversion claim relates to intangible property—the transfer of electronic data and the National Alliance "membership"—it must be dismissed.") (collecting cases).

In the Master Agreement, Bessemer expressly authorized Fiserv Solutions to retain its data unless and until Bessemer paid Fiserv Solutions in full for all amounts Bessemer owed, including deconversion and early termination fees.  (SAC, Ex. 2, ASP Services Ex. § 8(e).)  Bessemer's purported right to the return of its data was conditioned on fulfilling its obligations under the Master Agreement, which Bessemer had not done when it provided its "notice of termination" on April 11, 2018 (and still has not done).  *See Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) ("Under Pennsylvania law, if a plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may not sue that defendant in tort for conversion of that property.").  Bessemer's April 2018 demand for an "immediate" release of its data and "termination" of the Master Agreement was mere posturing. Bessemer did not have another vendor and could not operate without Fiserv Solutions' services, which required use of Bessemer's data.  Bessemer knew that Fiserv Solutions could not "pull the plug," but demanded "immediate" release in an attempt to manufacture claims.  The Master Agreement (and basic fairness) preclude all of this.

Bessemer's "bailment" claim fails for the same reasons.  A bailment is created by contract and the "rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties."  *Lion Yarn Co. v. Flock*, 36 A.2d 246, 248 (Pa. Super Ct. 1944); *Coons v. First Nat'l Bank of Philmont*, 218 A.D. 283, 218 N.Y.S. 189, 189 (3d Dep't 1926).  However, electronic information, including personally identifiable information, is not "'property' or 'personalty' for the purposes of bailment."  *Enslin v. The Coca-Cola* Co., 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015), *aff'd.* 739 F. App'x 91 (3d Cir. 2018).  Even putting aside that fundamental flaw, the condition precedent of bailment is "a relinquishment of ***exclusive*** possession" of property.  *Hutton v. Pub. Storage Mgmt.*, 676 N.Y.S.2d 886, 886 (N.Y. App. Div.

1998) (emphasis added).  Fiserv Solutions never had "exclusive" possession of Bessemer's data; Bessemer and its members used that data every day.  Fiserv Solutions accessed the information, with Bessemer's consent, in order to fulfill its contractual obligations.  That is not a bailment.

### D.    Bessemer Does Not Allege Facts That Establish a "Special Relationship."

Claims for constructive fraud and negligent misrepresentation require a fiduciary or special relationship.  *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008).  Bessemer simply asserts that the parties had a "relationship of trust and confidence in which Fiserv wielded superior knowledge, skill, expertise, and influence over Bessemer and that Fiserv exercised superior industry knowledge over Bessemer."  (SAC ¶ 262.)  Bessemer pleads no facts to support this bald allegation, and the Court should disregard it.  *See Twombly*, 550 U.S. at 557.

As pleaded, the parties' commercial relationship was an arm's-length one for the provision of services.  That is not enough to plead a "special relationship."  *See eToll*, 811 A.2d at 23 ("If parties to routine arm's length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim.").  The conclusory allegation that Fiserv Solutions "controls Bessemer's records and information" also fails to plead the necessary relationship.  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) (fiduciary relationship did not exist between card issuer and merchant simply by virtue of the surrender of the cardholder information to merchant).

### E.    Bessemer's Trade Secrets Claims Fail Because Member Information Is Not a Trade Secret and Fiserv Solutions Lawfully Possessed that Information.

Bessemer asserts that Fiserv Solutions' "deficient" security practices and alleged "failure" to release Bessemer's members' information immediately after Bessemer purported to "terminate" the Master Agreement (while continuing to use Fiserv Solutions' services every day for more than

a year), and before the deconversion process even began, support claims for misappropriation of trade secrets under Pennsylvania law (Count IX) and a violation of the Defend Trade Secrets Act (Count X).   (SAC ¶¶ 301–320.)   These claims require that Bessemer's member data constitute "trade secrets."  (SAC ¶¶ 302, 316.)   They do not, and, in any event, the Master Agreement gave Fiserv Solutions express authorization to possess the data through deconversion.

To succeed on these claims, Bessemer must establish the existence of a trade secret and Fiserv Solutions' misappropriation.  *See PharmMerica Corp. v. Sturgeon*, 2018 WL 1367339, at *5 (W.D. Pa. Mar. 16, 2018).  Both Acts "define a trade secret as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use."  *Id.* at *4. A trade secret is "misappropriated," when the defendant "knows or has reason to know that [it] was acquired *by improper means*," or discloses or uses it "*without express or implied consent*." 18 U.S.C. § 1839(5); 12 Pa. Cons. Stat. § 5302 (emphasis added).

Federal courts recognize that credit union members' account information and data are not protectable trade secrets because they have "no independent economic value."  *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1087 (D. Colo. 2018) (granting motion to dismiss trade secrets claim with prejudice).  This is so because "[p]ayment card data (including cardholder names, credit or debit card numbers, and corresponding CVVs) are akin to passwords and usernames that provide *access to something of value*" and, thus, lack any independent economic value as they are merely the "key" that guards the presumably valuable information, but not the valuable information itself.  *Id.*  Member account data are also not trade secrets because members have no obligation to keep the information secret–indeed, disclosure of

account numbers and balances to third parties "make[s] the [information] valuable because it provides access to . . . money in the account." *See id.* at 1088.  Put simply, the information is valuable because it is disclosed, not because it is kept secret.  Here, too, the member information and data Bessemer claim as "trade secrets" have no independent economic value; rather, that information is either already publicly available (member addresses), derives value from being shared with others (member account numbers that permit crediting and debiting from accounts once shared with third parties), or is simply a key to the accounts without actual access to the thing of value.  Bessemer's new allegation that it required "its members to maintain the confidentiality of online banking access codes" does not affect this analysis.  There is a "difference between information that is kept secret, and secret information that has independent economic value." *N. Star Media, LLC v. Winogradsky-Sobel*, 2011 WL 13220157, at \*10 (C.D. Cal. May 23, 2011).

Even if Bessemer's member information was protectable, Bessemer's claims fail because Bessemer does not plausibly allege that Fiserv Solutions "misappropriated" the information – either through acquisition by "improper means," or through disclosure[13] or use "without express or implied consent."  The Master Agreement expressly authorizes Fiserv Solutions to access and use Bessemer's member data until deconversion is complete.  Bessemer's claims fail.

### F.     Bessemer's Unjust Enrichment Claim Fails.

The existence of a contract prevents a party from bringing a claim for unjust enrichment. *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019).  When a contract

---

[13] Although the PUTSA and DTSA do not define the term, the common meaning of "disclosure" is "[t]he act or process of making known something that was previously unknown; a revelation of facts." *Black's Law Dictionary* (10th Ed. 2014).  This definition describes affirmative actions to reveal information.  In contrast, Bessemer's claims of improper disclosure rest entirely on the allegation that Fiserv Solutions employed inadequate or deficient security measures to prevent unauthorized access.  (SAC ¶ 307.)  Bessemer does not allege any actual or affirmative disclosure and has not alleged a cause of action. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 784 (W.D.N.Y. 2017) (holding that "a negligent, and even knowing, release of [information] to unauthorized individuals" is not a disclosure).

exists, unjust enrichment is permitted only where either: (i) the contract governs only a part of the relation between the parties; or (ii) the validity or existence of such a contract is disputed. *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017). Here, the Master Agreement "constitutes the complete and exclusive statement of the agreement between the parties." (SAC, Ex. 2, § 11(b).) Count XI should be dismissed.

## IV. BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW.

### A. Bessemer's Contract Claim Fails Because It Does Not Identify the Contractual Provisions Fiserv Solutions Allegedly Breached.

It is axiomatic that "[i]n order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached." *Barker v. Time Warner Cable, Inc.*, 923 N.Y.S.2d 118, 120 (N.Y. App. Div. 2011). It is not enough for a plaintiff to simply allege that the factual conduct the plaintiff pleaded "breached the contract," rather, the plaintiff must "set forth the particular terms of the contract upon which plaintiff's claim is based." *Woodhill Elec. v. Jeffrey Beamish, Inc.*, 904 N.Y.S.2d 232, 232 (N.Y. App. Div. 2010).

Here, Bessemer uses more than fifty paragraphs to detail the "deficiencies" that allegedly plagued Fiserv Solutions' security systems and services. (*See* SAC, ¶¶ 44–86, 116–27.) Yet, Bessemer never identifies a single provision of the Master Agreement that was allegedly breached. Instead, Bessemer supports its breach-of-contract claim with articles from industry commentators, unverified third-party opinions, and extraneous statements beyond the four corners of the Master Agreement. (*Id.*, ¶¶ 24, 29–31, 39–42, 44–46, 51–52, 61.) It is clear that Bessemer either cannot allege any facts demonstrating breach of a specific obligation under the Master Agreement or it intentionally declined to cite specific provisions of the Master Agreement in attempt to avoid application of the gist of the action and economic loss doctrines. Because Bessemer does not

identify any specific provision of the Master Agreement that Fiserv Solutions breached by way of the allegedly "deficient" practices and services, Bessemer's contract claim fails.

### B.   Bessemer's Requested Declaratory Relief Is Contrary to the Unambiguous Terms of the Master Agreement.

In Count XIII, Bessemer seeks "on behalf of itself and its members . . . a declaration concerning the parties' rights with respect to Bessemer's member information." (*Id.*, ¶ 335.)[14]   In particular, Bessemer seeks a declaration that it, rather than Fiserv Solutions, owns the data, reports, documents, and information that Fiserv Solutions generated with respect to Bessemer.   (*Id.*, ¶¶ 333–36.)   That requested relief cannot be squared with the Master Agreement's unambiguous terms, which make clear that "all information, reports, studies, object and source code . . . flow charts, diagrams, specifications, and other tangible or intangible material of any nature whatsoever produced by Fiserv or jointly with the client . . . through or as a result of or related to [performance of the agreement] . . . shall be the sole and exclusive property of Fiserv or its Affiliates." (*Id.*, Ex. 2, § 3(c).)   The sole exception to this rule is "Client Information," which, in practice, means the information ***provided to Fiserv Solutions*** by Bessemer, not the information and reports ***generated by Fiserv Solutions'*** proprietary services performed under the Master Agreement.   (*Id.*, Ex. 2, § 3(a)(i).)   Nowhere does Bessemer allege that Fiserv Solutions did not return Bessemer's Client Information as part of the deconversion.   Fiserv Solutions does not claim, and has never claimed, that it owns that Client Information. There is no legitimate controversy whether Fiserv Solutions retains ownership of the information and reports it generated during its performance under the

---

[14]   Bessemer purports to bring this count on behalf of its members via the doctrine of associational standing.  (*Id.*, ¶¶ 11, 331, 335.)  Bessemer asserts that its members "otherwise have standing to sue Fiserv in their own right."  (*Id.*, ¶ 11.)  That assertion is conclusory and Bessemer makes no "specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm."  *Art & Antique Dealers League of Am, Inc. v. Seggos*, 2019 WL 416330, at *2 (S.D.N.Y. Feb. 1, 2019).  Instead, Bessemer repeatedly states that (unidentified) "members have suffered and will continue to suffer damages and harm."  (SAC ¶¶ 219, 234, 251, 269, 279, 290, 300, 314, 320, 328.)  Such "generalized, non-concrete allegation[s] [are] insufficient to confer associational standing."  *Id.* at *3.

agreement.  Accordingly, Count XIII fails.  *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 40–41 (3d Cir. 1985) ("A declaratory judgment is available only so long as there is an actual controversy among the parties.").

### C.     Bessemer Does Not State a Claim Related to the October 2018 Letter.

Bessemer asserts claims for a breach of contract (Count I) and promissory estoppel (Count XII) related to the purported "Letter Agreement."  On its face, the letter shows that Fiserv Solutions did not promise to do anything beyond what the Master Agreement already required.  Moreover, Bessemer dismissed the Replevin Action without prejudice and has asserted nearly identical (and equally meritless) conversion and bailment claims here.  Thus, Bessemer has not alleged, and could not show, any damages or detrimental reliance.  Nothing about the "Letter Agreement" states a claim for breach of contract or promissory estoppel.

Bessemer filed the Replevin Action seeking to compel Fiserv Solutions to release its account data.  (SAC ¶ 159.)  As the first hearing date approached, Bessemer proposed to adjourn the hearing.  As the letter reflects, counsel for the parties then discussed a path to "deescalate things from the current litigation posture in order to facilitate a global resolution."  (*Id.*, Ex. 18.)  Nothing was "settled."  The letter expressly refers to the "remaining disagreements between the parties" and makes equally clear that the letter did not resolve them.  (*Id.*)  The letter confirms "Bessemer and Fiserv [would] work in good faith to negotiate a global resolution" of this case.  (*Id.*)  Obviously, the parties did not successfully resolve these issues, but that is not a breach.

Fiserv Solutions undertook no new obligations under the letter.  The letter recites specifically "that Fiserv [Solutions'] intent is ***to perform its contractual obligations under the Master Agreement fully, including with respect to Bessemer's plan to deconvert and transition to a new service provider***."  (*Id.* (emphasis added).)  In short, Fiserv Solutions did not make any promises in the letter, so it could not have broken any.  Whatever claims Bessemer may believe it

24

has under the Master Agreement itself, it has not alleged any facts sufficient to plead that Fiserv Solutions undertook any additional obligations in the October 2018 letter. As a result, it is simply not possible for Fiserv Solutions to have "breached" the letter.

Bessemer's promissory estoppel claim fails for the same reason. Although Bessemer attempts to repackage Fiserv Solutions' obligations with respect to deconversion as an independent claim, Fiserv Solutions' and Bessemer's obligations arise under the Master Agreement. Promissory estoppel cannot lie where the parties' promises are already governed by an enforceable agreement. *See Carlson v. Arnot-Ogden Mem'l Hosp*., 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."). This is particularly true where the promise is to do something one is already legally obliged to do.[15] *Tanenbaum v. Chase Home Fin. LLC*, 2014 WL 4063358, at *6 (E.D. Pa. Aug. 18, 2014) (holding promise "related to the performance of a written contract that already bound" the parties could not form the basis of promissory estoppel claim).

Finally, Bessemer does not allege any facts even suggesting that it was somehow damaged or detrimentally relied on the letter. Bessemer dismissed the Replevin Action without prejudice and was free to refile it at any time and has effectively done so here through its conversion and bailment claims. Bessemer withdrew its motion and dismissed the Replevin Action because it was going to lose and was not prepared to transition to a new vendor. That is not a claim.

## **CONCLUSION**

Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice, and without leave to replead.

---

[15] The doctrine is also "not required to avoid injustice because plaintiff also has the right to assert against the defendant the claims" for breach of contract under the Master Agreement, assuming *arguendo*, such claim can be proven. *See Baii Banking Corp. v. Atl. Richfield Co*., 1987 WL 14124, at *3 (S.D.N.Y. Sept. 17, 1987).

Dated:  November 13, 2019.

Respectfully submitted,

/s/ Brian C. Bevan
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Timothy J. Patterson (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
tjpatterson@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv,
Inc.*

**CERTIFICATE OF GOOD FAITH CONFERENCE:**
**DEFENDANTS' MOTION TO DISMISS**

I hereby certify that counsel for the Defendants attempted multiple times with no success, including sending two electronic mail messages and attempting to reach Plaintiff's counsel by telephone, to confer in good faith about the relief sought in Defendants' Motion to Dismiss and whether the deficiencies Defendants identified in Plaintiff's Second Amended Complaint could properly be cured by amendment.  As such, the parties were unable to reach agreement that the relief sought in Defendants' Motion to Dismiss is warranted or that the deficiencies could properly be cured by amendment.


/s/ Brian C. Bevan

Brian C. Bevan

*Counsel for Defendants, Fiserv Solutions, LLC and Fiserv, Inc.*

## CERTIFICATE OF SERVICE

I, Brian C. Bevan, hereby certify that a copy of the foregoing memorandum was served on the following counsel of record for Plaintiff via the CM/ECF system this 13th day of November, 2019.

Richard J. Parks
Pietragallo Gordon & Alfano
Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146

Charles J. Nerko
Joel S. Forman
VedderPrice P.C.
1633 Broadway, 47th Floor
New York, New York 10019
*Attorneys for Bessemer System Federal Credit Union*

/s/ Brian C. Bevan
Brian C. Bevan