# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>)   Case No. 2:19-cv-00624-MJH<br>) |
| **FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,** | )<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**
**AND PRAYER FOR PUNITIVE DAMAGES**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.     BESSEMER'S AGREEMENT NOT TO SEEK PUNITIVE DAMAGES IS
ENFORCEABLE AND APPLIES TO ALL OF ITS CLAIMS. ........................................ 1
      A.     New York Public Policy Does Not Invalidate Bessemer's Agreement. ................. 2
      B.     Bessemer's Agreement Not to Seek Punitive Damages Applies to All of
Bessemer's Claims and to Fiserv, Inc. ................................................................ 5

II.     THE JURY WAIVER IS ENFORCEABLE AS TO ALL CLAIMS AND BOTH
DEFENDANTS. ............................................................................................................ 7
      A.     Bessemer's Waiver was Knowing, Intentional, and Voluntary. ........................... 7
      B.     Bessemer's Fraud Claims Do Not Invalidate the Jury Trial Waiver. .................... 8
      C.     The Jury Waiver Unambiguously Applies to All of Bessemer's Claims and
to Fiserv, Inc. as an "Affiliate" of Fiserv Solutions, LLC. ................................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aamco Transmissions, Inc. v. Harris*,
    1990 U.S. Dist. LEXIS 7387 (E.D. Pa. Jun. 18, 1990)............................................................8

*Airport Mart, Inc. v. Dunkin' Donuts Franchising, LLC*,
    2019 U.S. Dist. LEXIS 162131 (S.D.N.Y. Sept. 16, 2019).....................................................1

*Bishop v. GNC Franchising, LLC*,
    2006 WL 2266251 (W.D. Pa. Jan. 13, 2006).........................................................................8

*Constellation Brands, Inc. v. Keste, LLC*,
    2014 WL 6065776 (W.D.N.Y. Nov. 13, 2014) ...................................................................3, 4

*In re DaimlerChrysler AG Secs. Litig.*,
    2003 U.S. Dist. LEXIS 21130 (D. Del. Nov. 19, 2003).........................................................6

*DTN, LLC v. Pioneer Hi-Bred Int'l, Inc.*,
    2018 U.S. Dist. LEXIS 193596 (D. Del. Nov. 14, 2018) .......................................................9

*Henricks Commerce Park, LLC v. Main Steel Polishing Co.*,
    2009 WL 2524348 (W.D. Pa. Aug. 18, 2009)........................................................................7

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F. 3d 171 (2d Cir. 2007)...................................................................................................8

*MS Dealer Service Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) ................................................................................................6

*Myplaycity, Inc. v. Conduit Limited*,
    2011 WL 3273487 (S.D.N.Y. Jul. 29, 2011) ..........................................................................4

*New Berry, Inc. v. Manitoba Corp.*,
    2019 U.S. Dist. LEXIS 18367 (W.D. Pa. Feb. 5, 2019) .........................................................1

*Nirvana Intern., Inc. v. ADT Sec. Services, Inc.*,
    525 Fed. Appx 12 (2d Cir. May 15, 2013).............................................................................3

*Stebok v. American Gen. Life & Accident Ins. Co.*,
    715 F. Supp. 711 (W.D. Pa. 1989), *aff'd* 888 F.2d 1382 (3d. Cir. 1989) ................................8

*Tomoka Re Holdings, Inc. v. Loughlin*,
    2004 U.S. Dist. LEXIS 8931 (S.D.N.Y. May 17, 2004) .........................................................4

*Tracinda Corp. v. DaimlerChrysler AG*¸
    502 F.3d 212 (3d Cir. 2007)..................................................................................................7

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005)....................................................................................................5

*U.S. Claims, Inc. v. Saffren & Weinberg*,
    2007 U.S. Dist. LEXIS 88022 (E.D. Pa. Nov. 29, 2007).......................................................5, 6

*Wash. Mut. Fin. Group, LLC v. Bailey*,
    364 F.3d 260 (5th Cir. 2004) ................................................................................................6

**State Cases**

*Kalisch-Jarcho, Inc. v. New York*,
    448 N.E.2d 413 (N.Y. 1983)..............................................................................................2, 3

*Marinaccio v. Town of Clarence*,
    986 N.E.2d 903 (N.Y. 2013).................................................................................................2

**INTRODUCTION**

Bessemer System Federal Credit Union ("Bessemer") clearly and unambiguously agreed not to seek punitive damages in any action arising out of or relating to the Master Agreement. This broad agreement forecloses its prayer for punitive damages against both Defendants. New York public policy does not mandate a different outcome. Additionally, Bessemer knowingly, intentionally, and voluntarily waived its right to a jury trial as to any claims or disputes arising under the Master Agreement. Fiserv, Inc., as an affiliate of Fiserv Solutions, LLC, is afforded the benefit of this jury waiver by the Master Agreement's express terms. Because all of Bessemer's claims in its Second Amended Complaint ("SAC") arise under the Master Agreement, this Court should strike Bessemer's jury demand as to all claims against both Defendants.

**ARGUMENT**

**I.    BESSEMER'S AGREEMENT NOT TO SEEK PUNITIVE DAMAGES IS ENFORCEABLE AND APPLIES TO ALL OF ITS CLAIMS.**

Courts in both New York and Pennsylvania routinely enforce agreements not to seek or recover punitive damages. *See, e.g.*, *Airport Mart, Inc. v. Dunkin' Donuts Franchising, LLC*, 2019 U.S. Dist. LEXIS 162131, at *24–26 (S.D.N.Y. Sept. 16, 2019); *New Berry, Inc. v. Manitoba Corp.*, 2019 U.S. Dist. LEXIS 18367, at *9–10 (W.D. Pa. Feb. 5, 2019). Such agreements are enforceable when entered into "knowingly, voluntarily and intentionally." *Airport Mart*, 2019 U.S. Dist. LEXIS 162131, at *24 (quotations and citations omitted). Here, Bessemer does not argue that its waiver was anything other than knowing, voluntary, and intentional. Instead, Bessemer relies on a flawed public policy argument, conclusory allegations of "willful" or "grossly negligent" conduct, and opportunistic pleading against an entity with no connection to the Master Agreement. Each argument fails.

1

### A. New York Public Policy Does Not Invalidate Bessemer's Agreement.

Bessemer argues that New York public policy "does not permit waivers of liability for willful or grossly negligent acts" and, thus, that Bessemer's agreement not to seek punitive damages is unenforceable. Bessemer rests this argument on three premises: (a) that New York public policy precludes limited waivers of punitive damages; (b) that Bessemer plausibly pleaded "willful" or "grossly negligent" conduct; and (c) that Defendants' conduct satisfied New York's narrow standard for awarding punitive damages on contractual claims. Each of these premises is false.

First, Bessemer mischaracterizes New York's public policy. Under New York law, disclaimers of liability are unenforceable in the face of "gross negligence" and "willful misconduct" when the disclaimer "exonerate[s] a party from liability ***under all circumstances***" or, put differently, "***grants[s] immunity***" to a wrongdoer despite behavior beyond "acceptable notions of morality." *See Kalisch-Jarcho, Inc. v. New York*, 448 N.E.2d 413, 416 (N.Y. 1983) (emphasis added). Contrary to Bessemer's contention, the public policy described in *Kalisch-Jarcho* does not invalidate limited disclaimers of punitive damages—it precludes only blanket exculpatory disclaimers of ***all*** liability. If *Kalisch-Jarcho* stood for the proposition Bessemer contends, it would mean that New York law prohibits any and all contractual disclaimers of punitive damages, no matter how narrowly defined, because the recovery of punitive damages always requires a showing of willful misconduct. *See Marinaccio v. Town of Clarence*, 986 N.E.2d 903 (N.Y. 2013) (holding that conduct justifying punitive damages must manifest "spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be willful or wanton" (citations omitted)). New York cases enforcing punitive damages waivers refute Bessemer's argument.

This distinction—which Bessemer glosses over—is evident in *Kalisch-Jarcho*. There, the defendant argued that an exculpatory clause wherein the plaintiff "***agree[d] to make no claim for damages***" regarding defendant's alleged misconduct insulated the defendant from liability absent a showing of bad faith. 448 N.E.2d at 380–82 (emphasis added). The court did not address the enforceability of a standalone punitive damages waiver. In contrast, the Master Agreement unequivocally reserves to Bessemer the right to pursue claims for contract damages against Fiserv Solutions (subject to certain agreed-to aggregate liability caps). (*See* SAC, Ex.2, § 7.) Section 7 does not, as Bessemer contends, "exonerate[] [Defendants] from liability under all circumstances." (Opp. Br. at 3.) Fiserv Solutions simply seeks to enforce Bessemer's voluntary punitive damages waiver; New York public policy does not invalidate that agreement.

*Second*, even New York public policy will not render a damages limitation unenforceable if the plaintiff's allegations of "gross negligence" and "willful misconduct" are mere conclusory labels or formulaic recitations of legal elements. *See, e.g.*, *Constellation Brands, Inc. v. Keste, LLC*, 2014 WL 6065776 (W.D.N.Y. Nov. 13, 2014) (dismissing request for consequential damages notwithstanding New York's public policy where plaintiff's allegations of gross negligence and willful misconduct were "entirely conclusory and fail[ed] to plausibly suggest that Defendant" engaged in such conduct); *Nirvana Intern., Inc. v. ADT Sec. Services, Inc.*, 525 Fed. Appx 12, 15 (2d Cir. May 15, 2013) (affirming dismissal of claim for damages in excess of contractual limitation where pleading did not plausibly suggest sufficiently egregious conduct).

Here, Bessemer invokes eight specific paragraphs of the SAC to argue that it "seeks punitive damages as redress for Fiserv's willful and grossly negligent acts." (Opp. Br. at 4 (citing SAC, ¶¶ 200–207).) None of these paragraphs allege any ***facts*** that evince gross negligence or willful misconduct. Instead, the gravamen of each paragraph is that Fiserv Solutions failed to

3

perform its obligations under the Master Agreement and that Bessemer's contractual expectations were frustrated. (SAC, ¶¶ 200–207.). From this, Bessemer summarily asserts that both Defendants' conduct was beyond the pale, tortious, and constituted "gross negligence" and "willful misconduct." (Opp. Br. at 4.)

Bessemer's self-selected labels and legal conclusions are not enough. "New York Courts set the bar quite high in placing misconduct within the exceptions, ***demanding nothing short of a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts***." *Myplaycity, Inc. v. Conduit Limited*, 2011 WL 3273487, at *7 (S.D.N.Y. Jul. 29, 2011) (emphasis added); *see also Keste,* 2014 WL 6065776 at *5–7 ("In Plaintiff's complaint, the allegations of intentional wrongdoing . . . do not plausibly plead the type of egregious conduct that is required to set aside a clause limiting damages."). Bessemer has not pleaded facts sufficient to invalidate its knowing and voluntary punitive damages waiver. Bessemer's demand for punitive damages should be stricken in its entirety.[1]

Finally, although New York law recognizes "the possibility of punitive damages on a contract claim" in limited circumstances, (Opp. Br. at 3), Bessemer's allegations do not trigger that possibility. To do so, Bessemer must have pleaded that Fiserv committed "a gross and wanton fraud upon the public." *Tomoka Re Holdings, Inc. v. Loughlin*, 2004 U.S. Dist. LEXIS 8931 (S.D.N.Y. May 17, 2004). As the Second Circuit has made clear, transactions "incident to an

---

[1] *Keste* refutes Bessemer's contention that the enforceability of its agreement not to seek punitive damages "should be reserved for the trier of fact." (Opp. Br. at 4.) In *Keste*, the court rejected an identical argument in light of the conclusory nature of the plaintiff's allegations of gross negligence and willful misconduct. *Keste*, 2014 WL 6065776, at *3, *5–7 (rejecting argument that the "enforceability of such a provision [limiting damages] is an issue of fact that cannot be resolved at the pleading stage" solely because complaint did not plausibly plead bad-faith conduct or gross negligence). The court did so without demanding that the defendant demonstrate "prejudice," as Bessemer contends is required. *See id.*; (Opp. Br. at 7.)

otherwise legitimate business" purpose do not constitute "a gross and wanton fraud upon the public" that warrants punitive damages. *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005). Here, Bessemer alleges nothing more than frustrated expectations stemming from Fiserv Solutions' performance under the Master Agreement as support for its punitive damages demand. (*See* SAC, ¶¶ 200–207.) These alleged performance deficiencies are precisely the type of transactions incident to otherwise legitimate business purposes for which punitive damages are not available under New York law.

### B. Bessemer's Agreement Not to Seek Punitive Damages Applies to All of Bessemer's Claims and to Fiserv, Inc.

In Section 7, Bessemer unequivocally agreed not to seek punitive damages "ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF WHETHER SUCH CLAIM ARISES IN TORT, CONTRACT, OR OTHERWISE." (*Id.*, Ex. 2, § 7.) This broad agreement extends to Bessemer's tort and statutory claims. *See, e.g.*, *U.S. Claims, Inc. v. Saffren & Weinberg*, 2007 U.S. Dist. LEXIS 88022, at *7 (E.D. Pa. Nov. 29, 2007) (holding that "broadly worded arbitration provision" that governed any dispute "arising under or relating to" the parties' agreement extended to "separate tort claims [that] ar[o]se out of the same facts as the breach of contract claims") (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005); *P&P Indus. v. Sutter Corp.*, 179 F.3d 861, 871–72 (10th Cir. 1999)).

Bessemer cannot avoid its punitive damages waiver merely by repackaging its contract claims as "tort" and statutory claims. Bessemer's SAC spends over 90 pages alleging conduct that describes how and why Fiserv Solutions failed to deliver on its promises and, thus, breached the Master Agreement. Specifically, that Fiserv Solutions implemented allegedly deficient security practices, (*id.*, ¶¶ 44–86, 116–27), misrepresented the capability of its practices, products, and services, (*id.*, ¶¶ 23–43, 129–34), and failed to properly "deconvert" Bessemer to its new service

5

provider, (*id.*, ¶¶ 180–99). That conduct is the very same conduct that supports each of Bessemer's non-contractual statutory and tort claims, and its propriety (or impropriety) must be defined by reference to the Master Agreement. Accordingly, Bessemer's agreement not to seek certain types of damages applies with equal force to Bessemer's non-contractual statutory and tort claims as it does to Bessemer's contract claim. *See U.S. Claims, Inc.*, 2007 U.S. Dist. LEXIS 88022, at *7.

Bessemer's agreement encompasses its "claims" against Fiserv, Inc. as well. Courts in this circuit and others recognize a non-signatory defendant's right to enforce contractual waivers and limitations clauses against a signatory plaintiff whose claims against the non-signatory are inextricably linked to the alleged misconduct of the signatory defendant. *See, e.g.*, *In re DaimlerChrysler AG Secs. Litig.*, 2003 U.S. Dist. LEXIS 21130, at *7 (D. Del. Nov. 19, 2003) ("Tracinda has alleged that all Defendants acted in concert with each other, and therefore . . . Tracinda is equitably estopped from arguing that the jury waiver applies to only certain defendants."); *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (recognizing a non-signatory's right to enforce arbitration provision against signatory when signatory asserts claims of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract"). This makes sense because otherwise contracting parties could avoid enforceable waivers simply through the creative expedient of naming (as Bessemer has done here) a holding company or other affiliate. *See Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (explaining that a plaintiff should not be permitted to claim the benefit of a contract and simultaneously avoid its burdens). Bessemer's punitive damages waiver is enforceable as to all claims against both Defendants.

## II. THE JURY WAIVER IS ENFORCEABLE AS TO ALL CLAIMS AND BOTH DEFENDANTS.

### A. Bessemer's Waiver was Knowing, Intentional, and Voluntary.

Bessemer correctly concedes that jury waivers are routinely enforced when entered into knowingly, intentionally, and voluntarily. (Opp. Br. at 8–9.); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007). To determine whether a waiver satisfies those conditions, courts consider whether: (1) there was "gross disparity in bargaining power" between the parties; (2) the "parties [were] sophisticated business entities"; (3) the parties had an "opportunity to negotiate the contract terms"; and (4) the "waiver provision was conspicuous." *Henricks Commerce Park, LLC v. Main Steel Polishing Co.*, 2009 WL 2524348, at *3 (W.D. Pa. Aug. 18, 2009). Contrary to Bessemer's contentions, those factors establish that Bessemer knowingly, intentionally, and voluntarily waived its right to a jury trial.

At all relevant times, Bessemer held itself out as a successful financial institution that has operated for over 70 years in an industry that, according to its own allegations, is highly regulated under federal law. Bessemer does not present, or even promise to present, a single fact (through declaration or otherwise) that it did not understand or appreciate the existence or impact of the Master Agreement's jury waiver. Such an assertion would strain credulity given the identical jury waiver in the parties' 2008 agreement; this has been part of the parties' relationship for over a decade. (Def's. Br. at 8, Ex. 1.) Bessemer does not present any evidence that the Master Agreement is anything other than a routine contract between two commercial entities. That Bessemer serves a specific socioeconomic population says nothing about its own capabilities, experience or sophistication; it is a federally-regulated financial institution after all.

Similarly, Bessemer does not plausibly contend that it lacked the opportunity to negotiate the terms of the Master Agreement, including the jury waiver. Neither Bessemer's opposition

7

brief, nor the allegations in the SAC, assert that Bessemer "lack[ed] meaningful choice about whether to accept" the jury waiver or that the waiver is "so one-sided as to be oppressive" and, thus, that it is part of an unenforceable adhesion contract.  *See Stebok v. American Gen. Life & Accident Ins. Co.,* 715 F. Supp. 711, 714 (W.D. Pa. 1989), *aff'd* 888 F.2d 1382 (3d. Cir. 1989).  Indeed, the jury waiver applies with equal force to both parties.  (SAC, Ex. 2, § 11(d).)  Instead, Bessemer grasps at straws by citing a *Wall Street Journal* article related to the financial technology industry that bears no relation to Fiserv Solutions' commercial relationship with Bessemer.  (Opp. Br. at 9–10.)  This article is not evidence, is inadmissible hearsay, and provides absolutely no insight into the circumstances surrounding the Master Agreement's negotiation or the parties' bargaining power.  Bessemer's allegations show nothing more than an arm's-length agreement between two businesses with the necessary acumen to make considered judgments regarding the contract that governs their relationship.  *See Aamco Transmissions, Inc. v. Harris*, 1990 U.S. Dist. LEXIS 7387, at *5–10 (E.D. Pa. Jun. 18, 1990) (enforcing jury waiver against a franchisee with general business expertise and specific experience dealing with the opposing franchisor).

Bessemer's argument that the jury waiver provision was inconspicuous is unavailing.  The jury waiver is contained in a separate subsection entitled "<u>Governing Law; Jury Trial Waiver.</u>"  That is enough.  *See Bishop v. GNC Franchising, LLC*, 2006 WL 2266251, at *1 (W.D. Pa. Jan. 13, 2006) (finding provision titled "Jury Trial Waiver and Other Mutual Waivers" sufficiently conspicuous).

**B.     Bessemer's Fraud Claims Do Not Invalidate the Jury Trial Waiver.**

Claims of fraudulent inducement invalidate otherwise enforceable jury waivers only when a party alleges that the specific waiver itself was induced through fraud.  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F. 3d 171, 188 (2d Cir. 2007); *Aamco Transmissions*, 1990 U.S. Dist.

8

LEXIS 7387, at *16 ("[T]o invalidate an otherwise valid jury waiver provision, the allegation of fraud must incorporate an allegation that the jury-waiver clause itself was procured by fraudulent means."). The SAC contains no allegation that the jury waiver itself was fraudulently induced. Bessemer concedes that it alleges only that "Fiserv's fraudulent misrepresentations caused Bessemer to enter into the Master Agreement." (Opp. Br. at 11; SAC, ¶ 256.) Such generalized allegations are insufficient to invalidate an otherwise valid jury waiver as a matter of law.

### C. The Jury Waiver Unambiguously Applies to All of Bessemer's Claims and to Fiserv, Inc. as an "Affiliate" of Fiserv Solutions, LLC.

The Master Agreement's jury waiver is not "limited," as Bessemer contends. (Opp. Br. at 12.) It explicitly applies to "the resolution of ***any dispute or claim between the parties or any of their respective Affiliates under the Agreement.***" (SAC, Ex. 2, § 11(d) (emphasis added).) It is well settled in this Circuit that jury waivers as to all claims "arising under" an agreement encompass tort claims grounded in factual allegations that mirror those forming the basis for the plaintiff's breach-of-contract claim. *See, e.g.*, *DTN, LLC v. Pioneer Hi-Bred Int'l, Inc.*, 2018 U.S. Dist. LEXIS 193596, at *2–5 (D. Del. Nov. 14, 2018) (holding that a broad jury waiver for all claims that were "based upon" or "ar[o]s[e] out of" the parties' agreement precluded a jury trial on claims for tortious interference, unfair competition, and unjust enrichment because the propriety of the defendant's alleged tortious conduct was governed by the parties' agreement).

Effectively conceding that all of its tort and statutory claims arise under the obligations that the Master Agreement imposes, Bessemer can only point to isolated factual allegations relating to: (1) a single email from 2012 and (2) the manner in which Fiserv Solutions "deconverted" Bessemer at the expiration of the Master Agreement. (Opp. Br. at 12–13.) But, as described in the Defendants' motion to dismiss, this cherry-picked email does not plausibly allege fraud. (Def's Br. at 15, Ex. 1.) Even if it did, however, it has nothing to do with the jury waiver and does not

9

plausibly allege that the waiver itself was fraudulently induced.  And, notwithstanding Bessemer's claim to have "terminated" the Master Agreement (despite continuing to accept performance from Fiserv Solutions for more than a year), Fiserv Solutions' obligations with respect to deconversion are defined exclusively by the Master Agreement; Bessemer alleges as much, (*see* SAC, Ex. 2, § 8(e) (describing Fiserv Solutions' obligations associated with deconversion and the return of "Client Files").).  Bessemer has not plausibly alleged any claim that does not "arise" under the Master Agreement.

The jury waiver applies with equal force to Fiserv, Inc.  By its express terms, the waiver applies to the parties "or any of their respective Affiliates." (*Id.*, § 11(d).)  Fiserv Solutions, LLC is the same legal entity as the Master Agreement's original signatory, Fiserv Solutions, Inc. (Defs' Br. at 2, n.1.)  Fiserv, Inc. was an "Affiliate" of Fiserv Solutions, Inc. at the time the Master Agreement was executed and has remained an "Affiliate" of Fiserv Solutions, LLC at all relevant times since Fiserv Solutions, Inc.'s business conversion to a limited liability company. (*Id.*)  Thus, Fiserv, Inc. can enforce the jury waiver.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order striking Bessemer's jury demand and punitive damages demand.

Dated:  November 27, 2019.

                        Respectfully submitted,

/s/ **Timothy J. Patterson**
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Timothy J. Patterson (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
tjpatterson@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

**CERTIFICATE OF SERVICE**

I, Timothy J. Patterson, hereby certify that a copy of the foregoing brief was served on the following counsel of record for Plaintiff via the CM/ECF system this 27th day of November, 2019.

Richard J. Parks
Pietragallo, Gordon, Alfano,
Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146

Charles J. Nerko
Offit Kurman, P.A.
10 East 40th Street, 35th Floor
New York, NY 10016
*Attorneys for Bessemer System Federal Credit Union*

/s/  **Timothy J. Patterson**
Timothy J. Patterson