# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. 2:19-cv-00624-MJH |
| **FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,** | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## **TABLE OF CONTENTS**

### **CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW. ......................... 2

    A.    Public Policy Does Not Invalidate the Parties' Allocation of Risk. ...................... 2

    B.    Bessemer Disclaimed Reliance, and the Peculiar Knowledge Exception is Inapplicable. ........................................................................................................ 4

II.    THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR BESSEMER'S TORT CLAIMS. ....................................................................................... 6

    A.    Gist of the Action Doctrine .................................................................................. 7

    B.    Economic Loss Doctrine ....................................................................................... 8

III.    SEVERAL COUNTS INDEPENDENTLY FAIL TO STATE A CLAIM. ..................... 10

    A.    Bessemer's "Unfair Trade Practices" Claim Fails. ............................................. 10

    B.    Bessemer Does Not Plausibly Plead Fraud. ........................................................ 11

    C.    Bessemer's Conversion and Bailment Claims Fail as a Matter of Law. .............. 12

    D.    Bessemer Does Not Allege Facts That Establish a "Special Relationship." ........ 12

    E.    Bessemer Does Not Plausibly Plead Trade Secret Claims. .................................. 13

    F.    Bessemer's Unjust Enrichment Claim Fails. ....................................................... 13

IV.    BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW. ..................... 14

    A.    Bessemer Does Not Adequately Plead a Breach of Contract Claim. ................... 14

    B.    The Master Agreement Precludes Bessemer's Claim for Declaratory Relief. .................................................................................................................. 14

    C.    Bessemer Does Not Plausibly Plead Contract or Promissory Estoppel Claims Related to the October 2018 Letter. ......................................................... 15

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amberg-Blyskal v. Transportation Sec. Admin.*,
 2011 WL 4470883 (E.D. Pa. Sept. 26, 2011) ........................................................................12

*Amvest Corp. v. Anderson Equip. Co.*,
 2008 WL 4890881 (W.D. Pa. Nov. 12, 2008) ........................................................................11

*Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*,
 651 F. Supp. 718 (W.D. Mo. 1986) ......................................................................................10

*Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*,
 2019 WL 1978429 (W.D. Pa. May 3, 2019)............................................................................9

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
 353 F. Supp. 3d 1070 (D. Colo. 2018) ..................................................................................13

*Bioquell, Inc. v. Feinstein*,
 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ........................................................................13

*Brawner v. Educ. Mgmt. Corp.*,
 513 F. App'x 148 (3d Cir. 2013) (*per curiam*) ......................................................................11

*Bucci v. Wachovia Bank, N.A.*,
 591 F. Supp. 2d 773 (E.D. Pa. 2008) ..............................................................................12, 13

*Constellation Brands, Inc. v. Keste, LLC*,
 2014 WL 6065776 (W.D.N.Y. Nov. 13, 2014) ......................................................................2

*Duhring Res. Co. v. United States*,
 775 F. App'x 742 (3d Cir. 2019) ............................................................................................8

*Enslin v. The Coca-Cola Co.*,
 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd* 739 F. App'x 91 (3d Cir. 2018) .........................12

*Greenwood Land Co. v. Omnicare, Inc.*,
 2011 WL 33027 (W.D. Pa. Jan. 5, 2011).................................................................................6

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
 748 F.2d 729 (2d Cir. 1984).....................................................................................................5

*Hollander v. Etymotic Research, Inc.*,
 726 F. Supp. 2d 543 (E.D. Pa. 2010) ....................................................................................11

*Hospicomm, Inc. v. Fleet Bank, N.A.*,
    338 F. Supp. 2d 578 (E.D. Pa. 2004) ...................................................................7

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997).............................................................................6

*Myplaycity, Inc. v. Conduit Limited*,
    2011 WL 3273487 (S.D.N.Y. July 29, 2011) ........................................................2

*New Berry, Inc. v. Manitoba Corp.*,
    2019 WL 452493 (W.D. Pa. Feb. 5, 2019) ............................................................9

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec.
    Corp.*,
    2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ...........................................................3

*Parkland Servs., Inc. v. Maple Leaf Foods, Inc.*,
    2013 WL 1688871 (E.D. Pa. Apr. 18, 2013) ........................................................8

*Pennsylvania State Employees Credit Union v. Fifth Third Bank*,
    398 F. Supp. 2d 317 (M.D. Pa. 2005) ..................................................................9

*Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*,
    2000 WL 876728 (E.D. Pa. June 29, 2000).........................................................12

*Pittsburgh Logistics Sys., Inc. v. LaserShip, Inc.*,
    2019 WL 2443035 (W.D. Pa. June 12, 2019).......................................................8

*Psenicska v. Twentieth Century Fox Film Corp.*,
    409 F. App'x 368 (2d Cir. 2009) .........................................................................5

*Sarpolis v. Tereshko*,
    625 F. App'x 594 (3d Cir. 2016) .......................................................................11

*SEI Investments Glob. Funds Servs. v. Citibank, N.A.*,
    100 F. Supp. 3d 447 (E.D. Pa. 2015) ...................................................................7

*Tanenbaum v. Chase Hom Fin. LLC*,
    2014 WL 4063358 (E.D. Pa. Aug. 18, 2014) ......................................................15

*Troxler v. Capital One Bank (USA), N.A.*,
    2017 U.S. Dist. LEXIS 154348 (M.D. Pa. Sept. 21, 2017) ....................................14

*Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*,
    149 F.3d 134 (2d Cir. 1998)................................................................................6

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ...............................................................................8

*Wildfire Credit Union v. Fiserv, Inc.*,
2015 WL 13840889 (E.D. Mich. Aug. 10, 2015) ...................................................5

**State Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
967 N.E.2d 666 (N.Y. 2012) ...................................................................................3

*Citibank, N.A. v. Plapinger*,
66 N.Y.2d 90 (N.Y. 1985) ......................................................................................5

*Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*,
2013 WL 3421916 (Tenn. Ct. App. July 3, 2013) ...............................................3, 9

*Danann Realty Corp. v. Harris*,
157 N.E.2d 597 (N.Y. 1959) ................................................................................5, 6

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) ....................................................................................8, 9

*Gramore Stores Inc. v. Bankers Trust Co.*,
93 Misc. 2d 112 (Sup. Ct. N.Y. Cty. Feb. 14, 1978) ..............................................4

*Jesmer v. Retail Magic, Inc.*,
55 A.D.3d 171 (N.Y. App. Div. 2008) ....................................................................5

*Kalisch-Jarcho, Inc. v. New York*,
448 N.E.2d 413 (N.Y. 1983) ...................................................................................3

*Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*,
151 A.D.3d 607 (N.Y. App. Div. 2017) ..................................................................4

*Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*,
381 N.E.2d 1337 (Ohio Ct. App. 1978) .................................................................10

*Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*,
574 A.2d 641 (Pa. Super. Ct. 1990) ......................................................................10

**State Statutes**

73 Pa. Cons. Stat. § 201-9.2 ...............................................................................10

Ohio Rev. Code § 1345.01 ....................................................................................10

**Rules**

Fed. R. Civ. P. 12(e) ............................................................................................14

## **INTRODUCTION**

Fiserv Solutions and Bessemer were contractual parties for some 40 years.  Currently, the Master Agreement gives rise to the parties' relationship, defines their rights, remedies, and applicable standards of care, and identifies the specific warranties made regarding the products and services that Fiserv Solutions provided.  As commercial parties typically do, Fiserv Solutions and Bessemer agreed that their only remedies would be contractual ones.  This allocation of risk pervades the Master Agreement – through the disclaimer of tort claims, the non-reliance representation, the waiver of punitive damages, the agreement that Bessemer was solely responsible for determining the suitability of Fiserv Solutions' products and services, among other provisions.  But even absent that contractual allocation, the law – specifically the gist of the action and economic loss doctrines – would compel the same result, precluding resort to "tort" remedies in favor of the agreed allocation of risk.  Whether alone or in combination, the Master Agreement and these well-established doctrines bar Bessemer's tort and statutory claims as a matter of law.

Unable to escape these basic points, Bessemer sets up a straw man: "The gravamen of Fiserv's motion is that *all* of Bessemer's claims fail because the Master Agreement insulates Fiserv from liability for any conceivable harm it could ever inflict on a financial institution and the thousands of consumers it serves."  (Opp. Br. at 1 (emphasis original).)  Not so.  Assuming it can plead and prove entitlement, Bessemer can exercise its remedies under the Master Agreement.  It may not, however, ignore the parties' Agreement because it does not like the remedies it negotiated.  Bessemer is so myopically focused on avoiding the Master Agreement and telling a salacious story that it has failed, now thrice, to plead even a breach of contract claim.  Bessemer

is content to traffic in hyperbole and accusation, badly mischaracterizing Defendants' arguments, case law and even the statements of Defendants' counsel to this Court.[1]  None of this states a claim.

## ARGUMENT

### I.  BESSEMER'S TORT CLAIMS ALL FAIL AS A MATTER OF LAW.

#### A.     Public Policy Does Not Invalidate the Parties' Allocation of Risk.

Bessemer disclaimed its right to recover "tort damages arising out of or relating to" the Master Agreement.  (SAC, Ex. 2, § 7.)  "New York Courts set the bar quite high" to invalidate such contractual disclaimers, "demanding . . . a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts." *Myplaycity, Inc. v. Conduit Limited*, 2011 WL 3273487, at *7 (S.D.N.Y. July 29, 2011).  Bessemer cannot meet that standard.

The SAC tries to invalidate the Master Agreement's express limitation on tort remedies by merely tacking on to its allegations the words "intentional," "willful," and "gross negligence." (SAC, ¶¶ 200–07.)   But, "[r]epeated incantations of the word 'willful' do not magically transform . . . [an alleged] breach into the egregious conduct required to negate an unambiguous contract term negotiated by sophisticated parties." *Constellation Brands, Inc. v. Keste, LLC*, 2014 WL 6065776, at *5–7 (W.D.N.Y. Nov. 13, 2014).  Bessemer claims that Fiserv Solutions failed to adequately perform under the Master Agreement – alleging purported security issues, (*id.*, ¶¶ 44-78), simple errors in automated reports and account statements, (*id.*, ¶¶ 87-98), inaccurate representations of product capabilities, (*id.*, ¶¶ 121-27), and unfulfilled demands for reports and

---

[1]  Bessemer recklessly asserts that Defendants "falsely represented to the Court that it already provided Bessemer with all of the records" and "lied to the Court."  Defendants' counsel (Mr. Wronski) explained to the Court his belief that Fiserv Solutions had provided all the information requested, but made clear that if Defendants were mistaken, Fiserv Solutions would work cooperatively to provide the information.  (ECF No. 47, TRO Trans. at pp. 6-8.)  That statement was true, and Fiserv Solutions promptly provided the limited additional records that Bessemer identified during the parties' subsequent call involving the technical professionals.  Bessemer's accusation is unfortunate.

documents, (*id.*, ¶¶ 180-99).  These allegations do not establish the egregious conduct New York law requires to vitiate an agreed-upon disclaimer of liability.  *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2002 WL 362794, at *16 (S.D.N.Y. Mar. 6, 2002) (enforcing tort disclaimer because plaintiff's allegations fell short of "extreme degrees of careless behavior such as gross negligence or willful misconduct").

Bessemer also mischaracterizes New York's public policy.  Under New York law, contractual disclaimers are unenforceable in the face of "gross negligence" and "willful misconduct" when the disclaimer "exonerate[s] a party from liability *under all circumstances*" or, put differently, "*grants[s] immunity*" to a wrongdoer despite behavior beyond "acceptable notions of morality."  *See Kalisch-Jarcho, Inc. v. New York*, 448 N.E.2d 413, 416 (N.Y. 1983) (emphasis added).  *Kalisch-Jarcho* does not invalidate limited tort disclaimers – it precludes only blanket exculpatory disclaimers of *all* liability.  This is Bessemer's straw man.  Defendants do not contend that the Master Agreement insulates Fiserv Solutions from "all" liability.  (Opp. Br. at 1.)  Defendants acknowledge that the Master Agreement reserves to Bessemer the right to pursue claims for contract damages. (SAC, Ex. 2, § 7).  That is precisely the point – Bessemer must exercise whatever contractual remedies it has, and may not resort to "tort" claims because it is unhappy with the remedies it negotiated.

Bessemer's characterization of its authorities cannot withstand a fair and careful reading.  In *Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*, 2013 WL 3421916 at *6 (Tenn. Ct. App. July 3, 2013), the court expressly declined to consider whether the plaintiff sufficiently pleaded gross negligence; the case stands for nothing on that point.  Moreover, several of the decisions Bessemer cites permitted the claimants to pursue only contract claims – not tort claims – in the presence of gross negligence or willful misconduct.  (*Contra* Opp. Br. at 9-10.); *See Abacus Fed.*

*Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 670 (N.Y. 2012) ("[W]e conclude that the complaint did not allege conduct that would give rise to separate liability in tort. Here, the allegations that a breach of contract occurred as a result of gross negligence does not give rise to a duty independent of the contractual relationship."); *Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*, 151 A.D.3d 607, 608 (N.Y. App. Div. 2017) (permitting only contract claims where contract expressly permitted claims for gross negligence).[2]   Public policy does not invalidate Bessemer's tort disclaimer.

### B.   Bessemer Disclaimed Reliance, and the Peculiar Knowledge Exception is Inapplicable.

Bessemer expressly disclaimed reliance on "representations, conditions or warranties" not contained in the Master Agreement, (SAC, Ex. 2, § 6(c)), including anything "not embodied" in the Master Agreement, any "correspondence preceding the execution of this Agreement," or "any statement concerning products or service usage," (SAC, Ex. 2, § 11(b)).  Bessemer assumed the obligation to "independently evaluate[]" whether Fiserv Solutions' deliverables met its needs and agreed that Fiserv Solutions did not represent that the deliverables would be "UNINTERRUPTED OR ERROR-FREE."  (*Id.*, Ex. 2, § 6(c).)  Nonetheless, Bessemer now contends that it relied on extra-contractual statements (principally an excerpt of a single email) regarding the deliverables' adequacy.  (SAC, ¶¶ 29-30.)  As Fiserv Solutions has explained, Bessemer may not rely on the very type of statement it expressly agreed that it had not relied on (and would not rely on) – a pre-contractual statement regarding the adequacy of Fiserv Solutions' products.

---

[2] Bessemer's reliance on *Gramore Stores Inc. v. Bankers Trust Co.*, 93 Misc. 2d 112, 114-15 (Sup. Ct. N.Y. Cty. Feb. 14, 1978) is equally misplaced.  That case dealt with a bank's liability for losing a bag of cash deposited in its night facility deposit box.  *Id.*  The court noted that a bank can limit its liability but cannot completely exculpate itself without any reference to standard of care.  *Id.*  The Master Agreement does not purport to exculpate either party from all liability—it simply limits their remedies to those agreed upon in the Master Agreement.

Bessemer argues that absent specific references to the Virtual Branch System, FFIEC requirements, and the 2012 email, the disclaimer cannot not bar its misrepresentation claims. (Opp. Br. at 11-12.)  That is not the law.  There is no requirement of "precise identity between the misrepresentation and the particular disclaimer," as long as "the substance of the disclaimer provision tracks the substance of the alleged misrepresentation, notwithstanding semantical discrepancies."  *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984); *see also Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 95 (N.Y. 1985) ("It is unrealistic in such circumstances to expect an express stipulation that defendants were not relying on a separate oral agreement . . . when they themselves have denominated their obligation unconditional.").[3]  These cases were decided well after *Dannan*; Bessemer's assertion that a disclaimer of reliance must specifically identify every particular pre-contractual statement to be effective finds no support in logic or New York law.

Commercial parties regularly disclaim reliance on extra-contractual statements in order to ensure that their partners are not relying upon unknown or misunderstood previous statements, a mistake, or something that was never uttered or written.  This encourages parties to be deliberate and thorough in their negotiations.  That is the purpose of express warranties and attendant disclaimers of extra-contractual representations and warranties – delineating expectations before entering into a transaction.  Courts routinely enforce these negotiated allocations of risk.  *See, e.g.*, *Wildfire Credit Union v. Fiserv, Inc.*, 2015 WL 13840889, at *4 (E.D. Mich. Aug. 10, 2015) (integration and anti-reliance provisions barred all misrepresentation claims).  "To hold otherwise

---

[3] Bessemer's contention that it did not specifically disclaim claims for fraud is meritless.  Bessemer disclaimed reliance, and "reasonable reliance is an essential element of fraudulent inducement" and Bessemer's other misrepresentation claims.  *See Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009).  And Bessemer's reliance on *Jesmer v. Retail Magic, Inc.*, 55 A.D.3d 171, 184 (N.Y. App. Div. 2008), is puzzling.  (Opp. Br. at 11.)  *Jesmer* was exclusively a contract case, asserting claims for breach of warranty.  *Id.* at 184.  The case presented no fraud claims, offered no discussion whatsoever about non-reliance representations, and focused on what is required to disclaim an express warranty under the Uniform Commercial Code.  It lends no aid to Bessemer.

would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact." *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 600 (N.Y. 1959).

Bessemer tries to invoke the peculiar knowledge exception, but that exception addresses only "circumstances where a party would face high costs in determining the truth or falsity of an oral representation" and does not apply where a party "could have insisted that the written contract terms reflect any oral undertaking on a deal-breaking issue." *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998). Bessemer could have insisted that the Master Agreement include the statements and standards on which it now claims to have relied. (Had it done so, Bessemer could attempt to plead a breach and exercise its contract remedies.) "Failure to insert such language into the contract – by itself – renders reliance on the misrepresentation unreasonable as a matter of law." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997). Bessemer never claims that the costs of determining whether these services were suitable were too high; to the contrary, Bessemer promised to perform its own due diligence and independent investigation in the Master Agreement. This, too, defeats the peculiar knowledge exception. *See Warner*, 149 F.3d at 136.

## II. THE GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES BAR BESSEMER'S TORT CLAIMS.

The parties' respective duties are created by and rooted in contract. Courts recognize that a "party should not be permitted to disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement." *Greenwood Land Co. v. Omnicare, Inc.*, 2011 WL 33027, at *4 (W.D. Pa. Jan. 5, 2011) (internal citations and quotations omitted). The gist of the action and economic loss doctrines prevent this.

A.    **Gist of the Action Doctrine**

Bessemer claims to have pleaded duties independent of the Master Agreement because Fiserv Solutions' purported acts and omissions "violate broad social duties that are separate and distinct from, and collateral to, any specific executory contractual promises Fiserv Solutions made to Bessemer." (Opp. Br. at 13.)  Not only is this argument circular and conclusory, it ignores that the Master Agreement comprehensively defines Fiserv Solutions' obligations with respect to all of its alleged wrongdoings.  (*See* SAC, Ex. 2, § 4 (data security); § 10(b) (billing records and invoices); ASP Services Exhibit, § 4(e) (performance standards); ASP Services Exhibit, § 4(f) (errors relating to services); ASP Services Exhibit, § 5(e) (accuracy of reports and account errors); ASP Services Exhibit, § 8(e) (ownership, possession, and return of data); and ASP Services Exhibit, § 10 (fees and pricing).)  Indeed, in Pennsylvania, the duties a bank owes directly "to its [own] customers are created through contract rather than tort."  *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 583 (E.D. Pa. 2004).  It defies logic that Fiserv Solutions, as a vendor to a credit union, somehow owes non-contractual duties directly to Bessemer or its customers.

Further, Section 4(a) of the Master Agreement refutes Bessemer's contention that Fiserv Solutions breached an independent duty to warn that its online system was insecure and vulnerable to hackers.  (Opp. Br. at 13.)  In Section 4(a), the Master Agreement describes Fiserv Solutions' obligations with respect to notifying Bessemer of incidents of "unauthorized access," which required "notification to [Bessemer] as soon as possible of any such incident." (SAC, Ex. 2, § 4(a).)  Although Fiserv Solutions denies that its system was insecure or failed to provide required notifications, the Master Agreement specifically delineates the scope of any such duties.  Indeed, Bessemer cites the same purported conduct as a basis for its breach of contract claim. (SAC, ¶ 218.)  "Where a tort claim alleges the same conduct as a contract claim, it cannot stand." *SEI Investments Glob. Funds Servs. v. Citibank, N.A.*, 100 F. Supp. 3d 447, 454 (E.D. Pa. 2015).

Bessemer's misrepresentation claims are also inextricably linked to the duties in the Master Agreement.  Defendants' opening brief explained in detail why the gist of the action bars each of these claims.  (Def's Br. at 9-11.)  Ignoring the Master Agreement, Bessemer, without support, claims that Fiserv Solutions' duties emanate "from the larger social duties that are embodied in statutes and the law of torts."  (Opp. Br. at 14.)  Pennsylvania courts disagree.  *Parkland Servs., Inc. v. Maple Leaf Foods, Inc.*, 2013 WL 1688871, at *4 (E.D. Pa. Apr. 18, 2013) (barring fraudulent inducement claims "where the precontractual statements" concerned "specific duties that the parties later outlined in the alleged contract").[4]  Finally, Bessemer's attempt to rely on purported post-termination conduct, after April 2018, to evade the gist of the action doctrine is belied by the Master Agreement's provisions governing post-contractual obligations (*i.e.* return of property) and Bessemer's acknowledgement that it received services under the Agreement through May 2019.  (ECF No. 47, TRO Trans. at p. 5.)

### B.      Economic Loss Doctrine

Bessemer ignores the breadth of the economic loss doctrine, which bars tort and statutory claims seeking purely economic damages where the duties arise under a contract between the parties.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).

Bessemer's reliance on *Dittman v. UPMC,* 196 A.3d 1036, 1044 (Pa. 2018) is unpersuasive.[5]  (Opp. Br. at 14-15.)  There, the court held that an employer had a duty to exercise reasonable care in storing personal information that its employees were required to provide as a

---

[4] Bessemer's reliance on *Pittsburgh Logistics Sys., Inc. v. LaserShip, Inc.*, 2019 WL 2443035 (W.D. Pa. June 12, 2019) to assert that the gist of the action doctrine does not bar its trade secret claims misses the forest for the trees. (Opp. Br. at 14.)  Defendants have not asserted that the gist of the action doctrine bars Bessemer's statutory trade secret claims – only its tort claims.  Bessemer's trade secrets claims fail, like those in *Pittsburgh Logistics*, because Bessemer has not pleaded either the existence of a trade secret or misappropriation.

[5] *Duhring Res. Co. v. United States*, 775 F. App'x 742 (3d Cir. 2019) likewise has no application here.  *Id.* at 747. That case dealt with a claim for tortious interference pertaining to property dispute between a private plaintiff and the government. There was no contract between the parties.

condition of employment. *Id.* at 1047. Notably, the defendant was "not in the business of providing data security, was not retained to provide data security, [and] was not otherwise tasked with providing data security." *Id.* at 1045. The employer's obligations with respect to protecting this information were not defined by contract and, thus, the duties it owed to its employees with respect to storing electronic information were collateral to the employee-employer agreement. Here, the parties exhaustively defined their duties in the Master Agreement.

Since *Dittman*, courts look at the parties' contract to determine whether it creates and defines the parties' obligations; if so, the economic loss doctrine applies. *See, e.g.*, *Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, 2019 WL 1978429, at *5 (W.D. Pa. May 3, 2019) (barring tort claims because the duties were "created by the express terms of the parties' contract"). Here, "the essence of [Bessemer's] claim is a breach of contract. Any damages, that are due as a consequence of [Fiserv Solutions'] failure to perform such contractual dut[ies], are determined by the contract terms between the parties and contract law." *New Berry, Inc. v. Manitoba Corp.*, 2019 WL 452493, at *5 (W.D. Pa. Feb. 5, 2019) (economic loss doctrine barred negligence claims where products allegedly did not meet contractual specifications).

Finally, Bessemer's suggestion that *Dittman* presents a wholesale bar on the application of the economic loss doctrine to cases involving electronic information simply goes too far.[6] *See Pennsylvania State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 329 (M.D.

---

[6] Bessemer continues to misstate the holding in *Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*, 2013 WL 3421916 (Tenn. Ct. App. July 3, 2013) by suggesting that the court declined to apply the economic loss doctrine because it found an independent duty. (Opp. Br. at 15-16.) In fact, as Defendants have previously explained (Def.'s Br. at 12 n.6), the court expressly declined to consider the issue because "the trial court never considered nor ruled on it." *Id.* at *5. In *dicta*, however, the court suggested that the doctrine would not apply because there was no contract between Fiserv Solutions and the credit union that covered the services at issue. *Id.* ("This rule would appear to have no applicability to the case at the bar inasmuch as (a) the software produced was recommended but not sold by Fiserv; (b) the software product was not alleged to be defective; rather, Fiserv allegedly failed to activate it; and (c) the injury alleged was not merely to the product itself.").

Pa. 2005) (applying economic loss doctrine to dismiss credit union's negligence claim against retailer resulting from misappropriation of bank-card numbers from retailer's computer system).

## III.      SEVERAL COUNTS INDEPENDENTLY FAIL TO STATE A CLAIM.

### A.      Bessemer's "Unfair Trade Practices" Claim Fails.

Bessemer argues that it has pleaded a claim for unfair trade practices – relying on vague and conclusory allegations as support.  (Opp. Br. at 16.)  Notably, Bessemer does not allege when the acts occurred, who committed them, and who (including, which, if any of its members) were purportedly deceived.  Bessemer also fails to explain how the laws of New York or Wisconsin apply to this action.  Bessemer does not allege that even a single member suffered harm in New York or Wisconsin; it wants discovery to determine whether other state laws might apply.  But why would Bessemer not know where its members reside when it has been eighteen months since Bessemer filed this action?  Bessemer had a duty to investigate *before* filing its complaint.

With respect to Pennsylvania's and Ohio's unfair trade practices statutes, Fiserv Solutions' products and services fall well outside their purview – transactions for personal, family or household purposes.  73 Pa. Cons. Stat. § 201-9.2; Ohio Rev. Code § 1345.01.  Bessemer's only response is to cite *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 642 (Pa. Super. Ct. 1990), in an attempt to assert the (unspecified and unsupported) "claims" of its members.  Ohio courts prohibit credit unions from doing this.  *Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*, 381 N.E.2d 1337, 1339 (Ohio Ct. App. 1978).  That makes sense; Bessemer is a corporate entity distinct from its members.  *Anheuser-Busch Employees Credit Union v. Fed. Deposit Ins. Corp.*, 651 F. Supp. 718, 726 (W.D. Mo. 1986).  And, in *Valley Forge Towers*, the court simply applied a statute expressly authorizing the condo association to pursue claims on behalf of its members.  *Valley*, 574 A.2d at 642.  Nothing analogous exists here.

### B.      Bessemer Does Not Plausibly Plead Fraud.

Bessemer's fraud claims are (at best) allegations of deficient services provided under the Master Agreement.   To support its claims, Bessemer points to incidents of Fiserv Solutions' software system allegedly reporting erroneous information or falling short of expectations.   (Opp. Br. at 4-5.)   Remarkably, Bessemer concedes that it does not plead with the specificity Rule 9 demands (*i.e.,* "the who, what, when, where and how"), but clings to the argument that it can utilize "alternative means of injecting precision and some measure of substantiation into" the factual allegations supporting its fraud claim.   (Opp. Br. at 17.)   Bessemer fails to do even that.

Equally problematic, Bessemer fails to plead the essential legal elements of its fraud claim. *See Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 551 (E.D. Pa. 2010).   Bessemer does not allege facts suggesting that Fiserv Solutions made a false representation intended to mislead Bessemer or intended to induce Bessemer to enter the Master Agreement.   Its conclusory statements are not enough.   Indeed, although Bessemer repeatedly cites part of a 2012 email in support of its fraudulent inducement claim, Bessemer does not allege that the speaker knew the statement was false, intended to induce reliance, or that Bessemer relied on this statement in entering into the Master Agreement two years later.[7]   Similarly, Bessemer's fraud claims based on erroneous reports and account information fail to allege that anyone at Fiserv Solutions knew the reports were false when generated or intended to deceive Bessemer (or anyone else).

---

[7] As noted in Defendants' opening brief, Bessemer's fraudulent inducement claims are time-barred by Pennsylvania's 2-year statute of limitations.   Bessemer seeks to create a factual issue as to whether the discovery rule applies.   (Opp. Br. at 18, n.2.)   "The very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." *Amvest Corp. v. Anderson Equip. Co.*, 2008 WL 4890881, at *6   (W.D. Pa. Nov. 12, 2008). The Court can readily determine, at this stage, that the discovery rule does not apply. *Sarpolis v. Tereshko*, 625 F. App'x 594, 600 (3d Cir. 2016) (affirming order granting motion to dismiss because fraud claim was time barred and plaintiff failed to plead allegations to support equitable tolling); *Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 (3d Cir. 2013) (*per curiam*) (affirming grant of motion to dismiss as a matter of law regarding discovery rule).

## C.     Bessemer's Conversion and Bailment Claims Fail as a Matter of Law.

Bessemer argues that the Master Agreement defines its property rights and prohibits Fiserv Solutions from maintaining possession of Bessemer's records.  (Opp. Br. at 18-19.)  In doing so, Bessemer concedes that to prove its conversion claim, it must show a breach of the Master Agreement.  This is fatal to Bessemer's conversion claim.  *See Phoenix Four Grantor Tr. #1 v. 642 N. Broad St. Assocs.*, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) (where "rights to property are defined by a contract" a party cannot sue "in tort for conversion of that property").[8]

Similarly, Bessemer does not explain how the property at issue can plausibly give rise to a claim for bailment, given that electronically stored information is not "'property' or 'personalty' for the purposes of the law of bailment." *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015), *aff'd* 739 F. App'x 91 (3d Cir. 2018).  In any event, Bessemer does not dispute that it had access to this information throughout the parties' relationship.  Because Bessemer never relinquished control, it cannot state a claim for bailment.  *Amberg-Blyskal v. Transportation Sec. Admin.*, 2011 WL 4470883, at *3 (E.D. Pa. Sept. 26, 2011) (dismissing bailment claim because plaintiff did not plead that the defendant "exclusive[ly] possess[ed]" the property in question).

## D.     Bessemer Does Not Allege Facts That Establish a "Special Relationship."

Bessemer does not allege facts that establish a fiduciary or "special relationship."  For that reason, it cannot state a claim for constructive fraud or negligent misrepresentation.  *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008).  Bessemer tries to cite *Bucci* for the proposition that it need not establish a "special relationship" to assert a negligent misrepresentation claim.  (Opp. Br. at 21.)  But in *Bucci*, the court dismissed a negligent

---

[8]  Notably, in its opposition brief, Bessemer still fails to identify the specific property purportedly converted, which further requires dismissal.  (*See* Def's Br. at 17, n.12.)

misrepresentation claim precisely because the plaintiff did not sufficiently allege a fiduciary duty. *Id.* at 784. Bessemer does not allege a duty beyond the Master Agreement.

### E.      Bessemer Does Not Plausibly Plead Trade Secret Claims.

Bessemer's member data does not constitute a trade secret, and Bessemer has not plausibly pleaded misappropriation. Although Bessemer disagrees with the holding of *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070 (D. Colo. 2018), the most recent and factually analogous authority on this issue, it fails to cite any authority for the assertion that its account records and member data are trade secrets. The *Bellwether* decision makes clear that Bessemer's member information is not a trade secret because the information is either already publicly available, derives value from being shared with others, or is simply a key to accounts, not the thing of value itself (the money in the accounts). *See id.* at 1087-88. *Bellwether* also squarely rejects Bessemer's argument that the Court cannot decide this issue before fact discovery. Bessemer's wild allegations that Fiserv Solutions duped Bessemer into turning over this information (Bessemer was a client for some 40 years), held the information hostage (Bessemer used the data every day and there is no dispute that Fiserv Solutions transferred the data at deconversion), and that this information might be valuable to hackers (though no actual "hack" is alleged) does not overcome this fundamental deficiency.

Moreover, Bessemer's allegations of misappropriation are entirely conclusory and should be disregarded. *See Bioquell, Inc. v. Feinstein*, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010) (dismissing PUTSA claim because the complaint's allegations were merely a string of conclusory statements devoid of any factual basis).

### F.      Bessemer's Unjust Enrichment Claim Fails.

Bessemer argues that it can assert an unjust enrichment claim because the contract's existence is in dispute. (Opp. Br. at 23.) Earlier in its brief, however, Bessemer describes the

Master Agreement as a "binding contract[] under which Bessemer performed." (Opp. Br. at 6.) This is an egregious example of Bessemer's ever-shifting arguments. The Master Agreement is a binding contract and precludes any unjust enrichment claim as a matter of law.

## IV.   BESSEMER'S CONTRACT CLAIM FAILS AS A MATTER OF LAW.

### A.   Bessemer Does Not Adequately Plead a Breach of Contract Claim.

Courts in this circuit recognize that the failure "to identify a contractual provision which [the defendant] breached" is an independently sufficient ground for dismissal of a contract claim. *Troxler v. Capital One Bank (USA), N.A.*, 2017 U.S. Dist. LEXIS 154348, at *8 (M.D. Pa. Sept. 21, 2017). This principle is not limited to New York law, as Bessemer contends. (Opp. Br. at 24, n.4.) Bessemer has had three opportunities to plead its contract claim. Despite 90 pages of allegations, it still has not identified what provisions Fiserv Solutions allegedly breached, other than a few references to the Master Agreement's audit obligations. (SAC, ¶¶ 141–44.) (As to those allegations, Bessemer fails to plead the "resultant damages" it supposedly suffered.) (*Id.*) Bessemer has strategically chosen not to detail any contract claims in order to avoid the gist of the action and economic loss doctrines. In doing so, it has failed to state a contract claim either.[9]

### B.   The Master Agreement Precludes Bessemer's Claim for Declaratory Relief.

Bessemer contends that "a legitimate controversy exists" about whether Fiserv Solutions returned "Bessemer's records," arguing that "Fiserv continues to retain images of Bessemer's archived documents" from Fiserv Solutions' eFichency archive. (Opp. Br. at 24; SAC, ¶¶ 197–99, 330–36.) Here, again, the Master Agreement makes clear that Bessemer is not entitled to these images; it explicitly provides that Bessemer is entitled only to data "in Fiserv's then current

---

[9] Indeed, Bessemer devotes so much of the SAC's space to trying to plead tort and statutory claims that are barred as a matter of law that it fails to give Fiserv Solutions "fair notice" of what specific conduct Bessemer alleges to have breached the Master Agreement and how or what damages Bessemer allegedly suffered as a result. At the very least, Bessemer ought to provide a more definite statement of its contract claim. *See* Fed. R. Civ. P. 12(e).

electronic media format." (SAC, Ex. 2, eFichency Services Schedule, § 4(c)(1).) Fiserv Solutions returned the data that corresponds to these images, as Bessemer concedes, and it did so in its then-current electronic media format – text files. (*Id.* at ¶ 197.) No legitimate controversy exists.

### C. Bessemer Does Not Plausibly Plead Contract or Promissory Estoppel Claims Related to the October 2018 Letter.

Bessemer fundamentally misstates the circumstances surrounding the October 2018 letter and the expiration of the Master Agreement. (Opp. Br. at 24.) The facts preclude Bessemer's contract and promissory estoppel claims. As Bessemer concedes, it continued to accept products and services under the Master Agreement through May 2019. (ECF No. 47, TRO Trans. at p. 5.) The Master Agreement, which clearly defines Fiserv Solutions' obligations associated with "deconversion," governed the parties' relationship through May 2019. On its face, the October 2018 letter only reaffirmed Fiserv Solutions' intent to perform its pre-existing contractual obligations. Fiserv Solutions did not make any new promises and, thus, did not "breach" any. Bessemer's promissory estoppel claim fails for the same reason. *See Tanenbaum v. Chase Hom Fin. LLC*, 2014 WL 4063358, at *6 (E.D. Pa. Aug. 18, 2014).

Finally, Bessemer does not even attempt to show that it suffered detriment from "dismissing the replevin action." Bessemer dismissed that action ***without*** prejudice and Bessemer has asserted substantively identical claims here. Bessemer has not pleaded (and could not show) detrimental reliance and has not pleaded a claim for promissory estoppel.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss each of Bessemer's claims with prejudice and without leave to re-plead.

Dated:  November 27, 2019.

Respectfully submitted,


/s/ **_Timothy J. Patterson_**
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Timothy J. Patterson (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
tjpatterson@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

## CERTIFICATE OF SERVICE

I, Timothy J. Patterson hereby certify that a copy of the foregoing memorandum was served on the following counsel of record for Plaintiff via the CM/ECF system this 27th day of November, 2019.

> Richard J. Parks
> Pietragallo Gordon & Alfano
> Bosick & Raspanti, LLP
> 7 West State Street, Suite 100
> Sharon, PA 16146
>
> Charles J. Nerko
> Offit Kurman, P.A.
> 10 East 40th Street, 35th Floor
> New York, NY 10016
> *Attorneys for Bessemer System Federal Credit Union*

/s/  **_Timothy J. Patterson_**
Timothy J. Patterson