**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:19-cv-00624-RJC |
| **FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,** | ) ) ) ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**</u>

Defendants Fiserv Solutions, LLC (f/k/a Fiserv Solutions, Inc.) and Fiserv, Inc. (where appropriate, "Defendants"), by and through their attorneys, hereby answer the Second Amended Complaint of Bessemer System Federal Credit Union ("Bessemer") and assert their affirmative defenses as follows:

1.      Admit that maintaining accurate information and maintaining the confidentiality of personal information are important to financial institutions; except as so stated, deny the allegations of Paragraph 1, specifically denying that Defendants have engaged in any "misconduct."

2.      Admit that Fiserv Solutions provided certain account processing and related services to Bessemer; state that any written communications between Defendants and Bessemer speak for themselves; except as so stated, deny the allegations of Paragraph 2.

3.      State that any written communications between Defendants and Bessemer speak for themselves; except as so stated, deny the allegations of Paragraph 3.

4.      Deny the allegations of Paragraph 4.

4848-9870-9963

5.      Admit that Defendants take the privacy and confidentiality of their Fiserv Solutions' clients seriously, and that they have implemented robust and effective policies, systems and procedures to ensure such privacy and confidentiality; admit that Fiserv Solutions notified Bessemer that its so-called "security review" constituted a breach of the Master Agreement and was illegal under the common law and statutory law; except as so stated, deny the allegations of Paragraph 5.

6.      Deny the allegations of Paragraph 6.

7.      Admit that a copy of an article from the Wall Street Journal is attached to the Second Amended Complaint as Exhibit 1; except as so stated, deny the allegations of Paragraph 7.

8.      State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations with respect to its motivations in bringing this action and, therefore, deny such allegations; deny the remaining allegations of Paragraph 8, specifically denying that Defendants have "inflicted" any "wide-ranging" harm on Bessemer or anyone else.

9.      Deny the allegations of Paragraph 9.

10.      Admit the allegations of Paragraph 10.

11.      State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations as to the number of members that Bessemer had at the time of the Second Amendment Complaint or presently; deny that Bessemer may assert the claims of its members under the doctrine of "associational standing" or any other doctrine; except as so stated, deny the remaining allegations of Paragraph 11.

12.      Admit the allegations of Paragraph 12.

2

13.     Admit the allegations of Paragraph 13.

14.     Admit the allegations of Paragraph 14.

15.     State that the allegations of Paragraph 15 assert a legal conclusion as to which no response is required and, therefore, deny the allegations.

16.     Deny the allegations of Paragraph 16.

17.     State that the allegations of Paragraph 17 assert a legal conclusion as to which no response is required and, therefore, deny the allegations.

18.     State that the allegations of Paragraph 18 assert a legal conclusion as to which no response is required and, therefore, deny the allegations.

19.     Admit that Bessemer is a credit union located in Greenville, Pennsylvania; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 19 and, therefore, deny the allegations.

20.     Admit that Fiserv Solutions provides account processing and other technology solutions to financial institutions in the United States; state that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 20.

21.     Admit that Fiserv Solutions provided account processing services to Bessemer on its Charlotte platform and that the services that Fiserv Solutions provided to Bessemer included services related to teller terminals and account record maintenance; except as so stated, deny the allegations of Paragraph 21.

22.     Admit that Fiserv Solutions provided online banking services to Bessemer through its "Virtual Branch" product; except as so stated, deny the allegations of Paragraph 22.

4848-9870-9963

23.     State that the terms of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 23.

24.     State that the terms of Defendants' website and Code of Conduct & Business Ethics speak for themselves; except as so stated, deny the allegations of Paragraph 24.

25.     Deny the allegations of Paragraph 25.

26.     Admit that Fiserv Solutions, Inc. (now known as Fiserv Solutions, LLC) and Bessemer entered into that certain Master Agreement and related addenda, schedules exhibits and appendices, dated as of July 1, 2014, with a term expiring on June 30, 2019 (the "Master Agreement"); except as so stated, deny the allegations of Paragraph 26.

27.     Admit the allegations of Paragraph 27.

28.     Deny the allegations of Paragraph 28.

29.     State that the contents of the email quoted by Bessemer speak for themselves; except as so stated, deny the allegations of Paragraph 29.

30.     State that the contents of the email quoted by Bessemer speak for themselves; except as so stated, deny the allegations of Paragraph 30.

31.     Deny the allegations of Paragraph 31.

32.     State that Defendants lack knowledge or information sufficient to form a belief as to whether Exhibit 4 of the Second Amended Complaint "is a true and correct copy of FFIEC online banking authentication requirements" as of the time Bessemer references; state that the contents of Exhibit 4 speak for themselves; except as so stated, deny the allegations of Paragraph 32, specifically denying that Defendants made any "misrepresentation" to Bessemer.

33.     Deny the allegations of Paragraph 33.

34.     Deny the allegations of Paragraph 34.

35.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 35.

36.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 36.

37.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 37.

38.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 38.

39.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 39.

40.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 40.

41.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 41.

42.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 42.

43.     Deny the allegations of Paragraph 43, including the allegations of Footnote 2.

44.     State that Bessemer's Exhibit 5 does not on its face appear to be a "true and correct copy of SecurityScorecard's analysis of Fiserv"; state that the terms of Exhibit 5 speak for themselves; except as so stated, deny the allegations of Paragraph 44.

45.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 45 and, therefore, deny the allegations.

46.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of what Bessemer contends that SecurityScorecard allegedly "uncovered" and therefore deny the allegations of Paragraph 46, including the allegations of subparagraphs (a) through (m).

47.     Deny the allegations of Paragraph 47.

48.     Admit that in 2016, after the migration of Charlotte core processing from one datacenter to another, Fiserv Solutions received a report that a transaction response that originated at Bessemer had been sent to a different credit union client; affirmatively allege that Fiserv Solutions immediately resolved the issue, informed Bessemer of the issue, and the issue never reoccurred; except as so stated, deny the allegations of paragraph 48.

49.     Admit that, in or about March 2017, an incorrect return address was placed on certain statements with respect to an account verification process; affirmatively allege that Fiserv Solutions reprinted and mailed the statements with the correct return address; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations with respect to the reactions of its members; except as so stated, deny the allegations of Paragraph 49.

50.     Deny the allegations of Paragraph 50.

51.     State that the contents of the referenced article speak for themselves; except as so stated, deny the allegations of Paragraph 51.

4848-9870-9963

52.     State that the contents of the referenced article speak for themselves; except as so stated, deny the allegations of Paragraph 52.

53.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 53.

54.     State that the contents of the referenced press report speak for themselves; except as so stated, deny the allegations of Paragraph 54.

55.     State that the contents of the referenced press report speak for themselves; except as so stated, deny the allegations of Paragraph 55.

56.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 56 and, therefore, deny those allegations.

57.     State that the contents of the referenced post speak for themselves; except as so stated, deny the allegations of Paragraph 57.

58.     State that the contents of the referenced article speak for themselves; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 58 and, therefore, deny those allegations.

59.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 59 and, therefore, deny those allegations, specifically denying the existence of "critical security flaws" in Fiserv Solutions' systems.

60.     Admit that Bessemer's members could register for online banking by using an account number and the last four digits of the member's social security number; except as so stated, deny the allegations of Paragraph 60.

4848-9870-9963

61.     State that the contents of Defendants' website speak for themselves; except as so stated, deny the allegations of Paragraph 61, specifically denying that Fiserv Solutions' security controls were inadequate.

62.     Admit that, at or around the time of the alleged "security review," Virtual Branch did not impose rate limiting or "lockout"; except as so stated, deny the allegations of Paragraph 62.

63.     Deny the allegations of Paragraph 63, including the allegations of subparagraphs (a) through (e).

64.     Deny the allegations of Paragraph 64.

65.     Admit that Fiserv Solutions modified its online banking website to require Bessemer's members registering for an online account to supply their house number; except as so stated, deny the allegations of Paragraph 65.

66.     Deny the allegations of Paragraph 66.

67.     Deny that Bessemer's counsel sent Defendants the letter attached as Exhibit 6 to the Second Amended Complaint; admit that Bessemer's counsel sent Defendants (through their counsel) the letter attached as Exhibit 7 to the Second Amended Complaint; state that the contents of the letter speak for themselves; affirmatively allege that Bessemer's so-called "security review" constituted a breach of the Master Agreement and was illegal under the common law and statutory law; except as so stated, deny the allegations of Paragraph 67.

68.     Deny that Fiserv Solutions sent Bessemer the letter attached as Exhibit 7 to the Second Amended Complaint; admit that Defendants' counsel sent Bessemer (through its counsel) the letter attached as Exhibit 8 to the Second Amended Complaint; state that the contents of the letter speak for themselves; affirmatively allege that Bessemer's so-called

"security review" constituted a breach of the Master Agreement and was illegal under the

common law and statutory law; except as so stated, deny the allegations of Paragraph 68.

69.     State that terms of the Master Agreement speak for themselves and that

the allegations as to what the Master Agreement permits constitute a legal conclusion as to which

no response is necessary; affirmatively allege that Bessemer's so-called "security review"

constituted a breach of the Master Agreement and was illegal under the common law and

statutory law; except as so stated, deny the allegations of Paragraph 69.

70.     State that terms of the Master Agreement speak for themselves and that

the allegations as to what the Master Agreement permits constitute a legal conclusion as to which

no response is necessary; affirmatively allege that Bessemer's so-called "security review"

constituted a breach of the Master Agreement and was illegal under the common law and

statutory law; except as so stated, deny the allegations of Paragraph 70.

71.     Deny the allegations of Paragraph 71.

72.     Deny that Bessemer's counsel sent a copy of Exhibit 8 to the Second

Amended Complaint to Fiserv Solutions; admit that Bessemer's counsel sent the letter attached

as Exhibit 9 to Defendants (through their counsel); state that the contents of Exhibit 9 speak for

themselves; except as so stated, deny the allegations of Paragraph 72.

73.     Deny that Exhibit 9 to the Second Amended Complaint is a true and

correct copy of a Form 10-K issued by Fiserv, Inc.; admit that Exhibit 10 to the Second

Amended Complaint is a true and correct copy of the Form 10-K issued by Fiserv, Inc. on or

about February 21, 2019; states that the contents of Exhibit 10 speak for themselves; except as so

stated, deny the allegations of Paragraph 73.

4848-9870-9963

74.     State that the contents of Exhibit 10 speak for themselves; except as so stated, deny the allegations of Paragraph 74.

75.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations with respect to its "interest"; except as so stated, deny the allegations of Paragraph 75.

76.     Deny the allegations of Paragraph 76.

77.     Deny the allegations of Paragraph 77.

78.     Deny the allegations of Paragraph 78.

79.     Deny the allegations of Paragraph 79.

80.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 80 and, therefore, deny the allegations.

81.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 81 and, therefore, deny those allegations.

82.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 82 and, therefore, deny the allegations.

83.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 83 and, therefore, deny the allegations.

84. State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 84 and, therefore, deny the allegations.

85. State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 85 and, therefore, deny the allegations.

86. State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 86 and, therefore, deny the allegations.

87. Deny the allegations of Paragraph 87.

88. State that any written communications between Defendants and Bessemer speak for themselves; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 88 and, therefore, deny the allegations, specifically denying that Defendants intentionally or knowingly made any false or inaccurate statement to Bessemer or any of its members.

89. State that any written communications between Defendants and Bessemer speak for themselves; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 89 and, therefore, deny the allegations, specifically denying that Defendants "lied" to Bessemer or to any of its members.

90. State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 90 and, therefore, deny the allegations, specifically denying that Defendants "falsified" any reports or information.

11

91.     Admit that Fiserv Solutions initially sent 1098 mortgage statements that stated the principal balance of the loans in the incorrect field; affirmatively allege that Fiserv Solutions sent corrected 1098 mortgage statements prior to the reporting deadline; except as so stated, deny the allegations of Paragraph 91.

92.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 92 and, therefore, deny the allegations, specifically denying that Defendants intentionally or knowingly made any false or inaccurate statement to Bessemer or any of its members.

93.     Admit that when a loan due date was entered as the 28th, 29th, 30th or 31st of a month and that date was the last day of the current month, the due date was advanced to the last day of the subsequent month; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 93 and, therefore, deny the allegations, specifically denying that Defendants intentionally or knowingly made any false or inaccurate statement to Bessemer or any of its members.

94.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 94 and, therefore, deny the allegations.

95.     Deny the allegations of Paragraph 95.

96.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 96 and, therefore, deny the allegations

4848-9870-9963

97.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 97 and, therefore, deny the allegations.

98.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 98 and, therefore, deny the allegations

99.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 99 and, therefore, deny the allegations, specifically denying that "Fiserv's services were laden with bugs and defects."

100.    State that the contents of any communications between Defendants and Bessemer speak for themselves; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 100 and, therefore, deny the allegations.

101.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 101 and, therefore, deny the allegations.

102.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 102 and, therefore, deny the allegations.

103.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 103 and, therefore, deny the allegations.

13

104.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 104 and, therefore, deny the allegations.

105.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 105 and, therefore, deny the allegations.

106.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 106 and, therefore, deny the allegations.

107.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 107 and, therefore, deny the allegations.

108.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 108 and, therefore, deny the allegations.

109.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 109 and, therefore, deny the allegations.

110.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 110 and, therefore, deny the allegations.

4848-9870-9963

111.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 111 and, therefore, deny the allegations.

112.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 112 and, therefore, deny the allegations.

113.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 113 and, therefore, deny the allegations.

114.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 114 and, therefore, deny the allegations.

115.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 115 and, therefore, deny the allegations.

116.    Deny the allegations of Paragraph 116.

117.    Deny the allegations of Paragraph 117.

118.    Deny the allegations of Paragraph 118.

119.    Deny the allegations of Paragraph 119.

120.    Deny the allegations of Paragraph 120.

121.    Deny the allegations of Paragraph 121.

122.    Deny the allegations of Paragraph 122.

4848-9870-9963

123.    State that the allegations as to Defendants' alleged "obligations" state a legal conclusion as to which no response is required; except as so stated, deny the allegations of Paragraph 123.

124.    Deny the allegations of Paragraph 124.

125.    Deny the allegations of Paragraph 125.

126.    Deny the allegations of Paragraph 126.

127.    Deny the allegations of Paragraph 127.

128.    Deny the allegations of Paragraph 128.

      a.    Admit that Fiserv Solutions billed Bessemer for services that Fiserv Solutions provided, and that Bessemer accepted, including "Monthly CD Processing"; affirmatively allege that Fiserv Solutions subsequently ceased billing for "Monthly CD Processing" and refunded overcharges to Bessemer in 2017; except as so stated, deny the allegations of Paragraph 128(a).

      b.    Admit that prior to May 2017 Fiserv Solutions charged Bessemer for backup connection, a service that Fiserv Solutions provided, and that Bessemer accepted; admit that Fiserv Solutions ceased charging for backup connection in or around May 2017, when Bessemer changed to a different backup solution; except as so stated, deny the allegations of Paragraph 128(b), specifically denying that the backup connection never worked or charges for backup connection were improper.

16

    c.  State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 128(c) and, therefore, deny the allegations.

    d.  State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 128(d); affirmatively allege that Fiserv Solutions promptly addressed any invoice errors; except as so stated, deny the allegations of Paragraph 128(d).

    e.  Admit that Fiserv Solutions continued to bill Bessemer for services that Fiserv Solutions provided, and that Bessemer accepted, after Bessemer purported to "terminate" the Master Agreement while continuing to demand and accept services thereunder; except as so stated, deny the allegations of Paragraph 128(e.)

    f.  State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 128(f) and, therefore, deny the allegations.

    g.  State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 128(g) and, therefore, deny the allegations.

129.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 129 and, therefore, deny the allegations.

4848-9870-9963

130.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 130 and, therefore, deny the allegations.

131.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 131 and, therefore, deny the allegations.

132.    Admit that Fiserv Solution transitioned Bessemer to its Loancierge program; except as so stated, deny the allegations of Paragraph 132.

133.    State that defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 133 and, therefore, deny the allegations.

134.    Admit that Bessemer requested implementation of "real-time" negative balance reporting and that Fiserv Solutions implemented a process for Bessemer to use these services; affirmatively allege that Fiserv Solutions invested time and effort to implement these services, which Fiserv Solutions ultimately absorbed when Bessemer abandoned the project; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 134 and, therefore, deny the allegations.

135.    Admit that Fiserv Solutions' process for OFAC scans changed in or around 2017; admit that Fiserv Solutions provided an instruction manual that outlined the four-step process for OFAC scans; deny that Fiserv Solutions failed to provide written notice of this change; state that Defendants lack knowledge of information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 135 and, therefore, deny the allegations.

136.    Deny the allegations of Paragraph 136.

137.    Admit that Fiserv Solutions makes priority determinations with respect to support requests from Bessemer and other clients; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 137 and, therefore, deny the allegations.

138.    State that the terms of the Master Agreement speak for themselves; except as so stated, deny the allegations of Paragraph 138.

139.    Admit that Bessemer's counsel sent Fiserv Solutions a copy of the letter attached as Exhibit 11 (not Exhibit 10); except as so stated, deny the allegations of Paragraph 139.

140.    Admit that, in Exhibit 11, Bessemer purported to demand certain documents and records; except as so stated, deny the allegations of Paragraph 140.

141.    State that the terms of the Master Agreement speak for themselves; except as so stated, deny the allegations of Paragraph 141.

142.    State that the terms of the Master Agreement speak for themselves; except as so stated, deny the allegations of Paragraph 142.

143.    State that the terms of the Master Agreement speak for themselves; except as so stated, deny the allegations of Paragraph 143

144.    State that the terms of the Master Agreement speak for themselves; except as so stated, deny the allegations of Paragraph 144.

145.    Admit that Bessemer is a regulated financial institution; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 145 and, therefore, deny those allegations.

146.    Deny the allegations of Paragraph 146.

147.     State that the allegations of Paragraph 147 assert legal conclusions as to which no response is required and, therefore, deny the allegations.

148.     Deny the allegations of Paragraph 148.

149.     Admit that Bessemer's counsel sent Fiserv Solutions the letter attached as Exhibit 12 (not Exhibit 11), which is entitled "Supplemental Notice of Breach"; except as so stated, deny the allegations of Paragraph 149.

150.     Admit that Fiserv Solutions designated a representative in a good faith attempt to resolve certain issues that Bessemer raised and that, after initial communications, Fiserv Solutions informed Bessemer that it required additional time to review those issues; affirmatively allege that Bessemer purported to "terminate" the Master Agreement and filed suit against Fiserv Solutions in April 2018; except as so stated, deny the allegations of Paragraph 150.

151.     Deny the allegations of Paragraph 151.

152.     Admit that Bessemer's counsel sent the letter attached as Exhibit 13 (not Exhibit 12) to the Second Amended Complaint to Fiserv Solutions, which is entitled "Notice of Termination," on or about April 11, 2018; state that the contents of such letter speak for themselves; affirmatively allege that the termination was not proper and itself constituted a material breach of the Master Agreement and that Bessemer continued to demand and accept services from Fiserv Solutions after April 11, 2018; except as so stated, deny the allegations of Paragraph 152.

153.     Admit that Fiserv Solutions invoiced Bessemer for services that Fiserv Solutions provided and that Bessemer required and accepted, after April 11, 2018; admit that

Bessemer's counsel sent Fiserv Solutions the letter attached as Exhibit 14 (not Exhibit 13) to the Second Amended Complaint; except as so stated, deny the allegations of Paragraph 153.

154.    State that the contents of Exhibit 14 speak for themselves; except as so stated, deny the allegations of Paragraph 154.

155.    Admit that Bessemer's counsel sent Fiserv Solutions the letter attached as Exhibit 15 (not Exhibit 14) to the Second Amended Complaint; except as so stated, deny the allegations of Paragraph 155.

156.    Admit that Fiserv Solutions' counsel sent Bessemer's counsel the letter attached as Exhibit 16 (not Exhibit 15) to the Second Amended Complaint; except as so stated, deny the allegations of Paragraph 156.

157.    Admit that Bessemer's counsel sent Fiserv Solutions' counsel the letter attached as Exhibit 17 (not Exhibit 16); state that the contents of Exhibit 17 speak for themselves; except as so stated, deny the allegations of Paragraph 157.

158.    Admit that Fiserv Solutions' counsel sent Bessemer's counsel the letter attached as Exhibit 18 (not Exhibit 17); state that the contents of Exhibit 18 speak for themselves; except as so stated, deny the allegations of Paragraph 158.

159.    Admit that, on October 9, 2018, Bessemer commenced a replevin action in the Court of Common Pleas of Mercer County, Pennsylvania, Case No. 2018-3022; except as so stated, deny the allegations of Paragraph 159.

160.    Admit that Fiserv Solutions' counsel and Bessemer's counsel signed the letter attached as Exhibit 19 (not Exhibit 18) to the Second Amended Complaint; deny that the parties "settled" the replevin action; affirmatively allege that Bessemer dismissed the replevin action without prejudice; except as so stated, deny the allegations of Paragraph 160.

161.     State that the terms of Exhibit 19 speak for themselves; except as so stated, deny the allegations of Paragraph 161.

162.     Deny the allegations of Paragraph 162.

163.     Admit that Exhibit 20 (not Exhibit 19) to the Second Amended Complaint is an excerpt from the Form 10-K filed by Fiserv, Inc. on February 21, 2019; state that the terms of Exhibit 20 speak for themselves; except as so stated, deny the allegations of Paragraph 163.

164.     Admit that Bessemer remitted payment on the invoices outstanding at that time and that the remittance purported to contain a reservation of rights; except as so stated, deny the allegations of Paragraph 164.

165.     Admit that, due to an administrative error, Bessemer's remittance was not initially accepted by Fiserv Solutions; deny that Fiserv Solutions "rejected" Bessemer's payment and allege that the administrative error was timely conveyed to Bessemer's counsel; except as so stated, deny the allegations of Paragraph 165.

166.     Admit that Bessemer's outside counsel sent the check to Defendants' outside counsel; admit that the check was not deposited before Bessemer's outside counsel requested that Defendants return the check; admit that a notation on the check stated, the check would become void after sixty days; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegation that per standard credit union practices, payment on the check would be stopped at that time; except as so stated, deny the allegations of Paragraph 166.

167.     Admit that Bessemer remitted another check that Fiserv Solutions accepted and deposited; except as so stated, deny the allegations of Paragraph 167.

168.     Admit that Fiserv Solutions' counsel sent Bessemer's counsel the email attachments attached as Exhibit 21 (not Exhibit 20) to the Second Amended Complaint; affirmatively allege that the email contained several attachments that Bessemer has not made exhibits to the Second Amended Complaint; state that the terms of the email (and its attachments) speak for themselves and should be read together; except as so stated, deny the allegations of Paragraph 168.

169.     Admit that the email attached as Exhibit 21 to the Second Amended Complaint included multiple attachments, including the letter attached as Exhibit 22 (not Exhibit 21) to the Second Amended Complaint; state that the terms of Exhibit 22 speak for themselves; except as so stated, deny the allegations of Paragraph 169.

170.     State that the terms of Exhibit 19 (what Bessemer wrongly calls the "Replevin Action Settlement Agreement") speak for themselves; except as so stated, deny the allegations of Paragraph 170, specifically alleging that, in its Opinion dated July 14, 2020, the Court held that the Master Agreement, not Exhibit 19, governed the parties' contractual rights and obligations with respect to deconversion.

171.     Admit that the email attached as Exhibit 21 to the Second Amended Complaint included multiple attachments, including the letter attached as Exhibit 23 (not Exhibit 22) to the Second Amended Complaint; state that the terms of Exhibit 23 speak for themselves; except as so stated, deny the allegations of Paragraph 171, specifically alleging that, in its Opinion dated July 14, 2020, the Court held that the Master Agreement, not Exhibit 19, governed the parties' contractual rights and obligations with respect to deconversion.

4848-9870-9963

172.    Admit that Bessemer declined to execute Exhibit 23; state that the balance of the allegations of Paragraph 172 assert legal conclusions as to which no response is required and, therefore deny those allegations.

173.    Admit that counsel exchanged certain emails including the email attached as Exhibit 24 (not Exhibit 23) to the Second Amended Complaint; state that the terms of the Exhibit 24 speak for themselves; except as so stated, deny the allegations of Paragraph 173.

174.    Deny the allegations of Paragraph 174.

175.    Admit that Fiserv Solutions' counsel sent the letter attached as Exhibit 25 (not Exhibit 24) to the Second Amended Complaint to Bessemer's counsel; state that the terms of Exhibit 25 speak for themselves; except as so stated, deny the allegations of Paragraph 175.

176.    Deny the allegations of Paragraph 176.

177.    Deny the allegations of Paragraph 177.

178.    Deny the allegations of Paragraph 178.

179.    Deny the allegations of Paragraph 179.

180.    Admit that Fiserv Solutions proposed providing Bessemer credit bureau reporting records coded with an AT/05 designation; deny that Defendants refused to provide credit reporting records; state that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 180 and therefore, deny such allegations.

181.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations as to whether or why Bessemer deemed the requested process to be "important" or whether Bessemer advised its members to "monitor their credit report"; except as so stated, deny the allegations of Paragraph 181, specifically

4848-9870-9963

denying that Fiserv Solutions was experiencing "security problems" or that Fiserv Solutions inaccurately reported any credit reporting information.

182.    Admit that Fiserv Solutions sent Bessemer the email attached as Exhibit 26 (not Exhibit 25) to the Second Amended Complaint; state that the terms of Exhibit 26 speak for themselves; except as so stated, deny the allegations of Paragraph 182.

183.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegation that Exhibit 27 (not Exhibit 26) is a true and correct copy of correspondence between Bessemer and Experian; except as so stated, deny the allegations of Paragraph 183.

184.    Admit that Bessemer sent Fiserv Solutions the email attached as Exhibit 28 (not Exhibit 27) to the Second Amended Complaint; state that the terms of Exhibit 28 speak for themselves; except as so stated, deny the allegations of Paragraph 184.

185.    Admit that Fiserv Solutions sent Bessemer the email incorporated in Exhibit 28 (not Exhibit 27) to the Second Amended Complaint; state that the terms of Exhibit 28 speak for themselves; except as so stated, deny the allegations of Paragraph 185.

186.    Admit that Bessemer sent Fiserv Solutions the email incorporated in Exhibit 28 (not Exhibit 27) to the Second Amended Complaint; state that the terms of Exhibit 28 speak for themselves; except as so stated, deny the allegations of Paragraph 186.

187.    Admit that Fiserv Solutions sent Bessemer the email incorporated in Exhibit 28 (not Exhibit 27) to the Second Amended Complaint; state that the terms of Exhibit 28 speak for themselves; except as so stated, deny the allegations of Paragraph 187.

188.    Admit that Fiserv Solutions sent Bessemer the email incorporated in Exhibit 28 (not Exhibit 27) to the Second Amended Complaint; state that the terms of Exhibit 28 speak for themselves; except as so stated, deny the allegations of Paragraph 188.

189.    Admit that Fiserv Solutions declined to produce certain "eFichency" records until Bessemer agreed to perform its payment obligations under the Master Agreement; except as so stated, deny the allegations of Paragraph 189.

190.    Admit that, in connection with the day-to-day services that Fiserv Solutions provided to Bessemer, eFichency records, which include tax forms and past member statements, could be retrieved by Bessemer as PDF documents; deny that Fiserv Solutions stores such records in that form or that Fiserv Solutions provides records in that format at deconversion absent the payment of certain fees; except as so stated, deny the allegations of Paragraph 190.

191.    Admit that Fiserv Solutions sent Bessemer the email attached as Exhibit 29 (not Exhibit 28) to the Second Amended Complaint; except as so stated, deny the allegations of Paragraph 191.

192.    Admit that, in a good faith effort at compromise, Fiserv Solutions sent the eFichency records to Bessemer on a hard drive and that Bessemer claimed to be unable to access the hard drive; except as so stated, deny the allegations of Paragraph 192.

193.    Admit the allegations of Paragraph 193, affirmatively alleging that the motion was summarily denied.

194.    Admit that Fiserv Solutions filed an opposition; state that the terms of that opposition speak for themselves; except as so stated, deny the allegations of Paragraph 194, specifically denying that any statement in the opposition was false.

195.    Admit the allegations of Paragraph 195.

26

196.     Admit that, during discussion between the parties respective personnel after the hearing on Bessemer's motion, the parties discovered that certain documents had inadvertently not been sent to Bessemer; except as so stated, deny the allegations of Paragraph 196, specifically denying any assertion that Fiserv Solutions intentionally withheld or misrepresented the status of such documents.

197.     Admit that Fiserv Solutions primarily provided text files to Bessemer with respect to the eFichency documents and that conversion of such text files to the PDF files that Bessemer requested would be expensive and labor intensive; affirmatively allege that Bessemer refused to pay for such file conversion; except as so stated, deny the allegations of Paragraph 197, specifically denying any suggestion that Fiserv Solutions had any obligation to provide the eFichency records in PDF format.

198.     State that Defendants' website speaks for itself; except as so stated, deny the allegations of Paragraph 198.

199.     Admit that Fiserv Solutions primarily provided text files to Bessemer with respect to the eFichency documents and that conversion of such text files to the PDF files that Bessemer requested would be expensive and labor intensive; affirmatively allege that Bessemer refused to pay for such file conversion; except as so stated, deny the allegations of Paragraph 199, specifically denying any suggestion that Fiserv Solutions had any obligation to provide the eFichency records in PDF format.

200.     Deny the allegations of Paragraph 200; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

201.     State that Defendants' website speaks for itself; except as so stated, deny the allegations of Paragraph 201; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

202.     Deny the allegations of Paragraph 202; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

203.     Deny the allegations of Paragraph 203; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

204.     Deny the allegations of Paragraph 204; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

205.     Deny the allegations of Paragraph 205; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

206.     Deny the allegations of Paragraph 206; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

207.     Deny the allegations of Paragraph 207; affirmatively allege that Bessemer contractually waived any claim for punitive damages in the Master Agreement.

208.     Deny the allegations of Paragraph 208.

209.     Defendants incorporate their responses to the allegations of Paragraphs 1 through 208 as though fully set forth herein.

210.     Admit that the Master Agreement is a binding agreement enforceable in accordance with its terms; deny that the "Replevin Action Settlement Agreement" is a binding agreement that imposed any obligations on Fiserv Solutions.

211.     State that the allegations of Paragraph 211 state a legal conclusion as to which no response is required; deny that Fiserv Solutions breached any obligation to Bessemer,

including but not limited to any implied duty of good faith and fair dealing; deny the remaining allegations of Paragraph 211.

212.    Deny the allegations of Paragraph 212.

213.    Deny the allegations of Paragraph 213.

214.    Deny the allegations of Paragraph 214.

215.    Deny the allegations of Paragraph 215.

216.    Deny the allegations of Paragraph 216.

217.    Deny the allegations of Paragraph 217.

218.    Deny the allegations of Paragraph 218.

219.    Deny the allegations of Paragraph 219.

220.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 219 as though fully set forth herein.

221.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 221 is required.

222.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 222 is required.

223.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 223 is required.

4848-9870-9963

224.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 224 is required.

225.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 225 is required.

226.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 226 is required.

227.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 227 is required.

228.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 228 is required.

229.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 229 is required.

230.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 230 is required.

4848-9870-9963

231.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 231 is required.

232.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 232 is required.

233.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 233 is required.

234.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count II of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 234 is required.

235.     Defendants incorporate their responses to the allegations of Paragraphs 1 through 234 as though fully set forth herein.

236.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 236 is required.

237.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 237 is required.

238.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 238 is required.

239.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 239 is required.

240.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 240 is required.

241.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 241 is required.

242.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 242 is required.

243.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 243 is required.

244.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 244 is required.

245.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 245 is required.

4848-9870-9963

246.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 246 is required.

247.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 247 is required.

248.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 248 is required.

249.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 249 is required.

250.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 250 is required.

251.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count III of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 251 is required.

252.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 251 as though fully set forth herein.

253.    Deny the allegations of Paragraph 253.

254.    Deny the allegations of Paragraph 254.

4848-9870-9963

255.    State that the Defendants' website speaks for itself; except as so stated, deny the allegations of Paragraph 255.

256.    Deny the allegations of Paragraph 256.

257.    Deny the allegations of Paragraph 257.

258.    Deny the allegations of Paragraph 258.

259.    Deny the allegations of Paragraph 259.

260.    Deny the allegations of Paragraph 260.

261.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 260 as though fully set forth herein.

262.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 262 is required.

263.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 263 is required.

264.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 264 is required.

265.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 265 is required.

266.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 266 is required.

267.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 267 is required.

268.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 268 is required.

269.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count V of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 269 is required.

270.     Defendants incorporate their responses to the allegations of Paragraphs 1 through 270 as though fully set forth herein.

271.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 271 is required.

272.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 272 is required.

273.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 273 is required.

4848-9870-9963

274.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 274 is required.

275.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 275 is required.

276.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 276 is required.

277.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 277 is required.

278.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 278 is required.

279.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 279 is required.

280.     Defendants incorporate their responses to the allegations of Paragraphs 1 through 279 as though fully set forth herein.

281.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 281 is required.

4848-9870-9963

282.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 282 is required.

283.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 283 is required.

284.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 284 is required.

285.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 285 is required.

286.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 286 is required.

287.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 287 is required.

288.     Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 288 is required.

289.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 289 is required.

290.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count VII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 290 is required.

291.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 290 as though fully set forth herein.

292.    State that the allegations of Paragraph 292 state legal conclusions as to which no response is required; except as so stated, deny the allegations of Paragraph 292.

293.    State that the allegations of Paragraph 293 state legal conclusions as to which no response is required; except as so stated, deny the allegations of Paragraph 293.

294.    State that the allegations of Paragraph 294 state legal conclusions as to which no response is required; except as so stated, deny the allegations of Paragraph 294.

295.    State that the allegations of Paragraph 295 state legal conclusions as to which no response is required; except as so stated, deny the allegations of Paragraph 295.

296.    State that the allegations of Paragraph 296 state legal conclusions as to which no response is required; except as so stated, deny the allegations of Paragraph 296.

297.    Deny the allegations of Paragraph 297.

298.    Deny the allegations of Paragraph 298.

299.    Deny the allegations of Paragraph 299.

300.    Deny the allegations of Paragraph 300.

4848-9870-9963

301.     Defendants incorporate their responses to the allegations of Paragraphs 1 through 300 as though fully set forth herein.

302.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations that it owns or holds certain trade secrets; deny that any of the data or information in custody, possession or control of Defendants in connection with the services that it provided to Bessemer constitute trade secrets; except as so stated, deny the allegations of Paragraph 302.

303.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 303 and, therefore, deny the allegations.

304.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 304 and, therefore, deny the allegations.

305.     State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 305 and, therefore, deny the allegations.

306.     Deny the allegations of Paragraph 306.

307.     Deny the allegations of Paragraph 307.

308.     Deny the allegations of Paragraph 308.

309.     Deny the allegations of Paragraph 309.

310.     Deny the allegations of Paragraph 310.

311.     Deny the allegations of Paragraph 311.

312.     Deny the allegations of Paragraph 312.

313.    Deny the allegations of Paragraph 313.

314.    Deny the allegations of Paragraph 314.

315.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 314 as though fully set forth herein.

316.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 316 and, therefore, deny the allegations.

317.    Deny the allegations of Paragraph 317.

318.    Deny the allegations of Paragraph 318.

319.    Deny the allegations of Paragraph 319.

320.    Deny the allegations of Paragraph 320.

321.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 320 as though fully set forth herein.

322.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 322 is required.

323.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 323 is required.

324.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XI of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 324 is required.

325.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 324 as though fully set forth herein.

326.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 326 is required.

327.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 327 is required.

328.    Pursuant to the Order of the Court, dated July 14, 2020 (Dkt. 70), Count XII of the Second Amended Complaint has been dismissed, with prejudice, and no response to Paragraph 328 is required.

329.    Defendants incorporate their responses to the allegations of Paragraphs 1 through 328 as though fully set forth herein.

330.    Deny the allegations of Paragraph 330.

331.    Deny the allegations of Paragraph 331.

332.    Deny the allegations of Paragraph 332.

333.    Admit that Fiserv Solutions' counsel sent Bessemer's counsel the letter attached as Exhibit 30 (not Exhibit 29) to the Second Amended Complaint; assert that the terms of Exhibit 30 speak for themselves; except as so stated, deny the allegations of Paragraph 333.

334.    Deny the allegations of Paragraph 334.

335.    State that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Bessemer's allegations with respect to the declaration it seeks; specifically deny that Bessemer is entitled to declaratory or other relief.

336.    Deny the allegations of Paragraph 336.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof or persuasion otherwise resting on Bessemer, for their affirmatives defenses, Fiserv, Inc. and Fiserv Solutions, LLC hereby allege as follows:

### FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint, and each count thereof, fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Fiserv, Inc. has no contractual or other relationship with Bessemer and is not a proper party to this action.

### THIRD AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the applicable statute of limitations.

### FOURTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the Master Agreement.

### FIFTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the economic loss doctrine and/or the gist of the action doctrine.

### SIXTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the doctrine of assumption of risk.

4848-9870-9963

## SEVENTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

Upon information and belief, Bessemer has failed to mitigate any actual damages it alleges to have incurred.

## TENTH AFFIRMATIVE DEFENSE

Bessemer has not alleged or sustained any actual damages which were caused by the Defendants or for which the Defendants are liable.

## ELEVENTH AFFIRMATIVE DEFENSE

In the alternative, any actual damages that Bessemer may have incurred are the result of acts or omissions by individuals or entities other than the Defendants and for which the Defendants are not legally responsible.

## TWELFTH AFFIRMATIVE DEFENSE

At all times, Defendants acted in good faith and with clean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE

All or portions of any harm allegedly suffered by Bessemer is attributable to causes other than any alleged conduct, acts or omissions of the Defendants.

4848-9870-9963

### FOURTEENTH AFFIRMATIVE DEFENSE

The conduct of the Defendants that Bessemer complains of was not the proximate cause of Bessemer's alleged losses.

### FIFTEENTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, because the Defendants owed no duty to Bessemer.

### SIXTEENTH AFFIRMATIVE DEFENSE

Bessemer's claims are barred, in whole or in part, by the doctrine of estoppel.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Some or all of the claims against the Defendants are barred, in whole or in part, by the doctrine of laches.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Bessemer's claims for punitive damages are waived in, and are barred by, the Master Agreement.

### NINETEENTH AFFIRMATIVE DEFENSE

Bessemer's claims for punitive damages fail because Defendants did not act with malice or reckless indifference to Bessemer's rights, or engage in willful, deliberate, malicious, wanton or outrageous conduct.  Bessemer's claims for punitive damages are limited and/or barred by the Constitution of the Commonwealth of Pennsylvania, by the Fourteenth, Fifth and Eighth Amendments to the United States Constitution, and by the laws of the United States and the Commonwealth of Pennsylvania.

4848-9870-9963

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants reserve the right to amend this Answer to assert such other affirmative defenses as may become apparent through discovery or otherwise.

## COUNTERCLAIMS

For its counterclaims against Bessemer System Federal Credit Union, Fiserv Solutions, LLC hereby alleges as follows:

1.      This action is the story of hyper-aggressive negotiation tactics run amok. After a nearly 40-year relationship with Fiserv Solutions, Bessemer (under a new CEO) decided that it no longer wanted to keep its contractual promises or pay for services that Fiserv Solutions provided under the parties' agreement.  With the assistance of its counsel, Bessemer commenced a pattern of escalating "negotiation" tactics that included asserting baseless claims, refusing to pay Fiserv Solutions' invoices, and threatening Fiserv Solutions with adverse publicity over the parties' dispute.  All the while, Fiserv Solutions attempted to work cooperatively and in good faith with its contractual partner to resolve Bessemer's issues, but also insisted that Bessemer perform its contractual obligations, including payment.  Apparently unwilling to do that, Bessemer escalated matters and attempted to manufacture a claimed "security breach" that Bessemer could use (through more threats of adverse publicity) to coerce Fiserv Solutions to accede to its demands. Bessemer commissioned and attempted a brute force cyber-attack on the servers and systems that Fiserv uses to service more than 750 credit unions, which collectively have more than 2.4 million members across the country.

2.      On or about July 1, 2014, Bessemer and Fiserv Solutions entered into the Master Agreement.

3.      Pursuant to the Master Agreement, Fiserv Solutions agreed to provide Bessemer with specific electronic account processing, online banking, and bill payment services – known broadly as "ASP Services" and "Virtual Branch Services" – and related equipment, software, and professional services to facilitate the provision of ASP Services and Virtual Branch Services, in exchange for the payment of certain fees as set forth in the Master Agreement.

4.      In Paragraph 2 of the Master Agreement, Bessemer agreed to pay certain fees, out-of-pocket expenses and charges and applicable taxes in exchange for the services and other deliverables that Fiserv Solutions provided.  Under the Master Agreement, invoices to Bessemer were due and payable upon receipt and accrued late charges if not paid in full within thirty (30) days.  Further, the Master Agreement authorized Fiserv Solutions to terminate the agreement upon 30 days' written notice if Bessemer failed to pay its invoices within 30 days of issuance.

5.      Fiserv Solutions' ASP Services enabled Bessemer to provide banking services to its members.  Fiserv Solutions' servers and systems process member transactions made at the teller line, at an ATM or online through Fiserv Solutions' Virtual Branch services. Through the "Virtual Branch" services that Fiserv Solutions provided under the Master Agreement, Bessemer's members were able to enroll in online banking which provides access to the member's accounts and financial information through the internet accessed with a computer or a mobile device.  Bessemer's members enrolled in online banking using unique member log-in information, including usernames and passwords, which the member controlled.

6.      To provide ASP Services, Fiserv Solutions necessarily stored and processed certain confidential financial information of Bessemer's members on Fiserv Solutions'

servers.  Bessemer did not and does not own these servers and systems or any of the financial and other information that Fiserv processes for other clients through its processing centers.

7.      Fiserv Solutions' servers and systems include robust security and authentication processes to detect and prevent fraudulent or unauthorized attempts to enroll accounts, access account or other personal information, or conduct transactions through online banking or other electronic means.

8.      The Master Agreement imposes certain confidentiality and security obligations on Bessemer.  Bessemer agreed to maintain the confidentiality of all "Fiserv Information"[1] and further agreed to limit its use of Fiserv Information to "lawful purposes contemplated by this Agreement."  Further, Bessemer agreed (in Paragraph 3 of the ASP Services Exhibit to the Master Agreement (the "ASP Services Exhibit")) not to attempt to circumvent or gain unauthorized access to Fiserv's servers and systems: "Fiserv systems used in the delivery of Services (the 'Fiserv System') and Client's networks and computer systems ('Client Systems') contain information and computer software that are proprietary and confidential information of the respective parties, their suppliers and licensors.  Each party agrees not to attempt to circumvent the devices employed by the other party to prevent unauthorized access thereto, including without limitation modifications, decompiling, disassembling, and reverse engineering thereof."

---

[1] "Fiserv Information" is defined in Paragraph 3(a)(ii) of the Master Agreement as follows:  "[T]he following types of information of Fiserv and its Affiliates obtained or accessed by Client from or on behalf of Fiserv or its Affiliates in connection with this Agreement or any discussions between the parties regarding new services or products to be added to this Agreement:  (A) trade secrets and proprietary information (including that of any Fiserv client, supplier, or licensor); (B) client lists, information security plans, business continuity plans, all information and documentation regarding the Deliverables, all software Products (including software modifications and documentation, databases, training aids, and all data, code, techniques, algorithms, methods, logic, architecture, and designs embodied or incorporated therein), and the terms and conditions of this Agreement; (C) any personally identifiable information, defined as information that can [be] identified to a particular person without unreasonable effort, such as the names and social security numbers of Fiserv employees; and (D) any other information and data received from or on behalf of Fiserv or its Affiliates that Client could reasonably be expected to know is confidential."

9.      On January 8, 2018, Bessemer (through its counsel) sent Fiserv Solutions a "Notice of Breach," describing alleged "breaches" (many that supposedly occurred years earlier) and falsely claiming that Bessemer had suffered "data breaches" by Fiserv Solutions. In that same letter, Bessemer provided notice that it would not renew any agreement with Fiserv Solutions, including the Master Agreement.

10.     Bessemer's decision not to renew meant that Bessemer would be required to incur deconversion and other professional service fees pursuant to the Master Agreement. Likewise, under the Master Agreement, termination before June 30, 2019, required Bessemer to pay early termination fees.

11.     In an attempt to avoid paying the early termination or deconversion fees it promised to pay in the Master Agreement, Bessemer began a letter-writing campaign in which it repeatedly accused Fiserv Solutions of material breaches of the Master Agreement (without factual support) and acting in "bad faith," ignoring the parties' long, productive relationship. All of this was pretextual and itself a bad faith exercise orchestrated to avoid Bessemer's clear contractual obligations under the Master Agreement.

12.     Fiserv Solutions' legal and business teams worked in good faith with Bessemer to negotiate an amicable conclusion of the parties' relationship – including, but not limited to, offering to transition Bessemer's information to a new service provider. Fiserv Solutions' efforts to reach a mutually acceptable resolution and to initiate the deconversion and transition process were consistently rebuffed by Bessemer without any real explanation.

13.     What Bessemer really wanted was a free deconversion and early termination without paying the agreed-upon fees. When its unsupported claims of breach did not achieve this result, Bessemer tried to increase the pressure on Fiserv Solutions.

14.     On April 11, 2018, Bessemer purported to "terminate" the Master

Agreement, more than a year before it expired.  In order to avoid early termination fees,

Bessemer asserted that it was terminating for Fiserv Solutions' material breach.  On April 11,

2018, Fiserv Solutions was not in, and had not been in, breach of the Master Agreement, much

less material breach.  Any early termination by Bessemer required the payment of early

termination fees.

15.     Despite its purported "termination," Bessemer did not inform Fiserv

Solutions when it would transition to a new service provider or provide a timeframe for

deconversion and transition.  Instead, Bessemer continued to operate its credit union on Fiserv

Solutions' platform in the ordinary course of business and continued to accept all processing and

related services from Fiserv Solutions under the Master Agreement.  The only change in the

relationship occasioned by Bessemer's "termination" was that it refused to pay for the services

that Fiserv Solutions continued to provide and that Bessemer continued to accept (as described

further below).

16.     On April 18, 2018, Fiserv's Assistant General Counsel responded to

Bessemer's "termination" letter as follows:

> I am in receipt of your letter and email dated April 11, 2018,
> including your client's notice of termination.  Fiserv will of course
> honor its contractual obligations and expressly reserves all rights
> under the Master Agreement including with respect to early
> termination.  Further Fiserv denies the allegations of wrongdoing
> and any claim for damages asserted in your letter and email.
>
> Please advise as to the following:  (1) the name of the vendor(s)
> and product(s) to which your client intends to convert; and (2) the
> anticipated date of deconversion.

17.     On April 23, 2018, Bessemer's counsel sent a brief email to Fiserv's Assistant General Counsel about deconversion, asking:  "What formats can Fiserv provide the data in?  What timing is possible?"

18.     On April 27, 2018, Fiserv's Assistant General Counsel responded:

> We can provide the data TXT files either ASCII or EBCDIC character format depending on the new vendor and platform your client selects.  The number of files to be provided is determined as part of the deconversion process.  We also provide documentation explaining the content and layout of the character files.
>
> The timing of the deconversion is largely dependent upon when your client has contracted with a new provider and when that new provider is available to convert the credit union to  . . . its product(s).  We would need at least 3-4 months advance notice for preparation and execution of the conversion.  But again at this point the timing is in your client's court.

19.     Bessemer did provide not any information with respect to its deconversion plans in response to this communication.  Specifically, Bessemer did not identify a new service provider, the technical requirements of that service provider or the timeline for Bessemer's deconversion.  Instead, Bessemer continued to operate on Fiserv Solutions' processing platform and accept services from Fiserv Solutions every day.

20.     Unhappy that its tactics did not succeed in procuring free deconversion and transition services or avoiding early termination fees, Bessemer attempted to escalate its pressure tactics.

21.     In June 2018, Bessemer stopped paying its invoices, even though it continued to accept and utilize all of the processing services identified in the Master Agreement to operate its business every day.

22.     Then, in a letter dated July 18, 2018, Bessemer demanded a "refund" of all invoices it had previously paid, without identifying any issues or discrepancies with particular

invoices.  Moreover, Bessemer went so far as to prospectively dispute all future invoices that

Fiserv Solutions might issue:  "[T]he Credit Union disputes any invoices that have been unpaid

or that will be subsequently issued by Fiserv."  Despite continuing to accept Fiserv Solutions'

services, Bessemer "disputed" any amounts that Fiserv might invoice for them in the future.[2]

       23.     Fiserv Solutions' Assistant General Counsel responded to the assertions in

Bessemer's letter by email dated July 25, 2018.  Among other things, Fiserv Solutions again

asked Bessemer to provide information about its plans and timeline for deconversion:

> We also await your client's intentions with respect to its Notice of
> Termination of the Agreement.  Despite our repeated requests, we
> have not received the anticipated deconversion date or the name of
> the new provider.  When we can we expect that information?
> Deconversion is a significant undertaking for the credit union,
> Fiserv and the new provider such that planning should begin as
> soon as possible to best meet all parties' expectations and
> timelines.
>
> In the meantime, and consistent with our contractual obligations,
> we continue to provide services for the credit union and expect the
> credit union to likewise meet its contractual obligations, including
> paying for the services its continues to use.

       24.     Once again, however, Bessemer failed to and refused to provide any

information with respect to its deconversion plans in response to this communication.

Specifically, Bessemer did not identify a new service provider, the technical requirements of that

service provider or the timeline for Bessemer's deconversion.  Instead, Bessemer continued to

operate on Fiserv Solutions' processing platform and accept services from Fiserv Solutions every

day.

       25.     On August 22, 2018, Joy Peterson, Bessemer's Chief Executive Officer,

communicated with Mr. Vincent Brennan, who was then Fiserv Solutions' President of Credit

---

[2] Bessemer did not submit payment for its outstanding invoices until November 2018.

Union Solutions, about a service issue stating: "This is simply ridiculous.  I can't even put into words how much I hate Fiserv at this point."

26.     Mr. Brennan responded the next day by email, acknowledging that Bessemer was unhappy with Fiserv Solutions and again offering to assist Bessemer in transitioning to another service provider if Bessemer would simply provide the necessary information:

> Clearly this relationship is not agreeable to you as you continue to state in your emails.  I believe you notified us of your intent not to renew our agreement and move to another provider.  We stand ready to assist you with that move but we have received no further information from you or your counsel.  Please let us know the date you intend to deconvert and the name of the new provider so we can assist you in making that move.

27.     Yet again, Bessemer did provide not any information with respect to its deconversion plans in response to this communication.  Specifically, Bessemer did not identify a new service provider, the technical requirements of that service provider or the timeline for Bessemer's deconversion.  Instead, Bessemer continued to operate on Fiserv Solutions' processing platform and accept services from Fiserv Solutions every day.

28.     On September 11, 2018, Fiserv Solutions (through counsel) provided Bessemer with a reconciliation of the invoices that Fiserv Solutions issued in 2018 in response to Bessemer's previous "audit" demand.  That reconciliation revealed that Fiserv Solutions had **_under billed_** Bessemer by $441.92.  The reconciliation also mapped the various provisions of the Master Agreement to Fiserv Solutions' invoices so that Bessemer could see (although after 40 years, it certainly already knew) how Fiserv Solutions calculated the amounts due under the Master Agreement.

29.     Fiserv Solutions' letter further noted that Bessemer had failed to pay the invoices issued on May 31, June 28 and July 30 in the aggregate amount of $38,934.52, and that

the invoice issued on August 30 in the amount of $12,746.67 would begin to accrue late fees on

September 30.  Fiserv Solutions demanded payment in the aggregate amount of $51,681.19 on or

before September 30, 2018.  The letter made clear that: "If Bessemer fails to remit payment in

full by that date, Fiserv intends to pursue an appropriate counterclaim in the action that Bessemer

has filed and to seek all available remedies including the imposition of late fees and attorneys'

fees."

   30. On September 14, 2018, Bessemer (through its counsel) responded,

dismissing Fiserv Solutions' invoice reconciliation without (yet again) identifying any specific

issues or purported discrepancies with respect to any particular invoice.  Unable to refute Fiserv

Solutions' invoice reconciliation or demonstrate any justification for continuing to accept

processing services from Fiserv Solutions without paying for them, Bessemer resorted to threats:

"Your client would be well advised to consider all the adverse consequences of prosecuting a

meritless counterclaim against a customer that has been victimized by a multitude of problems,

including *several data breaches caused by Fiserv.*"  (emphasis in original.)  Bessemer provided

no details or facts supporting its assertion of "several data breaches," but the implication of its

statement was clear:  Fiserv Solutions would suffer adverse consequences from negative

publicity when Bessemer went public with its "data breach" claims, and Bessemer planned to do

just that if Fiserv Solutions continued to insist that Bessemer pay its invoices or filed a

counterclaim to enforce its rights under the Master Agreement.

   31. Fiserv Solutions (through counsel) responded by letter that same day,

making clear that it would not bend to such extortionate tactics:

> If your client moves forward with the lawsuit and refuses to pay
> Fiserv's invoices, there will be counterclaims.  Your repeated
> threats of negative publicity and "adverse consequences" reveal an
> unwillingness or inability to engage on the merits and will meet

53

with no more success here than they have with your other credit
union clients.  If Bessemer would like to "productively engage" –
by paying its invoices and discussing the timing and logistics of its
deconversion and transition – Fiserv remains, as it has been
throughout, fully prepared to discuss those issues.

32.     Each of Bessemer's unsupported assertions of "material breach,"
purported terminations of the Master Agreement, refusal to pay Fiserv Solutions' invoices when
due, demands for refunds of invoices previously paid, and refusal to pay for or cooperate with
deconversion and transition was pretextual, coercive and undertaken by Bessemer in bad faith.
Each of these actions by Bessemer has injured and damaged Fiserv Solutions by, among other
things, imposing unnecessary cost and inconvenience on Fiserv Solutions' personnel and
requiring Fiserv Solutions to incur attorneys' fees and other expenses.

33.     Bessemer did not provide any information with respect to its deconversion
plans in response to these communication.  Specifically, Bessemer did not identify a new service
provider, the technical requirements of that service provider or the timeline for Bessemer's
deconversion.  Instead, Bessemer continued to operate on Fiserv Solutions' processing platform
and accept services from Fiserv Solutions every day.

34.     In September 2018, after refusing to provide information with respect to
deconversion, refusing to pay outstanding invoices (or any future invoices), Bessemer once again
sought to escalate pressure and obtain leverage.

35.     In an attempt to manufacture some type of "breach" for the purposes of
embarrassing and extorting Fiserv Solutions to accede to its demands, Bessemer commissioned
and orchestrated an unsuccessful "brute force" cyberattack on Fiserv Solutions' servers and
systems.

36.     Specifically, on September 24, 2018, Bessemer and/or its agents attempted a "brute force" cyberattack on the servers and systems that performed Virtual Branch Services for Bessemer and over 750 other credit unions.

37.     A brute force attack is a trial-and-error method used to obtain information such as a user password or personal identification number (PIN).  In a brute force attack, automated software is used to generate a large number of consecutive guesses as to the value of the desired data.

38.     Fiserv Solutions identified irregular activity indicative of a cyberattack, based on a review of transaction processing data from September 25.  Fiserv Solutions' data security team observed that backup files for Virtual Branch systems and servers were significantly larger than normal.  Fiserv Solutions immediately began to review and investigate the matter, which revealed that failed Virtual Branch authorization requests accounted for the unusually large size of these backup files.  Each Virtual Branch authorization request with data in the backup files corresponds to a failed attempted login to a member's online banking profile. Failed attempted logins are most commonly associated with incorrect username and password combinations.  Fiserv Solutions' investigation also revealed that nearly all of this activity was occurring in member accounts for a single credit union – Bessemer.

39.     Between 2:19 p.m. and midnight on September 24, the attack caused at least 181,322 failed Virtual Branch authorization attempts.  Between 1:30 a.m. and midnight on September 25, the attack caused at least 1,964,366 failed Virtual Branch authorization attempts. Between 3:17 p.m. and midnight on September 26, the attack caused at least an additional 932,258 failed Virtual Branch authorization attempts.  Altogether, the attacker made over 3 million failed Virtual Branch authorization attempts.

40.     Virtual Branch authorization attempts were occurring at rates from 35 to 50 *per second*, rates that are at least *ten times higher* than Fiserv Solutions typically processes. The size, scope, and speed of the attack strongly suggested to Fiserv Solutions' data security team that a wide-ranging attempt to penetrate accounts for the nearly 750 Virtual Branch clients serviced by the servers and systems had begun.

41.     Upon this discovery, Fiserv Solutions immediately committed significant resources in security and personnel to defending its servers and systems against the attack. Fiserv Solutions implemented security measures that successfully prevented unauthorized access and put a stop to the attacks. Fiserv Solutions' efforts to repel the attack prevented the unauthorized access to the legitimate accounts or personal information of any member of Fiserv Solutions' clients, including Bessemer.

42.     Upon discovering the attack, Fiserv Solutions attempted to notify Bessemer via telephone calls to its Chief Executive Officer, Joy Peterson.  Fiserv Solutions placed a telephone call to Ms. Peterson at approximately 2:00 p.m. (Eastern) on September 26. Strangely, Ms. Peterson refused to take the call.  The Fiserv Solutions representative left a voicemail for Ms. Peterson and followed that up with an email stating that he needed to speak with her "as soon as possible regarding an issue we have detected on your Home Banking site." More than an hour later, Ms. Peterson responded by email directing Fiserv Solutions to communicate with her only by email.  Fiserv Solutions placed additional calls to Bessemer regarding the attack on September 26, leaving voicemails when there was no answer.  Neither Ms. Peterson nor anyone else at Bessemer returned these calls.

43.     On September 27, Fiserv Solutions sent an email to Ms. Peterson that attached a security notice.  The security notice stated:

<u>Notice of Potential Fraudulent Activity Identified</u>

We have identified an unusually and extremely high number of attempts to enroll in Bessemer FCU's online banking that have occurred since Monday, September 24, 2018. This activity is indicative of a brute force attack. We have taken several steps that have successfully blocked the attack and we are actively monitoring your online banking to detect any further attacks.

The unknown perpetrator utilized a program to enter high volumes of numbers in the account enrollment application. We identified four new online banking enrollments during this period and have blocked online banking access for those accounts until you are able to validate the enrollments with your members who own the associated accounts. Additionally, we have suspended new online banking enrollments for your financial institution while we work with you on next steps.

Please contact us as soon as possible so we can provide you the information on the four enrollments that have occurred since September 24th.

The email stated: "It's imperative that we talk with you as soon as possible today so we can discuss our action plan."

44.     Once again, neither Ms. Peterson nor anyone else from Bessemer responded to Fiserv Solutions' email or the security notice.

45.     Bessemer did not request or obtain Fiserv Solutions' consent to conduct any "security review," much less the attack.  Bessemer did not provide Fiserv Solutions with any advance notice of any "security review," much less the attack.

46.     Upon information and belief, the attack orchestrated by Bessemer was an attempt to manufacture an additional "data breach" for Bessemer to assert in this action, to obtain improper and unsanctioned "discovery," and to induce Fiserv Solutions to forego its claims for unpaid invoices and early termination fees and to provide Bessemer with deconversion and transition services without charge through threats of public disclosure and coercion.

47.    On information and belief, Bessemer created fictitious accounts using social security numbers and other personally identifiable information belonging to third parties, and at least one deceased person, who have or had personal or familial relationships with Bessemer's CEO.

48.    Fiserv Solutions incurred significant costs and expended significant resources to repel and later investigate the cause and source of the brute force attack, test the affected systems and assess the business and legal impact of the brute force attack, including the cost of security consultants and attorneys' fees.

## BREACH OF MASTER AGREEMENT

49.    Fiserv Solutions repeats and incorporates by reference the allegations of Paragraphs 1 through 48 of its Counterclaim as though fully set forth herein.

50.    Bessemer and Fiserv Solutions are parties to the Master Agreement.

51.    Fiserv Solutions performed and satisfied all of its contractual obligations to Bessemer under the Master Agreement.  Any and all conditions precedents to performance of Bessemer's contractual obligations to Fiserv Solutions have been satisfied or waived.

52.    Bessemer materially breached multiple provisions of the Master Agreement by commissioning and orchestrating the attack on Fiserv Solutions' servers and systems.  Nothing in the Master Agreement provides Bessemer with the legal right to conduct the attack (or so-called "security review").

53.    Specifically, Bessemer breached Paragraph 3 of the ASP Services Exhibit by, among other things, attempting to circumvent the devices employed by Fiserv Solutions to prevent unauthorized access to Fiserv Solutions' systems and servers.  By orchestrating the cyberattack on Fiserv Solutions' systems and servers, Bessemer engaged in repeated and multiple attempts to circumvent Fiserv Solutions' systems and procedures that are designed to

58

prevent unauthorized access.  This was done without the knowledge or consent of Fiserv

Solutions and in direct contravention to, and in breach of, Bessemer's obligations under the

Master Agreement.

54.     In addition, Bessemer materially breached Paragraph 5 of the ASP

Services Exhibit as follows:

a.   Bessemer materially breached Paragraph 5(a) by failing to comply with

Fiserv Solutions' procedures and operating instructions for use of Services

and the Fiserv Solutions Systems.  The attack was not authorized by Fiserv

Solutions or consistent with Fiserv Solutions' procedures or operating

instructions for use of Services and the Fiserv Solutions System.  Such

procedures and instructions do not, and would not, permit a client to conduct a

surprise, unauthorized attack on Fiserv Solutions' servers and systems.

b.   Bessemer materially breached Paragraph 5(g) by failing to notify Fiserv

Solutions of the attack (of which it was obviously aware) and evading Fiserv

Solutions' attempts to communicate with Bessemer about that matter.  As a

result of Bessemer's material breach, Fiserv Solutions lacked material

information necessary to assess the true nature and scope of the threat, causing

Fiserv Solutions to incur additional damages.

c.   Further, Bessemer has a contractual duty pursuant to Paragraph 5(h) to

indemnify and hold Fiserv Solutions harmless from any and all claims arising

out of Bessemer's use of the Fiserv Solutions system in a manner other than

that provided in the Agreement.  The attack commissioned and orchestrated

by Bessemer constituted the use of the Fiserv Solutions System in a manner other than that provided in the Master Agreement.

55.     Bessemer breached Paragraph 3 of the Master Agreement, which defines Fiserv Information to include proprietary information, all information regarding the Deliverables, all software products (which includes things such as databases, methods, architecture), any personally identifiable information and "any other information or data received from or on behalf of Fiserv or its Affiliates that Client could reasonably be expected to know is confidential," by (a) disclosing confidential Fiserv Information to third-parties, including the third-parties who orchestrated and conducted the attack, without consent; and (b) using confidential Fiserv Information other than for lawful purposes contemplated by the Master Agreement.  Specifically, Bessemer used confidential Fiserv Information for purposes of orchestrating an unlawful attack on Fiserv Solutions' servers and systems and to threaten the disclosure of confidential Fiserv Information to induce Fiserv Solutions to provide Bessemer with money or other things of value, including the release or forgiveness of Fiserv Solutions' rights to payment under the Master Agreement and/or the provision of deconversion and transition services by Fiserv Solutions without charge.

56.     Bessemer has further materially breached the Master Agreement by refusing and failing to pay for certain services provided by Fiserv Solutions and accepted by Bessemer, including services demanded by Bessemer and provided in connection with Bessemer's deconversion.

57.     Bessemer has further materially breached the Master Agreement by refusing and failing to pay early termination fees as required by Paragraph 8(b) of the ASP Services Exhibit.

4848-9870-9963

58.     As a direct and proximate cause of Bessemer's breaches of the Master Agreement, Fiserv Solutions has been damaged in the amounts owed for the services provided by Fiserv Solutions, early termination fees, and investigative and legal fees incurred as a direct and proximate result of the brute force attack, in addition to late fees, prejudgment interest, attorneys' fees and other amounts provided in the Master Agreement, all in an amount to be proven at trial.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

59.     Fiserv Solutions repeats and incorporates by reference the allegations of Paragraphs 1 through 58 of its Counterclaim as though fully set forth herein.

60.     By virtue of the Master Agreement and the resulting contractual relationship between Fiserv Solutions and Bessemer, Bessemer owed Fiserv Solutions a duty of good faith and fair dealing in the performance of its obligations under the Master Agreement.

61.      Bessemer breached its duty of good faith and fair dealing in the performance of its obligations to Fiserv Solutions under the Master Agreement by, among other things, (a) asserting unsupported breaches of the Master Agreement; (b) refusing to pay Fiserv Solutions' invoices when due; (c) making contractual demands in bad faith; and, (d) conducting a brute force attack.  Bessemer has undertaken these actions to avoid its contractual obligations and obtain benefits from Fiserv Solutions to which it was not entitled under the Master Agreement.

62.     As a direct and proximate cause of Bessemer's breach of its duty of good faith and fair dealing, Fiserv Solutions has been damaged in the amounts owed for the services provided by Fiserv Solutions, early termination fees, and investigative and legal fees incurred as

61

a direct and proximate result of the brute force attack, in addition to late fees, prejudgment

interest, and attorneys' fees, all in an amount to be proven at trial.

## CONTRACTUAL RECOVERY OF ATTORNEYS' FEES AND COSTS

63.     Fiserv Solutions repeats and incorporates by reference the allegations of

Paragraphs 1 through 62 of its Counterclaim as though fully set forth herein.

64.     On April 20, 2018, Bessemer filed this action against Fiserv, Inc. and

Fiserv Solutions.

65.     On October 30, 2019, Bessemer filed the Second Amended Complaint in

this action.

66.     On July 14, 2020, the Court entered an Order (Docket No. 70) dismissing

Counts I (in part), II, III, IV (in part), V, VI, VII, XI, and XII with prejudice (the "Dismissed

Claims").

67.     Pursuant to Paragraph 11(h) of the Master Agreement, the prevailing party

in this action "shall be entitled to receive  . . . its reasonable costs and expenses, including

without limitation all attorneys' fees, expert witness fees, litigation-related expenses and . . .

other court or other costs incurred" in this action.

68.     Fiserv Solutions is, or will be, the prevailing party in this action, including

with respect to the Dismissed Claims, and is or will be entitled to recover from Bessemer the

reasonable costs and expenses, including without limitation all attorneys' fees, expert witness

fees, litigation-related expenses, court costs and other costs, all in an amount to be proven at trial

or post-trial in accordance with the Court's procedures.

## PRAYER FOR RELIEF

WHEREFORE, Fiserv, Inc. and Fiserv Solutions, LLC demand judgment as follows:

(a)     Dismissal of the Second Amended Complaint, and each remaining count thereof, on the merits and with prejudice;

(b)     Compensatory damages with respect to the counterclaims of Fiserv Solutions in an amount to proven at trial, plus pre-judgment interest;

(c)     An award of attorneys' fees and all other litigation expenses pursuant to Paragraph 11(h) of the Master Agreement;

(d)     An award of costs as provided by law; and

(e)     A grant of such other and further relief as the Court may deem just and appropriate under the circumstances.

Dated:  September 16, 2020.

Respectfully submitted,


/s/ *Andrew J. Wronski*
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Jesse L. Byam-Katzman (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com

jbyam-katzman@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

4848-9870-9963

**CERTIFICATE OF SERVICE**

I, Jesse L. Byam-Katzman, hereby certify that a copy of the foregoing First

Amended Answer and Affirmative Defenses to Second Amended Complaint and Counterclaims

was served on the following counsel of record for Plaintiff via the CM/ECF system this 16th day

of September, 2020.


Richard J. Parks
Pietragallo, Gordon, Alfano,
Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146

Charles J. Nerko
Alexander Mirkin
Offit Kurman, P.A.
10 East 40th Street, 35th Floor
New York, NY 10016
*Attorneys for Bessemer System Federal Credit Union*


/s/ ***Jesse L. Byam-Katzman***
Jesse L. Byam-Katzman

4848-9870-9963