## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

**BESSEMER SYSTEM FEDERAL CREDIT UNION**, *on behalf of itself and its members*,

        Plaintiff,

    -against-

**FISERV SOLUTIONS, LLC**, *formerly known as* FISERV SOLUTIONS, INC., and **FISERV, INC.**,

        Defendants.

No. 19 Civ. 624 (RJC)

## BESSEMER SYSTEM FEDERAL CREDIT UNION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS 12(b)(6) MOTION TO DISMISS THE COUNTERCLAIMS

Charles J. Nerko (NY 4764338)
Alexander Mirkin (NY 4944682)
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
(212) 545-1900
charles.nerko@offitkurman.com
amirkin@offitkurman.com

Richard J. Parks (PA 40477)
PIETRAGALLO GORDON
ALFANO BOSICK & RASPANTI, LLP
7 West State Street, Suite 100
Sharon, PA 16146
(724) 981-1397
rjp@pietragallo.com

*Attorneys for Plaintiff*
*Bessemer System Federal Credit Union*

## **Table of Contents**

Argument ....................................................................................................................... 1

   I.   Fiserv's admissions render its breach of contract claim implausible. ................................ 1

     A.   Fiserv has not alleged cognizable damages resulting from the security review. ............. 2

     B.   Fiserv's admissions of breach preclude it from plausibly alleging its own performance of the Master Agreement. ..................................................................................................... 3

     C.   Fiserv has not plausibly alleged that Bessemer's security review breached the Master Agreement. ........................................................................................................................ 4

   II.   Fiserv has not plausibly stated a claim for breach of the covenant of good faith and fair dealing. ......................................................................................................................... 5

   III.   Fiserv's claim for attorneys' fees is improper................................................................ 6

Conclusion .................................................................................................................... 7

## Table of Authorities

**Cases**

*Amelio v. McCabe, Weisberg & Conway, P.C.,*
  2015 WL 4545299 (W.D. Pa., July 28, 2015) ....................................................................................... 1

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................................................... 4

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.,*
  52 F. Supp. 3d 601 (S.D.N.Y. 2014) ...................................................................................................... 3

*Riboldi v. Warren Cty.,*
  781 F. App'x 44 (3d Cir. 2019) ............................................................................................................. 4

*Sowemimo v. Thomas,*
  2009 WL 3806737 (W.D. Pa., Nov. 13, 2009) ...................................................................................... 1

*Wechsler v. Hunt Health Systems, Ltd.,*
  198 F. Supp. 2d 508 (S.D.N.Y. 2002) ................................................................................................... 3

**Rules**

12 C.F.R Part 748 App'x A § III.D.3 ......................................................................................................... 5

To distract from its own wrongdoing after Fiserv exposed Bessemer's members to data breaches and engaged in other intentional misconduct the Court found to plausibly warrant punitive damages (ECF No. 69 at 54-5), Fiserv paints a fanciful tale of a not-for-profit community credit union engaging in an "attack," "letter-writing campaign," and "bad faith tactics." The labels and conclusions are concededly imaginative. But the Court need only consider the actual facts, which tell a different story. Bessemer, and the thousands of consumers who bank at it, are the victims here. Fiserv has no plausible claim.

Fiserv's main defense of its counterclaims is that because it recited the elements of its claims (with some pizazzy labels for good measure), Bessemer's motion is some sort of inappropriate attempt to look beyond the pleadings, contrary to Rule 8.[1] But Fiserv cannot escape the implications of its own admissions: the record on this motion is not merely Fiserv's counterclaim, but also its answer to Bessemer's detailed Second Amended Complaint. The Court is entitled to rely on Fiserv's admissions, including the factual content of documents to which Fiserv refers in its answer. *See Amelio v. McCabe, Weisberg & Conway, P.C.*, 2015 WL 4545299 (W.D. Pa., July 28, 2015); *Sowemimo v. Thomas*, 2009 WL 3806737 (W.D. Pa., Nov. 13, 2009). On that record, Fiserv's arguments—and its counterclaims—fail.

## ARGUMENT

### I.   Fiserv's admissions render its breach of contract claim implausible.

Fiserv claims its *ipse dixit* characterization of its services as adequate, of Bessemer's security review as unauthorized, and of its damages as cognizable forecloses Bessemer's motion to dismiss its breach of contract claim. But, as Bessemer showed in its opening memorandum, Fiserv's own admissions defeat its claims.

---

[1] Defined terms have the meanings ascribed to them in Bessemer's opening memorandum.

**A.  Fiserv has not alleged cognizable damages resulting from the security review.**

A breach of contract claim cannot stand where a claimant fails to allege facts plausibly showing damages. *See* Cases Cited in Opening Mem. at 15-16. Fiserv claims its alleged damages—the legal and consulting fees to address Bessemer's security review—were proximately caused by Bessemer, both through its review and through its alleged refusal to communicate about the review. But Fiserv admits that "Bessemer was authorized to access Fiserv's systems" (Mem. Opp. at 12), that Bessemer created the test accounts used for the security review (Countercl. ¶ 47), that the review did not lead to "unauthorized access to accounts or personal information" (ECF No. 48-8 at 1 (letter from Fiserv counsel)), and that Bessemer communicated to Fiserv the day of the review, offering to communicate further in writing (Countercl. ¶ 42). So, the two ostensible proximate causes of Fiserv's damages—unauthorized access requiring repair, and a lack of communication from Bessemer requiring additional investigation—are conclusively negated by Fiserv's admissions. Without them, Fiserv cannot explain what it is that Fiserv had to spend money on—other than fixing Fiserv's pre-existing security problems that Bessemer's security review uncovered.

Fiserv does not allege that Bessemer's security review broke any functionality of Fiserv's system or gave Bessemer access to any non-Bessemer account. Indeed, Fiserv concedes that the effect of the security review was to demonstrate that Fiserv's system failed to implement "rate limiting," a security control used to lock out hackers so they can not take over Bessemer's accounts by repeatedly guessing the last four digits of a member's social security number (Answer ¶¶ 60, 62). All along, Fiserv was obligated to safeguard Bessemer's member information against unauthorized access. That Fiserv had to remedy its security failure cannot be Bessemer's fault. Fiserv's claims should be dismissed because Fiserv "would have been

contractually obligated" in any event to audit its security controls and ensure they are effective. *See Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 614 (S.D.N.Y. 2014).

Notably, Fiserv does not even attempt to defend its other ostensible contract damages, Bessemer's alleged failure to pay certain invoices. As Bessemer explained, and Fiserv did not dispute, Bessemer repeatedly tendered payment on Fiserv's invoices, which Fiserv refused to accept (Compl. ¶¶ 164-167, Answer ¶¶ 164-167; Countercl. ¶ 22 n.2). Given Fiserv's admitted refusal to accept Bessemer's tender of payment—and admitted breaches of the Master Agreement (*infra*, Part II.B)—Fiserv cannot claim unpaid invoices as damages (*cf.*, Countercl. ¶ 58).

### B.  Fiserv's admissions of breach preclude it from plausibly alleging its own performance of the Master Agreement.

Fiserv does not seriously dispute that it disclosed Bessemer's transaction information to an unauthorized third party, that it failed to impose rate limiting to prevent hackers from accessing Bessemer's accounts, that it printed the wrong return addresses on certain statements, that it failed to provide required audit information, or that it refused to participate in contractually-mandated conciliation. *See* Opening Mem. at 6-7; *cf.* Mem. Opp. at 10. Instead, it posits that these acts, though contrary to Fiserv's contractual obligations, were not material breaches of the Master Agreement—either because Fiserv conclusorily alleged they were not, or because establishing material breach requires a factual record that Fiserv claims is unavailable. But "[t]he determination of materiality of breach is an issue of law for the Court to rule on." *Wechsler v. Hunt Health Systems, Ltd.*, 198 F. Supp. 2d 508, 526 (S.D.N.Y. 2002).

Here, the record is replete with evidence of the materiality of Fiserv's breaches:  (1) the parties expressly agreed in the Master Agreement that breaches pertaining to information protection would allow Bessemer to terminate Fiserv for cause; and (2) breaches pertaining to

Fiserv's failure to provide audit records and adequately protect Bessemer's member information would render Bessemer out of compliance with federal law and policy established by the NCUA. While Fiserv disputes Bessemer's characterization of these facts, it cannot show a factual dispute on which issue must be joined before the Court can rule on Fiserv's claims.[2]

### C. Fiserv has not plausibly alleged that Bessemer's security review breached the Master Agreement.

Fiserv admits that Bessemer's security review "did not provide access to any actual Bessemer account," (Mem Opp. at 13, citing Countcl. ¶ 41), but asserts the security review was nevertheless unauthorized access to Fiserv's system because (1) Fiserv says so, and (2) the security review may have given "***Bessemer*** . . . access to the fraudulent accounts ***it created***" (*id.*). In other words, Fiserv's claim hinges on the proposition that Bessemer needed authorization from Fiserv to access accounts it created on its own online banking system. This suggestion is implausible on its face, and is made no more plausible by Fiserv's (nonexistent) analysis of the Master Agreement. To survive a motion to dismiss, Fiserv must do more than conclusorily allege that the security review was unauthorized. *Riboldi v. Warren Cty.*, 781 F. App'x 44, 46 (3d Cir. 2019). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Moreover, after Fiserv's failure to fulfill its contractual obligations to provide audit reports and test results pertaining to information security, Bessemer acted appropriately by investigating these issues itself. Bessemer's moving papers set forth the strong public policy in

---

[2] Fiserv's reliance on *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136-37 (2d Cir. 2016) has no bearing on the motion to dismiss or why the security review was not a breach since the security review was not a violation of the Master Agreement for the reasons set forth herein and in the Opening Brief. And here, the breaches Fiserv admitted are material. This is unlike *Process Am., Inc.*, where an insignificant, non-material payment default was found to not justify violating a non-solicitation clause the parties expressly intended survive termination.

the safety and soundness of a federally insured credit union and in protecting its members'
sensitive banking information. Opening Mem. at 12-15.

All along, federal law obligated Bessemer to "monitor" Fiserv and "review audits,
summaries of test results, or other equivalent evaluations" of Fiserv. 12 C.F.R. Part 748 App'x A
§ III.D.3. After Fiserv's admitted refusal to meet its contractual obligation to provide these audit
reports and test results, Bessemer responded appropriately. Contrary to Fiserv's position, nothing
in NCUA guidance prohibits a credit union from conducting its own security reviews or
obtaining its own audit of a vendor. In fact, the guidance is to the contrary. The NCUA expects
that "credit unions are measuring the performance of third party arrangements and periodically
verifying the accuracy of any information provided to them by a third party…[and] review[ing]
the performance of third parties". NCUA Letter to Credit Unions 08-CU-09 App'x at A60-62.
This obligation falls on credit union "[m]anagement [to] assess the security and performance
reliability of web sites whose performance is beyond their control…[and] verify that the third-
party web site complies with all applicable laws…[including] Privacy." NCUA Letter to Credit
Unions 02-FCU-04 at 2.

Accordingly, Bessemer's actions in the conducting the security review were permissible,
and to find otherwise would render the contract void as against public policy.

## II.     Fiserv has not plausibly stated a claim for breach of the covenant of good faith and fair dealing.

Fiserv argues that its claim for breach of the covenant of good faith and fair dealing is not
duplicative of its breach of contract claim because it ostensibly depends on different conduct and
seeks different damages. If Fiserv's description of its claims were correct, Bessemer would
agree. That is not the case here; the only difference between the two claims is that the conduct
that Fiserv claims constitutes a breach of contract is, in the implied covenant claim, alleged to be

part of a pattern of conduct carried out in bad faith to acquire increased negotiating power. But the so-called pattern is nothing more than the conduct that is alleged to breach the Master Agreement (or, in the case of commenting on Fiserv's services or sending letters raising concerns about Fiserv's deficient performance, are expressly permitted under the Master Agreement and consistent with Bessemer's legitimate interests in protecting its member information). These semantic games would permit any claim for breach of contract to be recast as a claim of breach of the implied covenant. That cannot be and is not the law. *See* Cases Cited in Opening Mem. at 16-20.

Meanwhile, against the backdrop of Fiserv's admitted data breaches and refusal to provide required audit records pertaining to information security, Fiserv does not plausibly allege that any actions taken by Bessemer to enforce its contract rights and comply with federal law were in bad faith. Fiserv cannot be damaged when after failing to provide its own audit documentation, Bessemer uncovered the same such audit information as part of its own security review. Simply put, it is not bad faith for Bessemer to do what Fiserv ought to have done.

### III.    Fiserv's claim for attorneys' fees is improper.

Fiserv alleges that its counterclaim for attorneys' fees is not improper because such fees are "special damages" in the Third Circuit and so must be pleaded with particularity under Rule 9(g). That does not change the requirement that attorneys' fees are sought by motion at the conclusion of an action. The proper procedural path would have been for Fiserv to include the fees in its prayer for relief, not to assert an independent claim. This distinction matters because, should Fiserv's other claims be dismissed, it should not be able to maintain its status as a counterclaimant based solely on an attorneys' fees provision.

## CONCLUSION

When this Court held that Bessemer plausibly pleaded its claims against Fiserv, Fiserv was forced to admit a host of misconduct in its dealings with Bessemer. These admissions preclude its claims. Despite its prior attempt at amendment, Fiserv has been unable to salvage them. Accordingly, Fiserv's counterclaims should be dismissed in their entirety and with prejudice.

Dated: April 9, 2021

Respectfully submitted,

OFFIT KURMAN, P.A.

By: /s/ Charles J. Nerko
    Charles J. Nerko (NY 4764338)
    Alexander Mirkin (NY 4944682)
590 Madison Avenue, 6th Floor
New York, NY 10022
(212) 545-1900
charles.nerko@offitkurman.com
amirkin@offitkurman.com

Richard J. Parks (PA 40477)
PIETRAGALLO GORDON
ALFANO BOSICK & RASPANTI, LLP
7 West State Street, Suite 100
Sharon, PA 16146
(724) 981-1397
rjp@pietragallo.com

*Attorneys for Plaintiff*
*Bessemer System Federal Credit Union*

7