# EXHIBIT 21

# CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Agreement") is entered into as of the first date on which all Parties have executed this Agreement and the Deconversion Amendment (as defined herein) (the "Effective Date") among Bessemer System Federal Credit Union ("Bessemer"), and Fiserv, Inc. and Fiserv Solutions, LLC (formerly known as Fiserv Solutions, Inc.) ("Fiserv Solutions") (each of Bessemer, Fiserv, Inc. and Fiserv Solutions is a "Party" and collectively, the "Parties").  Where appropriate, Fiserv, Inc. and Fiserv Solutions are collectively referred to herein as the "Fiserv Parties."   Prior to the Effective Date, this Agreement and each provision hereof shall have no force or effect.

WHEREAS, Bessemer and Fiserv Solutions are parties to that certain Master Agreement and accompanying exhibits, schedules and appendices, and amendments dated as of July 1, 2014, which superseded and replaced any prior agreements between the Parties, pursuant to which Fiserv Solutions agreed to provide certain services and equipment and to license certain software products and services to Bessemer, including electronic account processing, online banking, and bill payment services (known broadly as "ASP Services" and "Virtual Branch Services") pursuant to that certain ASP Services Exhibit, equipment and software pursuant to that certain Equipment Exhibit, that certain Software Products Exhibit and that certain Sellstation Software Exhibit, and professional services pursuant to that certain Professional & Development Services Exhibit (together comprising the "Master Agreement");

WHEREAS, various disputes and disagreements have arisen among the Parties with respect to Fiserv Solutions' provision of software and services pursuant to the Master Agreement and, by letters dated January 8, 2018, March 7, 2018, April 11, 2018, June 13, 2018, July 18, 2018, September 14, 2018, and September 28, 2018, Bessemer asserted that Fiserv has breached its obligations under the Master Agreement (the "Claims")

WHEREAS, on or about April 20, 2018, Fiserv Solutions received a Writ of Summons notifying it that Bessemer had commenced an action against Fiserv Solutions in the Court of Common Pleas of Mercer County, Pennsylvania, Case No. 2018-01130 (the "Action");

WHEREAS, as of the Effective Date, Bessemer has not filed a complaint asserting specific claims in the Action;

WHEREAS, on or about September 24, 25, and 26, 2018, Bessemer conducted what it has described as a "security review" relating to Fiserv Solutions' Virtual Branch and online banking services that involved multiple attempts via automated means to log-in to certain accounts established by Bessemer (the "Security Review");

WHEREAS, Fiserv asserts that the Security Review was unauthorized and, among other things, a breach of the Master Agreement;

WHEREAS, on October 9, 2018, Bessemer commenced a second action against Fiserv Solutions in the Court of Common Pleas of Mercer County, Pennsylvania, Case No. 2018-

1

03022, seeking replevin of certain computer and account records allegedly in Fiserv Solutions' possession (the "Replevin Action");

WHEREAS, on or about October 18, 2018, Bessemer dismissed the Replevin Action without prejudice;

WHEREAS, the Parties have agreed that Bessemer will obtain processing services and related services from another vendor and further agreed on the terms and conditions by which Bessemer will transition from Fiserv Solutions provided by to services provided by the new provider ("Deconversion") and terminate the Master Agreement;

WHEREAS, in order to facilitate the Deconversion, Fiserv Solutions has agreed to forego and release the payment of early termination fees that would be due from Bessemer pursuant to Section 8(b) of the ASP Services Exhibit to the Master Agreement as a result of the Termination Date of May 31, 2019 (the "Early Termination Fees"); and

WHEREAS, without in any way admitting any wrongdoing or liability of any nature, Bessemer and the Fiserv Parties desire to settle and compromise all claims among them on the terms agreed upon herein;

NOW, THEREFORE, in consideration of the agreements, promises, releases and covenants set forth in this Settlement Agreement and Mutual Release, the value and receipt of which are hereby acknowledged by Bessemer and each of the Fiserv Parties, it is agreed as follows:

1. **TERMINATION OF MASTER AGREEMENT AND DECONVERSION.** Contemporaneous with the execution of this Agreement, the Parties shall execute the Deconversion Amendment in the form attached hereto as Exhibit A (the "Deconversion Agreement"). As provided in the Deconversion Amendment, the Master Agreement, all exhibits, schedules and amendments to the Master Agreement shall terminate on May 31, 2019 (the "Termination Date"), except with respect to any provision that expressly survives termination pursuant to the Master Agreement (the "Surviving Obligations"). The Parties shall continue to perform pursuant to the terms of the Master Agreement until the Termination Date.

2. **PAYMENTS.** As of the Effective Date, Bessemer owes Fiserv Solutions the sum of (a) $64,457.45 with respect to the certain past due invoices issued by Fiserv Solutions that remain outstanding (Nos. 91318571, 91335209, 91351988, 91369294 and 91386823); (b) $13,119.18 for Invoice No. 91404173, dated October 31, 2018, and (c) $12,612.90 for Invoice No. 91421173 dated November 30, 2018 ("the "Unpoaid Invoices"). Bessemer shall pay the Unpaid Invoices within three business days of the Effective Date. Except as provided in the Deconversion Amendment, Bessemer shall continue to pay future invoices for services provided by Fiserv Solutions in the ordinary course of business prior to the Termination Date. In addition, Bessemer shall pay the fees, expenses and other amounts relating to Deconversion as provided in the Deconversion Amendment. All payments made by Bessemer after the Effective Date, including payment for the Unpaid Invoices, shall be made by wire transfer pursuant to the following wire transfer instructions:

Account Name:  NORTHERN TRUST (FISERV)
Account Number:  47919348
Routing/Transit for ACH Debits & Credits:  071000152
Routing/Transit for Wires:  071000152
SWIFT:  CNORUS44

**Description:**  Bessemer CU Payments
**Bank Address:**  50 South LaSalle Street, Chicago, IL

### 3. MUTUAL RELEASES; COVANANTS NOT TO SUE.

a. **By the Bessemer Releasors**.  For good and valuable consideration, the sufficiency of which is hereby acknowledged, Bessemer for itself and its representatives, subsidiaries, affiliates (the term "affiliates" includes, but is not limited to, any entity controlling, controlled by, or under common control with Bessemer), successors, assigns and anyone else claiming under or through Bessemer (the "Bessemer Releasors") hereby completely, unconditionally, and forever release and discharge each of the Fiserv Parties, their past or present affiliates, parents, subsidiaries, and all of their respective past or present officers, directors, shareholders, agents, representatives, insurers, attorneys, members, predecessors, servants, employees, managers, principals, successors and assigns (the "Fiserv Releasees") of and from any and all debts, demands, actions, causes of action, suits, damages, claims, counterclaims, losses, grievances, charges and liabilities whatsoever of every name and nature, whether based on tort, contract or other legal or equitable theories of recovery, and whether known or unknown, asserted or unasserted, that the Bessemer Releasors now have, ever had, or in the future may have against the Fiserv Releasees arising, in whole or in part, from any and all matters, transactions, acts, omissions or events at any time up to and through the Effective Date, including, but not limited to, the Claims, all claims that were or could have been asserted in the Action or the Replevin Action, and all claims arising under the Master Agreement or relating to the products and services provided pursuant to the Master Agreement.  Notwithstanding the foregoing, nothing herein shall be construed as, or constitute, a release of or covenant not to sue with respect to the Surviving Obligations or any obligations of the Fiserv Releasees under this Agreement or the Deconversion Amendment.  The Bessemer Releasors hereby consciously accept the risk that the scope of this release may include future damages, injuries, claims, obligations and liabilities that are presently unknown, unforeseen or not yet in existence and consciously intend to release same.  The Bessemer Releasors hereby covenant not to sue the Fiserv Releasees, or any of them, with respect to any claim released pursuant to this Paragraph 3(a).  In the event that the Bessemer Releasors breach such covenant, the Fiserv Releasees shall be entitled to recover from Bessemer all costs and expenses, including actual attorneys' fees, incurred in connection with the defense of such claims.

b. **By the Fiserv Releasors**.  For good and valuable consideration, the sufficiency of which is hereby acknowledged, Fiserv Solutions and Fiserv, Inc. for themselves and their representatives, subsidiaries, affiliates (the term "affiliates" includes, but is not limited to, any entity controlling, controlled by, or under common control with Fiserv, Inc. or Fiserv Solutions), successors, assigns and anyone else claiming under or through Fiserv, Inc. or Fiserv Solutions (the "Fiserv Releasors") hereby completely, unconditionally, and forever release and discharge Bessemer, its past or present affiliates, parents, subsidiaries, and all of their respective

3

past or present officers, directors, shareholders, agents, representatives, insurers, attorneys, members, predecessors, servants, employees, managers, principals, successors and assigns (the "Bessemer Releasees") of and from any and all known debts, demands, actions, causes of action, suits, damages, claims, counterclaims, losses, grievances, charges and liabilities against the Bessemer Releasees whether based on tort, contract or other legal or equitable theories of recovery, and whether known or unknown, asserted or unasserted, that the Bessemer Releasors now have, ever had, or in the future may have against the Fiserv Releasees arising, in whole or in part, from any and all matters, transactions, acts, omissions or events at any time up to and through the Effective Date, including, but not limited to, the Early Termination Fees and all claims arising under the Master Agreement or relating to products and services provided pursuant to the Master Agreement or the Security Review.  Notwithstanding the foregoing, nothing herein shall be construed as, or constitute, a release of or covenant not to sue with respect to, the Surviving Obligations, the Unpaid Invoices or any obligations of the Bessemer Releasees under this Agreement or the Deconversion Amendment. The Bessemer Releasors hereby consciously accept the risk that the scope of this release may include future damages, injuries, claims, obligations and liabilities that are presently unknown, unforeseen or not yet in existence and consciously intend to release same.  The Fiserv Releasors hereby covenant not to sue the Bessemer Releasees, or any of them, with respect to any claim released pursuant to this Paragraph 3(b).  In the event that the Fiserv Releasors breach such covenant, the Bessemer Releasees shall be entitled to recover from Fiserv Solutions all costs and expenses, including actual attorneys' fees, incurred in connection with the defense of such claims.

       **4.**     **DISMISSAL OF ACTION**.  Within three (3) business days of the Effective Date, Bessemer shall file a stipulation of dismissal in the form attached hereto as Exhibit B, dismissing the Action and all claims therein, with prejudice and with each Party to bear its own attorneys' fees and costs.

       **5.**     **SECURITY REVIEW MATERIALS.**  Within ten (10) business days of the Effective Date, Bessemer shall provide to the Fiserv Parties:  (a) the identities of any person or entity that conducted or participated in the performance of the Security Review; (b) copies of all reports, summaries, data compilations, analyses or other documents or records generated or prepared by or for Bessemer in preparation for or in connection with the performance of the Security Review (the "Security Review Materials").

       **6.**     **CONFIDENTIALITY.**  Absent the prior written consent of the other Parties, each Party shall keep confidential and shall not disclose, divulge or announce to any third party the fact, terms or conditions of this Agreement or the Deconversion Amendment, the facts and circumstances relating to the Claims, the Action, the Replevin Action, or the Security Review, or the Security Review Materials (the "Confidential Information").  Notwithstanding the foregoing, each Party shall be permitted, without the consent of the other party, to (a) state that the Parties' dispute has been "settled" or "resolved" and (b) disclose Confidential Information to the extent, but only to the extent, necessary to (i) comply with a court order or requirement of law, legal process or regulation, including, but not limited to, disclosures required by regulations of the Securities and Exchange Commission; (ii) comply with any obligation to furnish information to, or respond to an inquiry of, any regulatory agency or entity that has supervisory or other legal authority over such party; (iii) assist the Parties' respective accountants, auditors, and attorneys  with respect to the implementation of, compliance with or

accounting for the transactions effected by this Agreement.  If any Party receives a subpoena or other legal process (other than from a regulatory agency or entity that has supervisory or other legal authority over such Party) that purports to require the disclosure of Confidential Information, it shall promptly notify the other Party or Parties in order to permit such Party or Parties to oppose such disclosure or seek an appropriate protective order or other relief.

       **7.**    **BREACH OF THIS SETTLEMENT AGREEMENT**.  If any Party breaches any term of this Agreement, that Party shall pay to the non-defaulting Party all of the non-defaulting Party's costs and expenses, including reasonable attorneys' fees, incurred by the non-defaulting Party in enforcing the terms of this Agreement.

       **8.**    **NO ADMISSION OF LIABILITY.**  The Parties agree that the settlement embodied in this Agreement represents the compromise of disputed claims, and that nothing in this Agreement shall be construed as an admission of any fault or liability with respect to any claim, counterclaim, obligation or liability released.

       **9.**    **NO ASSIGNMENT OF CLAIMS.**  Each Party represents and warrants that it is the sole and exclusive owner of any and all claims being released in this Agreement, and neither it, nor any of its agents, representatives, officers, employees or attorneys has assigned, transferred, pledged, or purported to assign, transfer or pledge any actual or alleged claims, obligations or liabilities that are the subject of this Agreement and/or that are released in this Agreement.

      **10.**    **ACKNOWLEDGEMENTS.**  Each Party acknowledges that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  No Party is relying on any representation or statement made by any other Party or any person representing such other Party, except for representations and warranties expressly set forth in this Agreement.

      **11.**    **CONSTRUCTION.**  Each Party, with the assistance of competent counsel, has participated in the drafting of this Agreement.  The Parties agree that this Agreement has been negotiated at arms-length by parties of equal bargaining power, each of which was represented by competent counsel of its own choosing.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

      **12.**    **COOPERATION.**  The Parties agree to cooperate fully and execute any and all supplementary documentation, and take any further actions, that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

      **13.**    **SEVERABILITY.**  Wherever possible, each paragraph of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Agreement.

**14.     INTEGRATION AND MERGER CLAUSE.**  This Agreement and the documents incorporated by reference, including, without limitation, the Master Agreement and the Deconversion Amendment, set forth the entire agreement among the Parties hereto with respect to the subject matter hereof, and there have been and are no agreements, representations, or warranties, whether express or implied, written or oral, other than those set forth or provided for herein.  Other than as stated herein, each Party hereto warrants that no representation, promise, or inducement has been offered or made to induce such Party to enter into this Agreement.

**15.     AMENDMENT OF AGREEMENT.**  The terms of this Agreement may only be amended or modified by a writing that has been executed by each of the Parties hereto.

**16.     JOINT REPRESENTATIONS AND WARRANTIES.**  Each Party to this Agreement represents and warrants:  (a) that the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all corporate or other actors necessary to enter into this Agreement and bind the Party hereto; (b) that the execution and delivery of this Agreement create a legal and binding obligation of each respective Party, enforceable against such Party in accordance with its terms; (c) that the releases granted herein constitute legal and binding obligations of the Bessemer Releasors and Fiserv Releasors; and (d) that the Parties hereto have consulted with legal counsel concerning this Agreement and have had a reasonable opportunity to consider whether there may be future damages, injuries, claims, obligations and liabilities, which presently are unknown, unforeseen or not yet in existence.

**17.     NO THIRD PARTY RIGHTS**.  This Agreement: (a) shall benefit and be binding upon the Parties to this Agreement, their successors and assigns, and any corporation or other entity into or with which any Party may merge or consolidate; and (b) is not intended to, nor shall it, create any rights, claims or defenses in any other person or entity.

**18.     SATISFACTION OF CLAIMS FOR FEES, COSTS AND EXPENSES**.  Each Party to this Agreement shall be solely responsible for the fees and costs of all lawyers and law firms retained by such Party in connection with this matter, including but not limited to all settlement negotiations, mediation and the review and drafting of this Agreement.

**19.     EXECUTION.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Executed signature pages may be removed from partially executed counterparts and attached to one or more other counterparts in order to produce fully executed counterparts of this Agreement.  This Agreement may be executed by facsimile copy or electronic transmission in portable document format (or equivalent document-scanning format) ("PDF"), and each signature (whether counterpart, facsimile or PDF) thereto shall be and constitute an original signature with the same force and effect, and together shall make this an effective, binding agreement by each of the Parties, again as if all Parties had executed a single original document.

**20.     CHOICE OF LAW.**  This Agreement is to be construed in accordance with and governed by the internal laws of the State of New York, without giving effect to any

6

choice-of-law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New York to the rights and duties of the Parties.

      **21.**    **INDULGENCES; NO WAIVERS.** Neither the failure nor any delay on the part of any Party hereto to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude other or further exercise of the same or any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power, or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the Party asserted to have granted such waiver.

      **22.**    **HEADINGS.** The Parties agree that the captions and headings in this Agreement are inserted for the convenience of reference only and shall not affect the interpretation of this Agreement.

      **23.**    **NOTICES.** All notices and other communications pursuant to this Agreement shall be in writing and shall be deemed given if delivered personally, sent by nationally-recognized, overnight courier or mailed by registered or certified mail (return receipt requested), postage prepaid, to the Parties at the following addresses (or at such other address for a Party as shall be specified by like notice):

| | |
|---|---|
| If to Bessemer: | [insert] |
| With a copy to: | [insert] |
| If to Fiserv: | Lynn S. McCreary<br>Chief Legal Officer<br>Fiserv, Inc.<br>255 Fiserv Drive<br>Brookfield, WI  53045 |
| With a copy to: | Andrew J. Wronski<br>Foley & Lardner LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202 |

All notices and other communications shall be deemed to have been received (a) in the case of personal delivery, on the date of such delivery, (b) in the case of delivery by nationally-recognized, overnight courier, on the business day following dispatch, and (c) in the case of mailing, on the third (3rd) business day following such mailing.

FISERV SOLUTIONS, LLC f/k/a FISERV SOLUTIONS, INC.

By: _____

Its: _____

Date: _____

FISERV, INC.

By: _____

Its _____

Date: _____

BESSEMER SYSTEM FEDERAL CREDIT UNION

By:_____

Its _____

Date: _____