## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BESSEMER SYSTEM FEDERAL CREDIT UNION, on behalf of itself and members, | ) ) ) | 2:19-cv-00624-RJC |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Judge Robert J. Colville |
| FISERV SOLUTIONS, LLC and FISERV, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss Counterclaims (ECF No. 92) filed by Plaintiff/Counterclaim-Defendant Bessemer System Federal Credit Union ("Bessemer"). Bessemer seeks dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of the Counterclaims set forth by Defendant/Counterclaimant Fiserv Solutions, LLC, f/k/a Fiserv Solutions, Inc. ("Fiserv Solutions") in the operative "First Amended Answer and Affirmative Defenses to Second Amended Complaint and Counterclaims" (ECF No. 88).[1] The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). Bessemer's Motion has been fully briefed, and is ripe for disposition.

---

[1] While ECF No. 88 was filed by Fiserv Solutions and co-Defendant Fiserv, Inc. ("Fiserv, Inc.") (collectively, "Defendants"), only Fiserv Solutions asserts Counterclaims in this matter.

## I.      Factual Background & Procedural History

A comprehensive factual background of this case was set forth in this Court's July 14, 2020 Opinion (ECF No. 69) in this matter, which addressed a Motion to Dismiss (ECF No. 52) that had been filed by Defendants with respect to Bessemer's operative Second Amended Complaint (ECF No. 48) ("Complaint").  In the interest of judicial economy, the Court sets forth below the facts alleged in the Complaint largely verbatim to its summary of such facts in the July 14, 2020 Opinion, but notes that: (1) certain of Bessemer's claims related to such allegations were dismissed by way of the Order of Court (ECF No. 70) accompanying the Court's Opinion; (2) the Court has omitted allegations and averments set forth in the Complaint that are not relevant herein from its summary and has supplemented its summary with additional allegations and averments from the Complaint that are relevant herein; and (3) Defendants have denied many of the below allegations.[2] In its Complaint, Bessemer sets forth the following allegations:

Bessemer is a member-owned, federally chartered not-for-profit credit union.  Compl. ¶ 10, ECF No. 48.  Bessemer provides financial services to its more than 4,000 members.  *Id.* at ¶ 11.  Defendants provide technology solutions to credit unions, banks, and other financial services providers.  *Id.* at ¶ 20.  Bessemer and Fiserv Solutions were parties to the Master Agreement, pursuant to which Defendants provided services and products to Bessemer.[3]  *Id.* at ¶ 26.

---

[2] The Court further notes that references to "Fiserv" in the factual background set forth in the July 14, 2020 Opinion's summary of Bessemer's allegations in the Complaint have been replaced with "Defendants."  As the Court explained in the July 14, 2020 Opinion: "[Bessemer's] Complaint refers to the two Fiserv entities[, i.e. Fiserv Solutions and Fiserv, Inc.] collectively as 'Fiserv,' and most of the allegations in the Complaint are assertions regarding the collective Fiserv.  The Court notes that the contract at issue in this case, the Master Agreement, was executed by only Fiserv Solutions and [Bessemer]."  Op. 1 n.1, ECF No. 69.

While it is only Fiserv Solutions' Counterclaims that are at issue in this Memorandum Opinion, and while the Court referred to the Defendants collectively as "Fiserv" in the July 14, 2020 Opinion, the Court now refers to Defendants collectively as "Defendants" due to the parties' sometimes (at least seemingly) loose reference to "Fiserv" as both an individual entity at times and as a collective at times in briefing and pleadings in this matter.

[3] The Master Agreement is attached to Bessemer's Complaint (ECF No. 48) as Exhibit 2.  For ease of reference, the Court will cite to the document as "Master Agreement."

Defendants provided account processing services to Bessemer, including a core processing system referred to as "Charlotte." *Id.* at ¶ 21. Core processing systems process and record all financial transactions for a financial institution. *Id.* Defendants also hosted Bessemer's online banking website, "Virtual Branch," through which Defendants processed Bessemer members' online account transactions. *Id.* at ¶ 22.

Prior to entering into the Master Agreement, Defendants represented to Bessemer, by way of a February 27, 2012 email, that the Virtual Branch online banking website satisfied Federal Financial Institutions Examination Council ("FFIEC") requirements despite the fact that Virtual Branch did not satisfy these requirements. Compl. ¶ 29-33, ECF No. 48. Despite several representations and advertisements asserting that Defendants' services were of a certain quality, as well as secure and private, Defendants' performance was purportedly not in accordance with such representations or the Master Agreement. *Id.* at ¶¶ 34-43. Defendants implemented lax and weak security controls to protect the accounts and valuable confidential information of Bessemer's members, and Defendants were put on notice on several occasions such that Defendants knew that their security measures were insufficient. *Id.* at ¶¶ 47-79. Defendants suffered a security breach in 2016 which caused Defendants to provide confidential Bessemer member information to another financial institution. *Id.* at ¶ 48, ECF No. 48. Defendants also placed the wrong return address on biannual account verifications in 2017. *Id.* at ¶ 49. Defendants ceased installing and updating antivirus software on Bessemer's systems at some point without explanation. *Id.* at ¶ 50. Despite being aware of the aforementioned security lapses, and despite receiving notice from Bessemer, other customers, and the media that Defendants' security measures were inadequate, Defendants only took action to remedy their security deficiencies after receiving negative press

coverage. *Id.* at ¶¶ 47-79. Defendants' attempts to fortify their security after receiving notice of its security deficiencies were also purportedly ineffective and deficient. *Id.* at ¶¶ 64-65; 78.

In July 2018, Defendants falsely represented to Bessemer that a member's account had been closed and made changes to that member's account, temporarily depriving the member of dividends and access to the member's account. Compl. ¶ 88, ECF No. 48. On several occasions, Defendants' system provided inaccurate and falsified loan information and documents to Bessemer and its members. *Id.* at ¶¶ 90-96. Despite being aware of problems with their system which caused these inaccuracies, Defendants did not take action to remedy these problems. *Id.* at ¶¶ 93-94, 98.

Defendants' account processing system suffered from a number of bugs and defects which resulted in, inter alia, Bessemer's and its members' inability to access account processing services, system crashes and errors, latency in the account processing services, errors in the information reported by Defendants' system, and failure to perform the necessary services which the system was supposed to provide. Compl. ¶¶ 99-115, ECF No. 48. Defendants repeatedly issued erroneous invoices to Bessemer that contained incorrect balances and also charged for services that did not function properly or that Bessemer had asked Defendants to cease providing. *Id.* at ¶ 128. Defendants represented that certain hardware upgrades would remedy the issues Bessemer was experiencing with Defendants' system. *Id.* at ¶¶ 129-131. Bessemer made the recommended upgrades, but such upgrades did not remedy the issues Bessemer was experiencing with respect to Defendants' system. *Id.* Defendants also misrepresented the cost for an additional service under the Master Agreement requested by Bessemer. *Id.* at ¶ 134. Defendants stopped providing Office of Foreign Assets Control scans for Bessemer, did not provide the requisite written notice to Bessemer regarding this service, and tasked Bessemer with performing these scans. *Id.* at ¶ 135.

Defendants did not adequately address support requests submitted by Bessemer with respect to issues with Defendants' system. *Id.* at ¶ 137.

On January 8, 2018, Bessemer sent a "Notice of Breach" to Fiserv Solutions invoking the dispute resolution provision of the Master Agreement. Compl. ¶ 139, ECF No. 48. By way of this Notice, Bessemer also requested that Defendants provide documents to Bessemer related to Defendants' security measures and to invoices that had been provided by Defendants to Bessemer. *Id.* at ¶¶ 140-145. Defendants failed to provide any such documentation to Bessemer, and failed to participate in good faith in the dispute resolution process set forth in the Master Agreement. *Id.* at ¶¶ 146; 150.

Bessemer sent a notice of termination of the Master Agreement to Defendants on April 11, 2018. Compl. ¶ 152, ECF No. 48. Following negative media coverage in August of 2018 respecting Defendants' purportedly inadequate security measures, Bessemer undertook what it refers to as a "security review" of Defendants' security controls. Id. at ¶¶ 58-59. The "security review" uncovered critical security flaws with respect to Defendants' online banking system. *Id.* at ¶ 59. More specifically, Bessemer asserts that the only requirements imposed by Defendants for registering for an online banking account with Bessemer were: (1) an account number; and (2) the last four digits of the member's Social Security number. *Id.* at ¶ 60. Bessemer asserts that this information can easily be guessed or fraudulently obtained, and further alleges that Defendants failed to implement a "lockout" system, which in turn enabled anyone to make unlimited guesses (or use an automated system to make such guesses) as to the last four digits of the member's Social Security number. *Id.* at ¶¶ 60-62. Bessemer asserts that these security measures were deficient, and alleges that the "security review" further uncovered an issue with Defendants' online banking system that allowed a user to bypass the webpage which required a member to accept Bessemer's

online banking website's terms of service.  *Id.* at ¶¶ 63; 66.  Defendants attempted to implement additional security controls during the course of Bessemer's "security review," but the same were ineffective.  *Id.* at ¶¶ 64-65.

Bessemer notified Defendants via letter dated September 28, 2018 that the "security review" had taken place, and further informed Defendants of the security vulnerabilities revealed by way of the "security review" and also requested documents from Defendants to allow Bessemer to conduct an audit of Defendants' security practices.  Compl. ¶ 67, ECF No. 48.  In response, Defendants, through their counsel, sent a responsive letter dated September 30, 2018 to Bessemer informing Bessemer that Bessemer's "security review" constituted a breach of the Master Agreement and that the same was also illegal under the common law and statutory law.  *Id.* at ¶ 68; *see also* Answer ¶ 68, ECF No. 88.  The September 30, 2018 letter further requested that Bessemer: (1) turn over certain information; (2) preserve and maintain records; and (3) not disseminate or disclose information obtained via the "security review."  Compl. Ex. 7 at 3-4, ECF No. 48-8.  Bessemer's counsel sent a responsive letter to Defendants' counsel dated October 2, 2018, in which Bessemer disputed Defendants' assertions respecting breach of the Master Agreement and violation of the law, and further represented that it would stay the "security review" and not disclose information obtained via the security review at that time.  Compl. Ex. 8 at 1-3, ECF No. 48-9.

Despite Bessemer's April 11, 2018 notice of termination of the Master Agreement, Defendants continued to send invoices to Bessemer after this notice of termination, did not provide documentation related to the invoices in a timely manner when the same was requested by Bessemer, and ultimately did not provide all of the requested documentation.  Compl. ¶¶ 153-158, ECF No. 48.  Despite Bessemer's demand that Defendants return Bessemer's account records and

member information, Defendants have not returned all of the requested information.  *Id.* at ¶ 152.

In an attempt to recover this information, Bessemer filed a replevin action in the Court of Common

Pleas of Mercer County (the "Replevin Action") in October of 2018.  *Id.* at ¶ 159.  The parties

subsequently agreed to settle the Replevin Action, and Defendants' counsel sent what Bessemer

characterizes as a settlement agreement to Bessemer, who executed the purported agreement.[4]  *Id.*

at ¶ 160.  Under the purported settlement agreement: (1) the parties were required to work in good

faith toward settling Bessemer's claim for damages; (2) Bessemer was required to withdraw the

Replevin Action, pay outstanding invoices, and pay for deconversion of Bessemer's records by

the date of deconversion; and (3) Defendants were required to provide deconversion services to

Bessemer.[5]  *Id.* at ¶ 161.

Defendants failed to perform in accordance with the purported Replevin Action settlement

agreement by: (1) initially rejecting Bessemer's payment of outstanding invoices;[6] (2) requiring

Bessemer to pay for deconversion services before beginning the process of deconversion; (3)

stalling the deconversion process; and (4) sending an amendment to the terminated Master

Agreement in an attempt to modify the terms of the Replevin Action settlement agreement.  Compl.

¶¶ 164-179, ECF No. 48.  Bessemer asserts that Defendants misrepresented the amount of time

that would be required for deconversion services in the correspondence which Bessemer claims

constitutes the Replevin Action settlement agreement, and that, but for Defendants' delays in

providing deconversion services in breach of that agreement, the process could have been

completed much sooner.  *Id.* at ¶ 179.  Defendants stated that they could not provide credit

---

[4] The purported Replevin Action settlement agreement is dated October 19, 2018 and is signed by Bessemer's counsel. It is attached as Exhibit 18 to Bessemer's Complaint.
[5] Deconversion is the process of transitioning to a new provider.  Br. in Supp. of Mot. to Dismiss Compl. 1, ECF No. 53.
[6] Bessemer eventually remitted a check for outstanding invoices that Fiserv Solutions accepted and deposited.  Compl. ¶ 167, ECF No. 48; Answer ¶ 167, ECF No. 88.

reporting records containing Bessemer members' loan histories to Bessemer before ultimately providing these records. *Id.* at ¶ 188.   Defendants failed to return Bessemer member information contained in Defendants' eFichency archive in a timely and efficient manner, initially withheld certain eFichency documents without reason only to provide them at a later date, and have not returned images of Bessemer's documents maintained in the eFichency archive to date. *Id.* at ¶¶ 189-199.

Bessemer filed the Complaint (ECF No. 48) on October 30, 2019.  As noted above, this Court issued its Opinion and Order addressing Defendants' Motion to Dismiss the Complaint on July 14, 2020, through which the Court dismissed or dismissed in part several of Bessemer's claims.  Defendants filed their "First Amended Answer and Affirmative Defenses to Second Amended Complaint and Counterclaims" on September 16, 2020.  Any admissions and/or denials set forth in Defendants' Answer with respect to the facts summarized by the Court above and relevant herein will be addressed in the Court's analysis below.  The allegations in support of Fiserv Solutions' Counterclaims mostly track the timeline of events summarized above, but clearly take a different stance on any alleged wrongful conduct on the part of Defendants, and instead assert wrongful conduct on Bessemer's part.  In particular, Fiserv Solutions takes issue with Bessemer's "security review," which Fiserv Solutions characterizes as an unannounced and unauthorized "brute force cyberattack" conducted without Fiserv Solutions' consent, and assert that the same was a breach of the Master Agreement and was further in violation of the law. Countercl. ¶¶ 35-48, ECF No. 88.

Bessemer filed its Motion to Dismiss, along with a Brief in Support (ECF No. 93), on November 10, 2020.  Fiserv Solutions filed its Brief in Opposition (ECF No. 99) on December 8, 2020.  Thereafter, the parties requested several stays of the proceedings in this matter, as well as

extensions of Bessemer's deadline to file a reply brief, while the parties attempted to reach a global resolution of this case. Those efforts proved unsuccessful, and Bessemer eventually filed its Reply (ECF No. 110) on April 9, 2021. Bessemer filed an unsolicited Notice of Supplemental Authority (ECF No. 118) on June 7, 2021, and Defendants filed a Response (ECF No. 119) to the same on June 14, 2021.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.[7] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[7] "For purposes of deciding a motion to dismiss under Rule 12(b)(6), claims and counterclaims are treated the same, and therefore, subject to the same standard of review." *Barnett v. Platinum Equity Cap. Partners II, L.P.*, No. 2:16-CV-1668, 2017 WL 3190654, at *3 (W.D. Pa. July 27, 2017) (citing *Red Bend Hunting & Fishing Club v. Range Resources—Appalachia, LLC*, Case No. 4:16-CV-00864, 2016 WL 7034686, *3 n. 35 (M.D. Pa. Dec. 2, 2016)). The Court further notes that a court may "rely on facts pled in the complaint, but only to the extent that they have been admitted in defendant's answer." *Id.*

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile.  *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The United States Court of Appeals for the Third Circuit has explained:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged."  *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir.2004).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## III.  Discussion

Fiserv Solutions asserts Counterclaims against Bessemer for breach of contract, breach of the duty of good fair and fair dealing, and "Contractual Recovery of Attorneys' Fees and Costs." Fiserv Solutions' breach of contract Counterclaim arises out of Bessemer's purported violations of the Master Agreement, specifically: (1) Bessemer's "security review" of Defendants' online banking system, Countercl. ¶ 52, ECF No. 88, which Fiserv Solutions characterizes as a "brute force cyberattack," *id.* at ¶ 36;[8] (2) Bessemer's purported failure to pay for deconversion services, *id.* at ¶ 56; and (3) Bessemer's refusal and failure to pay early termination fees, *id.* at ¶ 57.  Fiserv

---

[8] "A brute force attack is a trial-and-error method used to obtain information such as a user password or personal identification number (PIN).  In a brute force attack, automated software is used to generate a large number of consecutive guesses as to the value of the desired data."  Countercl. ¶ 37, ECF No. 88

Solutions' claim for breach of the duty of good faith and fair dealing also arises out Fiserv Solutions' and Bessemer's relationship under the Master Agreement, and Fiserv Solutions asserts that Bessemer breached its duty of good faith and fair dealing in the performance of its obligations under the Master Agreement by: (1) "asserting unsupported breaches of the Master Agreement"; (2) "refusing to pay Fiserv Solutions' invoices when due"; (3) "making contractual demands in bad faith"; and (4) "conducting a brute force attack." *Id.* at ¶ 61.  Finally, Fiserv Solutions asserts a Counterclaim for attorneys' fees and costs pursuant to Paragraph 11(h) of the Master Agreement, which Fiserv Solutions asserts entitles the prevailing party in this action to such fees and costs.  *Id.* at ¶ 67.

Bessemer asserts that each of the three Counterclaims set forth by Fiserv Solutions should be dismissed with prejudice pursuant to Rule 12(b)(6).  Specifically, Bessemer asserts that Fiserv Solutions' Counterclaim for breach of contract should be dismissed because: "(i) [Fiserv Solutions] failed to perform under the parties' contract; (ii) Bessemer did not breach the contract; (iii) public policy requires the claim to be dismissed; and (iv) [Fiserv Solutions] has not alleged cognizable damages."  Mot. ¶ 2(a), ECF No. 92.  Bessemer asserts that Fiserv Solutions' Counterclaim for breach of the duty of good faith and fair dealing should be dismissed because such a claim fails to set forth "a distinct cause of action under New York or Pennsylvania law, and [Fiserv Solutions] was not deprived of the benefit of the parties' agreement."  *Id.* at ¶ 2(b).  Finally, Bessemer asserts that Fiserv Solutions' Counterclaim for "Contractual Recovery of Attorneys' Fees and Costs" should be dismissed "because contractual fee-shifting is not a stand-alone claim and [Fiserv Solutions] is not a prevailing party."  Mot. ¶ 2(c), ECF No. 92.  Fiserv Solutions disagrees with each of Bessemer's assertions.

As explained in the July 14, 2020 Opinion, federal courts sitting in diversity apply the forum state's choice of law rules. *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012). Accordingly, this Court will apply Pennsylvania choice of law rules in determining which state's laws to apply to Fiserv Solutions' Counterclaims. "With respect to breach of contract cases, Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them." *Grimm v. Citibank (S. Dakota), N.A.*, Civ. A. No. 08-cv-788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) (citing *Knuzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.1994)). "Narrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state," however, "are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue." *Grimm*, 2008 WL 4925631, at *4 (citing *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569 (E.D.Pa.1994)).

As was the case when the Court considered Defendants' Motion to Dismiss, a review of the briefing on Bessemer's Motion to Dismiss again indicates that the parties agree that the Master Agreement is governed by New York law. The choice of law provision in the Master Agreement provides that "the Agreement will be governed by the substantive laws of New York, without reference to provisions relating to conflict of laws." Master Agreement § 11(d). This provision is narrowly drawn because it provides only that the Master Agreement will be governed by New York law. Accordingly, New York law applies to Fiserv Solutions' Counterclaim for breach of the Master Agreement.

The Court further notes that the briefing submitted by the parties also indicates that the parties agree that Fiserv Solutions' Counterclaim for breach of the duty of good faith and fair

dealing is also governed by New York law.  *See* Br. in Supp. 16 n.3, ECF No. 93; Br. in Opp'n 17-20, ECF No. 99; *see also Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765(CSH), 2004 WL 1837349, at *4 (S.D.N.Y. Aug. 16, 2004) ("the duty to act in good faith under a contract is not a duty separable from the contract . . . .").  In *Lucker Mfg., A Unit of Amclyde Engineered Prod., Inc. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit cited *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir.1978) for the proposition that courts should avoid dicta on conflict of law questions where the same has not been put at issue.  Given the agreement between the parties, the Court shall apply New York law to Fiserv Solutions' Counterclaim for breach of the duty of good faith and fair dealing.

### A.  Breach of Contract

To state a claim for breach of contract under New York law, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  As noted above, Bessemer asserts that Fiserv Solutions fails to plead: (1) adequate performance of the Master Agreement by Fiserv Solutions; (2) that Bessemer breached the Master Agreement; and (3) cognizable damages.  Br. in Supp. 6, ECF No. 93.

There is no debate that the Master Agreement constitutes a contract between Bessemer and Fiserv Solutions.  Bessemer's assertion that its performance under the Master Agreement should be excused on the basis that Fiserv Solutions has admitted to certain purported breaches of the Master Agreement relies on an averment that each such breach constituted a material breach of the Master Agreement.  "Under New York law, a party's performance under a contract is excused

14

where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Hoover v. HSBC Mortg. Corp. (USA)*, 9 F. Supp. 3d 223, 242 (N.D.N.Y. 2014) (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007)). "Whether a failure to perform constitutes a 'material breach' turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96 n.9, 356 N.Y.S.2d 249, 312 N.E.2d 445 (1974)). "The issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Hoover*, 9 F. Supp. 3d at 242 (quoting *Merrill Lynch*, 500 F.3d at 186).

Initially, Fiserv Solutions denies most of the allegations that Bessemer asserts constitute breaches of the Master Agreement. Further, Fiserv Solutions characterizes the incidents that it does admit occurred as relatively minor in nature, asserts that such incidents do not constitute breaches of the Master Agreement, and alleges that each such incident was resolved in a relatively short amount of time. Br. in Opp'n 10, ECF No. 99. At this juncture, Bessemer essentially asks this Court to find that these purported breaches were material because Bessemer believes that they were material. The Court, however, is simply without sufficient information at this time to allow for resolution of the issue of whether any alleged breach of the Master Agreement on the part of Fiserv Solutions was material, and is further without sufficient information to allow for a determination as to whether such a breach relieved Bessemer of all duties under the Master

Agreement,[9] including payment for deconversion services and/or payment of an early termination fee.  The Court thus rejects, at this juncture, Bessemer's assertion that its performance under the Master Agreement should be excused by a material breach of the Master Agreement on Fiserv Solutions' part.

Bessemer also avers that Fiserv Solutions failed to comply with the Master Agreement's dispute resolution process, and further asserts that the same should result in dismissal of Fiserv Solutions' compulsory counterclaims in this action.  This assertion is meritless.  With respect to dispute resolution, the Master Agreement provides: "[b]efore *initiating* legal action against the other party relating to a dispute herein, the parties agree to work in good faith to resolve disputes and claims arising out of this agreement."  Master Agreement § 9 (emphasis added).  Bessemer's argument ignores the fact that *Bessemer* initiated this action, and that Fiserv Solutions subsequently brought its compulsory counterclaims pursuant to Fed. R. Civ. P. 13(a).  This distinction is material, and it renders Bessemer's argument meritless under New York law.  *See Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 369 (W.D.N.Y. 2018) ("Therefore, pursuant to the Agreement's plain language, the dispute resolution process was only required before commencement of an action.  Plaintiff took that step and commenced this action.  As a result, Defendant was under no obligation to comply with the Dispute Resolution clause before asserting any of its counterclaims—irrespective of whether they are compulsory . . . .").

With respect to the issue of whether Fiserv Solutions sufficiently alleges that Bessemer breached the Master Agreement, Fiserv Solutions alleges that Bessemer failed to pay for deconversion services provided by Fiserv Solutions as required under the Master Agreement, and

---

[9] *See Process Am.*, 839 F.3d at 137 ("A partial breach by one party ... does not justify the other party's subsequent failure to perform; both parties may be guilty of breaches, each having a right to damages." (quoting *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117–18 (2d Cir. 2006))).

that Bessemer further failed to pay the requisite early termination fee after terminating the Master Agreement before its expiration.  Countercl. ¶¶ 56-57, ECF No. 88.  The Master Agreement required Fiserv Solutions to provide deconversion services following termination of the Master Agreement under the Section titled "Term and Termination; Deconversion."  ASP Services Exhibit to the Master Agreement § 8(e).  The Master Agreement also provides: "<u>Deconversion Charges</u>. Client agrees to pay Fiserv's then current deconversion charges in connection with Client's deconversion from the Fiserv System."  ASP Services Exhibit to the Master Agreement § 10(c). Section 8(b) of the ASP Services Exhibit to the Master Agreement requires Bessemer to pay a fee based on the remaining term of the Master Agreement if it terminates the Master Agreement before its expiration.[10]  The Court finds that Fiserv Solutions' allegations of Bessemer's non-payment for deconversion services and Bessemer's failure to pay an early termination fee sufficiently sets forth a breach of the Master Agreement.  The damages for such a claim are also clear: the payments Fiserv Solutions is purportedly entitled to but did not receive.

Even if the Court had found otherwise, the Court would still find that Fiserv Solutions sufficiently sets forth a claim for breach of the Master Agreement at this time arising out of Bessemer's "security review."  Both the briefing on Bessemer's Motion to Dismiss and Defendants' Answer and Counterclaims shed further light on what each party believes is the true nature of Bessemer's "security review."  Bessemer explains that the review "was limited to attempting to log into certain Bessemer accounts."  Br. in Supp. 4, ECF No. 93. Fiserv Solutions characterizes the "security review" as an unannounced (and unsuccessful) "brute force cyberattack" that was commissioned and orchestrated by Bessemer and conducted without Fiserv

---

[10] The Court notes that the only exception to the early termination fee requirement is where the termination occurs pursuant to Section 8(b)(i) of the Master Agreement, which allows for termination in the event of a material breach. As the Court held above, the Court is without sufficient information at this time to allow for a determination as to whether Fiserv Solutions materially breached the Master Agreement.

Solutions' consent, and alleges that the cyberattack involved more than three million failed Virtual Branch authorization attempts from September 24, 2018 through September 26, 2018, with such attempts occurring at a rate at least ten times higher than Fiserv Solutions usually processes. Countercl. ¶¶ 35-48, ECF No. 88. Fiserv Solutions asserts that it was immediately required to commit significant resources and personnel in defending against this attack, with such efforts resulting in the prevention of any unauthorized access to the legitimate accounts or personal information of any member of Fiserv Solutions' clients, including Bessemer. *Id.* at ¶ 41. Fiserv Solutions further alleges that it "incurred significant costs and expended significant resources to repel and later investigate the cause and source of the brute force attack, test the affected systems[,] and assess the business and legal impact of the brute force attack, including the cost of security consultants and attorneys' fees." *Id.* at ¶ 48.

Fiserv Solutions further alleges that, despite several attempts to notify and discuss the cyberattack with Bessemer and its Chief Executive Officer, Joy Peterson, via telephone call and email, including a security notice email dated September 27, 2018 explicitly describing the cyberattack and requesting that someone from Bessemer respond as soon as possible, nobody from Bessemer, including Ms. Peterson, responded to Fiserv Solutions. Countercl. ¶¶ 42-44, ECF No. 88. Fiserv Solutions alleges that, in conducting the cyberattack, "Bessemer created fictitious accounts using social security numbers and other personally identifiable information belonging to third parties, and at least one deceased person, who have or had personal or familial relationships with Bessemer's CEO." *Id.* at ¶ 47. Fiserv Solutions further alleges that the motive behind the cyberattack was to manufacture a "'breach' for the purposes of embarrassing and extorting Fiserv Solutions to accede to [Bessemer's] demands" respecting the payment of then-outstanding invoices. *Id.* at ¶ 35; *see also id.* at ¶ 30.

Fiserv Solutions asserts that Bessemer's "security review" violated Section 3 of the ASP Services Exhibit to the Master Agreement, by which Bessemer agreed not to "attempt to circumvent the devices employed by [Fiserv Solutions] to prevent unauthorized access thereto . . . ." ASP Services Exhibit to the Master Agreement § 3.  Fiserv Solutions further alleges violations of Sections 5(a), (g), and (h) of the ASP Services Exhibit, as well as a violation of Section 3 of the Master Agreement.  Because the Court finds that Fiserv Solutions states a claim for breach of contract arising out of the "security review" under Section 3 of the ASP Services Exhibit, it need not quote those provisions in detail at this juncture.

It is obvious, even on a cursory review of the allegations respecting Bessemer's "security review," that there are many issues of fact surrounding that event, not only with respect to Bessemer's actions and the nature of the "review" itself, but also with respect to Bessemer's motivations and the information that Bessemer accessed or attempted to access during the course of the security review.  As alleged in the Counterclaim, Bessemer's "security review" could certainly constitute an "attempt to circumvent" Fiserv Solutions' security controls.  *See* Countercl. ¶ 53, ECF No. 88 ("By orchestrating the cyberattack on Fiserv Solutions' systems and servers, Bessemer engaged in repeated and multiple attempts to circumvent Fiserv Solutions' systems and procedures that are designed to prevent unauthorized access.").  Fiserv Solutions further characterizes the "security review" as unauthorized.  *Id.* at ¶ 54.  At this time, the Court has only the benefit of two diametrically opposed descriptions of the "security review," with the two presenting nearly no agreement as to the precise nature of the computer activity involved, Bessemer's motivations, and/or the information that was accessed and/or acquired by Bessemer. Discovery is necessary before this Court can ascertain the actions leading up to, and involved in,

the "security review," the motivations behind it, and the information that was ultimately accessed as a result of the "review."

Bessemer asks the Court to accept its averments, in a Brief, that the "security review" was a completely innocent and, as Bessemer argues, required inquiry into the security measures implemented by Fiserv Solutions.  While that may ultimately prove to be true, the Court accepts as true, for purposes of this Motion, the allegations set forth in Fiserv Solutions' pleading. Bessemer's citation to NCUA letters and guidance for the proposition that Bessemer was required to conduct the "security review" is unavailing at this time, as these letters do not explicitly mention a "security review" on the level of the one allegedly conducted by Bessemer, which, again, Fiserv Solutions characterizes as a "brute force cyberattack," and Bessemer fails to cite a single case wherein a court found a contract provision void or against public policy for forbidding a similar "security review."  While this issue may be revisited at a later date, the Court finds, at this juncture, that Fiserv Solutions has sufficiently alleged a breach of Section 3 of the ASP Services Exhibit to the Master Agreement with respect to the "security review."[11]

With respect to the case law relied upon by Bessemer in arguing that its "security review" was authorized, each of these cases is distinguishable.  *Van Buren v. United States*, 141 S. Ct. 1648 (2021) is distinguishable in that it was a criminal case involving interpretation of a specific criminal statute, and not a contract provision.  Further, and more importantly at this juncture, *Van Buren* and *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 678, 37 N.E.3d 78, 79 (2015) were decided at either the trial or summary judgment stage,

---

[11] As the Court finds that Fiserv Solutions states a claim for breach of contract arising out of the "security review" under Section 3 of the ASP Services Exhibit, it declines to address, at this time, whether the "security review," as alleged, may also constitute a violation of the other contractual provisions on which Fiserv Solutions relies.  Fiserv Solutions' breach of contract Counterclaim relying on the "security review" will survive Bessemer's Motion to Dismiss, and this issue may be raised again at a later date, if warranted and appropriate.

respectively, and where the precise nature of the alleged cyber activity at issue could be determined.  As noted above, this Court has only the benefit of two diametrically opposed pleadings describing Bessemer's computer activity, its motivations, and the information it accessed and/or acquired.  To dismiss this claim before discovery sheds further light on the nature of the "security review" would not be consistent with either of the cases on which Bessemer relies.

Bessemer asserts that Fiserv Solutions' breach of contract claim related to the "security review" should also be dismissed for a failure to allege damages, and argues that Fiserv Solutions' "damages arise from [Fiserv Solutions'] cost to correct its own security deficiency."  Br. in Supp. 15, ECF No. 93.  Initially, this argument ignores the fact that Defendants have denied Bessemer's allegation that Defendants' security controls were inadequate.  Answer ¶ 61, ECF No. 88.  Further, Fiserv Solutions alleges that, as a result of Bessemer's "security review," Fiserv Solutions "incurred significant costs and expended significant resources to repel and later investigate the cause and source of the brute force attack, test the affected systems and assess the business and legal impact of the brute force attack, including the cost of security consultants and attorneys' fees." Countercl. ¶ 48, ECF No. 88.  Fiserv Solutions further argues that it would not have incurred such costs in the absence of Bessemer's "security review."  Br. in Opp'n 16, ECF No. 99.  Fiserv Solutions sufficiently alleges cognizable damages resulting from the "security review."  For all of these reasons, Fiserv Solutions has sufficiently alleged a breach of Section 3 of the ASP Services Exhibit to the Master Agreement with respect to the "security review."

### B.  Breach of the Duty of Good Faith and Fair Dealing

With respect to Fiserv Solutions' Counterclaim for breach of the duty of good faith and fair dealing, Bessemer asserts that the claim should be dismissed because: (1) no such cause of action exists under New York or Pennsylvania law; (2) Fiserv Solutions fails to allege damages

that are distinct from Fiserv Solutions' breach of contract Counterclaim;  and (3) Fiserv Solutions

fails to overcome the presumption that Bessemer acted in good faith and further fails to sufficiently

allege bad faith on the part of Bessemer.  Br. in Supp. 16, ECF No. 93.  With respect to Bessemer's

first assertion, the Court again notes that the parties agree that New York law applies to Fiserv

Solutions' Counterclaim for breach of the duty of good faith and fair dealing.  Further, it is clear

that Bessemer's argument actually asserts that no such cause of action exists *where a breach of

contract claim based upon identical operative facts, or seeking identical damages, is also pled.*

*See* Reply 5, ECF No. 110 ("Fiserv [Solutions] argues that its claim for breach of the covenant of

good faith and fair dealing is not duplicative of its breach of contract claim because it ostensibly

depends on different conduct and seeks different damages.  If Fiserv [Solutions'] description of its

claims were correct, Bessemer would agree.").

    "Under New York law, all contracts contain an implied covenant of good faith and fair

dealing, which encompasses 'any promises which a reasonable person in the position of the

promisee would be justified in understanding were included.'"  *Fuller Landau Advisory Servs. Inc.

v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018) (quoting *Dalton v. Educ. Testing

Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995)).  "To state a cause of action

for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts

which tend to show that the defendant sought to prevent performance of the contract or to withhold

its benefits from the plaintiff.'"  *Dweck L. Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358

(S.D.N.Y. 2004) (quoting *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265

A.D.2d 513, 697 N.Y.S.2d 128, 130 (2d Dep't 1999)).  "While independent obligations beyond

those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant

claim by alleging conduct that subverts the contract's purpose without violating its express terms."

22

*Sobel v. Major Energy Servs., LLC*, No. 19Civ.8290(PGG)(DCF), 2020 WL 5362357, at *7 (S.D.N.Y. Sept. 8, 2020) (citation omitted).

Initially, the Court agrees that Fiserv Solutions may not recover the same damages by way of both its breach of contract and its breach of the duty of good faith and fair dealing Counterclaims. *See Fuller Landau*, 333 F. Supp. 3d at 315 ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" (quoting *Deer Park Enters., LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 870 N.Y.S.2d 89, 90 (2d Dep't 2008))). Paragraphs 58 and 62 of the Counterclaims attempt to do just that, and the damages alleged in these paragraphs are thus not recoverable under both the Master Agreement and the implied covenant of good faith and fair dealing.

Perhaps recognizing the same, Fiserv Solutions advances argument in its Brief in Opposition that Bessemer's alleged bad faith resulted in unnecessary costs and fees, with no explicit mention of the amount purportedly owed for deconversion, the early termination fee, or the costs associated with investigating the "security review," i.e. the damages clearly related to and arising out of its breach of contract Counterclaims. *See* Br. in Opp'n 19, ECF No. 99 ("Likewise, the alleged damages are distinct. Bessemer's bad faith tactics imposed unnecessary costs and fees as a result of this distinct conduct."). Fiserv Solutions also points to Paragraph 32 of the Counterclaims, which more specifically provides:

> Each of Bessemer's unsupported assertions of "material breach," purported terminations of the Master Agreement, refusal to pay Fiserv Solutions' invoices when due, demands for refunds of invoices previously paid, and refusal to pay for or cooperate with deconversion and transition was pretextual, coercive and undertaken by Bessemer in bad faith. Each of these actions by Bessemer has injured and damaged Fiserv Solutions by, among other things, imposing unnecessary cost and inconvenience on Fiserv Solutions' personnel and requiring Fiserv Solutions to incur attorneys' fees and other expenses.

23

Countercl. ¶ 32, ECF No. 88.  These damages are distinct from those sought by way of the breach of contract claim, and the recoverability of the same is simply not addressed by Bessemer. Accordingly, the Court finds that Fiserv Solutions has pled the existence of damages distinct from those sought by way of its breach of contract claim.

The Court must thus look to whether the conduct alleged in support of Fiserv Solutions' claim for breach of the duty of good faith and fair dealing is duplicative of the breach of contract claim.  The Court finds, at this juncture, that the factual allegations supporting the breach of the duty of good faith and fair dealing Counterclaim are sufficiently distinct from the those supporting the breach of contract Counterclaim such that both claims can survive at the motion to dismiss stage.

Fiserv Solutions explains in its Brief in Opposition that it "alleges different conduct [in support of the breach of the duty of good faith and fair dealing Counterclaim] – an escalating pattern of threats and misconduct by Bessemer designed and intended 'to avoid its contractual obligations and obtain benefits from Fiserv Solutions to which it was not entitled under the Master Agreement' – and different damages."  Br. in Opp'n 17, ECF No. 99.  Specifically, Fiserv Solutions alleges that Bessemer: (1) wrote a series of letters to Fiserv Solutions accusing Fiserv Solutions of "data breaches," material breaches of the Master Agreement, and "bad faith"; (2) continued to use Fiserv Solutions' services without paying for them after purportedly terminating the Master Agreement; (3) demanded a refund of past invoices and prospectively disputed all future invoices with respect to Fiserv Solutions' services; (4) despite repeated requests from Fiserv Solutions, repeatedly failed to describe its deconversion plans, including a failure to identify its new service provider, the technical requirements of that service provider, or the timeline for Bessemer's deconversion; and (5) threatened adverse consequences from negative publicity as a

result of Bessemer going public with its "data breach" claims.  Countercl. ¶¶ 9-32, ECF No. 88.

Fiserv Solutions alleges that this series of events ultimately culminated in the "security review."

*Id.* at ¶ 35.  Fiserv Solutions avers that this conduct was undertaken in an attempt to avoid the

payment of the requisite early termination fee and to avoid paying for deconversion.  *Id.* at ¶¶ 11-

13.  As noted above, Fiserv Solutions further avers:

> Each of Bessemer's unsupported assertions of "material breach," purported terminations of the Master Agreement, refusal to pay Fiserv Solutions' invoices when due, demands for refunds of invoices previously paid, and refusal to pay for or cooperate with deconversion and transition was pretextual, coercive and undertaken by Bessemer in bad faith.

Countercl. ¶ 32, ECF No. 88.

Fiserv Solutions does not necessarily allege that the above conduct constituted breach of

the Master Agreement, but rather avers that such conduct was intended to utilize the

deconversion/termination process in an attempt to require Fiserv Solutions to continue to provide

services to Bessemer without payment and to permit Bessemer to terminate the Master Agreement

without payment of the early termination fee or for the deconversion process.  Fiserv Solutions did

not acquiesce to these purported objectives of Bessemer, and its breach of contract Counterclaim

now seeks payment for deconversion and the early termination fee.  *See* Br. in Opp'n 19, ECF No.

99 ("Fiserv's contract claims allege that Bessemer violated express provisions of the Master

Agreement by failing to pay invoices and fees and launching the cyberattack.").  Fiserv Solutions

also, however, allegedly expended time and resources in addressing Bessemer's alleged actions

that resulted in the delay of the termination of the parties' relationship, and incurred costs as a

result, and those costs may ultimately be recoverable under the implied covenant of good faith and

fair dealing should Fiserv Solutions be able to prove that Bessemer's actions were motivated by

bad faith.  Of course, Bessemer argues that such conduct was not motivated by bad faith.  That issue, however, is more properly addressed at a later stage of the proceedings.

Moreover, the Court notes that Fiserv Solutions would be entitled, at this juncture, to plead these claims in the alternative.  *See Zimmerli Textil AG v. Kabbaz*, No. 14-CV-1560 JS AYS, 2015 WL 5821523, at *7 (E.D.N.Y. Sept. 30, 2015) (explaining that plaintiffs may plead a claim for breach of the duty of good faith and fair dealing in the alternative to a claim for breach of contract, and further explaining: "here, Zimmerli has alleged that Kabbaz and Kelly engaged in affirmative deception by sending Zimmerli dishonored checks in attempt to secure more shipments of Zimmerli product notwithstanding their failure to pay outstanding invoices.  Based on these allegations, the Court will not dismiss Zimmerli's breach of the implied covenant of good faith and fair dealing and fraudulent inducement claims at the pleading stage.").  Accordingly, for the reasons discussed above, the Court will deny Bessemer's Motion to Dismiss as to Fiserv Solutions' breach of the duty of good faith and fair dealing Counterclaim at this time.  Bessemer may renew its arguments at a later date, if warranted and appropriate.

### C.  Attorneys' Fees

The parties are essentially in agreement as to this issue, and the Court need not delve into it in any great depth.  Fiserv Solutions asserts that it "has only pleaded an entitlement to attorneys' fees; it has not moved for an award."  Br. in Opp'n 20, ECF No. 99.  Bessemer asserts that:

> The proper procedural path would have been for Fiserv [Solutions] to include the fees in its prayer for relief, not to assert an independent claim.  This distinction matters because, should Fiserv[] [Solutions'] other claims be dismissed, it should not be able to maintain its status as a counterclaimant based solely on an attorneys' fees provision.

Reply 6, ECF No. 110.  As discussed above, Fiserv Solutions' Counterclaims will not be dismissed at this time, and Bessemer's concern that Fiserv Solutions could retain counterclaimant status due

only to its request for attorneys' fees is unfounded at this time.  The Court agrees, however, that a claim for attorneys' fees is not an independent cause of action.  *See Elias Indus., Inc. v. Kissler & Co. Inc.*, No. 2:20-CV-01011-CCW, 2021 WL 2141509, at *10 (W.D. Pa. May 26, 2021) ("Attorneys' Fees and Injunctive Relief are Remedies, Not Independent Causes of Action.").  As such, the Court will dismiss Fiserv Solutions' "Counterclaim" for "Contractual Recovery of Attorneys' Fees and Costs," but will grant leave to amend to include a request for such fees in Fiserv Solutions' Prayer for Relief.

## IV.    Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Bessemer's Motion to Dismiss Counterclaims (ECF No. 92).  The Motion will be granted as to Fiserv Solutions' "Counterclaim" for "Contractual Recovery of Attorneys' Fees and Costs," and denied in all other respects.  An appropriate Order of Court follows.

BY THE COURT:


s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 15, 2021

cc: All counsel of record