UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,** )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>**FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,**  )<br>)<br>Defendants.  ) | Case No. 2:19-cv-00624-RJC |

### STIPULATED ORDER ON PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

IT IS HEREBY STIPULATED AND AGREED, by and among the Parties to the above-captioned lawsuit, through their undersigned counsel, as follows:

Unless otherwise stipulated to by the Parties, all documents produced after entry of this Order should be produced in the format described below.  Except to the extent specifically provided herein, a producing party shall not be required to produce documents in more than one format.  Notwithstanding the foregoing, any party, for good cause shown, may seek an order of the Court requiring that particular documents or categories of documents be produced in a different format.  Any practice or procedure set forth herein may be modified by written agreement of the Parties.

Nothing in this Order shall be construed to affect the admissibility of any document, data, or discoverable information.  Pursuant to the terms of this Order, any Party's disclosure of information regarding search process and ESI practices shall not constitute a waiver, by any Party, of any objection to the production of particular ESI, or any document or data, as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.  All objections

4848-4590-4377

to the authenticity or admissibility of any ESI, document, or data are preserved and may be asserted at any time. A Party's compliance with this Order will not be interpreted to require disclosure of information protected by the attorney-client privilege, the work product doctrine, the bank examination privilege, or any other applicable privilege.

I. **PRODUCTION FORMAT**

    A. *<u>E-mails</u>*. All email shall be processed for production in Eastern Time (by Bessemer) or Central Time (by Defendants). Emails shall be produced as TIFF images with load files. E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents. The following metadata and/or information shall be produced for each e-mail: starting bates, ending bates, confidentiality designation, redaction status, to, from, cc, bcc, date sent, file type, subject, number of attachments, start of attachment range (this includes the parent document), end of attachment range, number of pages, custodian, and duplicate custodians. For any document that is redacted, the producing party may withhold any data or metadata that is privileged or properly redacted, regardless of the data or metadata field in which the information occurs.

    B. *<u>Spreadsheet, Database & PowerPoint Files</u>*. Excel or other spreadsheet or database files and PowerPoint and other presentation files shall be produced in native format with load files with a bates number, file extension (without limitation, .xls* or .ppt*), and confidentiality designation, if applicable. Further, to the extent reasonably possible, the following metadata and/or information shall be included: starting and ending bates, confidentiality designation, redaction status, author, custodian/source, duplicate custodians, date created, last modified date, number of attachments, start of attachment

2

range (this includes the parent document), end of attachment range, number of pages, original filename, original file path, duplicate file paths, and Secure Hash Algorithm Version 1 ("SHA-1") or Message Digest 5 Algorithm ("MD5") hash value. Any spreadsheet, database, or presentation file that is redacted shall be produced as TIFF images and not in native format with OCR of the produced image as redacted and load files. However, Excel documents that need to be redacted may be redacted in native format if reasonably practicable. Redactions applied to Excel documents in native format will be text-searchable and contain the word "Redacted." Each electronic file produced in native format shall include a single-page TIFF image branded with a unique number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the associated TIFF placeholder on the lower left hand corner in no less than 10-pt font. Files produced in Native Format shall be given file names identical to the document number, followed by the file extension.

C.      *Text-based Electronic Documents.* Text-based electronic documents such as Word (.doc*), portable document format (.pdf), rich text format (.rtf), email messages (.msg, excluding associated attachments, unless such conversion is otherwise permitted herein) and other text-based communications (such as communications over messaging systems or social media), shall be produced as TIFF images with accompanying document-level full text and load files. If a document does not contain extractable text, the producing party shall provide OCR for that document. For any document that is

redacted, the producing party shall provide OCR of the produced image as redacted. The following metadata and/or information shall be produced for each document: starting bates, ending bates, confidentiality designation, redaction status, author, custodian/source, duplicate custodians, date created, last modified date, number of attachments, start of attachment range (this includes the parent document), end of attachment range, number of pages, original filename, original file path, duplicate file paths, and SHA-1 or MD5 hash values.

**D.**     ***Hard copy documents.***  Hard copy documents shall be produced as TIFF images with accompanying document-level full text and load files, and shall include the following metadata and/or information: starting bates, ending bates, confidentiality designation, redaction status, number of pages and custodian/source (to include associated folder or filing system), if known. For any document that is redacted, the producing party shall provide OCR of the produced image as redacted. The parties will make their best efforts to unitize the documents correctly.

**E.**     ***Redaction.***  For any e-mail, Excel file or other electronic document that is redacted, the producing party may withhold the metadata and/or information for the subject and body fields and the original filename to the extent necessary to preserve any claim of privilege, and provide OCR of the produced image as redacted. Except as permitted by Paragraph B, redacted documents will not be produced in native format. The parties disagree as to whether redaction for reasons other than privilege are appropriate. All redactions, whether for privilege or otherwise, will be logged in sufficient detail to allow the court to evaluate the propriety of each redaction.

F.  *TIFF Images Generally.*  Except as specified below, any TIFF images produced by the Parties shall consist of (a) single page, black and white, group IV TIFF images at 300 DPI, one per image named after the bates number with extension ".tif"; (b) text files, one file per document (doc level text files), named after the starting bates number for the document with extension ".txt"; and (c) an Opticon (.opt) image load file.  Metadata shall be provided in a delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.  To the extent that the produced document is a color document, if producing Party has reason to believe (such as by, for example, colored highlighted text, notes, or other delineations that would be not visible or obscured in .tif format), or if a receiving party asserts in good-faith, that the colors are necessary to understand the substance of the document, the producing party will produce the image in color as a JPEG or PDF file.

G.  *Document Numbers and Confidentiality Designations for TIFF Images*.  Each page of a document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least seven (7) digits electronically "burned" onto the image in no less than 10-pt font.  The number of digits used in the numeric identifier shall be consistently maintained throughout all productions.  Unless it would obscure, conceal or interfere with any information originally appearing on the document, the document number shall be burned on the lower right hand corner of the document.  Unless it would obscure, conceal or interfere with any information originally appearing on the document, any confidentiality designation pursuant to a Stipulated Protective Order filed with the Court will appear on the lower left hand side of

each page of a document produced, in no less than 10-pt font. The document number for each document shall be created so as to identify the Producing Party and the document number (e.g., "BESS0000001") and may contain an underscore or dash between the prefix and the Document Number. Each party's document numbering scheme shall use the unique identifying name agreed upon by the parties.

**H.**     *Shipment of electronic data.*  Electronic data productions may be produced via Secure FTP file transfer or shipped on password protected CDs, DVDs, or encrypted hard drive via FedEx, UPS or the U.S. Postal Service with a tracking number. The physical media label shall contain the case name and number, production date, and bates range being produced.

**I.**     *Native Files.*  Original native files shall be maintained with all metadata preserved. If the receiving party would like a particular document produced in native format and can demonstrate a reasonable basis for the production of a native file (including, without limitation, difficulty understanding the document or a good-faith belief that the document contains potentially relevant embedded information), the producing party will not unreasonably deny the request. Any such production will be accompanied by a SHA-1 or MD5 hash value (the type of such value is to be used consistently throughout a part's production, or a party shall provide both values). Native files that may be produced will be named with a bates number and file extension and have a confidentiality designation, if applicable, set forth in the load file. The production of materials other than those addressed in Parts I.A-D hereof will be discussed and agreed upon prior to any such production.

**J.**     ***Deduplication.***  A Party is only required to produce a single copy of a responsive document.  If a single document has more than one identical copy of a document (i.e., the documents are visually the same and contain the same electronic text), the parties need only produce a single copy of that document; however, the production load file for that single copy must indicate all custodians/locations from which identical copies of that document existed and were collected prior to de-duplication.  A Party may remove exact duplicate ESI according to the MD5/SHA-1 hashing method.  If a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e. a single document will not be removed from a family even if it is a duplicate.  A party may also use industry-standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message.  Metadata sufficient for the receiving party to determine the custodians of all duplicates removed pursuant to this paragraph shall be produced in the "All Custodians/Duplicate" field of the load file.  Upon request of a receiving party, a producing party shall identify the technology it is using to de-duplicate or thread its document production.

**K.**     ***Search Methodology.***  Each Party shall generate a searching protocol that it believes in good faith will return a reasonably high proportion of its responsive materials, including proposed search terms, date range limitations, and other identification strategies, and meet and confer with the other Party on the searching protocol.  Each producing party agrees to meet and confer with the requesting party on the searching protocol for identifying its responsive documents, including with respect to any

adjustments to the searching protocol that may be warranted. If a Party has actual knowledge of responsive materials that have been excluded by the searching protocol, the Party shall identify them, and shall meet and confer to discuss the need for production of the materials and adjustments to the searching protocol.

**L.**     ***Technology Assisted Review.*** If a Party elects to use Technology Assisted Review ("TAR") in lieu of a linear review, the Parties will meet and confer in good faith to develop written protocols for use of TAR.

**M.**     ***Cooperation.*** The parties recognize that the production of electronic documents often involves unforeseen issues and difficulties and therefore agree to act in good faith to negotiate any modifications to these production guidelines that are reasonably necessary to avoid undue cost or burden. If the parties are unable to reach agreement after they have met and conferred in good faith, the parties shall submit any dispute to the Court or Discovery Special Master for resolution.

**II.**     **PRIVILEGE LOG**

A.      The Parties agree to exchange Privilege Logs that describe the nature of the documents, communications, or tangible things that are not produced or disclosed and do so in a manner that—without revealing the information itself that is asserted to be privileged or protected—will enable other Parties to assess the claim.

B.      The Parties agree that all Privilege Logs shall include, but not be limited to, the following information: the Bates number of the document (for redacted documents only); the date of the document; the identity of all persons who authored the document and identification of which of them are attorneys; the identity of all persons designated as addressees, copyees or blind copyees (indicating whether a person was an addressee,

copyee or blind copyee) and identification of any attorneys; the custodian(s) of the document; the type or nature of the privilege or immunity asserted; and a brief description of the subject matter of the document, sufficient to enable another party's evaluation of the claim of privilege or immunity. Each Producing Party shall produce along with any Privilege Log a list of (a) any attorney named in the Privilege Log including information about whether they are internal or external counsel and any non-legal roles or titles, and (b) any individuals named in the Privilege Log who were not employed by the Producing Party as of the date of the document.

C.      Each member of a family of documents (i.e., each member of a set of documents in a parent—child relationship to each other) that is withheld or redacted on the grounds of privilege or immunity shall be identified individually (e.g., e-mail attaching memorandum), but members of the same family (to the extent such members are also being withheld or redacted) may be logged together as a single entry on the Privilege Log. Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege or immunity may be logged together as a single entry on the Privilege Log.

IT IS SO STIPULATED.

s/ *Alex Mirkin*
Richard J. Parks (PA Bar No. 40477)
Pietragallo, Gordon, Alfano,
Bosick & Raspanti, LLP
7 West State Street, Suite 100
Sharon, PA 16146

Charles J. Nerko (admitted *pro hac vice*)
Alex Mirkin (admitted *pro hac vice*)
OFFIT KURMAN, P.A.
590 Madison Ave., 6th Floor

New York, NY 10022
(212) 545-1900
charles.nerko@offitkurman.com
amirkin@offitkurman.com

*Attorneys for Bessemer System Federal Credit Union*

s/ *Jesse Byam-Katzman*
Efrem Grail (PA Bar No. 81570)
Brian Bevan (PA Bar No. 307488)
THE GRAIL LAW FIRM
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (admitted *pro hac vice*)
Jesse Byam-Katzman (admitted *pro hac vice*)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
jbyam-katzman@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

**IT IS SO ORDERED** that the foregoing Agreement is approved.

Dated: September 27, 2021

_____
Robert J. Colville
United Stated District Judge

10