**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
_____

**BESSEMER SYSTEM FEDERAL CREDIT**
**UNION, on behalf of itself and its members**,

                                    Plaintiff,

            vs.

                                                        Case No. 2:19-cv-00624-RJC

**FISERV SOLUTIONS, LLC, f/k/a FISERV**
**SOLUTIONS, INC., and FISERV, INC.,**

                                    Defendants.
_____


**BESSEMER'S MEMORANDUM OF LAW IN OPPOSITION TO FISERV'S MOTION**
**TO COMPEL DISCOVERY RELATED TO A SECURITY REVIEW**

Charles J. Nerko (NY 4764338)
Benjamin M. Wilkinson (NY 4927661)
Sarah A. O'Brien (*pro hac vice* to be filed)
BARCLAY DAMON LLP
80 State Street
Albany, NY 10020
(518) 429-4200
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com
sobrien@barclaydamon.com

Richard J. Parks (PA 40477)
PIETRAGALLO, GORDON, ALFANO,
BOSICK & RASPANTI, LLP
7 West State Street, Suite 100
Sharon, PA 16146
(724) 981-1397
rjp@pietragallo.com

*Counsel for Plaintiff*
*Bessemer System Federal Credit Union*

Plaintiff Bessemer System Federal Credit Union ("Bessemer") opposes defendants' (together, "Fiserv") motion to compel discovery in relation to Bessemer's security review.

Trial lawyers routinely engage outside experts when specialization is necessary to render legal advice to a client. Attorneys consult with accountants, physicians, and scientists in financial, malpractice, and patent litigation. Similarly, attorneys litigating data breach cases rely on the technical experts to provide informed legal advice to their clients.

Bessemer's security review showed that Fiserv failed to implement "rate limiting" security controls on Bessemer's online banking website. As the time of the security review, this was a "live" security problem that exposed Bessemer's members to fraud and required urgent correction. Thus, Bessemer disclosed to Fiserv that certain security controls were missing. In doing so, Bessemer disclosed only the fact that a review occurred and the absence of security controls, scrupulously avoiding disclosing expert opinions or privileged communications. Fiserv, by its motion to compel, seeks to unnecessarily invade Bessemer's privilege and work product.

There are no special circumstances warranting the intrusive, provocative discovery Fiserv seeks. Fiserv hosted Bessemer's online banking website on a server Fiserv controlled, and closely monitored and logged the security reviewer's activities. Bessemer's security reviewer has no unique knowledge about the security problems that a Fiserv expert could not obtain on his or her own. Indeed, Fiserv observed the absence of rate limiting on its own, eventually conceding in its answer that this security control was not implemented.  (Dkt. 48, ¶ 62; Dkt. 76 ¶ 62).

Recognizing that it comes nowhere close to demonstrating the crime-fraud exception to privilege applies, Fiserv urges the Court to invent a new exception to privilege with a lower threshold of "bad faith." Fiserv suggests that Bessemer's alleged "bad faith" in alerting others about Fiserv's security problems—which existed independent of the security review—justifies

forfeiture of Bessemer's privileges and attorney work product. Not so. Fiserv can test this theory entirely through non-privileged documents and a deposition of Bessemer's CEO. Indeed, Fiserv hurriedly filed this motion before any party produced documents, much less privilege logs. The Court should not countenance this provocative overreach.

### Factual Background

Bessemer is submitting a declaration of its CEO, Joy E. Peterson. For the Court's convenience, the most salient facts are briefly summarized below.

This case started with Bessemer suing Fiserv in April of 2018 in the Court of Common Pleas of Mercer County. (Peterson Dec., ¶ 8). After that litigation commenced, Bessemer's litigation counsel engaged a security expert to evaluate the claims Bessemer was prosecuting in the state court action against Fiserv. The expert's engagement bears all the hallmarks of work product. The expert was engaged by Bessemer's litigation counsel and required to communicate with counsel. (Peterson Dec., ¶¶ 11-16, Ex. A at 1). The expert's scope of work was limited to litigation activities:

> In connection with the retention of our law firm to render legal services to our client in connection with the litigation…pending in the Court of Common Pleas of Mercer County, Pennsylvania, we have express authority to engage an information security expert to work under our direction and report directly to us in order to assist us in providing legal advice to our client. The services will include your investigation and analysis of our client's claims against Fiserv Solutions, LLC. This work contemplates services of character and quality which will be a necessary adjunct to our serves as attorneys in providing legal advice.

*See* Peterson Dec., Ex. A at 1.

Moreover, the expert was required to agree to confidentiality and conflict-of-interest duties modeling the duties attorneys owe clients under the Rules of Professional Conduct, and the agreement's governing law was "Pennsylvanian law, including its provisional conduct rules." The agreement required the expert not to begin drafting an opinion or report until requested by counsel, and none was ever requested. (Peterson Dec., ¶ 18). The results of the security review that pertained

to "live" threats jeopardizing Bessemer's members were reported to Fiserv because these problems required urgent correction. Bessemer never disclosed any privileged communication or opinion, and Fiserv's motion does not identify any. (Dkt. 48-7).

<u>Argument</u>

**I.   Fiserv's motion to compel must be denied because Fiserv improperly seeks privileged and work product-protected materials.**

**Work Product.** "[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000). The Supreme Court held 75 years ago in *Hickman v. Taylor*, 329 U.S. 495, 508-09 (1947) that the "pertinent information gleaned" in the investigative process is protected as work product. Fiserv's motion fails to mention *Hickman* or address the work product doctrine in any meaningful manner.

Fiserv seeks both mental impression and fact work product by seeking discovery into Bessemer's litigation counsel's investigation of Bessemer's claims after litigation commenced. *See* Peterson Dec., Ex B, Interrogatory No. 9 (requesting an identification of "every person (including counsel) involved" and the "specific role played" by each person during the investigation); Interrogatory No. 10 (requesting a detailed description of the "individual steps" taken during the security review and reports and other analysis produced); RFP No. 24 (requesting "[a]ll documents relating to the security review"); RFP No. 25 (requesting the "data, reports, or analysis generated" by the expert engaged by litigation counsel); RFP Nos. 27 and 28 (requesting "[a]ll documents reflecting or relating to any communications…relating to the security review").

"Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). The Third Circuit has applied work product protection to a test conducted by a technical expert in

anticipation of litigation, holding that work product protection "encompasses factual materials." *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993). District courts have similarly confirmed that the work product doctrine protects data breach investigations commissioned by counsel in anticipation of litigation:

- Experian hired the Jones Day law firm, which in turn hired a security consultant to investigate a data breach at Experian. The consumers affected by the data breach sought disclosure of the expert's report and documents related to its investigation that the expert furnished to Jones Day. The court held that these materials were work product because they were prepared at Jones Day's behest in anticipation of litigation, even if that was not the only purpose of the security review. *See In re Experian Data Breach Litig.*, 2017 U.S. Dist. LEXIS 162891, *22 (C.D. Cal. May 18, 2017).

- Materials concerning Target's "Data Breach Task Force," which was comprised of attorneys and an outside cybersecurity investigator, was held to be immune from discovery. The consultant informed Target's attorneys about the breach so that they could advise and represent Target in litigation that was already pending and reasonably expected to follow. *See In re Target Corp. Customer Data Sec. Breach Litig.,* 2015 U.S. Dist. LEXIS 151974, *11 (D. Minn. Oct. 23, 2015).

- In *Genesco*, the court denied a motion to compel discovery related to a cybersecurity consultant engaged by counsel—recognizing that the work product doctrine "attaches to an agent's work under counsel's direction." *Genesco, Inc. v. Visa U.S.A., Inc.*, 296 F.R.D. 559, 581 (M.D. Tenn. 2014). The court held that the work product doctrine applied because "Genesco's affidavits satisfy that the [cybersecurity expert] was retained in contemplation of litigation, as reflected in the express language of the retainer agreement." *Id* at 584.

Fiserv's motion portrays the security review as a "pre-suit investigation" not conducted for litigation purposes (Mem. 8), but this is demonstrably wrong. Similar to *Genesco*, the engagement letter prepared by Bessemer's litigation counsel explicitly notes that the security reviewer was being retained in connection with existing litigation to assist in providing a legal analysis of the claims Bessemer was prosecuting. (Peterson Dec., Ex. A at 1). This is quintessential work product. *See Martin*, 983 F.2d at 1254, 1261 (report of air sampling test results made in anticipation of litigation held to be work product).

"A party seeking discovery of attorney work-product must show 'substantial need,' for fact work-product. As for work-product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney,' ... we have held that, 'at a minimum such material is to be protected unless a highly persuasive showing of need is made.'" *See In re Grand Jury Proceedings*, 219 F.3d at 190-91; *see also Smith v. Scottsdale Ins. Co.*, 621 F. App'x 743, 746 (4th Cir. 2015) ("Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances"). Fiserv cannot show substantial need—much less make the higher showing required for mental impression work product— among other reasons, because the security review occurred on a Fiserv-hosted system that Fiserv conceded it monitored and logged.  (Dkt. 88 at ¶¶ 38-41).  All along, Fiserv knew about the fact of the security review and Fiserv was able to have its own expert analyze the system's security controls. If Fiserv wishes to inquire on Bessemer's intent in having the security review conducted, that can be addressed without invading work product protections through, for example, a deposition of Bessemer's CEO.

**Consulting Expert Privilege.** Rule 26(b)(4)(D) prohibits discovery on "facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." "This 'non-testifying expert' privilege is distinct from the work-product doctrine and the attorney-client privilege [and…] is designed to prevent the unfairness of counsel benefiting from an adversary's retention and financing of an expert." *Genesco*, 296 F.R.D. at 580. Although Fiserv purports to depict the consulting expert as a fact witness, a "plaintiff's designation of a witness as 'non-testifying' controls." *Vanguard Sav. & Loan Ass'n v. Banks*, 1995 U.S. Dist. LEXIS 2016, at *8 (E.D. Pa. Feb. 17, 1995). This is because the consulting expert "would necessarily be applying his

or her specialized knowledge" by participating in discovery, which would "effectively eviscerate and undermine the core purpose of Fed. R. Civ. P. 26(b)(4)(D)." *Genesco*, 296 F.R.D. at 581.

A limited exception to this rule applies if Fiserv satisfies the "'heavy' burden of proving exceptional circumstances," which "exist only if defendants lack the ability to discover equivalent information by other means." *Vanguard*, 1995 U.S. Dist. LEXIS 2016, at *9. Fiserv does not contend these circumstances exist. As explained above, Fiserv can get equivalent information from other, non-privileged sources.

The two cases primarily relied on by Fiserv—*Bunzl Pulp & Paper Sales, Inc. v. Golder*, 1990 U.S. Dist. LEXIS 16355 (E.D. Pa. Dec. 4, 1990) and *Pengate Handling Sys. v. Westchester Surplus Lines Ins. Co.*, 2007 U.S. Dist. LEXIS 13303 (M.D. Pa. Feb. 27, 2007)—are readily distinguished. In *Pengate*, the consultant was hired for no other purpose than to assist with the processing of the plaintiff's insurance claim, which later became the subject matter of the litigation. The court held that this did not amount to work performed in anticipation of litigation. In *Bunzl*, the defendant sought to depose an employee of a consulting company that had discovered potentially hazardous materials on the defendant's property during routine testing of the property. The Court held that the consultant's employee should be produced for deposition.[1] In both *Bunzl* and *Pengate*, there was no indication that either consultant was hired in anticipation of litigation because each consultant was engaged well before any controversy leading to litigation. Here, the facts are starkly different, because the security reviewer was engaged by Bessemer's trial counsel after litigation commenced. Thus, litigation was not just anticipated: it was extant.

---

[1] Notably, the court did not hold that the moving party was entitled to production of documents relied on by the expert, as Fiserv seeks here. Rather, the court held that the discovery sought from plaintiff's expert was potentially protected by the work product and attorney-client privileges, but that the matter was not ripe for adjudication. The court only merely held that he could be produced for a deposition and that he would not be required to answer questions addressed to facts known or opinions that were acquired or developed in anticipation or litigation or trial.

**Attorney-Client Privilege.** The attorney-client privilege attaches to confidential communications between privileged persons for the purpose of obtaining or providing legal advice. *Teleglobe Communs. Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id*. "Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

Fiserv seeks materials requested and received by Bessemer's trial counsel in connection with their engagement of an expert to investigate Bessemer's claims. Because an attorney cannot render legal services concerning a data breach without requesting, receiving, and evaluating technical information, a communication does not lose protection simply because it incorporates technical information. Here, trial counsel's "factual investigations fall comfortably within the protection of the attorney-client privilege [and] extend[] to the [cybersecurity] firm that assisted counsel in his investigation." *See Genesco*, 296 F.R.D. at 581. Trial counsel's requesting and receiving, and the expert's offering, these materials reveal both (i) trial counsel's mental impressions on what information is important for evaluating and pursuing legal claims, which is work product; and (ii) the specifics of Bessemer's requested legal advice, which is privileged.[2]

---

[2] **Federal Government's Privilege.** In addition to the privileges belonging to Bessemer, Fiserv's demands (e.g., RFP No. 28) seek communications with the National Credit Union Administration, which are protected by the government's own privilege. Under federal law, "no officer, employee, or agent…of any federally insured credit union shall disclose… any exempt records of NCUA." 12 CFR § 792.30. Exempt records protected by NCUA's privilege include those "related to the examination, operating or condition ***reports prepared…for the use of NCUA***" (e.g., a credit union's reports to the NCUA) and "all information, whether in formal or informal report form, the disclosure of which would harm the financial security of credit unions or would interfere with the relationship between NCUA and credit unions." *Id.* § 792.11(a)(8).

## II.   Fiserv has not established a waiver of Bessemer's privilege or work product protections.

Neither privilege nor work product protection was waived by Bessemer notifying Fiserv of the fact of the security review and the existence of security problems requiring prompt correction.

**Consulting Expert Privilege Unwaivable.** The consulting expert privilege under Rule 26(b)(4)(D) "serves different purposes" than the attorney-client privilege, "and does not permit of waiver." *See Genesco*, 296 F.R.D. at 586. Fiserv's wavier argument is "wholly irrelevant and totally unpersuasive" because it is "it is immaterial that plaintiff may have voluntarily disclosed the … report to third parties. Rather, the only question is whether plaintiff can meet the requirements set forth in Rule 26(b)(4)(B)." *Vanguard*, 1995 U.S. Dist. LEXIS 2016, at *7.

**No Work Product Waiver.** Fiserv bears the burden of proving waiver of work product protection. *See Mir v. L-3 Commc'ns Integrated Sys., LP*, 2016 U.S. Dist. LEXIS 95605, at *18 (N.D. Tex. July 22, 2016) ("the burden of proving waiver of work product immunity falls on the party asserting waiver"). Fiserv cannot carry this burden. Merely disclosing a conclusion does not waive work product protection for facts gathered in arriving at that conclusion. In *In re Vecco Instruments, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 102423, at *7 (S.D.N.Y. Jan. 25, 2007), for example, a court held that work product was not waived when a client issued a press release summarizing findings from an internal investigation, and its law firm summarized the results of the investigation in a letter to the SEC. The *Vecco* court stressed that "the disclosures ... merely summarized the findings and conclusions of the internal investigation and did not quote, paraphrase or reference any of the specific documents at issue in support of its conclusions. Said limited disclosure does not constitute waiver of the work product privilege." *Id.*

**No Attorney-Client Privilege Waiver.** Fiserv argues that Bessemer has waived the attorney-client privilege by putting the matter "at issue." (Mem. 9-10). But for this to occur,

Bessemer would have had to "prove [a] claim or defense by disclosing or describing an attorney client communication" and "taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone-Poulenc*, 32 F.3d at 863. Legal advice "is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id.*

Far from divulging the contents of privileged communications, Bessemer disclosed only the fact that a security review occurred and that certain security controls were absent. Bessemer did not place any legal advice at issue and scrupulously avoided disclosing expert opinions or privileged communications. Thus, no waiver occurred. *See Genesco*, 296 F.R.D. at 585 (no waiver where "brief references" made to a privileged data breach investigation's "analysis and evaluation" of security controls, without disclosing "opinions, analysis or bases for legal reasoning"); *In re Dayco Corp. Deriv. Sec. Litig.*, 99 F.R.D. 616, 619 (S.D. Ohio 1983) (no waiver where corporation released the findings of special committee but did not release a significant part of the special committee report).

### III. The discovery is disproportionate to any legitimate need, and is uniquely burdensome, intrusive, and harassing.

Fiserv's motion should also be denied under Rule 26(b)(1)'s proportionality factors.

**Burden Outweighs Benefit.** Fiserv's requests are burdensomely destructive of work product protection and privilege. Moreover, revealing the expert's identity would undoubtedly lead to unnecessary intrusion and harassment given that Fiserv has already threatened Bessemer's security expert with civil claims and criminal prosecution (*see* Peterson Dec., Ex. D at 3). This would chill Bessemer's and other data breach victims' opportunities to engage experts.

**Counterclaims' Minor Importance and Low Amount in Controversy.** While Bessemer is seeking redress for data breaches and other misconduct that has impacted thousands of

consumers, the counterclaims largely seek redress for the noncompensable embarrassment of being caught with a security problem—ostensibly giving Bessemer a better "negotiating position". This case has not settled, these security problems would have surfaced anyway during discovery, and Fiserv has not paid anything on account of Bessemer uncovering security problems Fiserv sought to conceal. Nor can Fiserv recover the costs to investigate and remediate its own security failures; Fiserv had a duty to audit its systems and implement proper security controls. Fiserv's unknown damages cannot justify its exorbitant, heavy-handed discovery requests.

**The Discovery's Minor Importance; Fiserv's Superior Resources and Access.** Fiserv is a sophisticated Fortune 500 company specializing in technology and logs the data and activity of its own servers, which would include the work performed by the security reviewer that Fiserv attempts to place at issue. Fiserv's Privacy Policy confirms the extensive monitoring and logging that Fiserv conducts on its systems. (Peterson Dec., Exhibit C).  All along, Fiserv can review its own server logs and hire its own expert. If there are any gaps to fill, Bessemer is prepared to produce any non-privileged non-work product documents and have its CEO and other personnel deposed. This is clearly more convenient, less burdensome, and would avoid unnecessarily invading Bessemer's attorney work product and relationship with its consulting expert.

**Conclusion**

For the foregoing reasons, Bessemer respectfully requests that the Court deny Fiserv's motion to compel.

Fiserv's request for fees under Rule 37(a)(5)(A) should be denied. Fiserv cites no cases supporting its request. Bessemer's objections were substantially justified, and the circumstances here, including Bessemer's not-for-profit status, make an award of expenses unjust.

In accordance with the Court's Order dated December 27, 2021 (Dkt. 144) setting the briefing schedule in this matter, Bessemer will file a motion for a protective order forbidding or setting the terms of any further security review discovery, along with the its other discovery-related motions, on or before January 31, 2022.

Dated: January 21, 2022                       Respectfully submitted,

                                              */s/ Charles J. Nerko*
Charles J. Nerko (NY 4764338)                 Richard J. Parks (PA 40477)
Benjamin M. Wilkinson (NY 4927661)            PIETRAGALLO, GORDON, ALFANO,
Sarah A. O'Brien (*pro hac vice* to be filed) BOSICK & RASPANTI, LLP
BARCLAY DAMON LLP                             7 West State Street, Suite 100
80 State Street                               Sharon, PA 16146
Albany, NY 10020                              (724) 981-1397
(518) 429-4200                                rjp@pietragallo.com
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com                   *Counsel for Plaintiff*
sobrien@barclaydamon.com                      *Bessemer System Federal Credit Union*

11