## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

**BESSEMER SYSTEM FEDERAL CREDIT UNION, on behalf of itself and its members**,

                       Plaintiff,

     vs.

**FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,**

                     Defendants.

Case No. 2:19-cv-00624-RJC

_____

## BESSEMER'S MEMORANDUM OF LAW IN BESSEMER'S MOTION TO COMPEL RESPONSES TO BESSEMER'S SECOND REQUEST FOR PRODUCTION

Charles J. Nerko (NY 4764338)
Benjamin M. Wilkinson (NY 4927661)
Sarah A. O'Brien (*pro hac vice* to be filed)
BARCLAY DAMON LLP
80 State Street
Albany, NY 10020
(518) 429-4200
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com
sobrien@barclaydamon.com

Richard J. Parks (PA 40477)
PIETRAGALLO, GORDON, ALFANO,
BOSICK & RASPANTI, LLP
7 West State Street, Suite 100
Sharon, PA 16146
(724) 981-1397
rjp@pietragallo.com

*Counsel for Plaintiff*
*Bessemer System Federal Credit Union*

Plaintiff Bessemer System Federal Credit Union ("Bessemer") submits this memorandum of law in support of Bessemer's motion pursuant to Federal Rule of Civil Procedure 37(a)(3) to compel discovery requested in Bessemer's Second Request for Production from defendants (together, "Fiserv").

In denying Fiserv's motion to dismiss and strike, the Court has carefully considered Bessemer's detailed allegations of Fiserv's misconduct and held that a fraud plausibly occurred and that punitive damages are at issue. To be sure, Fiserv has admitted that its prior representations to the Court pertaining to its claimed return of Bessemer's records were false.

Bessemer's tort and punitive damages claims concern contradictory representations made by Fiserv's in-house and outside counsel regarding the quantity of lead time required by Fiserv to provide deconversion services to return Bessemer's records, and the false statements Fiserv made to Bessemer and the Court pertaining to Fiserv's claimed return of Bessemer's records. As Bessemer must establish Fiserv's scienter, Bessemer seeks to take discovery on the accuracy of these representations, as well as the underlying communications and state of mind of Fiserv's businesspeople who instructed counsel to convey this false information.

In relaying Fiserv's non-confidential business information to Bessemer and the Court, Fiserv's counsel were acting as conduits, not counselors, so the attorney-client privilege does not apply. Moreover, even if the privilege applied (and it does not), the statements fall within the crime-fraud exception to the attorney-client privilege because Bessemer has already established that the communications at issue plausibly advanced a fraud.

**Factual Background**

Bessemer is submitting a declaration of its CEO, Joy E. Peterson, for a full statement of the relevant background. For the Court's convenience, we summarize below the most salient facts.

Fiserv provided technology services and recordkeeping for Bessemer.  In April of 2018, after experiencing a host of security problems with Fiserv's services, Bessemer sought to conclude its relationship with Fiserv and obtain its records back.  (Peterson Dec., ¶¶ 3-7).  Fiserv engaged in a drawn-out scheme to deny Bessemer its records, extract fees from Bessemer, and prevent it from using vendors competitive with Fiserv.

Initially, Fiserv's in-house counsel indicated on April 27, 2018 that Fiserv would need "at least 3-4 months advance notice for preparation and execution of the conversion" to "deconvert" Bessemer's data so that it could be returned to Bessemer and utilized by a new provider.  (Peterson Dec., ¶¶ 6-7; Dkt. 116-4).

Later, once Bessemer commenced a replevin action for return of its records, Fiserv's outside counsel contradicted Fiserv's in-house counsel by stating that approximately 8 months of lead time is required by Fiserv to complete the deconversion.   (Peterson Dec., ¶¶ 9-11).  Specifically, Fiserv's October 19, 2018 letter stated "given the lead time required, deconversion is not likely to happen until near the June 30, 2019 expiration of the Master Agreement…." (Dkt. 48-19).

Next, after this time came and passed without the records being returned, Bessemer sought a temporary restraining order from this Court to obtain its records back.  Curiously, despite the parties' sharp factual dispute, no Fiserv businessperson submitted a declaration to the Court. Rather, Fiserv again hid behind its counsel, limiting its statements to "facts" relayed by its lawyers. In doing so, Fiserv used its lawyers as a shield to falsely represent to the Court that Bessemer's records were already returned.  On the basis of this falsehood, Bessemer's motion for a temporary restraining order was denied.

Several days after these false representations were made to Bessemer and the Court, Fiserv conceded that it was in fact withholding from Bessemer over 900 documents. (Peterson Dec., ¶ 21). Who conveyed the false information to Fiserv's attorneys to convey to Bessemer and the Court, and why? This is critical to Bessemer's fraud, bailment, and punitive damages claims.

Bessemer maintains a claim for fraud on the basis of Fiserv's misrepresentations regarding the time Fiserv needed to complete the deconversion. (Dkt. 48, ¶¶ 252-260). In response to Fiserv's motion to dismiss Bessemer's fraud claim, the Court held that Bessemer sufficiently set forth a claim for fraud based upon Bessemer's allegations that Fiserv misrepresented the required time Fiserv needed for deconversion services in an attempt to get Bessemer to withdraw its replevin action, prevent Bessemer from utilizing a new vendor, and extract additional fees from Bessemer. (Peterson Dec., ¶¶ 15-18; Dkt. 69 at 25-26).

Bessemer also maintains a bailment claim against Fiserv based upon Fiserv's failure to timely return its records. (Dkt 48, ¶¶ 292-300; Dkt. 69 at 34-35; Peterson Dec., ¶ 23). In response to Bessemer's prior application for a temporary restraining order seeking return of said records, Fiserv's counsel misrepresented to the Court that all records were returned to Bessemer (Dkt. 24 at 2). Fiserv, in its answer, admitted this statement was false. (Dkt. 48, ¶ 196; Dkt. 76, ¶ 196).

Finally, given the extensive misconduct Fiserv perpetuated against a not-for-profit credit union and its members, punitive damages are required for complete redress, and the Court denied Fiserv's motion to strike them from the complaint.

On May 28, 2021, Bessemer served Fiserv with a Second Request for Production of Documents ("Second RRP"). (Peterson Dec., Ex. A). Bessemer's Second RFP seeks documents regarding Fiserv's contradictory representations regarding the quantity of time Fiserv needed to complete deconversion and return Bessemer's records, which the Court previously held gave rise

3

to Bessemer's fraud claim.  These requests are narrowly tailored to address the non-confidential

factual assertions made on Fiserv's behalf, and do not call for any legal advice for which there

may be a legitimate claim of privilege.  (Peterson Dec., Ex. A).

Fiserv served responses dated August 20, 2021 purporting to respond to Bessemer's

Second RFP.  (Peterson Dec., Ex. B).  However, Fiserv's responses assert objections to the totality

of Bessemer's Second RFP on the basis of attorney-client privilege and attorney-work product and

assert that the Bessemer's demands and are irrelevant, burdensome, and intended to harass Fiserv.

(Peterson Dec., Ex. B).  The parties had several discussions to address this dispute without

resolution.  On October 20, 2021, Bessemer's counsel sent a letter to Fiserv outlining the reasons

that attorney-client privilege did not apply.  (Nerko Dec., Ex. A).  On November 1, 2021, Fiserv's

counsel rejected these arguments and stated that in relation to Bessemer's "manufactured fraud

claim," Fiserv had "no intention of producing to Bessemer privileged documents absent a Court

order requiring as much."  (Nerko Dec., Ex. B).  On November 4, 2021, Bessemer's counsel once

again sought a resolution on this issue, which was rejected.  (Nerko Dec., Ex. C).

## Argument

### I.     The Second RFP seeks indispensable evidence for Bessemer's fraud, bailment, and punitive damages claims that cannot be obtained from other sources.

The Court has already held that Bessemer sufficiently set forth a claim for fraud based

upon Fiserv misrepresenting the quantity of lead time Fiserv required to provide deconversion

services in the Replevin Action Comfort Letter.  (Dkt. No. 69 at 25-26).  The Court also held that

Bessemer set forth a claim for bailment based upon Bessemer's allegations that Fiserv refused to

return Bessemer's records, despite due demand. (Dkt. No. 69, pp. 34-35). Moreover, Fiserv's

fraudulent misconduct, including its intentional and willful nature, is relevant to Bessemer's

punitive damages allegations that have survived Fiserv's motion to strike.  Because Bessemer's

fraud, bailment, and punitive damages claims were held to be sufficiently plausible to survive Fiserv's motions to dismiss and strike (as well as Fiserv's motion for sanctions and judgment on the pleadings), Bessemer is unquestionably entitled to obtain discovery on these claims. Given the limited and focused requests bearing on key issues, and the fact that Fiserv has exclusive access to this information, these requests are indisputably proportionate to the needs of this case.

**Fraud.** In order to prove its fraud claim, Bessemer must demonstrate that Fiserv intentionally made knowingly false representations regarding the time necessary to complete deconversion and return of Bessemer's records. (*See* Dkt. 69 at 25 (fraud requires (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance)). The documents and communications requested in Bessemer's Second RFP seek to establish those elements of fraud. The contradictory statements made by counsel (based presumably on the information provided by Fiserv) misled Bessemer and advanced Fiserv's fraudulent purpose by prolonging the relationship between Fiserv and Bessemer and resulted in Bessemer paying excess fees to Fiserv. Bessemer's Second FRP seeks to obtain documents concerning the quantity of "lead time required" by Fiserv to provide deconversion; documents relied on by Fiserv representatives who provided conflicting factual information to Bessemer; and the intent and state of mind of Fiserv's representatives.

**Bailment.** To establish a claim for bailment, Bessemer must show that a demand for return of property was made and that the bailee failed to return the property. Bessemer's requests seek necessary evidence on efforts Fiserv made to return Bessemer's records and the timing and extent of Fiserv's return of Bessemer's records.

**Punitive Damages.**  In denying Fiserv's motion to strike Bessemer's punitive damages allegations, the Court determined that Bessemer plausibly stated an entitlement to punitive damages.  Thus, Fiserv's intent and state of mind when engaging in the acts at issue are necessary evidence in this case.  *See Italian & French Wine Co. v. Negociants U.S.A.*, 842 F. Supp. 693, 702 (W.D.N.Y. 1993) (under New York law, which governs the Bessemer-Fiserv Solutions Master Agreement, punitive damages appropriate for "actual malice or ill will" or willful, wanton, or malicious misconduct); *Allfrey v. GGNESC East Stroudsburg LP*, 2018 U.S. Dist. LEXIS 60695, *9-10 (M.D. Pa. Apr. 9, 2018) (under Pennsylvania law, punitive damages appropriate for intentional and outrageous conduct resulting from an evil motive or reckless indifference).

## II.     The discovery sought is not subject to a legitimate claim of privilege.

Fiserv does not have a legitimate privilege claim over attorneys' statements relaying non-confidential factual data to Bessemer and this Court that are used to perpetuate a civil fraud.

### A.  The attorney-client privilege applies only to communications made for the purpose of securing legal advice and does not apply when an attorney acts as a conduit to relay non-confidential factual information.

A party claiming the attorney-client privilege bears the burden of proving its applicability. *Haynes Int'l, Inc. v. Special Metals Corp.*, 2005 U.S. Dist. LEXIS 53099, *2 (W.D. Pa. Dec. 15, 2005).  The attorney-client privilege applies to: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007).  "The attorney-client privilege in the Third Circuit remains narrowly construed….Construing the attorney-client privilege narrowly, application of the privilege should ordinarily be limited to legal advice leading to a decision by the client." *In re Domestic Drywall Antitrust Litig.*, 2014 U.S. Dist. LEXIS 144263, at *8-9 (E.D. Pa. Oct. 9, 2014).

*First*, no legal advice leading to a decision by Fiserv is being sought.  Rather, Bessemer's requests are narrowly tailored to incidents when Fiserv's counsel was communicating with Fiserv's litigation adversary.  Indeed, as the court found relevant in *Domestic Drywall*, "there is no evidence [Fiserv] would have refrained from creating the [communication] absent the privilege." *See*, 2014 U.S. Dist. LEXIS 144263, at \*9. Given that the requests pertain to non-confidential factual information relayed to advance Fiserv's business purposes, this information would have been conveyed by a Fiserv businessperson absent the privilege.

*Second*, a "lawyer who acts only as a conduit for information is not providing any kind of legal advice, and so the communication is not privileged." *SEC, Inc. v. Wyly*, 2011 U.S. Dist. LEXIS 80304, \*30-31 (S.D.N.Y. Jul. 18, 2011).  Thus, when a lawyer is a "conduit" for relaying non-confidential information, the client may not invoke the attorney-client privilege.  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

Fiserv necessarily intended that its counsel convey non-confidential factual information to Bessemer and the Court, removing any expectation of privilege applying.  Bessemer's Second RFP does not seek the mental impressions of Fiserv's counsel or any legal advice provided by Fiserv's counsel.  (*See* Peterson Dec., Ex. A).  Rather, Bessemer seeks discovery on the underlying non-confidential factual data relayed by counsel. This includes the information relied on or provided to counsel by Fiserv representatives that caused the misrepresentations to be made, including the contradictory representations made by Fiserv in various communications regarding time necessary for it to provide Bessemer's records, and whether it finished providing them.  The attorney-client privilege does not shield this factual, business information from discovery.  *See In re Grand Jury Testimony of Attorney X*, 621 F. Supp. 590 (E.D.N.Y. 1985) (information given to the attorney from a third party and relayed by the attorney to his client is not privileged, because the attorney

7

is not acting as a legal adviser but rather as a conduit for information); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) (information relayed from attorney to client was not protected because it did not reveal, either directly or implicitly, legal advice or client confidences).

   **B.   Fiserv cannot assert privilege over communications used in furtherance of a fraud.**

   Even assuming that Fiserv could satisfy its burden that the attorney-client privilege applies (and it does not), the crime-fraud exception would render the documents non-privileged.  It is well-established that the attorney-client privilege does not apply when a client consults a lawyer for the purpose of furthering an illegal or fraudulent act. *United States v. Zolin*, 491 U.S. 554, 563 (1989). Moreover, in these circumstances, work product protection does not apply. *In re Green Grand Jury Proceedings*, 492 F.3d 976, 986 (8th Cir. 2007); *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 380 (D.N.J. 2006) (crime-fraud exception applies to common law fraud as well as communications in furtherance of an intentional tort that undermines the adversary system itself); *In re Grand Jury Investigation*, 445 F.3d 266, 279-80 (3d Cir. 2006) (communication with counsel concerning what documents were responsive to grand jury subpoena and subsequent acquiescence in the deletion or destruction of those documents constituted a misuse of counsel's advice and supported application of crime-fraud exception).

   The party asserting the crime-fraud exception has the burden to present a *prima facie* case that the advice was obtained in furtherance of an illegal or fraudulent act.  *In re Chevron Corp.*, 633 F.3d 153, 166 (3d Cir. 2011).  For this, the movant must provide a reasonable basis to suspect that the privilege holder was committing or intending to commit a fraud, and that the attorney-client communications or attorney work product furthered the alleged fraud.  *See In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012); *Impala Platinum Holdings Ltd. v. A 1 Specialized Servs. & Supplies*, 2017 U.S. Dist. LEXIS 15220 (E.D. Pa. 2017).  "For the crime-fraud exception to apply,

8

'there must be something to give colour to the charge' that the attorney-client communication was used in furtherance of a crime or fraud." *In re Grand Jury*, 705 F.3d at 153 (citing *Clark v. United States*, 289 U.S. 1, 53 S. Ct. 465 (1933)).  A communication is made in furtherance of crime or fraud, and thus falls within the crime-fraud exception, if it advances, or the client intends it to advance, the client's criminal or fraudulent purpose. *Transcon. Refrigerated Lines, Inc. v. New Prime, Inc.*, 2014 U.S. Dist. LEXIS 75320, *43 (M.D. Pa. June 3, 2014) (finding crime-fraud exception applied to each communication, or document reflecting a communication, that furthered an allegedly fraudulent transfer).

The Court has already held that a fraud plausibly occurred, and specifically identified Fiserv's counsel's letter as serving as the basis of Bessemer's fraud claim. Specifically, the Court stated:

> Bessemer also asserts, however, that Fiserv, in its October 19, 2018 correspondence…misrepresented the amount of time that would be required for deconversion services, and that, but for Fiserv's delays in providing deconversion services, the process could have been completed much sooner. Bessemer alleges that Fiserv misrepresented the required lead time for deconversion services in an attempt to get Bessemer to withdraw the Replevin Action, prevent Bessemer from switching vendors at an earlier date, and extract extra fees from Bessemer while Bessemer continued using Fiserv as a vendor…Bessemer asserts that Fiserv affirmatively misrepresented the amount of time required for deconversion in stating that it was not likely to occur until around June 30, 2019…The Court finds that these assertions sufficiently set forth a claim for fraud…

(Dkt. 69 at 26).  Thus, the communications requested in the Second RFP were used in furtherance of the fraud.

In *Kickflip, Inc. v. Facebook, Inc.*, 2016 U.S. Dist. LEXIS 183588 (D. Del. Oct. 11, 2016), the court compelled production of two documents under the crime-fraud exception because they reflected misrepresentations by the plaintiff to counsel regarding the creation of an agreement

9

which the court found was likely backdated.  The court held that the plaintiff waived attorney-client privilege because there was a reasonable basis to suspect that the plaintiff or its counsel made intentionally misleading statements pertaining to the creation of relevant documents.[1]  Here, as in *Kickflip*, this Court has already found that Fiserv's counsel's contradictory representations regarding the quantity of time Fiserv needed to return Bessemer's records, and whether they were returned at all, supported Bessemer's fraud, bailment, and punitive damages claims.  Despite this, Fiserv seeks to hide behind privilege to thwart Bessemer's access to proof.  The crime-fraud exception to the attorney-client privilege does not permit fraudsters to use their counsel as a shield, just as Fiserv has attempted to do here.[2]

To be clear, Bessemer does not seek discovery on any legal strategy or advice.  Notably, the Court in *Kickflip* utilized an approach whereby certain documents would be categorized to allow for discovery on discrete topics involving attorney communications, while allowing privilege to be asserted as to remaining communications. To that end, during a telephonic meet and confer held on October 21, 2021 and again via email on November 4, 2021, Bessemer invited Fiserv to work cooperatively to define mutually agreeable categories of privileged and non-privileged communications in order to mutually respect legitimate privilege claims while allowing access to necessary proof for which privilege does not apply. (*See* Nerko Dec., Exs. A-C).  Fiserv summarily rejected this approach and insists Bessemer engage in motion practice. *Id.*

---

[1] After determining that there was a reasonable basis to suspect fraud on the Court by plaintiff, the Court conducted an *in camera* review of the documents at issue to evaluate whether the litigation counsel's communications or work product were used by plaintiff in furtherance of the suspected misrepresentations. *Id*. at *16-17.  Here, Bessemer has no objection to the Court or a Special Master conducting a similar *in camera* review of the responsive documents once they are identified by Fiserv.

[2] The Court in *Kickflip* also permitted discovery into privileged communications when a party "may need to evaluate whether to pursue sanctions for opposing counsel's lack of diligence and candor to the Court," which provides another independently sufficient basis for the discovery. *Id*. at * 19.

## <u>Conclusion</u>

For the foregoing reasons, Bessemer respectfully requests that the Court grant Bessemer's

motion to compel.  Moreover, Bessemer respectfully requests that the Court award reasonable

attorneys' fees and costs for this motion pursuant to FRCP 37(a)(5)(A) (stating that Court must

award attorneys' fees to a successful movant unless the nondisclosure was substantially justified).


Dated: January 31, 2022                    Respectfully submitted,

                                           */s/ Charles J. Nerko*
Charles J. Nerko (NY 4764338)              Richard J. Parks (PA 40477)
Benjamin M. Wilkinson (NY 4927661)         PIETRAGALLO, GORDON, ALFANO,
Sarah A. O'Brien (*pro hac vice* to be filed)   BOSICK & RASPANTI, LLP
BARCLAY DAMON LLP                          7 West State Street, Suite 100
80 State Street                            Sharon, PA 16146
Albany, NY 10020                           (724) 981-1397
(518) 429-4200                             rjp@pietragallo.com
cnerko@barclaydamon.com
bwilkinson@barclaydamon.com                *Counsel for Plaintiff*
sobrien@barclaydamon.com                   *Bessemer System Federal Credit Union*