UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

**BESSEMER SYSTEM FEDERAL CREDIT UNION, on behalf of itself and its members**,

                              Plaintiff,

      vs.

**FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,**

                              Defendants.

Case No. 2:19-cv-00624-RJC

---

### DECLARATION OF JOY E. PETERSON IN SUPPORT OF BESSEMER'S MOTION TO COMPEL FISERV'S RESPONSES TO BESSEMER'S SECOND REQUEST FOR PRODUCTION

I, Joy E. Peterson, declare as follows:

1. I serve as the Chief Executive Officer of Bessemer System Federal Credit Union ("Bessemer"). I have worked at Bessemer in managerial capacities since March 2001 and was promoted to Chief Executive Officer in 2014. I have personal knowledge of the matters set forth below based on my extensive involvement in Bessemer's business activities.

2. Bessemer is a not-for-profit, consumer-owned credit union providing financial services to over 4,000 members. Bessemer has earned the National Credit Union Administration's low-income designation, reflecting Bessemer's dedication to helping consumers who are underserved by mainstream financial institutions.

### Bessemer's Litigation Against Fiserv

3. This action stems from Bessemer's duties under federal law to protect its member information and to oversee one of its service providers, Fiserv Solutions LLC, formerly known as Fiserv Solutions, Inc. ("Fiserv Solutions"), and Fiserv, Inc. (together, "Fiserv").

1

4.      Fiserv is a technology company that previously provided online banking and other services to Bessemer. Fiserv Solutions provided these services to Bessemer under a Master Agreement, which required Fiserv to provide adequate security for Bessemer's member information stored in "Virtual Branch," an online banking system, among other obligations.

5.      Fiserv failed to safeguard Bessemer's member information and jeopardized the confidentiality of our member information on multiple occasions.[1] Due to multiple instances in which Fiserv failed to adequately protect Bessemer's member data, on January 8, 2018, our counsel issued a Notice of Breach to Fiserv, which detailed the series of data breaches that exposed Bessemer's confidential information to unauthorized third parties.

6.      On April 11, 2018, Bessemer's counsel sent Fiserv a Notice of Termination of the Master Agreement, which outlined the manner in which Fiserv had failed to perform under the Master Agreement. The Notice of Termination also demanded that Fiserv return Bessemer's files, a process known as "deconversion."

7.      Upon receipt of Bessemer's Notice of Termination, on April 27, 2018, Fiserv's then-Associate General Counsel Amy Vandamme sent an email to Bessemer's counsel regarding Bessemer's deconversion process and indicated that Fiserv needed "at least 3-4 months advance notice for preparation and execution of the conversion." (Dkt. 116-4).

8.      On October 9, 2018, Bessemer commenced a replevin action in the Court of Common Pleas to recover Bessemer's member information. (Dkt. 48, ¶ 159; Dkt. 18-12).

---

[1] This declaration is not a full statement of the facts relevant to Bessemer's claims against Fiserv. For the Court's convenience and the sake of brevity, I have focused this declaration on facts concerning the discovery requests at issue.

9. Thereafter, Bessemer and Fiserv agreed to resolve the replevin action in accordance with a letter dated October 19, 2018 prepared by Fiserv's counsel the ("Replevin Action Comfort Letter"), which was subsequently executed by Bessemer. (Dkt. 48, ¶ 160; 48-19).

10. As part of the terms of the Replevin Action Comfort Letter, Fiserv agreed to participate in a "deconversion" and return of Bessemer's records. In the Replevin Action Comfort Letter, Fiserv's counsel represented that "given the lead time required, deconversion is not likely to happen until near the June 30, 2019 expiration of the Master Agreement in any event." (Dkt 48, ¶ 161 (iii); Dkt. 48-19).

11. This timeline necessary for Fiserv to provide deconversion services represented by Fiserv in the Replevin Action Comfort Letter starkly contrasted with the representation made by Fiserv's associate general counsel. Fiserv's in-house counsel had previously indicated that the deconversion process would take only 3 to 4 months. But Fiserv's outside counsel stated that Fiserv required an additional *8 months* to complete the deconversion at the time of the Replevin Action Comfort Letter (which itself was nearly 6 months *after* Bessemer provided Fiserv with the notice of termination).

12. As required by the Replevin Action Comfort Letter, Bessemer issued payment to Fiserv on all outstanding invoices, but Fiserv wrongfully rejected Bessemer's payment. (Dkt 48, ¶¶ 164-177).

13. On December 3, 2018, Fiserv's counsel sent Bessemer's counsel an email with "deconversion materials." The email noted that, "[t]he material items are an amendment to the Master Agreement that provides for deconversion and sets the deconversion date and a summary of Fiserv's standard deconversion charges and related payments, which are to be paid at the time of execution of the amendment." (Dkt. 48, ¶ 168; Dkt. 48-21).

14. Fiserv stated that an advance payment "is required prior to the creation of data files or deconversion reports. This payment represents the estimated total deconversion charges for all Fiserv-provided services as well as an estimate of your final two month's processing charges, plus one (1) month of access to the Fiserv system post deconversion. Any funds remaining from these advance payments will be returned to you after the final reconciliation of all deconversion related charges have occurred." (Dkt. 48-169; Dkt. 48-22).

15. The Replevin Action Comfort Letter did not require Bessemer to pay the fees and expenses of deconversion until "before the agreed-upon deconversion date" (i.e., near June 2019). Fiserv's December 3, 2018 communications indicated that Fiserv was refusing to take steps required to complete the deconversion, unless Bessemer made an advance deposit of money of certain estimated "charges." Not only were these charges not contained in the Replevin Action Comfort Letter, Bessemer's deadline to pay any fees and expenses of deconversion was not yet due for at least another six months (i.e., until before the anticipated June 2019 deconversion).

16. Based on the represented quantity of "lead time required" by Fiserv in the Replevin Action Comfort Letter for Fiserv to provide deconversion services, Bessemer understood that Fiserv required deconversion lead time for technical reasons. In reality, Fiserv delayed the deconversion process for months in an effort to keep Bessemer's data hostage and to extract additional money from Bessemer, as demonstrated by its December 3, 2018 communications refusing to create data files or reports for the deconversion. Fiserv misrepresented the need for such an expansive lead time (in direct contradiction with their in-house counsel's prior statements) in an attempt to have time to renegotiate the terms of the Replevin Action Comfort Letter (including by pressuring Bessemer into executing an amendment to the then-terminated Master

Agreement referenced in paragraph 13 above), while holding Bessemer's data hostage as a bargaining chip and to force Bessemer to continue using Fiserv.

17. Fiserv made these misrepresentations to falsely induce Bessemer into accepting the terms of the Replevin Action Comfort Letter and dismissing the replevin action. Moreover, Bessemer justifiably relied on Fiserv's misrepresentations when deciding whether to agree to the terms of the Replevin Action Comfort Letter, whether to dismiss the replevin action, whether to continue its relationship with Fiserv, and when it would request its successor vendor commence providing services for Bessemer.

18. But for Fiserv's duplicity, contradictory statements regarding the deconversion timeline, and illegitimate cessation of work while trying to extract additional money from Bessemer, Bessemer would have achieved an earlier deconversion to a superior vendor with better security practices. The earliest possible deconversion from Fiserv was critically important to Bessemer, as Fiserv has multiple security problems that put Bessemer's members at risk of identity theft and fraud. Based on Fiserv's false representations as to the quantity of lead time it required to provide deconversion services to Bessemer, Bessemer was defrauded and had no meaningful choice but allow its records to remain at Fiserv.

### Bessemer's Application for Temporary Restraining Order

19. After Bessemer's records did not materialize even after the vastly expanded lead time Fiserv represented it needed, on June 25, 2019, Bessemer filed an application for a Temporary Restraining Order ("TRO") in this action seeking to compel Fiserv to, among other things, return Bessemer's records. (Dkt. 16-18).

20. In response to Bessemer's request for a TRO, Fiserv's counsel falsely represented to the Court that it had provided Bessemer with all of the requested records. (Dkt. 24 at 2).

Specifically, Fiserv's opposition filed with the Court claimed that "[d]efendants indisputably sent the records" and "[a]ny claim that [d]efendants are 'denying access' to this data is simply false." (Id. at 2). Although there was a disputed factual issue as to whether Fiserv returned our records, no Fiserv businessperson submitted a declaration or testimony in opposition to our motion for a TRO. Fiserv's asserted facts in opposition to the TRO were conveyed exclusively through its counsel.

21. After the hearing on the TRO, Fiserv provided Bessemer with 900 additional records that belonged to Bessemer that it previously assured the Court it had already returned—confirming that Fiserv intentionally possessed them against Bessemer's wishes, and establishing that its prior representations to Bessemer and the Court that the records were returned were false. (Dkt 48, ¶¶ 192-199).

## Fiserv's Motion to Dismiss the Second Amended Complaint

22. I understand that Fiserv filed a motion to dismiss Bessmer's Second Amended Complaint in this action. (Dkt. 52-53).

23. In response to Fiserv's motion to dismiss Bessemer's Second Amended Complaint, I understand that the Court held that Bessemer sufficiently set forth a claim for fraud based upon Bessemer's allegations that Fiserv misrepresented the required lead time for deconversion services in the Replevin Action Comfort Letter in an attempt to get Bessemer to withdraw the Replevin Action, prevent Bessemer from utilizing a new vendor, and extract additional fees from Bessemer. (Dkt. No. 69, pp. 25-26). The Court also held that Bessemer set forth a claim for bailment based upon Bessemer's allegations that Fiserv refused to return Bessemer's records, despite due demand. (Dkt. No. 69, pp. 34-35).

24. I further understand that Bessemer continues to maintain a claim for punitive damages based on the fact that Fiserv's acts, omissions, concealments, and misrepresentations to Bessemer were intentional, willful, malicious, and jeopardize the public and are part of a pattern directed at the public generally, offend public policy, and involve a high degree of moral turpitude demonstrating such wanton dishonesty as to imply a criminal indifference to their civil obligations. In deciding Fiserv's motion to dismiss Bessemer's claims, the Court denied Fiserv's motion to strike Bessemer's requests for punitive damages.

### Fiserv's Response to Bessemer's Second Request for Production

25. On May 28, 2021, Bessemer served Fiserv with a Second Request for Production of Documents ("Second RRP"). A copy of Bessemer's Second RFP is annexed as Exhibit "A." It is my understanding that Bessemer's Second RFP seeks documents regarding the preparation and development of the representations contained in Fiserv's Associate General Counsel's April 27, 2018 email regarding the time Fiserv needed to complete deconversion and the subsequent contradictory representations set forth in the Replevin Action Comfort Letter regarding a significantly longer deconversion timeline. Bessemer's Second RFP seek documents regarding the authorship of both documents, the accuracy of the factual representations contained in them, and the basis for the representations made in both documents.

26. I understand that Fiserv served responses to Bessemer's Second RFP dated August 20, 2021. A copy of Fiserv's responses are annexed as Exhibit "B." I understand that Fiserv's responses assert objections to the totality of Bessemer's Second RFP on the basis of attorney-client privilege and attorney-work product and assert that the Bessemer's demands and are irrelevant, burdensome, and intended to harass Fiserv.

27. Bessemer's requested discovery regarding the deconversion timeline is of vital importance to Bessemer's claims in this action. Upon information and belief, this information is solely in the possession of Fiserv and Bessemer has no alternative means of accessing this discovery other than to obtain it from Fiserv.

[*Signature page follows.*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Greenville, Pennsylvania　　　　　　BESSEMER SYSTEM
　　　　　January 31, 2022　　　　　　　　　　FEDERAL CREDIT UNION


*Joy E. Peterson*
_____
Joy E. Peterson
Chief Executive Officer