# EXHIBIT 8

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION,**<br><br>       Plaintiff,<br><br>vs.<br><br>**FISERV SOLUTIONS, LLC, f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,**<br><br>       Defendants. | Case No. 2:19-cv-00624-RJC |

## DEFENDANTS' RESPONSES TO BESSEMER'S FIRST SET OF INTERROGATORIES TO FISERV

TO:    Bessemer System Federal Credit Union
          c/o Richard J. Parks
          Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP
          7 West State Street, Suite 100
          Sharon, PA 16146

          Charles J. Nerko
          Alexander Mirkin
          Offit Kurman, P.A.
          590 Madison Avenue, 6th Floor
          New York, NY 10022
          Attorneys for Bessemer System Federal Credit Union

        Defendants Fiserv Solutions, LLC f/k/a Fiserv Solutions, Inc., and Fiserv, Inc. respond to Bessemer's First Set of Interrogatories as follows:

## General Objections

        The following objections apply to Plaintiff's Interrogatories in their entirety (including Plaintiff's instructions and definitions, if any,) and should be read as to each specifically numbered Interrogatory. These General Objections will not be repeated in individual responses except where necessary for emphasis or clarification.

Subject to and without waiving these objections or the General Objections stated above, Defendants respond as follows with respect to the alleged incidents of "misreporting" or "miscomputation" that Bessemer has pleaded in the SAC:  Pursuant to Federal Rule of Civil Procedure 33(d), information responsive to this interrogatory may be determined by examining business records to be produced by Defendants.

Interrogatory No. 6:  Please identify and describe in detail all work, services, and things needed for Bessemer's deconversion from the Services at Issue, identifying, for each item, the lead time required and how it was calculated, the minimum necessary duration of the item and how it was calculated, the time needed to complete the item if Your full resources and personnel were dedicated to its completion and how it was calculated, the dates it was performed, the persons involved, the reasons for any delay or item exceeding the minimum necessary duration, and whether any timeframes identified above changed during the course of the parties' relationship, and if so, how and why?

**RESPONSE**:  Defendants object to Interrogatory No. 6 on the grounds that it is compound and contains numerous, multiple, discrete sub-parts within the meaning of Rule 33(a).

Defendants further object on the grounds that the phrase "Services at Issue" is defined to include services that Fiserv Solutions did not provide to Bessemer and, therefore, is overbroad and disproportional.  Defendants further object on the grounds that the phrase if "Your full resources and personnel were dedicated to its completion" is vague and ambiguous. Defendants will construe such phrase to mean the personnel and resources typically assigned to and available for the deconversion of credit unions and similarly situated financial institutions in accordance with the ordinary course of Fiserv Solutions' business, not in a hypothetical manner that would deviate from how Fiserv Solutions operates in the ordinary course.  Any other construction would seek information that is not relevant and would impose a disproportional burden on Defendants.

Further, the interrogatory's demand that Defendants identify "whether any timeframes . . . changed during the course of the parties' relationship" seeks information that is

not relevant and would impose a disproportional burden.  The parties' "relationship" spanned over 30 years and the interrogatory itself specifies a time period of 10 years.  Changes that occurred over this period are not relevant to any claim or defense in this action, and identifying them would serve no purpose and impose an unnecessary and disproportional burden.

Subject to and without waiving these objections or the General Objections stated above, Defendants respond as follows: Bessemer's interrogatory misapprehends the process and relevant factors for determining the deconversion date for any particular client, which is client specific.  The most relevant factors are the availability and resources of the client's new vendor, the availability and resources of the client, the specific files and deconversion services that the client requests, the availability and resources of any other third parties who provide services to the client that must be integrated into the deconversion process, and the availability and resources of Fiserv Solutions.  Typically, the client coordinates with its new vendor to propose one or more deconversion dates to Fiserv Solutions.  Fiserv Solutions assesses its availability to accept such dates.  Fiserv Solutions' availability is determined by, among other things, the magnitude of the deconversion project, the particular deconversion services that the client requests, and Fiserv Solutions' pre-existing commitments to complete deconversions or perform other services for other clients.  Once a date that is acceptable to the client, the client's new vendor, any relevant third-party providers, and Fiserv Solutions is identified, the parties develop a deconversion schedule, based on that client's particular requests, to complete the deconversion on that date.

Fiserv Solutions' obligations with respect to deconversion are set forth in Section 8(e) of the ASP Services Exhibit to the Master Agreement:  "Upon expiration or termination of the Agreement or any Schedule to this Exhibit, Fiserv shall furnish to Client such copies of

Client Files as Client may request in a Fiserv standard format, and shall provide such information and assistance as is reasonable and customary to enable Client to deconvert from the Fiserv System." Contrary to the interrogatory's implicit suggestion, Fiserv Solutions has no obligation to dedicate its "full resources and personnel" to any single client deconversion. Fiserv Solutions has thousands of clients and allocates resources in light of their and its overall business needs and requirements. As a result, the lead time that Fiserv Solutions requires for any particular deconversion may vary based on Fiserv Solutions' other commitments at the time a deconversion date is proposed. Based on its historical experience, however, the lead time that Fiserv Solutions typically requires is between 3-4 months, although that may vary from time to time. Further, based on historical experience, the new processing vendor typically requires approximately 2-4 months to convert a client, although that may vary depending on a number of factors, including whether the new processing vendor has converted a client to its systems from Fiserv Solutions' systems previously.

The Master Agreement makes clear that the timing of deconversion may be affected by the client's performance of its obligations under the Master Agreement. Specifically, the Master Agreement provides that "Client authorizes Fiserv to retain Client Files until: (i) Fiserv is paid in full for all amounts due for all Services provided through the date such Client Files are returned to Client; (ii) Fiserv is paid its then standard rates for the services necessary to return such Client Files; (iii) if the Agreement or applicable Schedule is being terminated, Fiserv is paid any applicable termination fee pursuant to Section 8(b) or (c) above; and (iv) Client has returned or destroyed all Fiserv Information in accordance with Section 3(b) of the Agreement." (Master Agreement, ASP Services Exhibit ¶ 8(e).) Fiserv Solutions, therefore, need not

complete the deconversion and return any Client Files until the client has fully performed these obligations under the Master Agreement.

In this case, despite multiple requests from Fiserv Solutions between April and September, 2018, Bessemer did not identify CompuSource its new processing vendor until October 24, 2018, and did not request or propose a deconversion date until November 1, 2018. On November 1, 2018, CompuSource communicated to Fiserv Solutions that CompuSource and Bessemer were targeting a deconversion date of May 31, 2019. Fiserv Solutions accepted that date. Neither Bessemer nor CompuSource ever requested any other date or inquired whether an earlier date was available. Even though Bessemer refused to perform its payment obligations under the Master Agreement, Bessemer's deconversion was substantially completed by June 1, 2019, thus permitting Bessemer to "go live" with its new processing vendor on that date.

With respect to the material services required of Fiserv Solutions to effectuate deconversion from the Charlotte platform, once Fiserv Solutions confirms with the client the date of deconversion, the services the credit union seeks to convert, the dates for transmission of test files, and instructions for transmitting the deconversion files, Fiserv Solutions performs the following tasks. First, Fiserv Solutions creates and transmits test files to the new processing vendor. Fiserv Solutions exports the data from the core data processor (here, Charlotte) so that it is in a character (readable) format. Fiserv Solutions reviews the files and confirms that the data was successfully exported. The files are then encrypted, compressed, password protected, and transmitted to the new processing vendor in accordance with their transmission instructions. Second, if requested, Fiserv Solutions assists the new processing vendor with troubleshooting and provides answers to the new processing vendor's questions about the data. Typically, it takes months for the new processing to convert the test files to its system, develop new code to

accommodate the deconversion files, and map the data into its systems. Third, at a later date, but before deconversion, Fiserv Solutions provides a second set of test files to the new processing vendor. Fourth, on the night before or morning of the "go live" date, Fiserv Solutions extracts, encrypts, and transmits the final deconversion files to the new processing vendor.

Additionally, before the date of deconversion, Fiserv Solutions takes steps to ensure that the deconverting client's processing activity on Fiserv Solutions' systems cease on the date of deconversion. Fiserv Solutions sets a termination date on all transaction activity on the credit union's ATM Institution records, including ATM Card Institution, Audio Institution, and Home Banking Institution. This prevents further transaction activity on the client's member accounts after deconversion is complete. Further, Fiserv Solutions works with the credit union to ensure that dividends are paid in an agreed-upon manner and consistent with the credit union's requests upon deconversion.

The process for eFichency deconversion is as follows: upon reception of the signed eFichency deconversion proposal, the client's deconversion is placed in a queue and set for extraction in the order received. After completing the data extraction, Fiserv Solutions validates the data, transfers the data to an external drive, and ships the drive in accordance with the client's instructions.

With respect to Bessemer's deconversion, Fiserv Solutions first requested that Bessemer identify its new processing vendor and the proposed date of deconversion on April 18, 2018. Fiserv Solutions further requested this information and invited Bessemer to provide such information on April 27, July 25, August 23 and September 14, 2018. Bessemer first provided the name of its new processing vendor on October 24, 2018. Fiserv Solutions attempted to contact Bessemer's new processing vendor on October 29, 2018 but did not receive a response.

On November 1, 2018, Fiserv Solutions asked Bessemer's new processing vendor for the proposed date of deconversion, the dates the test files and final files would be required, the number of test files required, and transmission details for the files.  Bessemer's new processing vendor responded the same day, with answers to these questions and proposed the date of May 31, 2019, for deconversion.  On November 14, 2018, Fiserv Solutions asked Bessemer's new processing vendor for guidance with respect to deconversion of Bessemer's files stored on Fiserv Solutions' Virtual Branch, Bill Pay, and eFichency solutions.  On November 15, 2018, Bessemer provided answers to Fiserv Solutions with respect to deconversion of the Virtual Branch and Bill Pay solutions.  Bessemer also posed questions regarding the deconversion from eFichency and Fiserv Solutions responded to those questions on November 15, 2018.

On December 3, 2018, provided Bessemer with a proposed deconversion agreement that set forth the date of deconversion and a summary of Fiserv Solutions' standard deconversion charges.  The proposed agreement further states that deconversion materials would be provided 30 days after receipt of the executed deconversion agreement and payment of the one-time deconversion fees, consistent with the terms of the Master Agreement.  (Master Agreement, ASP Services Exhibit ¶ 8(e).)  The parties' counsel exchanged emails regarding the deconversion agreement between December 17 and 19, 2019.  Bessemer's counsel rejected the deconversion agreement and Bessemer refused to provide the deconversion payment.

On February 25, 2019, Fiserv Solutions emailed Bessemer seeking guidance with respect to Bessemer's preferences concerning deconversion of the files contained in eFichency, as Bessemer had not responded to the questions contained in Fiserv Solutions November 15, 2018 email.

On March 1, 2019, after repeated requests for Bessemer's counsel to provide a response with respect to the deconversion agreement and to submit payment for deconversion, counsel for Fiserv Solutions stated that Fiserv Solutions would provide the test files to Bessemer's new processing vendor, notwithstanding the lack of payment and without waiving any rights. Fiserv Solutions' counsel further instructed that Bessemer or its new processing vendor immediately contact Shaun Gehman to finalize the deconversion timeline and move forward.

Bessemer's test files were successfully transferred to Bessemer's new processing vendor on or about March 4, 2019. Bessemer's new processing vendor later requested that additional test files be delivered as of month-end of April 2019. Fiserv Solutions delivered those files on May 1, 2019.

On May 16, 2019, Bessemer emailed Fiserv Solutions and asked why it had not received a quote for the extraction of the data contained in eFichency. Fiserv Solutions explained that it had not provided a quote because Bessemer did not respond to Fiserv Solutions' February 25, 2019 email in which Fiserv Solutions inquired as to how Bessemer wanted to proceed with the extraction of its data stored in eFichency.

The final "go-live" production files were provided to Bessemer's new processing vendor the morning of June 1, 2019. Fiserv Solutions provided Bessemer's credit reporting files for April and May 2019 to Bessemer's new processing vendor on June 14, 2019. After Bessemer provided instructions on where and how to transmit the eFichency data, Fiserv Solutions shipped a drive containing Bessemer's eFichency data to Bessemer on June 21, 2019. On June 28, 2019, Fiserv Solutions provided approximately 900 additional files contained in the document archival solution that were inadvertently omitted from the drive shipped to Bessemer on June 21, 2019.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants further respond that, subject to the foregoing objections, additional information responsive to this interrogatory may be determined by examining business records to be produced by Defendants.

Dated: August 20, 2021.

/s/ Jesse L. Byam-Katzman
Efrem M. Grail (PA ID No. 81570)
Brian C. Bevan (PA ID No. 307488)
**THE GRAIL LAW FIRM**
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
(412) 227-2969

Andrew J. Wronski (*admitted pro hac vice*)
Jesse L. Byam-Katzman (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
awronski@foley.com
jbyam-katzman@foley.com
(414) 271-2400

*Counsel for Fiserv Solutions, LLC and Fiserv, Inc.*

## VERIFICATION

I, Rodney Smith, declare as follows:

I am a Software Development Engineer at Defendant Fiserv Solutions, LLC. On behalf of Defendants Fiserv Solutions, LLC and Fiserv, Inc., I have read Defendants' responses to Interrogatory Numbers 5 and 6 of Bessemer's First Set of Interrogatories and verify that the factual statements made in the foregoing responses are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 16, 2021

_____
Rodney Smith

**VERIFICATION**

I, Kenyautta Lamb, declare as follows:

I am a Systems Analyst at Defendant Fiserv Solutions, LLC. On behalf of Defendants Fiserv Solutions, LLC and Fiserv, Inc., I have read Defendants' response to Interrogatory Number 6 of Bessemer's First Set of Interrogatories and verify that the eFichency-related factual statements made in the foregoing response is true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2021

*Kenyautta Lamb*
Kenyautta Lamb (Aug 18, 2021 14:50 CDT)
Kenyautta Lamb

4827-4868-5814

## CERTIFICATE OF SERVICE

I, Jesse L. Byam-Katzman, hereby certify that on August 20, 2021, I caused the foregoing Defendants' Responses to Bessemer's First Set of Interrogatories to be served via email transmission as follows:

>Richard J. Parks
>Pietragallo, Gordon, Alfano,
>Bosick & Raspanti, LLP
>7 West State Street, Suite 100
>Sharon, PA 16146
>rjp@pietragallo.com
>
>Charles J. Nerko
>Alexander Mirkin
>Offit Kurman, P.A.
>590 Madison Avenue, 6th Floor
>New York, NY 10022
>Charles.Nerko@offitkurman.com
>amirkin@offitkurman.com

*/s/ Jesse L. Byam-Katzman*
Jesse L. Byam-Katzman