**Wilkinson, Benjamin M.**

| | |
|---|---|
| **From:** | Byam-Katzman, Jesse L. <JByam-Katzman@foley.com> |
| **Sent:** | Tuesday, May 16, 2023 6:30 PM |
| **To:** | Shepard, Mark D. |
| **Cc:** | Stone, Betsy; Patterson, Tim; Wronski, Andy; Nerko, Charles J.; Wilkinson, Benjamin M.; Szczepanski, Kevin D.; Richard J. Parks |
| **Subject:** | RE: Bessemer v. Fiserv |
| **Attachments:** | Fiserv - Bessemer - Presentation for Discovery Motions.pptx; Fiserv - Bessemer - Presentation for Discovery Motions.pdf |

Mark:

Here is a PowerPoint and PDF of the presentation used during the hearing today.

Additionally, pursuant to your request, the relevant statute that imposes criminal liability for disclosure of FFIEC reports, and which is cited in FFIEC reports, is 18 U.S.C. 641.  This statute and prohibitions of disclosure were cited in Fiserv's Responses to Bessemer's First Set of Requests for Production and First Set of Interrogatories.

> Defendants are periodically subject to examination and audit by the Federal Financial Institutions Examination Council. The results and reports of such examinations are strictly confidential and may not be disclosed by Defendants pursuant to, among other things, 18 U.S.C. § 641. In the Master Agreement, Bessemer agreed and acknowledged as follows: "Client acknowledges and agrees that Fiserv is subject to certain examinations by the Federal Financial Institutions Examination Council ('FFIEC'), regulators and agencies. Client acknowledges and agrees that reports of such examination of Fiserv business units are available to Client directly from the relevant FFIEC agencies."

(Fiserv Resp. to Interrogatory No. 4; see also Fiserv Resp. to RFP No. 148-150.)

Please let me know if you have any questions or concerns.

Thank you,
Jesse

Jesse L. Byam-Katzman

Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
P 414.319.7057

-----Original Message-----
From: Shepard, Mark D. <MShepard@babstcalland.com>
Sent: Tuesday, May 16, 2023 4:58 PM
To: Byam-Katzman, Jesse L. <JByam-Katzman@foley.com>
Cc: Stone, Betsy <BStone@foley.com>; Patterson, Tim <TJPatterson@foley.com>; Wronski, Andy <AWronski@foley.com>; Charles J. Nerko <CNerko@barclaydamon.com>; Benjamin M. Wilkinson <BWilkinson@barclaydamon.com>; Kevin D. Szczepanski <KSzczepanski@barclaydamon.com>; Richard J. Parks <RJP@pietragallo.com>
Subject: Bessemer v. Fiserv

** EXTERNAL EMAIL MESSAGE **

Would you please email me a copy of he power point you presented during oral argument today. Thank you.

Sent from my iPhone

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

# Bessemer v. Fiserv, No. 19 Civ. 624

May 16, 2023 Hearing on Discovery Motion

# Scope of Discovery



# Fiserv has produced:

- SOC Audit Reports from 2014-2020 for Charlotte and 2012-2019 for Virtual Branch

- Fiserv's information security plan and security policies that apply to the products and services Bessemer received, along with documents detailing Fiserv's general security practices information.

- Approximately 500 service-related tickets relating to Bessemer.

- Charlotte Meeting Minutes and Virtual Branch Meeting Minutes from 2014 through 2019, irrespective of whether such documents contain Bessemer's name (though the vast majority do).

- Over 600 documents from 2014 to 2019 concerning updates and new releases for Sellstation—the application on Bessemer's computer systems that interacted with Charlotte—and which include information on the updates and releases for virtually every Charlotte customer.

- Security incident reports relating to issues that may have impacted Bessemer or another Charlotte or Virtual Branch customer.



FOLEY & LARDNER LLP

# Fiserv has produced (continued)

- The master customer file for Bessemer that contains correspondence between the parties from on or around 1980 through approximately 2010.

- Emails relating to complaints by Bessemer and Fiserv's analysis and resolution of those complaints.

- Documents and emails relating to the 2016 data migration incident that Bessemer calls a "data breach."

- Documents and emails relating to Bessemer's "security review," including Fiserv's investigation and response, and the brute force attack's impact on Virtual Branch.

- Documents from Richard Reynolds' email account relating to Bessemer, Virtual Branch, and Authentication/FFIEC standards that were searched from the earliest date Mr. Reynolds' email was available, 2005.


FOLEY
FOLEY & LARDNER LLP

Bessemer's unreasonable and disproportionate demands for enterprise-wide discovery have no relation to the claims or defenses and have no legitimate purpose



From: Joy Peterson <jpeterson@bessfcu.com>
To: 'Tom Sakash'
Sent: 7/19/2018 8:45:50 PM
Subject: RE: Core processor email
Attachments: image001.jpg

Tom-
I'm happy to hear back from you! I don't know how admirable it is that I've chosen to stay here. This credit union has served me and my family very well and most of the time I feel very fortunate to be a part of it and the credit union movement in general. I am a true believer in the "not for profit, but for service" credit union movement even though I don't necessarily feel it's always working the way it was meant to work. In addition to that, I'm mad as hell and you know what they say about a "woman scorned".

Yes. We are proceeding with the lawsuit. It should be public in the next week or so I would guess. No, I don't think it will be a fast resolution at all. It's already been in progress since November (I that's right). Our core contract runs through July 2019 without intervention. I foresee the case going on for a long time, possibly years. A bunch of lawyers will make a bunch of money. The core will imply that everyone in my office is too dumb or too inept to use their product correctly. They will say that they've tried and tried to make us happy and we just refuse to be satisfied. We'll tell our side and, in the end, the big winners will be the attorneys.

I have only two goals for this lawsuit. First and most important I want our data back and I'm not going to pay to get it back. I'm not going to pay them for being negligent because to do so implies that I agree with their behavior. We need to begin the painful process of moving to another core of our choosing that will, hopefully do better at delivering what they promise. This time I'm going to choose a core that doesn't require a contract. Even if it costs more we're not going to be held hostage next time. I hope the new core also takes the security of our member information seriously enough to avoid sending our information somewhere else without our permission.

Second, I want the core exposed and shamed. I'd love to think they will be fined and properly reprimanded but I'm not that naïve. They should not be able to hold our data hostage and they should not be able to wreak havoc without repercussion. I don't care what they do with the rest of their thousands of clients. They might be the Worlds Most Admired Company for all I care. For us, they have not fulfilled <u>any</u> of the terms of their own oppressive contract. I thought that once they started dealing with our attorney they might at least straighten up a little. On the contrary we have had one horrifying problem after the other and they have taken absolutely no responsibility. They won't give us our data. They won't give us evidence related to the data compromise so I can decide for myself whether our member information is safe now. They won't give us their security plan and on and on. Just yesterday they had an "Accounts Receivable Specialist" e- mail me two bills they say are unpaid. One of them is from August 2016 and it was for hardware they told us they wouldn't charge us for. They had me install additional memory in all the computers to see if that solved the connectivity issues. It didn't. Here it is two years later and they are sending me a $660.00 bill for something they should actually be paying me for because I did all the work of installing it! I presume the implication of the e-mail was that I better pay up or they will shut off our service. I'm not thrilled about that prospect. But then again, it might be hard to tell the difference. We're used to it not working half the time.



From:  Joy Peterson
To:    Tom Sakash (of CUNA)
Sent:  7/19/2018

"I have only two goals for this lawsuit. First and most important I want our data back and I'm not going to pay to get it back."

"Second, I want the core exposed and shamed."

BESSEMER0020604

# Security Review

- Fiserv is entitled to discovery on this event, which is the subject matter of Bessemer's claims and Fiserv's counterclaims



# The Court has already ordered discovery on this event:



Bessemer asks the Court to accept its averments, in a Brief, that the "security review" was a completely innocent and, as Bessemer argues, required inquiry into the security measures implemented by Fiserv Solutions.

At this time, the Court has only the benefit of two diametrically opposed descriptions of the "security review," with the two presenting nearly no agreement as to the precise nature of the computer activity involved, Bessemer's motivations, and/or the information that was accessed and/or acquired by Bessemer. **Discovery is necessary before this Court can ascertain the actions leading up to, and involved in, the "security review," the motivations behind it, and the information that was ultimately accessed as a result of the "review**."



FOLEY
FOLEY & LARDNER LLP

# Bessemer injected the security review into this litigation and freely disclosed it to the public

- "BSFCU was very concerned by the security review uncovering crucial security problems at Fiserv that placed our members at risk of identity theft and fraud." (www.securityweek.com/credit-unions-legal-battle-tech-giant-fiserv-rumble).

- "after Bessemer conducted a security review of Fiserv and discovered that there were security vulnerabilities in the online banking website . . . Fiserv implemented a cosmetic 'fix' that was readily bypassed and did not address the problem." (Dkt. 48 ¶ 5.)

- "The security review uncovered critical security flaws with the online banking system." (Id. ¶ 59.)

- "Given the weak security controls Fiserv implemented on Bessemer's online banking system, an unauthorized individual can access a member's online banking account by obtaining the member's account number . . . and then either knowing or guessing the last four digits of a member's Social Security number." (Id. ¶ 60.)



FOLEY
FOLEY & LARDNER LLP

# Bessemer injected the security review into this litigation and freely disclosed it to the public

- "In the course of Bessemer's security review, Fiserv scrambled to place additional security controls on Bessemer's online banking website. These, too, were pitifully deficient and ineffective" (Id. ¶ 64.)

- The security review also uncovered that when a user turns off JavaScript, it is possible to bypass the web page." (Id. ¶ 66.)

- "Importantly, the security review did not access or attempt to access any information that Bessemer was not authorized to access." (Dkt. 95 at 6.) "The review, which was limited to attempting to log into certain Bessemer accounts, revealed how woefully inadequate Fiserv's security practices were." (Id. at 9.)



FOLEY
FOLEY & LARDNER LLP

# Security Review Timeline

**January 2018**

Bessemer sends notice of breach and non-renewal.

No references to VB or security review



**March/April 2018**

Bessemer sends supplemental notice of breach.

Bessemer serves praecipe writ of summons without complaint.

No references to VB or security review



**September 14, 2018**

Bessemer threatens adverse publicity after Fiserv provides results of invoice audit and demands that Bessemer resume paying its invoices.

Still no complaint filed

**September 24-26, 2018**

Bessemer conducts brute force attack on Fiserv's systems.

Still no complaint on file

**April 2019**

Bessemer files its complaint, containing pages of allegations about the security review and asserts claims based on the security review

**September 2018 – January 2021**

Bessemer claims the security review was conducted for regulatory compliance and "required" by NCUA regulations in letters to Fiserv and filings with the Court



**FOLEY**

**FOLEY & LARDNER LLP**

Bessemer repeatedly represented to the Court and Fiserv that Bessemer conducted the security review for ordinary business purposes – to meet its regulatory and compliance obligations under federal law and NCUA requirements



# Bessemer claimed the security review was conducted for regulatory compliance and "required" by NCUA regulations

Dear Andy:

On behalf of Bessemer System Federal Credit Union ("Bessemer"), we write regarding several critical security problems at Fiserv Solutions, LLC ("Fiserv").

Bessemer recently conducted a risk assessment and concluded that it would be necessary to conduct a security review of the privacy and security controls relating to the sensitive non-public member information belonging to Bessemer that is being held by Fiserv. This security review was prompted by a series of highly problematic activities engaged in by Fiserv as well as publicly available reports indicating that Fiserv has recently suffered a security breach affecting the confidentiality of information Fiserv maintains on its customers' behalf.[1]

As you are aware, Bessemer is subject to several regulations requiring Bessemer to implement and maintain a reasonable and adequate information security program to safeguard Bessemer's member information. The security review of Fiserv is authorized by federal law, which imposes a duty on a federally regulated credit union such as Bessemer to conduct security reviews of service providers. See 12 C.F.R. Part 748, Appx. A, § III.D.3 ("Each credit union should…[w]here indicated by the credit union's risk assessment, monitor its service providers to confirm they have satisfied their obligations as required by paragraph D.2. As part of this monitoring, a credit union should review audits, summaries of test results, or other equivalent evaluations of its service providers.").[2]

Bessemer September 28, 2018 Letter to Fiserv (SAC, Ex. 7.)



# Bessemer claimed the security review was conducted for regulatory compliance and "required" by NCUA regulations

Dear Andy:

The "facts" recited in your letter are mere speculation as to motive or intent, or are simply incorrect. So too are the meritless legal arguments Fiserv Solutions, LLC ("Fiserv") tries to advance. As your September 14 letter urged, we should not be "engaged in a prolonged and unproductive letter writing campaign." We concur and will turn briefly to the salient facts and law.

Bessemer denies that it violated any law, statute, or contractual obligation. Federal law expressly authorizes the security review that was conducted. As Fiserv should be aware, federal law not just empowers, but also obligates, Bessemer to conduct security reviews of service providers. *See* 12 C.F.R. Part 748, Appx. A, § III.D.3 ("Each credit union should…[w]here indicated by the credit union's risk assessment, monitor its service providers to confirm they have satisfied their obligations as required by paragraph D.2. As part of this monitoring, a credit union should review audits, summaries of test results, or other equivalent evaluations of its service providers."). The security review was limited in scope and consisted of the monitoring and confirmation required by federal law.

Bessemer's authority and obligation to conduct such a security review has been affirmed in a plethora of guidance issued by the National Credit Union Administration.[1] Indeed, according to that federal

Bessemer October 2, 2018 Letter to Fiserv (SAC, Ex. 9.)


FOLEY
FOLEY & LARDNER LLP

# Bessemer claimed the security review was conducted for regulatory compliance and "required" by NCUA regulations

"Bessemer's security review was driven by the strong national policy in favor of maintaining the safety and soundness of federal credit unions, as reflected in 12 C.F.R. Part 748 App'x A § III.D.3, which requires credit unions to 'monitor [their] service providers' to ensure credit union member information is being appropriately safeguarded and requires Bessemer to 'review audits, summaries of test results, or other equivalent evaluations of its service providers.'" (Dkt. 95 at 12-13.)

"Bessemer has responsibility to actively and independently monitor the security practices of a vendor such as Fiserv; anything less would be an unsafe and unsound practice threatening the stability of a credit union." (Dkt. 95 at 15.)

Bessemer Brief in Support of Motion to Dismiss Counterclaims (Dkt. 95.)



FOLEY
FOLEY & LARDNER LLP

# Bessemer claimed the security review was conducted for regulatory compliance and "required" by NCUA regulations

"All along, **federal law obligated Bessemer to 'monitor' Fiserv** and 'review audits, summaries of test results, or other equivalent evaluations' of Fiserv. . . . This obligation falls on credit union 'management to assess the security and performance of web site whose performance is beyond their control and verify that the third-party web site complies with applicable laws including Privacy.'"

Bessemer Reply Brief in Support of Motion to Dismiss Counterclaims (Dkt. 110 at 6.) (emphasis added.)



# Now, Bessemer asserts that it conducted the security review for a different purpose

- "Bessemer's litigation counsel engaged a security expert to evaluate the claims Bessemer was prosecuting in the state court action against Fiserv. . . . The expert's scope of work was limited to litigation activities." (Bessemer Opp. to Motion to Compel, Dkt. 148 at 2.)

- "[T]he security reviewer was retained by Bessemer's trial counsel solely to provide legal advice regarding Bessemer's claims against Fiserv." (Bessemer April 3, 2023 Letter to Special Master at p. 2.)



FOLEY & LARDNER LLP

# Privilege Log Cut Off

- <u>4/26/2019</u>: Bessemer files Complaint

- <u>6/1/2019</u>: Bessemer's conversion to CompuSource is complete

- <u>6/24/2019</u>: Fiserv sends hard drive with eFichency data and records

- <u>6/25/2019</u>: Bessemer files Motion for TRO claiming that password for the drive did not work

- <u>6/26/2019</u>: The Court orders parties' technologist to meet to resolve issues

- <u>6/28/2019</u>: Technologist meet and resolve technology issues

- <u>7/1/2019</u>: Fiserv sends second drive to Bessemer with eFichency data

- <u>7/1/2019 – through present</u>: the parties litigate this dispute, resulting in over 205 docket entries and countless communications between counsel and with Special Master



# The "ownership dispute" is red herring

3.    Your repeated, broad, and generic references to "Bessemer's records and information" also ignore the Master Agreement. Bessemer owns only its "Client Information," which the Master Agreement defines as specific categories of information "obtained or accessed by Fiserv Solutions from or on behalf of its Client or its Affiliates." Everything else belongs to Fiserv Solutions, including all internal data, reports and other information that Fiserv Solutions prepared or generated in connection with services provided to Bessemer. Paragraph 3(c) of the Master Agreement makes this crystal clear:

(c) <u>Ownership</u>.  With the exception of Client Information, *all information, reports*, studies, object and source code (including without limitation the Products and all modifications, enhancements, additions, upgrades or other works based thereon or related thereto), flow charts, diagrams, specifications, *and other tangible or intangible material of any nature whatsoever produced by Fiserv* or jointly with Client or by any of Fiserv's or Client's employees or agents, *through or as a result of or related to any of the Deliverables provided hereunder*, and all patents, copyrights, and other proprietary rights related to each of the foregoing, *shall be the sole and exclusive property of Fiserv or its Affiliates.  Client hereby irrevocably assigns and transfers to Fiserv all rights, title and interest in any such works referenced in the foregoing sentence,* including without limitation copyrights, patent rights, trade secrets, industrial property rights, and moral rights, and shall execute all documents reasonably requested by Fiserv to perfect such rights.

Fiserv June 14, 2019 Letter to Bessemer (SAC, Ex. 30.)



# There is no "ongoing dispute"

Fiserv has repeatedly explained that:

- "Fiserv does not now claim and has never claimed ownership of [Bessemer's] data."

- "Fiserv only retains copies of Bessemer's member information because of this litigation. . . . Fiserv intends to permanently delete and purge Bessemer's member data at the conclusion of this litigation."

(*See, e.g.*, Fiserv Consolidated Brief in Opp. to Bessemer Discovery Motions (Dkt. 173 at 20.)



# Fiserv is only retaining copies of Bessemer data because of this litigation; Bessemer knows that and repeatedly demanded that Fiserv do so

Accordingly, we request that Fiserv:

1.      confirm that Fiserv is preserving and will not purge any of Bessemer's records or other materials that may be potentially relevant to this action or subject to the October 19, 2018 settlement agreement;

2.      provide copies of the data referenced in the May 30, 2019 email in a form reasonably usable by Bessemer and its successor vendor; and

3.      to the extent any materials potentially relevant to this action or subject to the October 19, 2018 settlement agreement have been destroyed, lost, misplaced, stolen, or transferred, or is no longer in a defendant's possession, custody or control, please describe the type, content, and disposition of such materials.

We request that Fiserv respond to this request not later than the close of business on June 7, 2019. Bessemer continues to reserve all rights.

Very truly yours,

Charles J. Nerko

**Bessemer May 31, 2019 Letter to Fiserv**

**Preservation Notice**

As circumstances have arisen that may foreseeably give rise to a legal proceeding, you must preserve all documents, things, and electronically stored information that may be potentially relevant, including, without limitation, complete and accurate copies of Credit Union information.  The duty to preserve potentially relevant materials arises under applicable law and not this letter, so your duties are not in any way limited by this letter.  If you fail to preserve materials as required, our client will rely on this letter as notice of your preservation obligations.

**Bessemer January 8, 2018 Letter to Fiserv**

