

ATTORNEYS AT LAW

777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
414.319.7057
jbyam-katzman@foley.com

CLIENT/MATTER NUMBER
012474-0427#

May 19, 2023

**Via E-Mail**

Mark D. Shepard
Babst Calland
Two Gateway Center
603 Stanwix Street, 6th Floor
Pittsburgh, PA 15222
mshepard@babstcalland.com

      Re:    *Bessemer System Federal Credit Union v. Fiserv Solutions, LLC, et al.*; Case No.: 2:19-cv-00624

Dear Mark:

      We write concerning Bessemer's May 18, 2023 post-hearing letter. You granted Bessemer leave to respond to the PowerPoint presentation Fiserv presented during the May 16, 2023 hearing and provided to you and Bessemer's counsel shortly thereafter. Bessemer filed an 8-page (single-spaced) letter that merely re-packages previous arguments and raises new arguments that have nothing to do with the Fiserv's PowerPoint presentation. For these reasons, we suggest that you simply disregard the letter. To the extent you consider the letter, however, we offer a few brief observations.

      At the hearing, Fiserv's counsel presented certain PowerPoint slides in response to Bessemer's argument concerning Fiserv's Motion to Compel Discovery Relating to the security review. Aside from a single slide depicting the chronology of events described in Fiserv's briefs, those slides merely quote from Fiserv's moving papers or documents cited therein (namely, Bessemer's representations in pleadings and letters). After the hearing you requested a copy of Fiserv's presentation, which also contains slides relating to the scope of discovery submissions and Bessemer's motion concerning the end date for privilege log that were not discussed at the hearing. The vast majority of the slides on those topics (8 out of 9), like those relating to the security review, merely illustrate timelines or quote portions of Fiserv's previous briefs, submissions and exhibits. They did not raise any new arguments or issues.

      But one slide concerning scope of discovery contained a July 2018 email in which Joy Peterson, Bessemer's CEO, explains to a third party the real purposes for Bessemer's litigation against Fiserv (as Fiserv has maintained all along): "I have only two goals for this lawsuit. First and most important I want our data back and I'm not going to pay to get it back. . . . Second, I want the core [Fiserv] exposed and shamed." That document was not cited in Fiserv's previous submissions or

| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TALLAHASSEE |
| BOSTON | HOUSTON | MIAMI | SALT LAKE CITY | TAMPA |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN DIEGO | WASHINGTON, D.C. |
| DALLAS | LOS ANGELES | NEW YORK | SAN FRANCISCO | BRUSSELS |
| DENVER | MADISON | ORLANDO | SILICON VALLEY | TOKYO |

4895-0254-7813



**FOLEY & LARDNER LLP**

Mark Shepard
May 19, 2023
Page 2

discussed at the hearing. As a result, Fiserv did not object to Bessemer's request to file a supplemental submission.

Yet, Bessemer's 8-page "brief, supplemental submission" discusses that email only in a footnote. The rest re-hashes the arguments Bessemer previously made in written submissions and at the hearing, and argues against a report and recommendation that has not yet been issued. Bessemer's letter is perhaps best described as a preemptory motion for reconsideration. (Bessemer May 18, 2018 Post-Hearing Letter ("some of the preliminary views discussed at this week's hearing would essentially deny discovery as to Bessemer's fraud claim, and critical aspects of its contract-breach and punitive damages claims.")). And the footnote in which Bessemer addresses Ms. Peterson's revealing email proves Fiserv's very point when it points to two isolated examples of "criticism" of Fiserv, which Bessemer then characterizes as "widespread." None of this has anything to do with Bessemer's contract claims or whether Fiserv performed under the Master Agreement. Disparaging and attempting to "expose and shame" Fiserv is what this lawsuit and Bessemer's remarkably broad discovery demands are really about.

As to scope of discovery, Bessemer did not even attempt to address any of the points set forth in the PowerPoint presentation and quoted from Fiserv's submission. For example, Bessemer did not address the long list of documents and information Fiserv has produced relating to Bessemer, the products and services Bessemer used (including third party security audits of such products and services), and other customers that utilized the same products and services. Other than repeating its demand for enterprise-wide discovery, Bessemer does not articulate what is supposedly missing from Fiserv's productions. Instead, Bessemer argues that the bedrock of its claims for breach of contract (based on an agreement between Bessemer and Fiserv) is somehow Fiserv's relationships with its other customers. That argument remains untenable.

With respect to the security review, Bessemer has taken the opportunity to present again the arguments that it made at the hearing (and new ones) that have no relation to the few slides Fiserv presented, which merely quote Bessemer's own words. In hope of distracting from its repeated representations to the Court that the security review was innocent and specifically conducted for ordinary business purposes,[1] Bessemer points to Fiserv's allegations that the security review was conducted for tactical purposes. Those are Fiserv's allegations and Fiserv's position has not changed; Bessemer conducted the security review in a misguided and unauthorized attempt to obtain settlement leverage in this and other litigation. That does not make the security review "work product."

---

[1] Bessemer also repeats its argument from the hearing that Fiserv is conflating authorization with purpose. But Bessemer did not just say the review was authorized by federal law, Bessemer said it was "obligated" and "required" by federal law to conduct the security review and that the review was conducted due to Bessemer's "responsibility to actively and independently monitor the security practices of a vendor such as Fiserv; anything less would be unsafe and unsound practice." Bessemer said this was an auditing and monitoring exercise.



Mark Shepard
May 19, 2023
Page 3

      Bessemer is the party that is (constantly) changing its position. When trying to dismiss the counterclaims, Bessemer repeatedly ***denied*** that the security review was conducted for tactical purposes in litigation,[2] and instead claimed it was conducted pursuant to NCUA guidance and "required by federal law."[3] Now that discovery has been ordered, Bessemer argues that the security review was conducted, as Fiserv alleges, "to improve its litigation and negotiation posture." As Fiserv's slides make clear, Bessemer has repeatedly asserted (including before Fiserv filed any counterclaims) that it was required to conduct the security review in order to satisfy its compliance obligations and supervise its vendor. Now, Bessemer claims that the security review was conducted ***exclusively*** for litigation. Bessemer's letter does not (and cannot) reconcile the inconsistent statements it has made to the Court, the Special Master, and Fiserv. (Bessemer shades and distorts the facts at nearly every turn. Let's be clear, Bessemer had initiated a bare-bones state court action without any complaint or allegations before the security review. And, while Bessemer purported to "terminate[] Fiserv's services" in April 2018, it continued to use Fiserv's processing services every single day for over a year, through May 31, 2019.) Bessemer cannot get its stories straight.

      Finally, Bessemer has repeatedly asserted that a later privilege log end date is required because "Fiserv, during an emergency Temporary Restraining Order hearing before Judge Horan a few days earlier, inaccurately represented to the judge that Fiserv had returned all of Bessemer's records." As Fiserv has explained in various briefs (*see e.g.* Dkt. 147), Bessemer badly mischaracterizes the arguments made at the hearing and the reasons Bessemer did not prevail on its motion. It's telling that Bessemer does not quote or cite this "misrepresentation" or the hearing transcript, or reveal that it had online access to all of the "missing" documents at all times and received them in data form just a few days after that hearing in any event. Bessemer's arguments about the

---

[2] "Bessemer asks the Court to accept its averments, in a Brief, that the 'security review' was a completely innocent and, as Bessemer argues, required inquiry into the security measures implemented by Fiserv Solutions." (Order on Motion to Dismiss Counterclaims, Dkt. 120 at 19.)

[3] "All along, federal law obligated Bessemer to 'monitor' Fiserv and 'review audits, summaries of test results, or other equivalent evaluations' of Fiserv. . . . This obligation falls on credit union 'management to assess the security and performance of web site whose performance is beyond their control and verify that the third-party web site complies with applicable laws including Privacy." (Bessemer Reply Brief in Support of Motion to Dismiss Counterclaims, Dkt. 110 at 6.)

"Bessemer's security review was driven by the strong national policy in favor of maintaining the safety and soundness of federal credit unions, as reflected in 12 C.F.R. Part 748 App'x A § III.D.3, which requires credit unions to 'monitor [their] service providers' to ensure credit union member information is being appropriately safeguarded and requires Bessemer to 'review audits, summaries of test results, or other equivalent evaluations of its service providers.'" (Bessemer Brief in Support of Motion to Dismiss Counterclaims, Dkt. 95 at 12-13.)

"Consistent with federal law, Bessemer has responsibility to actively and independently monitor the security practices of a vendor such as Fiserv; anything less would be an unsafe and unsound practice threatening the stability of a credit union. While Bessemer hoped that Fiserv would have fulfilled its contractual obligation to provide these independent audits, after Fiserv refused to do so, Bessemer was left with no choice but to obtain them itself. If complying with these regulations can be construed as breaching the Master Agreement, that agreement must yield to public policy." (*Id.* at 20.)

Mark Shepard
May 19, 2023
Page 4

TRO hearing are a legal and factual red herring. They have nothing to do with when the relevant discovery period should conclude.

Very truly yours,

*/s/ Jesse Byam-Katzman*

Jesse L. Byam-Katzman

cc:   Charles J. Nerko (via email)
      Benjamin M. Wilkinson (via email)
      Kevin D. Szczepanski (via email)